# EXHIBIT 7

*The New York Times* | https://www.nytimes.com/2014/12/31/nyregion/firm-that-paid-sheldon-silver-is-tied-to-landlord-with-troubled-past.html

# Firm That Paid Sheldon Silver Is Tied to Landlord With Troubled Past

By William K. Rashbaum and Thomas Kaplan

Dec. 30, 2014

A two-attorney law firm that has made substantial payments to Sheldon Silver, the New York State Assembly speaker, which are the focus of a federal investigation, also counts among its clients a wealthy landlord with a troubled past who has ties to Mr. Silver, records show.

The landlord, Baruch Singer, whose father was the long-serving rabbi at the synagogue on the Lower East Side of Manhattan where Mr. Silver has worshiped for decades, used the law firm to seek reductions in real estate tax assessments on a number of his buildings on the Lower East Side and in Harlem, tax records show.

The tax certiorari law firm, Goldberg & Iryami, which seeks reductions in city real estate taxes on behalf of its clients, has made payments to Mr. Silver over roughly a decade, people with knowledge of the matter have said. A personal injury lawyer with no known experience in the highly specialized field of tax certiorari law, Mr. Silver did not disclose the source of the payments, as required.

As part of the investigation, federal prosecutors and agents with the Federal Bureau of Investigation have been seeking to determine precisely what Mr. Silver, a Democrat from the Lower East Side and one of the most powerful figures in Albany, was doing for the money, according to the people with knowledge of the matter.

Mr. Silver has said that he has properly disclosed all of his income. On Tuesday, through a spokesman, he declined to comment.

The Assembly speaker sponsored a bill in 1999 that would have allowed Mr. Singer to buy back a building in Harlem that had been seized because he failed to pay taxes on it. Subsequently, Mr. Silver said that the rabbi, Yitzchok Singer, had asked him to help. The rabbi later denied seeking Mr. Silver's assistance. The bill was never passed.

There has been no suggestion that the Harvard-educated Mr. Singer, whose contentious history as a landlord has led to news articles about thousands of violations, is himself under investigation.

In a brief telephone interview on Tuesday, he dismissed the published reports, saying, "I happen to be — thank God — one of the best landlords in the city of New York."

Mr. Singer said he was unaware of why Goldberg & Iryami's payments to Mr. Silver were the focus of a federal investigation, and he lauded the work performed by Jay Arthur Goldberg, who along with his partner, Dara Iryami, operates the firm, which has hundreds of clients.

"Please put in that he's a wonderful human being," he added of Mr. Goldberg.

Mr. Singer dismissed any suggestion that the Assembly speaker had referred him to Mr. Goldberg, 75, who like Mr. Singer, 61, and Mr. Silver, 70, grew up on the Lower East Side.

"Definitely not! Definitely not! Definitely not!" he said. "He knows me since I'm in diapers," he said of the tax lawyer.

Mr. Goldberg's firm sought tax reductions for an unknown number of Mr. Singer's properties. But a review of court filings and records from the New York City Tax Commission showed a number of properties associated with Mr. Singer that were represented by the firm in recent years.

The properties included commercial buildings on Delancey Street on the Lower East Side, in the district that Mr. Silver represents. They also included properties in the Hudson Yards area on the Far West Side of Manhattan, and apartment buildings in Harlem and in Washington Heights.

The disclosure that the Goldberg firm's payments to Mr. Silver were under investigation prompted one government watchdog group, which like many others has long criticized the legislature's lax disclosure requirements, to call for greater transparency.

Blair Horner, the legislative director for the New York Public Interest Research Group, said Mr. Silver should explain why Goldberg & Iryami has not been listed on his financial disclosure statements as a source of outside income. He said the discovery by federal authorities that Mr. Silver had been paid by the firm "raises serious questions only the speaker can answer."

"The public has a right to know if an elected official has outside business interests that may conflict with their role as a public official," Mr. Horner said. "That's why the laws are on the books, and anything that undermines that disclosure fuels suspicion."

A version of this article appears in print on , Section A, Page 15 of the New York edition with the headline: Landlord Tied to Law Firm That Paid Assembly Chief