**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7364**

WRITER'S EMAIL ADDRESS
alexspiro@quinnemanuel.com

November 18, 2024

<u>VIA ECF</u>

The Honorable Dale E. Ho
United States District Judge
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, Courtroom 905
New York, New York 10007

Re:   <u>United States v. Adams</u>, No. 24 Cr. 556 (DEH)

Dear Judge Ho:

I write on behalf of Mayor Eric Adams in response to the government's November 15 letter. ECF No. 59. The government is rewriting history. During the October 2 hearing, the Court ordered that all discovery be completed by December 4. The Court did not carve out *Giglio* material. In fact, the Court's order was directly responsive to the Mayor's counsel's concern about late disclosures of *Brady* and *Giglio* material:

> MR. SPIRO: If they're going to have all of the discovery to us by December 4th, I don't know whether they plan to drift and make it undigestible, but if they do it in the right way and provide us the *Brady* and *Giglio* material that they have now that I know they have now, with all due speed, I don't have a problem with completion of discovery on December 4th.
>
> THE COURT: *So I'll order that discovery be produced by December 4th*. I think everyone understands, and it sounds like this is going to happen, it needs to be produced on a rolling basis as soon as practicable. If there are issues with discovery, I'm sure that you will all raise them with me. I'm just going to remind you all of your duty under local Rule 16.1 to meet and confer, if there are any disputes about discovery, to do that in good faith before raising those issues with the Court.

quinn emanuel urquhart & sullivan, llp

ATLANTA | AUSTIN | BOSTON | BRUSSELS | CHICAGO | DOHA | HAMBURG | HONG KONG | HOUSTON | LONDON | LOS ANGELES | MANNHEIM | MIAMI | MUNICH | NEUILLY-LA DEFENSE | NEW YORK | PARIS | PERTH | RIYADH | SALT LAKE CITY | SAN FRANCISCO | SEATTLE | SHANGHAI | SILICON VALLEY | STUTTGART | SYDNEY | TOKYO | WASHINGTON, DC | ZURICH

Oct. 2, 2024 Hr'g Tr. at 26:9-24 (emphasis added).  For tactical reasons, the government is inventing a distinction that lacks any basis in the record or in common sense—that the Court's order was limited to "'discovery' in the usual sense (*i.e.*, Rule 16 discovery)." Gov't Ltr. at 3.  But both the context and plain language of the Court's order make clear that the December 4 deadline applies equally to *Giglio* material.  The government did not, at the time, seek to exclude *Giglio* material (or any other subset of discovery) from the Court's order.  Rather, the government asked to be heard on "just one issue" regarding a specific *Brady* demand, immediately after hearing the Mayor's counsel call for the production of *Brady* and *Giglio* material by December 4 and the Court impose that deadline.  Oct. 2, 2024 Hr'g Tr. at 26:25-27:9.  If the government wanted to express what it "typically agrees to produce" in discovery and when, Gov't Ltr. at 2, it should have said so then.  It did not, and the Mayor's legal team has relied for over a month on the expectation that all *Giglio* material will be produced on December 4, in accordance with the Court's order.

Nor would it make sense to exempt from the Court's order a subset of discovery of constitutional significance.  Given that a protective order is in place, and counsel has adhered to it, there is no principled reason to delay production of the *most* important category of discovery.  On November 14, counsel for Mayor Adams attempted to meet and confer with the government on this issue.  Unfortunately, one of the government's lawyers quickly escalated the discussion, raising his voice and repeatedly using uncivil and dismissive language in response to Mayor Adams's request for *Giglio* material by December 4.  To the extent that the discussion was able to get back on track, the government acknowledged its *Brady* obligations and that *Giglio* material constitutes a subset of the *Brady* material it is obligated to produce.  But while the government now claims it "has not delayed the production" of *Brady* material, Gov't Ltr. at 2 n.2, it offers no rationale other than "standard practice" in this District for its refusal to produce *Giglio* material on the same timeline, *id.* at 3.  That is because no justification exists other than to gain an unfair tactical advantage.

