UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

- against -

ERIC ADAMS,

Defendant.

No. 24-CR-556 (DEH)

---

**DEFENDANT ERIC ADAMS'S MEMORANDUM OF LAW IN SUPPORT OF
HIS MOTION FOR A BILL OF PARTICULARS**

**TABLE OF CONTENTS**

TABLE OF CONTENTS...................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT ......................................................................................... 1

BACKGROUND ................................................................................................................ 2

LEGAL STANDARD......................................................................................................... 2

ARGUMENT...................................................................................................................... 4

I.    THE INDICTMENT LACKS CRITICAL INFORMATION ABOUT THE ALLEGED
      *QUID PRO QUOS* ................................................................................................... 4

II.   THE INDICTMENT FAILS TO SPECIFY THE UNINDICTED CO-
      CONSPIRATORS, FOREIGN-NATIONAL CONTRIBUTORS, AND STRAW
      DONORS ............................................................................................................... 13

III.  AT A MINIMUM, THE COURT SHOULD ORDER EARLY DISCLOSURE OF
      THE GOVERNMENT'S TRIAL EXHIBITS ................................................................. 17

CONCLUSION................................................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Snyder v. United States*,
603 U.S. 1 (2024) ..................................................................................................4, 7, 10

*United States v. Aliperti*,
867 F. Supp. 142 (E.D.N.Y. 1994) ...............................................................................9

*United States v. Baldeo*,
2013 WL 5477373 (S.D.N.Y. Oct. 2, 2013) ..............................................................15

*United States v. Bin Laden*,
92 F. Supp. 2d 225 (S.D.N.Y. 2000) ......................................................................4, 14

*United States v. Bonventre*,
2013 WL 2303726 (S.D.N.Y. May 28, 2013) ............................................................18

*United States v. Bortnovsky*,
820 F.2d 572 (2d Cir. 1987).............................................................................3, 13, 16, 17

*United States v. Catapano*,
2008 WL 2222013 (S.D.N.Y. May 22, 2008) ..............................................................9

*United States v. Clarkson Auto Elec., Inc.*,
2014 WL 3906324 (W.D.N.Y. Aug. 8, 2014) ..............................................................3

*United States v. Davidoff*,
845 F.2d 1151 (2d Cir. 1988).......................................................................................4, 13

*United States v. Dawkins*,
999 F.3d 767 (2d Cir. 2021).........................................................................................7

*United States v. Dawkins*,
2019 WL 2464924 (S.D.N.Y. May 23, 2019) ..............................................................8

*United States v. DiCesare*,
765 F.2d 890 (9th Cir. 1985) ........................................................................................3

*United States v. Ganim*,
2002 WL 31643045 (D. Conn. Nov. 20, 2002) .......................................................9, 11

*United States v. Hsia*,
24 F. Supp. 2d 14 (D.D.C. 1998) ...............................................................................14

*United States v. Ikoli*,
    2017 WL 396681 (S.D.N.Y. Jan. 26, 2017) (Nathan, J.)................................................3, 4, 17

*United States v. Kanekar*,
    2020 WL 730353 (E.D.N.Y. Feb. 12, 2020).........................................................................14

*United States v. Lino*,
    2001 WL 8356 (S.D.N.Y. Dec. 29, 2000) ................................................................9, 11, 14

*United States v. McCarthy*,
    292 F. Supp. 937 (S.D.N.Y. 1968) ....................................................................................9, 11

*United States v. McClean*,
    528 F.2d 1250 (2d Cir. 1976)..................................................................................................11

*United States v. Michel*,
    2019 WL 5797669 (D.D.C. Nov. 6, 2019) .............................................................................14

*United States v. Minaya*,
    395 F. Supp. 2d 28 (S.D.N.Y. 2005)......................................................................................12

*United States v. Murgio*,
    209 F. Supp. 3d 698 (S.D.N.Y. 2016).................................................................................8, 11

*United States v. Nachamie*,
    91 F. Supp. 2d 565 (S.D.N.Y. 2000).........................................................................13, 15, 17

*United States v. Pinto-Thomaz*,
    352 F. Supp. 3d 287 (S.D.N.Y. 2018)....................................................................................14

*United States v. Rajaratnam*,
    2010 WL 2788168 (S.D.N.Y. July 13, 2010) ..................................................3, 11, 14, 16, 18

*United States v. Rigas*,
    490 F.3d 208 (2d Cir. 2007).....................................................................................2, 3, 12, 13

*United States v. Rosenthal*,
    1991 WL 267767 (S.D.N.Y. Dec. 3, 1991) ...........................................................................14

*United States v. Savin*,
    2001 WL 243533 (S.D.N.Y. Mar. 7, 2001) .....................................................................14, 16

*United States v. Siddiqi*,
    2007 WL 549420 (S.D.N.Y. Feb. 21, 2007)......................................................................8, 11

*United States v. Silver*,
    948 F.3d 538 (2d Cir. 2020).......................................................................................................9

