UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

- against -

ERIC ADAMS,

    Defendant.

No. 24-CR-556 (DEH)

# DEFENDANT ERIC ADAMS'S MEMORANDUM OF LAW IN SUPPORT OF HIS RENEWED MOTION FOR AN EVIDENTIARY HEARING AND FOR SANCTIONS INCLUDING DISMISSAL

## TABLE OF CONTENTS

**Page**

BACKGROUND ..................................................................................................................1

LEGAL STANDARD..........................................................................................................3

ARGUMENT.......................................................................................................................5

I.    MAYOR ADAMS HAS ESTABLISHED A PRIMA FACIE SHOWING OF VIOLATIONS OF GRAND JURY SECRECY ......................................................5

        A.    The Leaked Information Reflects Matters Occurring Before The Grand Jury........................................................................................................5

        B.    The Government Is The Only Plausible Source Of The Leak ...............6

II.    MAYOR ADAMS HAS BEEN PREJUDICED..........................................................9

CONCLUSION....................................................................................................................10

## TABLE OF AUTHORITIES

Page(s)

### Cases

*Barry v. United States*,
    865 F.2d 1317 (D.C. Cir. 1989) .................................................................................1, 4, 8

*Douglas Oil Co. of Cal. v. Petrol Stops Nw.*,
    441 U.S. 211 (1979) ..................................................................................................................3

*In re Sealed Case No. 98-3077*,
    151 F.3d 1059 (D.C. Cir. 1998) ........................................................................................4, 5

*United States v. Coughlan*,
    842 F.2d 737 (4th Cir. 1988) ...................................................................................................4

*United States v. Cuervelo*,
    949 F.2d 559 (2d Cir. 1991) ....................................................................................................4

*United States v. Nordlicht*,
    No. 16 Cr. 640 (BMC), 2018 WL 6106707 (E.D.N.Y. Nov. 21, 2018) ...........................5

*United States v. Silver*,
    103 F. Supp. 3d 370 (S.D.N.Y. 2015) .....................................................................................7

*United States v. Skelos*,
    No. 15 Cr. 317 (KMW), 2015 WL 6159326 (S.D.N.Y. Oct. 20, 2015) ...............3, 4, 5, 6, 7, 8

*United States v. Walters*,
    No. 16 Cr. 338 (PKC), 2017 WL 11434158 (S.D.N.Y. Mar. 1, 2017) ..............................7

*United States v. Walters*,
    910 F.3d 11 (2d Cir. 2018) ..................................................................................................3, 4

### Rules

Fed. R. Crim. P. 6 .................................................................................................................. *passim*

### Other Authorities

William K. Rashbaum, et al., Eric Adams Is Indicted After Federal Corruption
    Investigation, *N.Y. Times* (Sept. 25, 2024) .........................................................................2

UNITED STATES DEP'T OF JUSTICE, JUSTICE MANUAL, §§ 1-7.100 & 1-7.610 (last
    updated Apr. 2018) ...................................................................................................................9

## PRELIMINARY STATEMENT

In defiance of the Court's admonition that "this case is to be tried in the courtroom and not in the press" (ECF No. 49, at 21), the government has continued to leak grand jury material to the media—this time grand jury testimony from an identified witness. This revelation comes on the heels of a yearlong campaign of prejudicial reporting on the grand jury's investigation and, with it, a raft of grand jury secrecy violations. While the government disclaimed responsibility for those prior leaks, the circumstances of this latest violation undeniably point to the government as the only plausible source of this heartland Rule 6(e) material disclosed to the same group of *New York Times* reporters responsible for publishing grand jury material over the past year. The government, it seems, has resorted to leaking prejudicial and false grand jury material because its never-ending fishing expedition has yielded nothing new. But that is not surprising: Mayor Adams is innocent.