"Standard practice," of course, has no bearing on the specific circumstances here.  *Giglio* material must be disclosed "in time for its effective use at trial," which in turn depends on the nature of the evidence and the "particular circumstances of the case."  *United States v. Coppa*, 267 F.3d 132, 146 (2d Cir. 2001).  There is an exceptional need in this case for the prompt disclosure of *Giglio* materials.  The government already has said it will be relying heavily on witness testimony as a "significant category of evidence," Oct. 2, 2024 Hr'g Tr. at 18:15, and it is undisputed that at least the government's main cooperating witness has already provided inconsistent statements to the government, *see* Indictment ¶ 48(c) ("The Adams Staffer also agreed to speak with FBI agents and falsely denied the criminal conduct of herself and ADAMS, among others.").  Moreover, a huge number of relevant documents are in Turkish, Oct. 2, 2024 Hr'g Tr. at 15:23-24, so any investigation by the Mayor's counsel into inconsistent witness statements or other impeachment evidence likely will require obtaining records from overseas and translating them.  *See United States v. Mohamed*, 148 F. Supp. 3d 232, 246 (E.D.N.Y. 2015) ("Early disclosures . . . may be appropriate where the Defense would require significant time to investigate and make effective use of the disclosure.").  The government made a point of telling the Court that this "investigation . . . began in the summer of 2021," Oct. 2, 2024 Hr'g Tr. at 15:3, and there is a "really tremendous volume of evidence that will be submitted in this case," *id.* at 53:16-18, which is why it merited a complex case designation.  Having made those representations as to the

complexity and breadth of the case and volume of discovery, the government cannot now delay compliance with its Giglio obligations well past the December 4 deadline until the eve of trial—leaving no time for Mayor Adams's counsel to run down any useful impeachment information or otherwise make effective use of it at trial.

The government also is wrong. It is common in complex cases in this District to order *Giglio* and 3500 material produced far in advance of the government's proposed two-week deadline. *See, e.g.*, *United States v. Javice*, No. 23 Cr. 251 (AKH), ECF No. 163 (S.D.N.Y. Sept. 24, 2024) (ordering production of 3500 material eight weeks before trial); *United States v. Maxwell*, No. 20 Cr. 330 (AJN), ECF No. 297 at 1 (S.D.N.Y. June 2, 2021) (seven weeks before trial); *United States v. Bonventre*, No. 10 Cr. 228 (LTS), 2013 WL 2303726, at *9 (S.D.N.Y. May 28, 2013) (45 days before trial to "allow for full exploration and exploitation by the defense" (quotation omitted)). Even in *United States v. Owens*, cited by the government, the government had "already produced a substantial amount of 3500 material" more than two months before trial "and intend[ed] to produce additional 3500 material six weeks prior to trial." No. 18 Cr. 693 (RMB), ECF No. 140 at 1 n.1 (S.D.N.Y. Nov. 9, 2019).

The record further belies the government's arguments, including the claim that Mayor Adams's October 14 letter demanding the prompt production of *Giglio* materials "would seem superfluous if Adams believed the Court had already ordered that." Gov't Ltr. at 2-3. Mayor Adams's October 14 letter said nothing about the December 4 deadline. Rather, citing the imminent trial, Mayor Adams sought "all *Brady* and *Giglio* material now, so that he can investigate and prepare for trial effectively." Exhibit A. It remains true that these disclosures are necessary *now* (ideally even sooner than December 4) so that the Mayor can prepare for trial in four months.

Indeed, if anything, the record indicates that the government in fact understood this Court to have ordered all discovery produced, as did Mayor Adams. For example, Mayor Adams's October 25 reply in support of his motion for an evidentiary hearing described how the government had rejected defense counsel's request for grand jury witness transcripts. ECF No. 40 at 8-9. Consistent with Mayor Adams's October 14 letter to the government, counsel wrote: "The Court should order the transcripts produced now. Otherwise, the government's gamesmanship will necessitate reopening this matter after the transcripts are produced *on or before December 4, as ordered*." *Id*. at 9 (emphasis added). The government made no effort to correct this statement with either defense counsel or the Court.

The government is playing games with the Mayor's constitutional rights. The government *does not dispute* that it has identified and currently possesses *Giglio* material, or that Mayor Adams is entitled to this evidence; the government simply does not want to produce anything helpful to the defense until the last minute, when it is too late for the defense to probe the disclosure, follow investigative leads, obtain and translate necessary documents, or otherwise make meaningful use of key impeachment evidence. This gamesmanship is alarming. It also is antithetical to both the spirit of the government's disclosure obligations and the Court's order. To protect Mayor Adams's right to make effective use at trial of evidence to which is he constitutionally entitled, the Court should reject the government's cynical re-interpretation of its discovery obligations and affirm its prior order requiring that all discovery be produced by December 4.

Respectfully submitted,

Alex Spiro