*United States v. Tournant*,
    2023 WL 8649893 (S.D.N.Y. Dec. 13, 2023) ................................................3, 4, 12

*United States v. Trie*,
    21 F. Supp. 2d 7 (D.D.C. 1998) .................................................................14, 16

*United States v. Turkish*,
    458 F. Supp. 874, 881 (S.D.N.Y. 1978) .............................................................17

*United States v. Walsh*,
    194 F.3d 37 (2d Cir. 1999) .........................................................................3, 11

*United States v. Wang*,
    2024 WL 1251105 (S.D.N.Y. Mar. 22, 2024) ............................................3, 8, 12

*United States v. Wey*,
    2017 WL 237651 (S.D.N.Y. Jan. 18, 2017) ........................................................18

## **Statutes**

18 U.S.C. § 371 ...............................................................................................2

18 U.S.C. § 666 ........................................................................1, 2, 4, 5, 7, 10

18 U.S.C. § 1343 .............................................................................................2

52 U.S.C. § 30109 ...........................................................................................2

52 U.S.C. § 30121 ...........................................................................................2

## **Other Authorities**

Fed. R. Crim. P. 7 .......................................................................................2, 3

Fed. R. Crim. P. 12 ..........................................................................................2

Fed. R. Crim. P. 16.1 .......................................................................................2

## PRELIMINARY STATEMENT

The indictment against Mayor Eric Adams omits critical information about the bribery and campaign finance charges against him. *First*, the indictment alleges that Mayor Adams solicited and accepted straw campaign contributions and travel benefits from Turkish nationals and members of the New York City Turkish community and, in return, agreed to "assist . . . in the operation of the Turkish Consulate in New York," ECF No. 1 (Indictment), ¶ 36, to "be influenced in connection with the City of New York's regulation of the Turkish House," *id.* ¶ 63, and/or (the indictment is not clear) "to help the Turkish Consulate secure a temporary certificate of occupancy ('TCO') for [the Turkish House]," *id.* ¶ 38. But the government's theory of Section 666 bribery is not articulated at any more specific level than these general allegations. The law compels the government to provide further details to enable Mayor Adams to prepare his defense.

Although the government has stated that "[t]here are at least two alleged *quid pro quos* in the indictment, and they are nested within each other," Nov. 1 Hr'g Tr. 24, neither the indictment nor the government has described the scope, nature, or circumstances of those two purported agreements in a way that comes close to enabling Mayor Adams to prepare an adequate defense. The indictment fails to identify any specific acts that Mayor Adams agreed to do besides allegedly assisting with the TCO matter; the benefits that he agreed to accept in exchange for assisting on the TCO matter or other specific actions; the timing of the agreements; any counterparties to the agreements other than the Turkish Official and the Airline Manager; how the agreements were formed, even if implicitly; and what the government believes to have been Mayor Adams's relevant alleged official position at the time of the agreements (*e.g.*, Borough President, candidate for mayor). Courts in this Circuit regularly grant motions for bills of particulars when faced with similarly vague indictments.

*Second*, the indictment fails to identify the Mayor's alleged co-conspirators. The government has alleged a scheme lasting "nearly a decade," Indictment ¶ 1, and involving more than twenty-five people. But Mayor Adams can only guess at which of these people (or unknown others) the government alleges to be his co-conspirators, or which specific campaign contributions the government alleges to be straw donations. He cannot base his trial preparation on guesswork.

Because the indictment is "insufficient to permit" Mayor Adams to prepare an "adequate defense," a bill of particulars is warranted. *United States v. Rigas*, 490 F.3d 208, 237 (2d Cir. 2007). At minimum, if the Court determines that a bill of particulars is not warranted, the Court should order early disclosure of the government's trial exhibits. Fed. R. Crim. P. 16.1(b).

## BACKGROUND

On September 26, 2024, the government unsealed an indictment charging five counts against Mayor Adams. *See generally* ECF No. 1 (Indictment) (conspiracy, 18 U.S.C. § 371 (Count I), wire fraud, 18 U.S.C. § 1343 (Count II), soliciting, accepting, and receiving a campaign contribution by a foreign national, 52 U.S.C. § 30121, 30109(d)(1)(A) (Counts III & IV), and federal-program bribery, 18 U.S.C. § 666(a)(1)(B) (Count V)). On September 30, Mayor Adams moved to dismiss Count V of the indictment. *See* ECF No. 13. The Court held oral argument on the motion on November 1. On December 17, the Court denied Mayor Adams's motion, holding that the indictment was sufficiently pleaded. *See* ECF No. 68 ("Op. & Order"), at 30. The Court also observed that the indictment "is not perfectly clear as to the timeline" of the allegations and that the allegations regarding the TCO matter "are perhaps not a model of clarity." Op. & Order 29& n.12 (internal quotations omitted).