The government's disclosure of confidential grand jury material in a bid to win this case in the press has irreparably harmed Mayor Adams's defense and eviscerated his presumption of innocence. The Court accordingly should hold an evidentiary hearing to root out this significant misconduct that has only worsened since Mayor Adams's last motion and the Court's order. In the meantime, to prevent further leaks, the Court should exercise its equitable powers and halt any further grand jury proceedings pending the hearing and resolution of this motion, including determination of the appropriate sanctions, up to and including dismissal of the indictment. *See, e.g.*, *Barry v. United States*, 865 F.2d 1317, 1321 (D.C. Cir. 1989) (Rule 6(e) "indicates no limits on the relief available to address violations").

## BACKGROUND

### A.  Procedural History

On September 24, 2024, the grand jury returned an indictment against Mayor Adams, which was unsealed on September 26, 2024. ECF No. 2. On October 1, 2024, Mayor Adams

1

moved for an evidentiary hearing and for sanctions against the government following numerous grand jury leaks. ECF No. 18. That motion detailed a series of news articles by *The New York Times*'s William K. Rashbaum and others reporting on the grand jury investigation into Mayor Adams. ECF No. 19, at 3-9. Those articles discussed confidential grand jury material, citing unidentified sources "familiar with aspects of the probe," "familiar with the federal investigation," or "with knowledge of the matter"—and sometimes expressly citing anonymous law-enforcement sources. *Id*. at 3.

On October 18, 2024, the government opposed Mayor Adams's motion, broadly disclaiming responsibility for the leaks. ECF No. 38. On October 31, 2024, the Court denied the motion (ECF No. 46), and issued an amended opinion on November 4, 2024, ECF No. 49 ("Opinion").

**B.  Factual Background**

On December 22, 2024, Mayor Adams's counsel was notified by a credible source that confidential grand jury information has—once again—been leaked to the same group of reporters at *The New York Times* who have reported on this investigation, and repeatedly published confidential grand jury material, for over a year, including a leak of the sealed indictment against Mayor Adams. *See* Decl. of Alex Spiro ¶ 1; William K. Rashbaum, et al., Eric Adams Is Indicted After Federal Corruption Investigation, *N.Y. Times* (Sept. 25, 2024). The leaked information includes the identity of a witness who recently testified before the grand jury and the sum and substance of that witness's testimony—material unequivocally shielded by Rule 6(e)'s secrecy provisions. *See* Opinion at 5 (Rule 6(e) encompasses "'anything that may tend to reveal what transpired before' the grand jury").

2

As described in the accompanying declaration,[1] *The New York Times* was informed that a witness known to the defense with the initials ███ testified before the grand jury regarding ███ ████████████████████████████████████████████████████ ██████████████████████████████. *See* Spiro Decl. ¶¶ 2-3. ███████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████████████████. *See id.* ¶ 4. Defense counsel has no reason to believe the witness was the source of the leak because, on information and belief, ██████████████████████████████████ ████████████████████████████████████████████████████ ███████████████████████████. *Id.* ¶ 5. Rather, as with the prior leaked material, the only plausible source of this information is members of law enforcement assisting with the investigation.

## LEGAL STANDARD

"The leaking of confidential grand jury information to members of the press, whether to satisfy public interest in high profile criminal prosecutions or to generate evidentiary leads, is serious misconduct and, indeed, likely criminal." *United States v. Walters*, 910 F.3d 11, 23 (2d Cir. 2018). To protect the "proper functioning of our grand jury system," *Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 218-19 (1979), Rule 6(e) of the Federal Rules of Criminal Procedure prohibits government personnel, including federal or local law enforcement, from disclosing matters occurring before a grand jury. *See* Fed. R. Crim. P. 6(e)(2)(B). "The determination of whether something is a matter occurring before a grand jury" within the meaning

---

[1] Because this document reveals grand jury information under Rule 6(e), Mayor Adams submits it under seal along with a redacted copy of this brief.

3

of Rule 6(e) is "a fact-specific inquiry." *United States v. Skelos*, No. 15 Cr. 317 (KMW), 2015 WL 6159326, at *9 (S.D.N.Y. Oct. 20, 2015).