## LEGAL STANDARD

A different standard applies to a motion for a bill of particulars under Federal Rule of Criminal Procedure 7(f) than a motion to dismiss an indictment under Rule 12(b)(3)(B)(v), and by

extension, Rule 7(c)(1).  *See Rigas*, 490 F.3d at 237.  A bill of particulars is warranted when an indictment is "insufficient to permit the preparation of an adequate defense," even if the indictment satisfies the requirements of Rule 7(c)(1).  *Id.* (quoting *United States v. DiCesare*, 765 F.2d 890, 897 (9th Cir. 1985)).  "[T]he bill's purpose is to 'advise the defendant of the specific acts of which he is accused,'" *id.* (quoting *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999)); it "enables a defendant to prepare for trial [and] to prevent surprise," *United States v. Rajaratnam*, 2010 WL 2788168, at *1 (S.D.N.Y. July 13, 2010) (quoting *Rigas*, 490 F.3d at 237).

"The potential for unfair surprise and the difficulty of preparing a defense are amplified" in complex cases where the government's charges "depend heavily on the facts and context." *Id.* at *2.  Bills of particulars are therefore significant in "document-heavy conspiracy cases" in which the government has yet to identify the "transactions it seeks to prove" were unlawful.  *United States v. Clarkson Auto Elec., Inc.*, 2014 WL 3906324, at *3 (W.D.N.Y. Aug. 8, 2014).  And although the information sought by a defendant may be provided through discovery or other channels, "the Government cannot meet its burden by dumping voluminous discovery upon the defendant[] without any sort of guidance."  *United States v. Ikoli*, 2017 WL 396681, at *5 (S.D.N.Y. Jan. 26, 2017) (Nathan, J.) (citing *United States v. Bortnovsky*, 820 F.2d 572, 575 (2d Cir. 1987)).

Courts consider the following factors when determining whether a bill is warranted: "the clarity of the indictment; the duration and breadth of the alleged conspiracy, *i.e.*, the complexity of the crime charged; whether the government has provided adequate notice of the particulars; the potential danger to co-conspirators, witnesses, or victims; and the nature of the alleged criminal conduct." *United States v. Tournant*, 2023 WL 8649893, at *2 (S.D.N.Y. Dec. 13, 2023).  "The length of the indictment is not dispositive if the defendant is still left with an insufficient

understanding of the parameters of the scheme with which she is charged." *United States v. Wang*, 2024 WL 1251105, at *3 (S.D.N.Y. Mar. 22, 2024). Because "[t]he need for a bill of particulars is highly fact-dependent," courts have observed that "precedents furnish little help in disposing of requests for bills of particulars in criminal cases." *Tournant*, 2023 WL 8649893, at *2 (quoting *United States v. Bin Laden*, 92 F. Supp. 2d 225, 334 (S.D.N.Y. 2000)).

The decision to grant a motion for a bill of particulars "is within the sound discretion of the district court." *United States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir. 1988). At bottom, the government has the "burden of providing a defendant with sufficient notice of the charges." *Ikoli*, 2017 WL 396681, at *5.

## ARGUMENT

To allow Mayor Adams to adequately prepare his defense, the Court should direct the government to produce a bill of particulars containing the following information:

> **Request No. 1:** The specific acts that Mayor Adams agreed to do besides allegedly assist with the TCO matter; the benefits that he agreed to accept in exchange for these specific acts; the timing of the agreements; the counterparties to the agreements besides the Turkish Official and the Airline Manager; how the agreements were formed, even if implicitly; and Mayor Adams's official position as relevant to the agreements.

> **Request No. 2:** The identities of Mayor Adams's alleged co-conspirators; foreign nationals from whom Mayor Adams allegedly "knowingly and willfully solicited, accepted, and received, and aided and abetted and willfully caused the solicitation, acceptance and receipt of, a contribution" to a local election in 2021 and 2023; and all alleged straw donors.

## I.    THE INDICTMENT LACKS CRITICAL INFORMATION ABOUT THE ALLEGED *QUID PRO QUOS*

The Court should order the government to particularize its bribery allegations because the indictment fails to sufficiently describe the nature of, and essential facts regarding, the alleged *quid pro quo* agreements to enable Mayor Adams to prepare an adequate defense. The government must prove that Mayor Adams "accept[ed] an up-front payment for a future official act or agree[d]

to a future reward for a future official act." *Snyder v. United States*, 603 U.S. 1, 19 (2024). The indictment oscillates between alleging two different *quid pro quos*. *See* Nov. 1 Hr'g Tr. 24 (government conceding that "[t]here are at least two alleged *quid pro quos* in the indictment, and they are nested within each other"). As described by the Court, the indictment alleges an "*ex ante* agreement with respect to the regulation of the Turkish House generally" and an "*ex ante* agreement with respect to the TCO specifically." Op. & Order 30. But the indictment fails to specify even the basic facts and circumstances of those agreements and therefore does not permit Mayor Adams to prepare an adequate defense.