"If a defendant makes a prima facie showing that a person enumerated in the Rule disclosed 'matters occurring before the grand jury,' the district court must order an evidentiary hearing and may order sanctions." Opinion at 2 (cleaned up). A defendant's burden to make out a *prima facie* case and obtain an evidentiary hearing "is relatively light." *In re Sealed Case No. 98-3077*, 151 F.3d 1059, 1068 n.7 (D.C. Cir. 1998); *see also* Opinion at 3. To establish a *prima facie* case, a defendant must show "(1) there has been disclosure of a matter or matters occurring before the grand jury; and (2) that the source of the disclosure was an attorney or agent of the government." *Skelos*, 2015 WL 6159326, at *9.

Once a "*prima facie* case has been established, the burden shifts to the government to 'attempt to explain its actions' in a show cause hearing. If the government fails to rebut the *prima facie* case, a violation of Rule 6(e)(2) is deemed to have occurred." *Sealed Case No. 98-3077*, 151 F.3d at 1068 (quoting *Barry*, 865 F.2d at 1325). "A hearing allows for a searching inquiry into the particulars of the investigative process employed by the government," and is the "preferred course of action[.]" *United States v. Cuervelo*, 949 F.2d 559, 567 (2d Cir. 1991). The Court may order wide-ranging remedies for disclosing grand jury materials including dismissal of the indictment, *Walters*, 910 F.3d at 23, suppression of grand jury material as evidence, *United States v. Coughlan*, 842 F.2d 737, 740 (4th Cir. 1988), contempt of court, Fed. R. Crim. P. 6(e)(7), and other equitable relief, *Barry*, 865 F.2d at 1321 ("Courts have recognized, however, that the literal terms of Rule 6(e)(2) do not foreclose equitable relief, either in addition to, in conjunction with or in lieu of contempt sanctions").

4

## ARGUMENT

### I. MAYOR ADAMS HAS ESTABLISHED A PRIMA FACIE SHOWING OF VIOLATIONS OF GRAND JURY SECRECY

The Court should hold a hearing to determine the full scope of the leaks—to the very same *New York Times* reporters who have been publishing confidential grand jury information for over a year—and the individuals responsible. There is no question that "what is said or what takes place in the grand jury room" is core Rule 6(e) material, Opinion at 8, and the leaked information here reveals exactly that. Nor can there be any serious doubt about the source of leaked information which, unlike some of the prior leaked material discussed in Mayor Adams's first motion, discloses actual testimony before the grand jury from a witness with no motive or incentive to publicize her statements. *See id.* at 8-10. On these facts, Mayor Adams has met his "relatively light" prima facie burden entitling him to an evidentiary hearing. *Sealed Case No. 98-3077*, 151 F.3d at 1068 n.7.

#### A. The Leaked Information Reflects Matters Occurring Before The Grand Jury

The leaked information—the identity and testimony of a grand jury witness on a particular topic—is "closely linked to . . . the inner workings of the grand jury" and is shielded by Rule 6(e). *United States v. Nordlicht*, No. 16 Cr. 640 (BMC), 2018 WL 6106707, at *4 (E.D.N.Y. Nov. 21, 2018); *see, e.g.*, Opinion at 5 (Rule 6(e) "extends beyond the evidence 'actually presented' to the grand jury and includes, for example, summaries of grand jury testimony, . . . and 'the substance of testimony'"); *id.* at 14 n.8 (stating a "number of courts" have held that even "the identity of an individual served a grand jury subpoena is protected by Rule 6(e), because such witnesses are likely to testify before a grand jury"); *Skelos*, 2015 WL 6159326, at *10 (potential 6(e) violations include "revelations of the identity of either grand jurors or expected witnesses" and "information about expected testimony of witnesses or likely questions"). The leaked information furthermore

5

"reveals the strategy or direction of a grand jury investigation" by focusing on ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆. *Skelos*, 2015 WL 6159326, at *10.

Thus, because "what is said or what takes place in the grand jury room" is protected by Rule 6(e), Opinion at 8, Mayor Adams easily satisfies this prong of the analysis. Opinion at 3-4.