   ***Agreement With Respect To The Regulation Of The Turkish House Generally.*** Under the government's first theory, Mayor Adams allegedly agreed to accept travel benefits in connection with the "regulation" of the Turkish House generally. Indictment ¶ 63. The Court has determined that identifying the *quo* as "the regulation of the Turkish House generally . . . is sufficient under § 666" for purposes of sustaining the indictment. Op. & Order 30.[1] But the Court has also observed that "the 'regulation' of the Turkish House is a somewhat general concept." *Id.* at 21. That general concept is insufficient to allow Mayor Adams to prepare an adequate defense, even if barely sufficient to sustain the indictment. The allegation that Mayor Adams agreed to be "influenced in connection with the City of New York's regulation of the Turkish House," Indictment ¶ 63, could encompass a wide variety of actions, including actions that would not satisfy the elements of the Section 666 offense, and does not in any meaningful sense describe what Mayor Adams supposedly agreed to do. And if the government is literally alleging that he entered into a vague agreement to assist with the "regulation" of a diplomatic facility (however implausible) in exchange for travel benefits, it should be required to make that clear.

---

[1] Mayor Adams respectfully disagrees and reserves his right to appeal the Order.

The allegations related to the supposed "regulation" *quid pro quo* are also unclear in other respects. For example, the indictment alleges that Mayor Adams agreed to receive travel benefits years before the Turkish House even broke ground. *See id.* ¶ 12 ("In 2016 and twice in 2017, Adams solicited and accepted free and heavily discounted luxury air travel from the Turkish Airline, as part of the Turkish Official's efforts to gain influence over Adams . . . ."). It is not at all clear whether the government believes that those purported benefits are relevant in some way to the alleged agreement about the "regulation" of the Turkish House. At oral argument on the motion to dismiss, the government appeared uncertain about its own theory, telling the Court that the alleged agreement was "clearly *at some point before September 2021*." Nov. 1 Hr'g Tr. 25 (emphasis added). The Court sought clarity, asking, "[W]hat is happening in 2016? Because since it's not part of the *quid pro quo* for the Turkish House, it would not be part of the underlying conduct, right?" *Id.* at 26. The government responded: "It would be evidence of the agreement but not alone suffice to prove it. So one of the things significant about 2016 and 2017, is right from the getgo or almost from the getgo, since *we can't be precise about timing*, it is clear with the defendant he's entering a transactional relationship." *Id.* at 26 (emphasis added). It is entirely unclear how the supposed "transactional relationship" relates to the alleged *quid pro quo* agreement that the government must prove for conviction, and the government has offered little more than deflection about the relevance, if any, of the alleged 2016 and 2017 benefits.

A criminal defendant is entitled to far more than that. An alleged agreement for which the government admittedly "can't be precise about timing" fails to adequately describe the government's theory of guilt, even in the most approximate terms. Nov. 1 Hr'g Tr. 25. The Supreme Court, in fact, has recognized that "the timing of the agreement is the key" under Section

666, *Snyder*, 603 U.S. at 19, because the existence of a *quid pro quo* depends on the timing. The government cannot strategically withhold such a fundamental allegation until trial.

Even apart from the ambiguity on timing, the indictment does not specify which purported benefits were part of that agreement. Nor does it clearly identify the counterparties to the alleged agreement. The indictment alleges that Mayor Adams accepted benefits from "the Turkish Official *and* the Airline Manager," Indictment ¶ 33 (emphasis added), that the Turkish Official (without mentioning the Airline Manager) "continued to fulfill his end of the bargain," *id.* ¶ 39, and that Mayor Adams accepted benefits from "the Turkish Official *and others*," *id.* ¶ 63 (emphasis added). These inconsistencies—and the indeterminacy of the word "others"—make it impossible to scrutinize the identities and roles of the supposed counterparties.

In addition, the indictment does not explain how the alleged agreement was formed (*e.g.*, orally), even if implicitly. And it does not describe the government's theory about what official position Mayor Adams was allegedly invoking in entering into the agreement (*i.e.*, is the government's allegation that was he acting as the Brooklyn Borough President or as the winner of the Democratic primary for Mayor or in some other capacity?).

Criminal defendants facing similar charges typically have far clearer notice of the government's theory before trial. For example, in holding that the "regulation" *quo* is sufficient under § 666 for purposes of the indictment, this Court cited *United States v. Dawkins*, 999 F.3d 767 (2d Cir. 2021), for its holding "that the district court did not err in instructing the jury that the acceptance of a bribe in connection with the 'operation and administration of [a] university's men's basketball program' was sufficient under § 666." Op. & Order 21 (quoting *Dawkins*, 999 F.3d at 785-87). Yet as the Court noted, *Dawkins*'s facts involved a discrete exercise of official authority—that is, defendants bribing college coaches to steer student-athletes to hire the

defendants. Because these factual allegations were contained in the *Dawkins* indictment, *see* 2019 WL 2464924, at *8 (S.D.N.Y. May 23, 2019), the defendants were apprised of a specific *quo* ahead of trial, allowing for adequate preparation.