### B. The Government Is The Only Plausible Source Of The Leak

The government is the only plausible source of this leak for at least three reasons.

*First*, unlike the previously leaked materials, the material disclosed here unequivocally reflects the substance of grand jury witness testimony along with the witness's identity—information to which only a handful of individuals would be privy. Specifically, the only people who "may be present while the grand jury is in session" are: "attorneys for the government, the witness being questioned, interpreters when needed, and a court reporter or an operator of a recording device." Fed. R. Crim. P. 6(d)(1). As stated, defense counsel has no reason to believe the witness was the source of the leak given ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆—let alone to William Rashbaum and his colleagues at *The New York Times*—▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆. Spiro Decl. ¶ 5. Additionally, ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆. *See id.* So unless the government plans to blame a grand juror, an interpreter, or a court reporter, process of elimination leaves only one other source: the government personnel who either conducted the examination or were informed of ▆▆'s testimony. *See* Fed. R. Crim. P. 6(e)(3) (listing limited exceptions to prohibition on disclosure of grand jury material).

*Second*, it is at this point beyond coincidence that the same team of reporters at *The New York Times* has once again stumbled on another piece of grand jury material. As Mayor Adams

6

recently described (ECF No. 80, at 2-3), Mr. Rashbaum and his colleagues have been at the epicenter of reporting on this investigation—and two other high-profile corruption cases in this District involving the leak of grand jury material[2]—and have published grand jury material in a series of articles for over a year. The only rational conclusion is that the government has provided *The New York Times* with this latest grand jury material, too, just as it did before.

*Third*, the government previously tried to disclaim responsibility for the leaks by citing a single declaration stating only that the assigned line prosecutors and case agents "have not disclosed information they learned in the course of the Investigation to any member of the press." ECF No. 38-2 ¶ 3. But as the Court acknowledged, that single declaration was "based on interviews with the relevant Government officials, rather than on statements from each of them individually," Opinion at 19, and raised more questions than answers, *see* ECF No. 40, at 7. And, the government's prior declaration did not deny that the former U.S. Attorney himself or the Assistant FBI Director (or any of their direct reports) was the source of the leak.[3] *See* ECF Nos. 38-1, 38-2. Leaks emanating from these high-level sources would be consistent with the officials' efforts to sway public opinion through their grossly improper comments to the press. *See* ECF No. 80-1. While the Court nevertheless declined to discount the declaration altogether, it was not squarely faced with the situation here, *i.e.*, the disclosure of actual grand jury testimony—

---

[2] *See United States v. Skelos*, 2015 WL 6159326, at *11 (S.D.N.Y. Oct. 20, 2015); *United States v. Silver*, 103 F. Supp. 3d 370, 373 & n.3 (S.D.N.Y. 2015).

[3] At least one court has required the United States Attorney for this district to report on unauthorized media disclosures of grand jury material by the government following widespread leaks. *See Walters*, No. 16 Cr. 338 (PKC), 2017 WL 11434158, at *1 (S.D.N.Y. Mar. 1, 2017) ("The Court directs the United States Attorney for this district to report to the Court in writing on the status of all investigations and proceedings against Special Agent Chaves or any other person making or concealing unauthorized disclosures related to insider trading investigations within 14 days of this Memorandum and Order and, thereafter, within 14 days of the close of every calendar quarter until further ordered.").

shockingly *after* Mayor Adams raised concerns about further leaks and the Court admonished the parties "that this case is to be tried in the courtroom and not in the press." Opinion at 21. Discovery, moreover, has revealed dozens of government attorneys and law enforcement personnel involved in this investigation who have not independently denied being the source of the leaks. The government has never obtained declarations from any of these individuals, much less questioned any of the dozens involved, whose desire to speak to the press and further the government narrative is far more compelling than that of this testifying witness (or any grand juror, translator, or court reporter).[4]

This confluence of factors—and common sense—indicates that the government must be the source of the disclosed testimony, and Mayor Adams accordingly meets this prong of the analysis, too. Opinion at 3-4.