Similarly, in *United States v. Siddiqi*, 2007 WL 549420 (S.D.N.Y. Feb. 21, 2007), the indictment alleged that the defendant had "solicited, demanded, accepted and agreed to accept from a[] contractor cash payments and goods, including computer and other electronic equipment, in return for approving requests for payment and change-order payments relating to [a government] contract having a value in excess of $5,000." Indictment ¶ 1, No. 06 Cr. 377 (S.D.N.Y. Apr. 28, 2006), ECF No. 13. The court required the government to particularize "the approximate date and amount of illegal payments that [the defendant] received, as well as the identity of the [ ] contractor who made such payments," and to identify "which of the requests for payment and change orders were allegedly approved by [the defendant] in return for bribes." 2007 WL 549420, at *3. Without the specification of the illicit benefits, the court reasoned, the defendant would be "unreasonably hampered in his ability to prepare a defense." *Id.* The court added that identification of the payments and change orders would allow the defendant to "focus his defense efforts on those specific instances." *Id.* Although the indictment in *Siddiqi* was much shorter than the one here, it was at least as vague as to the nature and scope of the purported *quid pro quo* agreements. *See also Wang*, 2024 WL 1251105, at *3 ("The length of the indictment is not dispositive if the defendant is still left with an insufficient understanding of the parameters of the scheme with which she is charged.").

Other courts in this district have ordered similarly vague bribery indictments to be particularized. *See, e.g.*, *United States v. Murgio*, 209 F. Supp. 3d 698, 720, 723 (S.D.N.Y. 2016) (ordering bill of particulars to "identify the dates, locations, and amounts" of bribes and the "laws

or duties [defendant] allegedly intended to violate"); *United States v. Catapano*, 2008 WL 2222013, at *30 (S.D.N.Y. May 22, 2008) (ordering bill where defendants allegedly bribed union agents not to enforce provisions in collective bargaining agreements but defendants were not apprised of the unenforced provisions); *United States v. Lino*, 2001 WL 8356, at *4 (S.D.N.Y. Dec. 29, 2000) (ordering bill specifying "whom [the defendant] agreed to bribe, the pension fund with which the bribe recipient was affiliated, and the amount of the bribe"); *United States v. McCarthy*, 292 F. Supp. 937, 941 (S.D.N.Y. 1968) (ordering government to identify "the names of those who paid money to defendants"); *see also United States v. Ganim*, 2002 WL 31643045, at *1 (D. Conn. Nov. 20, 2002) (ordering government "to match each of the sixty-five benefits listed in the Government's original bill of particulars with each alleged racketeering act or other count charged in the indictment with respect to which the Government claims such benefit was allegedly provided to defendant"); *United States v. Aliperti*, 867 F. Supp. 142, 149 (E.D.N.Y. 1994) (ordering government to particularize payments made for official acts).  Those rulings made good sense.  Without more information, defendants like Mayor Adams would be forced to prepare a defense without understanding the scope and circumstances of the agreements that the government alleges.

*Agreement With Respect To The TCO Specifically.*  With respect to the government's second theory—that there was an agreement regarding the TCO specifically—the indictment also lacks critical information.  It does not specify the timing of the alleged agreement or what Mayor Adams accepted or agreed to accept at the time that he allegedly agreed to pressure the FDNY to issue the TCO.  *See United States v. Silver*, 948 F.3d 538, 556 (2d Cir. 2020) ("[T]he relevant point in time in a *quid pro quo* bribery scheme is the *moment at which the public official accepts payment*.").  As this Court has observed, "the factual allegations in the Indictment as to the alleged

9

agreement on the TCO are perhaps not a model of clarity." Op. & Order 29 (internal quotation marks omitted).

That lack of clarity pervades the TCO allegations. *First*, as the Court explained, "[t]he indictment is not perfectly clear as to the timeline." Op. & Order 29 n.12. Paragraph 36 of the indictment—which alleges that Mayor Adams and the "Turkish Official" understood that, in exchange for past and future travel, Mayor Adams "was expected to assist . . . in the operation of the Turkish Consulate"—could not possibly describe anything about the alleged agreement on the TCO because the TCO matter had not arisen at the time of the earlier travel. Paragraph 39—which alleges that, after the TCO was issued, "the Turkish Official continued to fulfill his end of the bargain, by providing additional luxury travel benefits to Adams"—likewise fails to identify a *pro* because it does not allege when Mayor Adams agreed to accept luxury travel benefits for allegedly assisting with the TCO matter.

*Second*, the indictment is not clear as to *what* Mayor Adams allegedly agreed to receive in exchange for acting on the TCO matter. Even if the indictment could be read to allege that Mayor Adams later accepted travel benefits as a token of gratitude for contacting the FDNY Commissioner, that would not describe a violation of Section 666 without an allegation that he agreed to accept those benefits at the time that he agreed to contact the Commissioner. *See Snyder*, 603 U.S. at 19 ("[A] state or local official does not violate § 666 if the official has taken the official act before any reward is agreed to, much less given."). But the indictment says absolutely nothing about any benefits he agreed to accept after the TCO matter arose but before he acted. Understanding how the government accounts for this critical gap in the indictment is essential to preparing a defense.