\* \* \*

Because the material disclosed was a matter occurring before the grand jury, the source of which can only plausibly be some member of the government team investigating this case, Mayor Adams has satisfied his "relatively light" burden here. Opinion at 3. And "[o]nce a *prima facie* case is shown, the district court must conduct a 'show cause' hearing to determine whether the Government was responsible for the pre-indictment publicity and whether any information disclosed by the Government concerned matters occurring before the grand jury." *Barry*, 865 F.2d at 1321; *see also, e.g.*, *Skelos*, 2015 WL 6159326, at *9 ("Once the defendant has made a *prima facie* showing, the burden then shifts to the Government to rebut the defendant's case in a show

---

[4] Given the circumstances, as part of its opposition to this motion, the government should be required to submit individual declarations from each state, local, and federal government attorney, employee, or agent that received information regarding ■■■'s testimony, and require those individuals to affirm under penalty of perjury (1) how they came to learn that information; and (2) whether they disseminated it to any member of the media or other person outside the scope of Rule 6(e)(3).

8

cause hearing."). The Court accordingly should order an evidentiary hearing to determine the extent of the leaks and individuals responsible.

## II. MAYOR ADAMS HAS BEEN PREJUDICED

While the Court should order an evidentiary hearing based on Mayor Adams's *prima facie* showing of a Rule 6(e) violation alone, the government's continued leaks also have severely prejudiced the defense. The leaked grand jury testimony falsely suggests that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. As would be clear from any impartial investigation, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Yet, this latest leak is part and parcel of the extensive pre-indictment leaks that have caused the public (including potentially members of the grand jury) to conclude that the Mayor has engaged in criminal activity, resulting in calls for him to step down. *See* ECF No. 19, at 16-18. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. As previously noted (*id.* at 18), the Department of Justice's own internal policies prohibit federal prosecutors from disseminating the kind of sensitive non-public information that has been leaked here precisely because doing so may "prejudice the rights of a defendant," "prejudice an adjudicative proceeding," and, more generally, "unfairly damage the reputation of a person." UNITED STATES DEP'T OF JUSTICE, JUSTICE MANUAL, §§ 1-7.100 & 1-7.610 – General Need for Confidentiality & Concerns of Prejudice (last updated Apr. 2018). That prejudice is only amplified in this highly publicized prosecution of the sitting Mayor of New York City.

Moreover, any leaks of the grand jury's investigation are especially prejudicial to Mayor Adams given that the government timed the first indictment of a sitting New York City mayor so

9

that trial would occur in the middle of the election season. The government knew that this would create national headlines throughout the primary campaign. The government's leaks thus have caused Mayor Adams significant prejudice, the full extent of which will be revealed during an evidentiary hearing.

## CONCLUSION

For the foregoing reasons, Mayor Adams respectfully requests that the Court hold an evidentiary hearing regarding the circumstances of the leaks and individuals involved, and thereafter impose appropriate sanctions on the government, up to and including dismissal of the indictment. In the meantime, to prevent further inevitable leaks, the Court should exercise its equitable powers and halt any further grand jury proceedings pending the hearing and resolution of this motion. In addition, as part of its opposition to this motion, the government should be required to submit individual declarations from each state, local, and federal government attorney, employee, or agent who received information regarding ███'s testimony, and require those individuals to affirm under penalty of perjury (1) how they came to learn that information; and (2) whether they disseminated it to any member of the media or other person outside the scope of Rule 6(e)(3).

| | |
|---|---|
| Dated: December 24, 2024 | Respectfully submitted,<br><br>QUINN EMANUEL URQUHART<br>& SULLIVAN, LLP<br><br>By: /s/ Alex Spiro<br><br>Alex Spiro<br>295 Fifth Ave.<br>New York, NY 10016<br>(212) 849-7000<br><br>William A. Burck<br>John F. Bash (admitted *pro hac vice*)<br>Avi Perry<br>1300 I Street NW, 9th Floor<br>Washington, D.C. 20005<br>(202) 538-8000<br><br>*Attorneys for Mayor Eric Adams* |