Although the Court relied on *United States v. Walsh*, 194 F.3d 37, to hold that the unclear allegations about the TCO matter were nevertheless "'sufficient to provide [Mayor Adams] with adequate notice of the charges' against him,'" Op. & Order 29 (quoting *Walsh*, 194 F.3d at 45), *Walsh* itself teaches that the sufficiency of the indictment does not foreclose a bill of particulars. In the quoted section of the opinion, *Walsh* stated that "[a]lthough the Indictment is not a model of clarity, '[r]ecognizing that particular facts needed in particular cases *are obtainable by bills of particulars* or discovery, we have repeatedly refused, in the absence of any showing of prejudice, to dismiss . . . charges for lack of specificity.'" 194 F.3d at 45 (emphasis added) (quoting *United States v. McClean*, 528 F.2d 1250, 1257 (2d Cir. 1976)).[2] That analysis supports directing the government to produce a bill of particulars here.

A bill of particulars is especially warranted given the nature of the charge. Courts regularly order particularization as to the timing of bribes, *see Murgio*, 209 F. Supp. 3d at 723; *Siddiqi*, 2007 WL 549420, at *3, or identification of payors, *see McCarthy*, 292 F. Supp. at 941. Doing so is necessary to mitigate "[t]he potential for unfair surprise and the difficulty of preparing a defense," which are "amplified" in a case where the government's charges "depend heavily on the facts and context." *Rajaratnam*, 2010 WL 2788168, at *2. Courts likewise grant requests for particularization so that the defendant may ascertain the link between *quids* and *quos*—a critical element of the offense. *See, e.g.*, *Lino*, 2001 WL 8356, at *4; *Ganim*, 2002 WL 31643045, at *1.

---

[2] In a later section of the opinion, *Walsh* affirmed the denial of a bill of particulars because "the government had provided Walsh with details that allowed him to . . . present his defense adequately, rendering a bill of particulars unnecessary." 194 F.3d at 47. For the reasons stated in this memorandum, the same cannot be said here.

*****

In sum, the government's theories of an "*ex ante* agreement with respect to the regulation of the Turkish House generally" and "an *ex ante* agreement with respect to the TCO specifically," Op. & Order 30, both contain factual gaps that render the indictment "insufficient to permit the preparation of an adequate defense," *Rigas*, 490 F.3d at 237.  The government cannot remedy that problem by eliding two distinct agreements and vaguely alluding to "nesting."  *Cf. United States v. Minaya*, 395 F. Supp. 2d 28, 35-36 (S.D.N.Y. 2005) (ordering government to particularize whether it was charging a single conspiracy where the indictment charged inconsistent dates for the same conspiracy, and if so, to specify the alleged date range).  Requiring the government to describe with more clarity its theory of bribery would not prejudice the government or its investigation (which has been pending for years), because trial is imminent.  *See Wang*, 2024 WL 1251105, at *5 n.4 (ordering bill of particulars and noting "prejudice to the Government's investigation . . . [wa]s limited" given that trial was "set to begin in less than 60 days").

All of the factors that courts have identified militate in favor of a bill of particulars here.  Unquestionably "the clarity [or lack thereof] of the indictment," "the duration and breadth of the alleged conspiracy," and "whether the government has provided adequate notice of the particulars" support requiring further disclosures.  *Tournant*, 2023 WL 8649893, at *2.  So does the "nature of the alleged criminal conduct," *id.*, given that the bribery allegations here turn on whether the government can establish particular *quid quo pro* agreements that it has thus far described in only the most skeletal terms.  And the government has made no showing of "potential danger to co-conspirators, witnesses, or victims," nor could it.  *Id.*

For these reasons, Mayor Adams respectfully requests that the Court order particularization of the government's allegations as to the specific acts that he agreed to do other than assist with

the TCO matter; the benefits that he agreed to accept in exchange for these specific acts; the timing

of the agreements; the counterparties to the agreements apart from the Turkish Official and the

Airline Manager; how the agreements were formed, even if implicitly; and Mayor Adams's official

position as relevant to the agreements.

## II.    THE INDICTMENT FAILS TO SPECIFY THE UNINDICTED CO-CONSPIRATORS, FOREIGN-NATIONAL CONTRIBUTORS, AND STRAW DONORS

The Court should also require the government to specify the identities of unindicted co-

conspirators, the foreign nationals who allegedly contributed to his campaign, and the straw donors

who allegedly enabled the foreign-national contributions.  Each of those identifications is

necessary "to permit the preparation of an adequate defense."  *Rigas*, 490 F.3d at 237.

The indictment refers to more than twenty-five people pseudonymously, but it is

ambiguous as to which of these people is alleged to be a co-conspirator and for which alleged

offenses.  For example, consider one of the overt acts in the conspiracy charge (Count I):  "In

December 2020, the Adams Employees solicited straw donations to Adams's campaign from

Businessman-4."  Indictment ¶ 55i.  The indictment is vague as to which of the Adams Employees,

Businessman-4, and the straw donors are co-conspirators.  The indictment is likewise vague as to

whether Businessman-4 is one of the foreign-national contributors involved in the campaign-

finance charges (Counts III and IV).  He probably is not (those charges allege solicitations of

contributions by foreign nationals in 2021 and 2023), but greater certainty as to what exactly the

government is alleging is necessary in order for Mayor Adams to prepare his defense.

Courts have widely recognized that a bill of particulars is especially appropriate in cases

that involve alleged conspiracies to commit fraud and other financial crimes.  *See, e.g.*, *United*

*States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir. 1988) (conspiracy); *Bortnovsky*, 820 F.2d at 574-

75 (conspiracy to defraud government agencies); *United States v. Nachamie*, 91 F. Supp. 2d 565,

573 (S.D.N.Y. 2000) (conspiracy to commit Medicare fraud); *United States v. Trie*, 21 F. Supp. 2d 7, 21 (D.D.C. 1998) (conspiracy to impair and impede Federal Election Commission ("FEC") with straw-donor scheme); *United States v. Hsia*, 24 F. Supp. 2d 14, 31 (D.D.C. 1998) (same).

For that reason, "[r]equests for names of unindicted co-conspirators are fairly common and often are granted by district courts." *Lino*, 2001 WL 8356, at *12; *accord United States v. Kanekar*, 2020 WL 730353, at *6 (E.D.N.Y. Feb. 12, 2020) (same). Indeed, courts in this District routinely grant such requests. *See, e.g.*, *United States v. Pinto-Thomaz*, 352 F. Supp. 3d 287, 303 (S.D.N.Y. 2018) (granting "bill of particulars as to the identities of unindicted co-conspirators"); *Rajaratnam*, 2010 WL 2788168, at *1 (ordering government to identify tipper in insider-trading conspiracy); *United States v. Savin*, 2001 WL 243533, at *5 (S.D.N.Y. Mar. 7, 2001) (finding defendant was "entitled to a list of known unindicted co-conspirators"); *Bin Laden*, 92 F. Supp. 2d at 241 (ordering government to provide "the identities, including all aliases and code names, of all unindicted co-conspirators to whom it will refer at trial"); *United States v. Rosenthal*, 1991 WL 267767, at *7 (S.D.N.Y. Dec. 3, 1991) ("To the extent that the government knows of other persons who took part in the charged offenses with the intent of furthering the illegal goals alleged, the government is ordered to disclose their identities and a general description of each of their alleged roles.").

Likewise, in campaign-finance cases, precedent supports the revelation of the identities of alleged straw donors. *See Trie*, 21 F. Supp. 2d at 22 (ordering disclosure of co-conspirators involved in conspiracy to impair and impede the FEC by funneling campaign contributions through straw donors); *Hsia*, 24 F. Supp. 2d at 31 (same); *see also United States v. Michel*, 2019 WL 5797669, at *18 (D.D.C. Nov. 6, 2019) (crediting the government with identifying straw donors and still requiring bill of particulars listing the "unindicted persons or entities who the Government

plans to identify as co-conspirators at trial"); *cf. United States v. Baldeo*, 2013 WL 5477373, at *6 (S.D.N.Y. Oct. 2, 2013) (denying motion for bill of particulars because the government had explicitly identified "the Straw Donors referred to in the Superseding Indictment and Complaint, the Straw Donors' grand jury testimony, and specific references to the alleged co-conspirators").

When determining whether to require the identification of co-conspirators, courts consider an array of factors, including: "(1) the number of co-conspirators; (2) the duration and breadth of the alleged conspiracy; (3) whether the Government otherwise has provided adequate notice of the particulars; (4) the volume of pretrial disclosure; (5) the potential danger to co-conspirators and the nature of the alleged criminal conduct; and (6) the potential harm to the Government's investigation." *Nachamie*, 91 F. Supp. 2d at 572.

Here, each factor weighs in favor of disclosure of the alleged co-conspirators. And by analogy, the factors also support disclosure of the alleged foreign-national contributors and straw donors (to the extent that the government does not consider them to be co-conspirators, another issue on which the indictment is vague).

*First*, the indictment does not state the number of individuals that the government alleges were involved in the conspiracy, fraud, and campaign-finance charges. For example, it does not state how many, and which, people were allegedly "acting at [Mayor Adams's] direction" to submit and sign disclosure statements attesting to the veracity of the information being provided to the Campaign Finance Bureau. Indictment ¶ 8. The indictment likewise fails to specify the number of foreign nationals who allegedly gave money to the campaign or Mayor Adams's staffers, and its use of "at least" renders the number of straw donors indeterminate. *See, e.g.*, *id.* ¶¶ 45, 45(d). In short, Mayor Adams does not know the number of people involved in the alleged schemes against which he must defend, or which specific campaign contributions are at issue.

15

*Second*, the government alleges that the illegal conduct began in 2016 and continued through 2024. *Id.* ¶¶ 12, 44; Nov. 1 Hr'g Tr. 26. The indictment also alleges that foreign nationals, through straw donors, began contributing in 2018. Indictment ¶ 19. Courts have granted bills of particulars for alleged conspiracies far shorter than eight years. *See, e.g.*, *Rajaratnam*, 2010 WL 2788168, at *2 (six years); *Savin*, 2001 WL 243533, at *5 (same).

*Third*, the government has provided documents that identify individuals named pseudonymously in the indictment, but the individuals' roles in the charged crimes remain uncertain. The millions of documents produced do not reveal which individuals the government alleges are co-conspirators, and the government has yet to apprise Mayor Adams of which of the thousands of donors or donations it will cite as fraudulent. In cases with legal and allegedly illegal instances of the same conduct, a bill of particulars ensures that a defendant may focus his trial preparation on the instances that the government claims are illegal. *See Bortnovsky*, 820 F.2d at 574-75 (holding trial court committed reversible error by denying bill of particulars in insurance-fraud case that would have specified which insurance claims were fraudulent versus real); *Trie*, 21 F. Supp. 2d at 21 ("The government must provide information as to exactly what the false statements are [in reports filed with the FEC], what about them is false, who made them, and how Mr. Trie caused them to be made.").

*Fourth*, the volume of pre-trial disclosures necessitates particularizing the charges. Here, in less than three months, the government has provided the defense with over 400,000 files from more than 100 custodians, spanning more than a decade.[3] Courts have compelled disclosure of

---

[3] The true number of documents that Mayor Adams's defense team must review is much larger. Some of the files themselves contain thousands of text-message threads and phone entries (*e.g.*, calendar invitations). When message threads are extracted by twenty-four hour increments and individual phone entries are separated, Mayor Adams has more than *10 million* documents to review.

identities in cases with many fewer documents to review. *See Bortnovsky*, 820 F.2d at 574 (stating that the government "did not fulfill its obligation" to "reveal crucial information" when it "provid[ed] mountains [4,000] documents"); *Ikoli*, 2017 WL 396681, at *6 (rejecting government's contention that it sufficiently apprised defendants by providing "thousands of pages of discovery" because "the Government cannot meet its burden by dumping voluminous discovery upon the defendants without any sort of guidance"). Given the volume of discovery and the trial date less than four months away, this factor strongly supports particularization.

*Fifth and sixth*, the indictment alleges non-violent, financial crimes. Courts recognize that defendants facing these types of crimes do not pose a danger to co-conspirators and that the revelation of co-conspirators will not harm the government's investigation. *See Nachamie*, 91 F. Supp. 2d at 573 (finding "no legitimate concern that disclosing the names of unindicted co-conspirators will endanger those individuals or compromise the Government's investigation" because "this case charges Medicare fraud—not narcotics trafficking or murder"); *United States v. Turkish*, 458 F. Supp. 874, 881 (S.D.N.Y. 1978) (ordering production of witness list where "offense alleged in the indictment [wa]s not a crime of violence and defendants ha[d] never been convicted or arrested for any offense involving violence").

Because all six of the *Nachamie* factors weigh in favor of particularization, the Court should order the government to identify the unindicted co-conspirators, the foreign nationals who allegedly contributed to his campaign, and the straw donors who allegedly enabled the foreign-national contributions.

## III.    AT A MINIMUM, THE COURT SHOULD ORDER EARLY DISCLOSURE OF THE GOVERNMENT'S TRIAL EXHIBITS

If the Court denies the Mayor's motion for a bill of particulars, in whole or in part, the vagueness of the indictment's allegations and the extraordinary number of documents produced in

discovery warrant early disclosure of the government's trial exhibits. *See United States v. Wey*, 2017 WL 237651, at *22 (S.D.N.Y. Jan. 18, 2017) (ordering "identification of certain subsets of the Government's trial exhibits" 60 days before trial when denying bill of particulars). Courts have provided this remedy even when "the Indictment and the prior charging instruments are sufficiently detailed," because in "complex conspiracy cases . . . the potential for unfair surprise and the difficulty of preparing a defense are amplified." *United States v. Bonventre*, 2013 WL 2303726, at *7 (S.D.N.Y. May 28, 2013) (quoting *Rajaratnam*, 2010 WL 2788168, at *2), *aff'd*, 646 Fed. App'x 73, 79 (2d Cir. 2016) (summary order) (noting that this remedy adequately addressed concerns of voluminous discovery). Because Mayor Adams's defense team must review ten million documents to prepare for trial, this case raises the same concerns that animated *Wey* and *Bonventre*. Thus, Mayor Adams respectfully requests that the Court order the government to disclose its trial exhibits 60 days before trial.

## CONCLUSION

For all these reasons, Mayor Eric Adams requests that this Court grant his motion for a bill of particulars.

Date:  December 18, 2024

Respectfully submitted,

QUINN EMANUEL URQUHART
& SULLIVAN, LLP

By:  */s/ Alex Spiro*

Alex Spiro
295 Fifth Ave.
New York, NY 10016
(212) 849-7000

William A. Burck
John F. Bash (*admitted pro hac vice*)
Avi Perry
1300 I Street NW, 9th Floor
Washington, D.C. 20005
(202) 538-8000

*Attorneys for Mayor Eric Adams*