UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

     -v.-

ERIC ADAMS,

          Defendant.

**24 Cr. 556 (DEH)**

**THE GOVERNMENT'S OPPOSITION TO
THE DEFENDANT'S MOTION FOR A BILL OF PARTICULARS**

EDWARD Y. KIM
Acting United States Attorney
Southern District of New York
26 Federal Plaza
New York, New York 10278

Celia V. Cohen
Andrew Rohrbach
Hagan Scotten
Derek Wikstrom
Assistant United States Attorneys
    *Of Counsel*

# <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS...................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

BACKGROUND ................................................................................................................ 1

  I. Factual Background ...................................................................................................... 1

  II. Applicable Law ........................................................................................................... 3

ARGUMENT ...................................................................................................................... 5

  I. The Request for a Bill of Particulars Should Be Denied............................................ 5

    A. The Current Disclosures Enable Adams to Prepare His Defense ......................... 5

    B. Adams's Specific Requests Do Not Call for a Bill of Particulars........................ 8

    C. Adams's Supporting Arguments Lack Merit ..................................................... 20

  II. The Request for Early Disclosure of Exhibits Should Be Denied ........................... 23

CONCLUSION................................................................................................................. 25

# TABLE OF AUTHORITIES

**Page**

*Cases*:

*Alston v. United States*,
  No. 15 Cr. 435 (CM), 2021 WL 2380064 (S.D.N.Y. June 10, 2021)........................................ 4
*Lugosch v. Pyramid Co. of Onondaga*,
  435 F.3d 110 (2d Cir. 2006)........................................................................................................ 2
*Snyder v. United States*,
  603 U.S. 1 (2024)...................................................................................................................... 13
*United States v. Al Jaber*,
  436 F. App'x 9 (2d Cir. 2011) .................................................................................................. 25
*United States v. Aliperti*,
  867 F. Supp. 142 (E.D.N.Y. 1994) .......................................................................................... 12
*United States v. Amendolara*,
  No. 01 Cr. 694 (DAB), 2002 WL 31368279 (S.D.N.Y. Oct. 21, 2002) ............................. 15, 16
*United States v. Bankman-Fried*,
  No. 22 Cr. 673 (LAK) (S.D.N.Y. June 15, 2024) ...................................................................... 6
*United States v. Bellomo*,
  263 F. Supp. 2d 561 (E.D.N.Y. 2003) ................................................................................. 8, 14
*United States v. Brewster*,
  No. 19 Cr. 833 (SHS), 2021 WL 342352 (S.D.N.Y. Aug. 5, 2021) ........................................ 8
*United States v. Biaggi*,
  675 F. Supp. 790 (S.D.N.Y. 1987)........................................................................................... 9
*United States v. Bin Laden*,
  92 F. Supp. 2d 225 (S.D.N.Y. 2000)....................................................................................... 16
*United States v. Block*,
  No. 16 Cr. 595 (JPO), 2017 WL 1608905 (S.D.N.Y. Apr. 28, 2017) ...................................... 4
*United States v. Bonventre*,
  646 F. App'x 73 (2d Cir. 2016) ................................................................................... 6, 21, 22
*United States v. Bonventre*,
  No. 10 Cr. 228 (LTS), 2013 WL 2303726 (S.D.N.Y. May 28, 2013)..................................... 24
*United States v. Bortnovsky*,
  820 F.2d 572 (2d Cir. 1987)........................................................................................ 5, 17, 20
*United States v. Botti*,
  711 F.3d 299 (2d Cir. 2013)..................................................................................................... 12
*United States v. Carroll*,
  510 F.2d 507 (2d Cir. 1975)..................................................................................................... 18
*United States v. Castillero*,
  23 Cr. 622 (JMF) (S.D.N.Y. Nov. 11, 2024) ........................................................................... 5
*United States v. Catapano*,
  No. 05 Cr. 229 (SJ) (SMG), 2008 WL 2222013, at *30 (E.D.N.Y. May 22, 2008)................ 11
*United States v. Chambers*,
  No. 17 Cr. 396 (WHP), 2018 WL 1726239 (S.D.N.Y. Apr. 9, 2018) ............................... 16, 25

*United States v. Chen*,
   378 F.3d 151 (2d Cir. 2004)..........................................................................4, 8, 13

*United States v. Davidoff*,
   845 F.2d 1151 (2d Cir. 1988)............................................................................4, 11

*United States* v. *Freeman*,
   No. 18 Cr. 217 (KMW), 2019 WL 2590747 (S.D.N.Y. June 25, 2019)...................23

*United States v. Friedman*,
   854 F.2d 535 (2d Cir. 1988)...................................................................................14

*United States v. Fruchter*,
   104 F. Supp. 2d 289 (S.D.N.Y. 2000)....................................................................22

*United States v. Ganim*,
   510 F.3d 134 (2d Cir. 2007)...................................................................................12

*United States v. Ganim*,
   No. 01 Cr. 263 (JBA), 2002 WL 31643045 (D. Conn. Nov. 20, 2002)............11, 12

*United States v. Gottlieb*,
   493 F.2d 987 (2d Cir. 1974).....................................................................................4

*United States v. Henry*,
   861 F. Supp. 1190 (S.D.N.Y. 1994)..................................................5, 10, 14, 22

*United States v. Hsia*,
   24 F. Supp. 2d 14 (D.D.C. 1998)...........................................................................19

*United States v. Ikoli*,
   16 Cr. 148 (AJN) 2017 WL 396681 (S.D.N.Y. Jan. 26, 2017)..............................20

*United States v. Issa*,
   No. 17 Cr. 74 (CM), 2018 WL 461131 (S.D.N.Y. Jan. 9, 2018)............................12

*United States v. Jain*,
   No. 19 Cr. 59 (PKC), 2019 WL 6888635 (S.D.N.Y. Dec. 18, 2019)......................18

*United States v. Kanekar*,
   2020 WL 730353 (E.D.N.Y. Feb. 12, 2020).........................................................16

*United States v. Lemay*,
   21 Cr. 573 (MKV), 2022 WL 1498961 (S.D.N.Y. May 12, 2022).........................21

*United States v. Leonelli*,
   428 F. Supp. 880 (S.D.N.Y. 1977)...........................................................................8

*United States v. Levy*,
   No. 11 Cr. 62 (PAC), 2013 WL 664712 (S.D.N.Y. Feb. 25, 2013).......................21

*United States v. Lino*,
   No. 00 Cr. 632 (WHP), 2001 WL 8356 (S.D.N.Y. Dec. 29, 2000)...................11, 15

*United States v. Ma*,
   No. 03 CR. 734 (DAB), 2006 WL 708559 (S.D.N.Y. Mar. 21, 2006)...................25

*United States v. Mahabub*,
   No. 13 Cr. 908 (AJN), 2014 WL 4243657 (S.D.N.Y. Aug. 26, 2014).....................4

*United States v. Mandell*,
   710 F. Supp. 2d 368 (S.D.N.Y. 2010)....................................................................20

*United States* v. *Mandell*,
   No. 09 Cr. 662 (PAC), 2011 WL 924891 (S.D.N.Y. Mar. 16, 2011)......................23

*United States v. Mangano*,
   No. 16 Cr. 540 (JMA), 2018 WL 851860 (E.D.N.Y. Feb. 9, 2018).......................16

*United States v. Mangini*,
  No. 20 Cr. 162 (JPO), 2021 WL 1268507 (S.D.N.Y. Apr. 6, 2021) .......................................... 5

*United States v. McCarthy*,
  292 F. Supp. 937 (S.D.N.Y. 1968).......................................................................................... 11

*United States v. Menendez*,
  No. 23 Cr. 490 (SHS) (S.D.N.Y. 2023) ......................................................................... 5, 10, 16

*United States v. Michel*,
  No. 19 Cr. 148 (CKK), 2019 WL 5797669 (D.D.C. Nov. 6, 2019) ....................................... 19

*United States v. Mitlof*,
  165 F. Supp. 2d 558 (S.D.N.Y. 2001).................................................................................. 7, 10

*United States v. Murgio*,
  209 F. Supp. 3d 698 (S.D.N.Y. 2016)................................................................................ 11, 15

*United States v. Nachamie*,
  91 F. Supp. 2d 565 (S.D.N.Y. 2000)................................................................................. 16, 18

*United States v. Ng*,
  No. 15 Cr. 706 (VSB) (S.D.N.Y. Apr. 26, 2017) ................................................................. 20

*United States v. Nunez*,
  No. 22 Cr. 293 (JPO), 2023 WL 5432513 (S.D.N.Y. Aug. 23, 2023)..................................... 17

*United States v. Payden*,
  613 F. Supp. 800 (S.D.N.Y. 1985)..................................................................................... 4, 15

*United States v. Perraud*,
  No. 09 Cr. 60129 (WJZ),  2010 WL 228013 (S.D. Fl. Jan. 14, 2010)..................................... 24

*United States v. Pinto-Thomas*,
  352 F. Supp. 3d  287 (S.D.N.Y. 2018).............................................................................. 16, 21

*United States v. Raniere*,
  384 F. Supp. 3d 282 (E.D.N.Y. 2019) ................................................................................. 22

*United States v. Rajaratnam*,
  No. 09 Cr. 1184 (RJH), 2010 WL 2788168 (S.D.N.Y. July 13, 2010) .................................. 16

*United States v. Richards*,
  659 F.3d 527 (6th Cir. 2011) ............................................................................................. 24

*United States v. Rittweger*,
  259 F. Supp. 2d 275 (S.D.N.Y. 2003).................................................................................. 9, 15

*United States v. Rose*,
  No. 19 Cr. 789 (PGG), 2021 WL 2117119 (S.D.N.Y. May 24, 2021)............................. 18, 19

*United States v. Samsonov*,
  No. 07 Cr. 1198 (CM), 2009 WL 176721 (S.D.N.Y. Jan. 23, 2009)...................................... 22

*United States v. Savin*,
  No. 00 CR. 45 (RWS), 2001 WL 243533 (S.D.N.Y. Mar. 7, 2001) ...................................... 16

*United States v. Siddiqi*,
  No. 06 Cr. 377 (SWK), 2007 WL 549420 (S.D.N.Y. Feb. 21, 2007) ............................. 10, 11

*United States v. Shkreli*,
  No. 15 Cr. 637 (KAM), 2016 WL 8711065 (E.D.N.Y. Dec. 16, 2016) ................................. 23

*United States v. Skelos*,
  No. 15 Cr. 317 (KMW), 2015 WL 6159326 (S.D.N.Y. Oct. 20, 2015) .............................. 4, 22

*United States v. Starks*,
  No. 24 Cr. 126 (JLR), 2024 WL 4528169 (S.D.N.Y. Oct. 18, 2024)......................... 14, 22, 25

*United States v. Torres*,
    901 F.2d 205 (2d Cir. 1990) ............................................................................. *passim*

*United States v. Tournant*,
    No. 22 Cr. 276 (LTS), 2023 WL 8649893 (S.D.N.Y. Dec. 13, 2023) ..................................... 15

*United States v. Trie*,
    21 F. Supp. 2d 7 (D.D.C. 1998) ............................................................. 17, 19

*United States v. Trippe*,
    171 F. Supp. 2d 230 (S.D.N.Y. 2001) .................................................................... 15

*United States v. Tuzman*,
    301 F. Supp. 3d 430 (S.D.N.Y. 2017) .................................................................... 16

*United States v. Vilar*,
    530 F. Supp. 2d 616 (S.D.N.Y. 2008) .................................................................... 24

*United States v. Walsh*,
    194 F.3d 37 (2d Cir. 1999) ............................................................................. *passim*

*United States v. Wedd*,
    No. 15 Cr. 616 (KBF), 2016 WL 1055737, at *3 (S.D.N.Y. Mar. 10, 2016) ..................... 6, 16

*United States v. Wey,*
    15 Cr. 611 (AJN), 2017 WL 237651 (S.D.N.Y. Jan. 18, 2017) ............................................. 24

<u>**PRELIMINARY STATEMENT**</u>

The Government respectfully submits this opposition to defendant Eric Adams's motion for a bill of particulars or, in the alternative, for early disclosure of Government trial exhibits. (Dkts. 72-74). Because the detail in the Indictment, the extensive and organized discovery, and the considerable litigation to date more than suffice to enable Adams to prepare his defense, the motion should be denied.

<u>**BACKGROUND**</u>

**I. Factual Background**

On September 26, 2024, the Indictment was unsealed. The Indictment charges a single defendant—Adams—in five closely related counts, and contains 57 pages of allegations describing the conduct of Adams and others involved in the charged offenses. (*See* Dkt. 1). Four days after the Indictment was unsealed, Adams filed a motion to dismiss Count Five, while agreeing that the other four counts should proceed to trial. (Dkt. 14 at 1-2). The motion to dismiss did not claim that the Indictment failed to inform Adams of the charges against him, but rather conducted a granular analysis of the Indictment's bribery allegations, then argued that those specific allegations failed to constitute a federal crime. (Dkt. 14 at 3-5, 10-20).

On October 1, 2024, the parties first appeared before this Court. (*See* Dkt. 31). Excluding the bribery count he had moved to dismiss, Adams described "the simple evidence" in the case as likely to require a short trial. (Dkt. 31 at 36). Adams pressed for an early trial date, insisting he could be ready by March 2025. (Dkt. 31 at 37, 44-45). In opposing exclusion of time under the Speedy Trial Act, Adams argued that "[t]his is not a complex case." (Dkt. 31 at 54).

On October 25, 2024—after having received significant discovery—Adams filed a reply brief in support of his motion to dismiss. (Dkt. 41). Adams again made no claim that the Indictment failed to adequately inform him of the charges, but once more delved into the details of the

1

allegations. (*Id.* at 7-10). At argument the following week, Adams described the Government as having "shown their cards" on the bribery theory, arguing that although indictments can merely track the relevant statutes, here the Indictment pled "specific facts," allowing the Court to review them for legal sufficiency. (Dkt. 57 at 4, 8-10). Adams offered a paragraph-by-paragraph exegesis of the Indictment, supported by slides quoting the Indictment at length, arguing that its detailed factual narrative did not amount to bribery under 18 U.S.C. § 666. (*Id.* at 38-41).

On November 11, 2024, Adams moved for an earlier trial date, stating that he "waived all discovery motions in this matter," and arguing that this case was significantly simpler than *United States v. Menendez*, No. 23 Cr. 490 (SHS) (S.D.N.Y. 2023). (Dkt. 55 at 3).

As of December 4, 2024, the Government completed nine discovery productions to Adams. Each production was accompanied by a detailed index describing its contents. (*See, e.g.*, Ex. A (Index to Dec. 4, 2024 Production)).[1] Each was also produced in electronic format, giving Adams the same quick access to the underlying materials as the Government. Among the materials produced were draft translations of communications between subjects, created by FBI linguists in the course of the investigation. (*See, e.g.*, Ex. B). Other materials help organize and explain the documentary evidence in this case. For example, a December 2021 application for an order under 18 U.S.C. § 2703(d) synthesized financial, telephone, and New York City Campaign Finance Board records to show that the contributions to Adams described in paragraph 30 of the Indictment were straw donations. (*See* Ex. C). And as a second example, an August 2024 application for a

---

[1] The Government will separately provide the exhibits to the Court and Adams, and respectfully requests that the Court accept these documents for filing under seal. Although those materials are judicial documents subject to the common law presumption of access, they are sealed material pursuant to the protective order and contain the names or other identifying information of third parties, including numerous persons not charged with the commission of any crime. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006).

warrant for location data for Adams's cellphone runs nearly 250 pages with attachments, identifying much of the documentary evidence underlying the Indictment. (*See* Ex. D).[2]

On December 17, 2024, this Court denied Adams's motion to dismiss Count Five. It provided an in-depth summary of the Indictment's bribery allegations (Dkt. 68 at 2-6), then analyzed those allegations with respect to the charge that Adams accepted luxury travel from the Turkish Official in exchange for both a broader agreement to be influenced in the regulation of the Turkish House and a narrower agreement to be influenced with respect to a TCO for that building. (Dkt. 68 at 19-30). The Court concluded that the broader agreement was clearly pled. (Dkt. 68 at 26-27). And while stating that the Indictment's allegations were "'perhaps not a model of clarity'" with respect to the narrower TCO agreement, the Court found that those allegations "are 'sufficient to provide Mayor Adams with adequate notice of the charges' against him." (Dkt. 68 at 29-30 (quoting *United States v. Walsh*, 194 F.3d 37, 45 (2d Cir. 1999))).[3]

The next day, Adams initiated a brief call with the Government to satisfy his obligations under Local Criminal Rule 16.1, then filed the instant request for a bill of particulars.

## II.   Applicable Law

A bill of particulars serves "to provide defendant with information about the details of the charge against him if this is necessary to the preparation of his defense, and to avoid prejudicial surprise at trial." *United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990), *abrogated on other grounds by United States v. Marcus*, 628 F.3d 36, 41 (2d Cir. 2010). "A bill of particulars is

---

[2] Despite Adams's claim that the case against him is based on a particular purported witness, the affidavits generally rely on records rather than the witnesses, and do not rely on the individual he often discusses at all. For that reason, the affidavits form a particularly useful guide to the documentary evidence (such as financial records and electronic messages) in this case.

[3] Unless otherwise noted, case quotations omit all internal citations, quotation marks, and previous alterations.

required 'only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused.'" *United States v. Chen*, 378 F.3d 151, 162-63 (2d Cir. 2004) (quoting *Walsh,* 194 F.3d at 47)).

"Acquisition of evidentiary detail is not the function of the bill of particulars." *Torres*, 901 F.3d at 234. Thus, "a defendant is not entitled to disclosure of the manner in which the government will attempt to prove the charge, the precise manner in which the government will allege the defendant committed the crimes charged, or a preview of the government's evidence or legal theories." *United States v. Skelos*, No. 15 Cr. 317 (KMW), 2015 WL 6159326, at *13 (S.D.N.Y. Oct. 20, 2015); *accord United States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir. 1988) (citing *United States v. Gottlieb*, 493 F.2d 987, 994 (2d Cir. 1974)); *E.g.*, *United States v. Mahabub*, No. 13 Cr. 908 (AJN), 2014 WL 4243657, at *2 (S.D.N.Y. Aug. 26, 2014) ("The purpose of a bill of particulars is to ensure that a defendant has the information necessary to prepare a defense, not to turn over all information that would aid the defendant.").

Put another way, "the standard for granting a bill of particulars is not whether it would be helpful to [the] defense but, rather, whether it is necessary . . . ." *United States v. Block*, No. 16 Cr. 595 (JPO), 2017 WL 1608905, at *6 (S.D.N.Y. Apr. 28, 2017). Moreover, bills of particulars are generally disfavored because they risk "confin[ing] the government's evidence at trial to the particulars furnished." *United States v. Payden*, 613 F. Supp. 800, 816 (S.D.N.Y. 1985); *accord Alston v. United States*, No. 15 Cr. 435 (CM), 2021 WL 2380064, at *7 (S.D.N.Y. June 10, 2021) ("A bill of particulars is generally disfavored in federal practice; it is ordered only where the indictment (as supplemented by discovery and other disclosures) is not sufficient to provide adequate notice to a defendant."). In addition, to avoid the danger that a defendant will "tailor her testimony to explain away the Government's case," "if the defendant has been given adequate

notice of the charges against her and can prepare fully for trial with reasonably diligent efforts, the Government cannot be required to disclose additional details about its case." *United States v. Henry*, 861 F. Supp. 1190, 1197 (S.D.N.Y. 1994).

Finally, in assessing the need for a bill of particulars, courts consider whether the information sought by defendant, even if not in the indictment, has been provided in some acceptable alternate form, including discovery. *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987); *Walsh*, 194 F.3d at 47 (finding defendant adequately informed of nature of charges through discovery); *United States v. Mangini*, No. 20 Cr. 162 (JPO), 2021 WL 1268507, at *2 (S.D.N.Y. Apr. 6, 2021) ("A bill of particulars is not necessary where the Government makes sufficient disclosures concerning its evidence and witnesses by other means, such as through a detailed indictment and discovery.").

The decision to grant or deny a bill of particulars is within the sound discretion of the district court. *Torres*, 901 F.2d at 234.

## ARGUMENT

### I.  The Request for a Bill of Particulars Should Be Denied

#### A.  The Current Disclosures Enable Adams to Prepare His Defense

Adams has failed to identify a valid basis for any bill of particulars in this case, much less one with the level of detail he demands. The 57-page speaking Indictment, discovery produced to him, and additional information provided during litigation to date are far more than sufficient to put Adams on notice of the specific crimes of which he is accused and to permit him to adequately prepare a defense. *See, e.g.*, *United States v. Castillero*, No. 23 Cr. 622 (JMF), Dkt. 53 at 6-8 (S.D.N.Y. Nov. 11, 2024) (denying bill of particulars on these grounds); *United States v. Menendez*, No. 23 Cr. 490 (SHS), Dkt. 344 at 31-37 (S.D.N.Y. Apr. 11, 2024) (same); *see also*

*United States v. Bankman-Fried*, No. 22 Cr. 673 (LAK), Dkt. 168 at 51-56 (S.D.N.Y. June 15, 2024) (denying bill of particulars for similar information as sought by Adams).

Indeed, Adams's express proclamations about the simplicity of the case, and his detailed factual briefing with respect to the bribery allegations, demonstrate that he fully understands the charges he is facing, which is why he described the Government has having "shown their cards." (Dkt. 57 at 4). The same is demonstrated by his counsel's highly specific—if improper—public commentary characterizing the evidence, attacking particular witnesses, discussing co-conspirators, and developing defenses. (*See* Dkts. 76, 86). Adams makes no serious argument that he has not been apprised of the nature of charges against him, *see Torres*, 901 F.2d at 234, nor could he: the Indictment explains in depth the charged scheme, including specific communications and actions, and the discovery provides relevant documents, electronic communications—including draft translations—and other materials to further understand the allegations.

Given the detail in the Indictment, this plainly is not a case in which the allegations "are so general that they do not advise the defendant of the specific acts of which he is accused." *Walsh*, 194 F.3d at 47. On the contrary, the Indictment alone provides a sufficient basis to deny the defendant's motion in its entirety. *See, e.g.*, *United States v. Bonventre*, 646 F. App'x 73, 79 (2d Cir. 2016) ("[E]videntiary detail is not the function of the bill of particulars. Particulars are necessary only where indictment charges are so general that they do not advise the defendant of the specific acts of which he is accused."); *United States v. Wedd*, No. 15 Cr. 616 (KBF), 2016 WL 1055737, at *3 (S.D.N.Y. Mar. 10, 2016) (denying motion for bill of particulars where "the Indictment is a 'speaking' Indictment that provides a significant amount of detail as to the Government's theory of the case and the nature of the proof that will underlie the charges at trial").

6

To be sure, Adams may desire additional particularity in order to constrain the Government's proof at trial, but that is both true of every defendant and not the relevant standard. Instead, as described above, the proper inquiry is whether the information already available is so general that a bill of particulars is *necessary* to the preparation of his defense. *See also United States v. Mitlof*, 165 F. Supp. 2d 558, 569 (S.D.N.Y. 2001) ("The ultimate test must be whether the information sought is necessary, not whether it is helpful."). Adams has entirely failed to demonstrate such necessity. In addition to the speaking Indictment, Adams received substantial and organized discovery in this case, including, among other things:

- Search warrants and detailed 100+ page affidavits identifying and describing evidence and further detailing the contours of the charged scheme;

- Records of the seizure of physical evidence pursuant to those warrants, including inventories, photographs, and forensic examinations of certain seized evidence;

- Electronic evidence extracted from multiple devices and accounts pursuant to those warrants, including electronic communications among co-conspirators:

- Documents obtained from relevant individuals and entities, such as City Hall, Adams's 2021 and 2025 campaigns, the New York City Fire Department, the New York City Campaign Finance Board, the various businesses that organized straw donations to Adams's campaigns, the airline that provided free and steeply discounted travel to Adams, the major party fundraising site that received the online straw donations to Adams's campaigns, and banks and credit card companies (including financial records for straw donors);

- Certain witness statements, including redacted interview reports.

To facilitate the defendant's review of the discovery, the Government has also produced much of the discovery in database load-ready format; produced a detailed, text-searchable index; and offered to answer any questions defense counsel may have regarding where to find materials in discovery. And it is clear from Adams's motions and public statements that he has already reviewed that material (at least in significant part) and identified potentially relevant materials. Moreover, the detail in the Indictment dovetails with the discovery. For example, the Indictment

provides specific dates for particular communications and actions, permitting Adams to sort and prioritize discovery by relevant date, and quotes a number of electronic communications verbatim, allowing Adams to readily search the discovery materials for them.

### B. Adams's Specific Requests Do Not Call for a Bill of Particulars

Because Adams has already received far greater insight into the Government's case than precedent requires, he seeks details that cannot support the grant of a bill of particulars. Adams starts by requesting details about the "scope, nature, and circumstances" of the bribery charges, complaining that he needs to know more about "the government's theory" and "what the government believes." (Dkt. 73 ("Mot.") at 1, 6, 7). But courts have repeatedly rejected such requests, because "the law does not impose upon the Government an obligation to preview its case or expose its legal theories." *United States v. Leonelli*, 428 F. Supp. 880, 882 (S.D.N.Y. 1977); *United States v. Brewster*, No. 19 Cr. 833 (SHS), 2021 WL 342352, at *2 (S.D.N.Y. Aug. 5, 2021) (same); *United States v. Bellomo*, 263 F. Supp. 2d 561, 580 (E.D.N.Y. 2003) ("A bill of particulars is not designed to . . . obtain the precise way in which the government intends to prove its case; interpret its evidence for the defendant, or disclose its legal theory.").

In any event, Adams plainly understands the theory of the bribery charges against him: The Indictment details the relevant allegations at length, which is how Adams was able to file a thorough, fact-based motion to dismiss four days after the Indictment was unsealed. To the extent Adams still had any doubts, the Government further elaborated on its theory in extensive written and oral advocacy defending the bribery count. *See Chen*, 378 F.3d at 163 (affirming denial of bill of particulars where "the government distilled its case even further in the course of the prolonged oral argument"). And if Adam even then had remained unable to grasp the bribery charge, the

Court itself supplied a guide in its own thorough opinion explaining the Indictment's allegations and why they were legally sufficient. (Dkt. 68 at 2-6, 19-30).[4]

Adams makes hay of the Court's statement that the allegations with respect to the TCO agreement are "'perhaps not a model of clarity.'" (Mot. 9-10 (quoting *Walsh*, 194 F.3d at 45)). But this fails to help him for several reasons. *First*, the Court made no such comment about the broader agreement with respect to regulation of the Turkish House. *Second*, Adams omits the second part of the Court's description of the TCO allegations, which found them, "'sufficient to provide Mayor Adams with adequate notice of the charges' against him." (Dkt. 68 at 30 (quoting *Walsh*, 194 F.3d at 45)). *Third*, the case this Court chose to rely upon for these points affirmed the denial of both a motion to dismiss and a motion for a bill of particulars. *See Walsh*, 194 F.3d at 45, 47. Adams offers a conclusory assertion that *Walsh* is distinguishable (Mot. 11 n.2), but fails to engage with its reasoning, which rested in part on the Indictment being "satisfactory" and in part on the discovery provided. *Walsh*, 194 F.3d at 47. This Court has already found the Indictment satisfactory, and Adams makes no meaningful effort to engage with the discovery.

The remainder of Adams's requests with respect to the bribery charges seek the sort of "evidentiary detail" that cannot support a bill of particulars. *Torres*, 901 F.3d at 234; *see also, e.g.*, *United States v. Rittweger*, 259 F. Supp. 2d 275, 292-93 (S.D.N.Y. 2003) (denying bill of particulars request as "'an impermissible attempt to compel the Government to provide the evidentiary details of its case'" (quoting *United States v. Biaggi*, 675 F. Supp. 790, 810 (S.D.N.Y.

---

[4] Adams also cannot reasonably suggest that he is confused by the allegation that the TCO agreement is both legally sufficient on its own terms and part of the larger agreement with respect to regulation of Turkish House. (*See* Mot. 1, 12). There is nothing confusing, or even complicated, about an agreement on a particular matter involving smaller agreements on parts of that matter. For example, Adams's counsel surely can understand that they have agreed both to defend Adams against the charges in this case and, as part of that defense, agreed to represent him at trial on April 21, 2025.

1987)). Adams demands comprehensive particularization of the who, what, when, why, and how of the bribery agreements. (Mot. 4). But "'wheres, whens and with whoms'" are "beyond the scope of a bill of particulars." *Mitlof*, 165 F. Supp. 2d at 569 (citing *Torres*, 901 F.2d at 233-34). Perhaps for that reason, a materially identical request for a bill of particulars charting the five "W's" of a bribery conspiracy was rejected last year in *Menendez*. No. 23 Cr. 490 (SHS), Dkt. 344 at 34-35.

Moreover, the Indictment supplies much of the detail Adams claims to lack. (*See* Mot. 12-13). For example, it contains a chart of things of value given to Adams. (Dkt. 1 at ¶ 41). It describes how and when each of these improper benefits was offered and accepted—and in many cases, concealed. (*Id.* at ¶¶ 12-17, 21-24, 27, 34-35, 39). The Indictment leaves no doubt that the Turkish Official was the counterparty with respect to the improper agreements regarding the Turkish House. (*E.g.*, *id.* at ¶ 36). And Adams hardly needs the Indictment to specify—although it does—what City positions he held on what dates. (*See* Mot. 13). For that reason, among others, it is clear that Adams's granular requests are not an effort to obtain information necessary to his defense, but rather a strategic bid to secure a bill of particulars because it "confines the Government's proof to particulars furnished" and can thus "restrict unduly the Government's ability to present its case." *Henry*, 861 F. Supp. at 1197.

Adams's citations concerning the identification of specific illicit payments bear little resemblance to this case. For example, Adams relies on *United States v. Siddiqi*, a case in which the charges against the defendant were set forth in a three-page indictment. No. 06 Cr. 377 (SWK), Dkt. 13 (S.D.N.Y. Apr. 28, 2006). The court ordered a bill of particulars "identifying which of the requests for payment and change orders were allegedly approved by [the defendant] in return for bribes." No. 06 Cr. 377 (SWK), 2007 WL 549420, at *3 (S.D.N.Y. Feb. 21, 2007). But the court specified that the Government "need not allege that particular requests for payment or change

orders were approved in return for particular bribery payments. Requiring this sort of one-to-one mapping of tainted requests for payment or change orders to particular bribes would improperly restrict the Government's proof at trial." *Id. Siddiqi* thus did not order the Government to diagram "the nature and scope of the purported *quid pro quo* agreements." (Mot. 8). To the contrary, it required identifying the bare fact of which payments were bribes and which official acts were motivated by bribes—something the Indictment here already does—while rejecting the sort of "one-to-one-mapping" that Adams demands.

Most of Adams's other citations are similar:  They did not require matching *quids* and *quos*, but the mere identification of improper payments or official actions where—unlike here—the indictment failed to provide that information. *See Davidoff*, 845 F.2d at 1154 (identification of companies targeted by charged extortion scheme); *United States v. Murgio*, 209 F. Supp. 3d 698, 720, 723 (S.D.N.Y. 2016) ("dates, locations, and amounts of any bribes" paid by defendant); *United States v. Catapano*, No. 05 Cr. 229 (SJ) (SMG), 2008 WL 2222013, at *30 (E.D.N.Y. May 22, 2008) (provisions in collective bargaining agreement that defendants bribed union official not to enforce), *report and recommendation adopted*, 2008 WL 2992303 (S.D.N.Y. Aug. 2008); *United States v. Lino*, No. 00 Cr. 632 (WHP), 2001 WL 8356, at *4 (S.D.N.Y. Dec. 29, 2000) (ordering bill specifying "whom [the defendant] agreed to bribe, the pension fund with which the bribe recipient was affiliated, and the amount of the bribe" but denying request for further detail; "Second Circuit authority clearly provides that a defendant is not entitled to a particularized outline of the Government's proof to be adduced at trial."); *United States v. McCarthy*, 292 F. Supp. 937, 941 (S.D.N.Y. 1968) ("the names of those who paid money to defendants").

Adams also does not find support in *United States v. Ganim*, No. 01 Cr. 263 (JBA), 2002 WL 31643045 (D. Conn. Nov. 20, 2002). He correctly quotes that case as ordering the Government

"to match each of the sixty-five benefits listed in the Government's original bill of particulars with each alleged racketeering act or other count charged in the indictment with respect to which the Government claims such benefit was allegedly provided to defendant." (Mot. 9 (quoting 2002 WL 31643045, at *1)). But the *Ganim* order required the Government to match benefits to counts and racketeering predicates—to charges, not to official acts—which was necessary because the *Ganim* indictment contained many more charges than the Indictment here. *See Ganim*, 2002 WL 31643045, at *1.[5] Thus, the supplemental bill of particulars supplied by the Government linked particular payments to multiple counts, and in no way mapped particular *quids* to particular *quos*. *See* 2002 WL 34406480. Nor can Adams claim that more was required, because in *Ganim* the Circuit rejected the defendant's claim that "the government was required to link each alleged benefit Ganim received to a specific official act he performed," not simply as a matter of pretrial notice, but as a final legal requirement for conviction. *United States v. Ganim*, 510 F.3d 134, 136-37 (2d Cir. 2007) ("We hold that the government was not required to allege or to prove that type of direct link."). It thus suffices that Adams agreed to take specific official actions in return for luxury travel provided by the Turkish Official—there is not now, and will not be at any stage of the case, any requirement that Adams and the Turkish Official kept an accounting ledger tying specific trips to particular acts. *See also, e.g.*, *United States v. Botti*, 711 F.3d 299, 305 (2d Cir. 2013) ("Where there is a stream of benefits arranged by the payor to favor a public official, the

---

[5] Of equally little support is *United States v. Aliperti*, 867 F. Supp. 142, 149 (E.D.N.Y. 1994) (cited at Mot. 8). In that case, the defendants claimed they were unable to discern the particulars of several *quid pro quo* allegations, the Government argued that the discovery provided this information, and the court ordered further briefing. 867 F. Supp. at 149. *Aliperti* thus does not represent a precedent for "ordering government to particularize payments made for official acts" (Mot. 9). And in any event, the scant detail in *Aliperti* bears no resemblance to the Indictment here. *See United States v. Issa*, No. 17 Cr. 74 (CM), 2018 WL 461131, at *3-4 (S.D.N.Y. Jan. 9, 2018) (denying bill of particulars and distinguishing *Aliperti* and *Ganim* as cases where the defendant "had to guess at the nature of the bribery scheme").

Government need not demonstrate that any specific benefit was received by the public official in exchange for a specific official act.").

Adams's request for a detailed timeline with respect to the TCO agreement is equally meritless. Adams is correct that courts have sometimes required "particularization as to the timing of bribes . . . or identification of payors" (Mot. 11) in order identify the particular acts alleged to be crimes (*see supra* at 11). But here the Indictment—not to mention the discovery, the litigation to date, and this Court's prior order—make clear the dates of improper benefits and who was behind them. And Adams has cited no case for the proposition that the specific date of a bribery agreement must be identified, which is the sort of detail routinely found inappropriate in a bill of particulars. *E.g.*, *Chen*, 378 F.3d at 163 (district court did not abuse its discretion in denying defendant a bill of particulars as to the "exact time and place of each alleged act associated with each offense identified in the indictment"). Indeed, in *Walsh* the nature of the evidence did not permit the Government to identify a day, or even month, in which any of the three charged assaults occurred. *Walsh*, 194 F.3d at 45. The Circuit nonetheless affirmed the denial of a bill of particulars (and a motion to dismiss the indictment, and a post-trial challenge to the sufficiency of the evidence), because there was sufficient clarity on the relevant legal questions, which will seldom, if ever, include the exact date on which a crime occurred. *See id.* at 45, 47, 51-52.

Here, the relevant question is not the specific date on which the agreement was reached, but whether it was "agreed to *before* an official act in order to influence the official with respect to that future official act." *Snyder v. United States*, 603 U.S. 1, 5 (2024). This Court has already found that the Indictment sufficiently alleges that. (Dkt. 68 at 26-30). Nor does the law require the false precision of speculating as to the day on which the course of dealings between Adams and the Turkish Official created an "agreement or understanding" that need have existed only in their

13

minds, and must be proven with circumstantial evidence, "because bribes are seldom accompanied by written contracts, receipts or public declarations of intentions." *United States v. Friedman*, 854 F.2d 535, 554 (2d Cir. 1988) ("This is especially true in cases involving governmental officials or political leaders, whose affairs tend more than most to be subjected to public scrutiny."). Consistent with these principles, at least one court in this District has already rejected Adams's argument that *Snyder* requires the arbitrary selection of a particular date on which a corrupt meeting of the minds materialized. *United States v. Starks*, No. 24 Cr. 126 (JLR), 2024 WL 4528169, at *5 (S.D.N.Y. Oct. 18, 2024) (denying bill of particulars where "[t]he Indictment is thus sufficiently clear that the Government is alleging the payment of bribes 'in exchange for' no-bid contacts . . . and Starks can prepare his defense accordingly.").

Adams's request for the comprehensive identification of all the other participants in his crimes (Mot. 13-17) also seeks unnecessary evidentiary detail. To start, it bears emphasizing that the Indictment identifies "more than twenty-five people pseudonymously" (Mot. 13), and Adams knows who all of them are. The Indictment anonymized those individuals because they are not charged with offenses and so should not be publicly named, not in order to hide their identity from Adams—something that would be impossible given how specifically each is described. In fact, during Adams's conferral with the Government before seeking a bill of particulars, the Government offered to identify any person in the Indictment whose name was not known to him. Adams is thus—once again—requesting information which he already possesses, and therefore cannot need to prepare for trial, but may desire to "restrict unduly the Government's ability to present its case." *Henry*, 861 F. Supp. at 1197; *see also Bellomo*, 263 F. Supp. 2d at 580 (a bill of particulars is not an appropriate tool to asking the Government to "interpret its evidence for the defendant").

More broadly, courts routinely deny requests for the identities of unindicted co-conspirators. *See, e.g.*, *Torres,* 901 F.2d at 234 (affirming district court's refusal to order bill of particulars identifying unnamed co-conspirators); *Rittweger*, 259 F. Supp. 2d at 292 (concluding, in thirteen-count, multi-defendant securities fraud case that the indictment and discovery were sufficient and "[t]here is no need to provide a list of all unindicted co-conspirators"); *United States v. Amendolara*, No. 01 Cr. 694 (DAB), 2002 WL 31368279, at *5-6 (S.D.N.Y. Oct. 21, 2002) (denying a request for the identities of all unindicted co-conspirators because "the Indictment and discovery material already provided . . . sufficiently facilitate [the defendant's] ability to avoid surprise and prepare for trial"); *United States v. Trippe*, 171 F. Supp. 2d 230, 240 (S.D.N.Y. 2001). (denying a bill of particulars seeking names of all co-conspirators and aiders and abettors in securities and mail fraud case in light of sufficiency of information contained in the Indictment and through discovery) (collecting cases). That includes in cases upon which Adams otherwise relies, and has argued resemble his own. *See, e.g.*, *United States v. Tournant*, No. 22 Cr. 276 (LTS), 2023 WL 8649893, at *6 (S.D.N.Y. Dec. 13, 2023) (denying identification of co-conspirators in bill of particulars); *Murgio*, 209 F. Supp. 3d at 721-22 (same).

Adams cites several cases in which courts ordered the identification of co-conspirators, but those cases courts turned on factors not present here, and thus cannot aid Adams. *See Payden*, 613 F. Supp. at 817 (denying bill of particulars where "defendants have not articulated any specific need for the information, but have only referred the court to other cases in which similar information has been provided"). For example, most directed the identification of unindicted co-conspirators based on the unusual diversity and breadth of the charged conspiracy. *See Lino*, 2001 WL 8356, at *13 ("The conspiracy alleged here involves a large number of defendants, is wide-ranging in terms of the nature of the predicate acts and the amount of commerce affected, and is

comprised of a number of schemes, some of which are temporally removed from the main stock manipulation scheme."); *United States v. Savin*, No. 00 CR. 45 (RWS), 2001 WL 243533, at *5 (S.D.N.Y. Mar. 7, 2001) (relying on unusual complexity of case and noting that "[c]ertainly, disclosure of this information is not warranted as a matter of routine"); *United States v. Kanekar*, 2020 WL 730353, at *6 (E.D.N.Y. Feb. 12, 2020) (unusually complex case); *United States v. Bin Laden*, 92 F. Supp. 2d 225, 242 (S.D.N.Y. 2000) (same); *United States v. Nachamie*, 91 F. Supp. 2d 565, 573 (S.D.N.Y. 2000) (same).[6] Having proclaimed this "not a complex case" which involves "simple evidence" (Dkt. 31 at 36, 54), Adams can hardly rely on cases of exceptional complexity now.[7]

Other cases cited by Adams relied on specific needs that Adams does not, and could not, claim are present here. For example, in *United States v. Pinto-Thomaz*, the defendant was alleged to have conspired with only one other person, and thus the identification of any other co-conspirator would have materially changed the case. 352 F. Supp. 3d 287, 303 (S.D.N.Y. 2018). But here the Indictment describes not only Adams's central role in the conspiracy, but that of his lieutenants, counterparties, and agents. In *United States v. Rajaratnam*, the court required the identification the specific tippers who provided inside information.  No. 09 Cr. 1184 (RJH), 2010

---

[6] *Nachamie*, in particular, was an unusually complex case, and may be the most distinguished case in this District on the subject of bills of particulars. *See, e.g.*, *United States v. Tuzman*, 301 F. Supp. 3d 430, 451-53 (S.D.N.Y. 2017) (distinguishing *Nachamie* and denying bill of particulars); *Wedd*, 2016 WL 1055737, at *4 (same); *Amendolara*, 2002 WL 31368279, at *5-*6 (same).

[7] To be sure, the Government would not call this a simple case in terms of the volume of discovery and motions practice. (*See* Dkt. 31 at 53). But "the allegations are simple and straightforward" (*id.*), and they concern a single charged defendant who sits at the center of a conspiracy to commit three related crimes. In that respect, it is not a case of exceptional complexity, but rather the sort of bribery conspiracy often charged in this District, for which bills of particulars are typically denied. *See, e.g.*, *Menendez*, No. 23 Cr. 490 (SHS), Dkt. 344 at 31-37; *United States v. Chambers*, No. 17 Cr. 396 (WHP), 2018 WL 1726239, at *2 (S.D.N.Y. Apr. 9, 2018) (citing *United States v. Mangano*, No. 16 Cr. 540 (JMA), 2018 WL 851860, at *17 (E.D.N.Y. Feb. 9, 2018)).

WL 2788168, at *5 (S.D.N.Y. July 13, 2010). That information is most analogous to identifying the briber-payors here, and as already discussed there is no ambiguity on that score in the Indictment. In *United States v. Trie*, the court relied on, among other factors, the defendant's inability to identify co-conspirators who had dealt only with his co-defendant. 21 F. Supp. 2d 7, 22 (D.D.C. 1998). But here, the Indictment identifies—as Adams states—over 25 of the most significant participants, witting and unwitting, in the scheme. Where those persons dealt with others, they are identified in the search warrant affidavits, electronic communications, and other discovery already provided to Adams. (*See, e.g.*, Ex. B at Line 378; Ex. D at 43). This case thus resembles the many others where courts "routinely deny requests for bills of particulars that disclose the identities of unnamed co-conspirators in a conspiracy where the Government has already provided extensive discovery." *United States v. Nunez*, No. 22 Cr. 293 (JPO), 2023 WL 5432513, at *5 (S.D.N.Y. Aug. 23, 2023).

Adams's request for the identity of straw donors also lacks merit. To start, the discovery is replete with information identifying them. For example, the straw donors who made the contributions discussed in paragraph 30 of the Indictment are listed, name-by-name, in a chart that recurs in multiple affidavits disclosed to Adams. (*See, e.g.*, Ex. C at 4-5). The discovery also include contribution cards or online contribution forms, financial records, and electronic communications for straw donors involved in the donations in paragraphs 28, 31 and 45, none of which are difficult to locate, because the mechanics of those donations are also described in detail in search warrant affidavits, among other easily digestible parts of discovery. The omission of the straw donors' names from the Indictment thus does mean that the "relevance of key events" will be "shrouded in mystery at the commencement of and throughout the trial." *Bortnovsky*, 820 F.2d at 575. Rather, this is a case, like many others, where some of "the information sought by

17

defendant" is not in the Indictment, but is "in some acceptable alternate form," and therefore "no bill of particulars is required." *Id.* at 574.

To be sure, Adams may wish to know which particular straw donations the Government will prove up at trial. Adams made systematic use of straw donations to fund his campaigns. For that reason, proving every straw donation would be impossible in a trial of any reasonable length, and the Government will likely instead rely on witness testimony about Adams's general practice, corroborated by proof of specific donations. Seeking a bill of particulars to confine the Government's proof of particular individuals whose names were used by other contributors thus resembles asking the Government to detail every overt act it will prove in establishing any conspiracy that repeated the same discrete crime countless times, a request that is regularly denied. *See United States v. Carroll*, 510 F.2d 507, 509 (2d Cir. 1975) ("There is no general requirement that the government disclose in a bill of particulars all the overt acts it will prove in establishing a conspiracy charge."); *United States v. Jain*, No. 19 Cr. 59 (PKC), 2019 WL 6888635, at *1 (S.D.N.Y. Dec. 18, 2019) ("As the Indictment provides sufficient detail on a number of overt acts undertaken in furtherance of the alleged conspiracy to allow defendant to prepare for trial and to prevent surprise, a bill of particular is unnecessary" on that score); *United States v. Rose*, No. 19 Cr. 789 (PGG), 2021 WL 2117119, at *16 (S.D.N.Y. May 24, 2021) ("The Government is not required to identify the 'wheres, whens, and with whoms' of a conspiracy, nor is it required to identify the evidence it intends to offer at trial.").

Moreover, in addition to the discovery's identification of straw donors, the Indictment clearly identifies the organizers of particular straw donations—which is to say the people with whom Adams and his staff dealt, and who actually caused the criminal contributions at issue. (*See, e.g.*, Dkt. 1 at ¶¶ 28, 29, 31, 45, 46). That means Adams already has the information other

defendants sought and received in the out-of-Circuit cases on which he relies. *See Trie*, 21 F. Supp. 2d at 22 (ordering disclosure of co-conspirators, not names of individuals whose names were used to make straw donations); *United States v. Hsia*, 24 F. Supp. 2d 14, 31 (D.D.C. 1998) (declining to order disclosure of all acts to be proved at trial, but ordering Government to identify which co-conspirators performed particular acts identified in indictment); *cf. United States v. Michel*, No. 19 Cr. 148 (CKK), 2019 WL 5797669, at *18 (D.D.C. Nov. 6, 2019) (finding that despite disclosing the identities of the apparently small number of straw donors, bill of particulars was necessary to identify co-conspirators with whom trial defendant was not personally connected).

Adams's request for the names of all his foreign contributors should be denied for similar reasons. The Indictment identifies specific persons who made specific agreements to contribute foreign funds to Adams's campaign on specific occasions. (*See, e.g.*, Dkt. 1 at ¶¶ 20, 25, 31, 42, 45, 46). Although in every case the ultimate sources of the foreign money cannot be identified—as for example when the Promotor bundled contributions from Turkey to donate to Adams at a secret New York fundraiser (*Id.* ¶ 45)—"the Government need not provide particulars where it has none." *Rose*, 2021 WL 2117119, at *14. The Government will prove that Adams solicited funds from foreign donors, not that he knew the name of every foreign donor his facilitators recruited. Adams's effort to confine the Government to proving an itemized list of foreign donors—or co-conspirators or straw donors—is therefore not "necessary to the preparation of his defense" or "to avoid prejudicial surprise at trial." *Torres*, 901 F.2d at 234. [8]

---

[8] Adams also asks for confirmation that the Government does not allege that one organizer of straw donations, Businessman-4, was contributing foreign funds. (Mot. 13). The Indictment does not allege that Businessman-4 made donations of foreign money—as Adams acknowledges (*id.*)—and the Indictment's failure to list all the criminal acts that it does *not* allege hardly renders it "vague" (*id.*). In any event, this sort of discrete purported uncertainty is best handled by a conferral under Local Criminal Rule 16.1: Had Adams's counsel simply asked the Government to confirm that

### C.  Adams's Supporting Arguments Lack Merit

Adams also makes three general claims, applicable to all or several of his specific requests: the discovery is too extensive; particular categories of cases call for a bill of particulars; and a bill of particulars can be granted here without hampering the Government's investigation. Each argument misdescribes the law, the facts, or both.

*First*, the volume of discovery in this case does not justify a bill of particulars (*see* Mot. 16-17), and is not out of the ordinary for a white-collar case in the era of electronic discovery. In fact, the provision of extensive discovery—at least where, as here, the discovery is well-organized and easily searched—is an affirmative reason to deny a bill of particulars. *See, e.g.*, *United States v. Ng*, No. 15 Cr. 706 (VSB), Dkt. 452 at 11 (S.D.N.Y. Apr. 26, 2017) (denying bill of particulars for official acts and the identities of co-conspirators, in light of detailed 31-page Indictment and "sufficient disclosures concerning the nature of the charged offenses by other means," including discovery and agent affidavits); *United States v. Mandell*, 710 F. Supp. 2d 368, 385 (S.D.N.Y. 2010) (denying particularization of alleged misrepresentations where indictment was 34 pages long and Government provided voluminous, organized discovery).

The cases on which Adams relies do not turn on the number of files, but rather the inability to find particular, essential facts within the discovery—a problem Adams has not shown here. *See Bortnovsky*, 820 F.2d at 574 (discovery revealed numerous similar acts, but not the small subset of those acts which the Government alleged to be fraudulent); *United States v. Ikoli*, 16 Cr. 148 (AJN), 2017 WL 396681, at *6 (S.D.N.Y. Jan. 26, 2017) (noting the amount of discovery would not suffice if defendants could not determine from that discovery which transactions were alleged

---

they were correctly reading the Indictment on this point, the Government would have simply confirmed as much, as it does now.

to be fraudulent). Thus, although an undifferentiated mass of discovery can support a bill of particulars if it "obfuscates the allegedly unlawful conduct and unfairly inhibits the defendant's preparation for trial. . . . [T]hat is not the case here." *United States v. Lemay*, 21 Cr. 573 (MKV), 2022 WL 1498961, at \*4 (S.D.N.Y. May 12, 2022) (denying bill of particulars where discovery was "extensive" but organized). Absent such concerns, "the amount of discovery is of little import" in seeking a bill of particulars; rather counsel should simply request sufficient time to review the voluminous materials. *United States v. Levy*, No. 11 Cr. 62 (PAC), 2013 WL 664712, at \*13 (S.D.N.Y. Feb. 25, 2013). Here, Adams demanded an early trial date, assuring the Court that the evidence is simple, the Government had shown its cards, and he could be prepared in a few months. That was his choice, but he cannot now complain that "the trial date [is] less than four months away" (Mot. 17), bootstrapping his strategic decision to manufacture the necessity for a bill of particulars. (*See* Dkt. 69 at 3 (this Court noting that Adams had requested the early trial date, and remains free to request a later date)).

*Second*, Adams claims that particular categories of cases—financial crimes, bribery, conspiracies of extended duration—make a bill of particulars "especially appropriate." (Mot. 13; *see also id.* at 11, 14, 15-16). "However, courts' decisions to grant bills of particulars are not predetermined by the nature of the charges filed, but dependent upon the complexity of the facts at issue and degree of disclosure already offered." *Pinto-Thomaz*, 352 F. Supp. 3d at 302. The Second Circuit affirmed the denial of a bill of particulars in the Madoff prosecution—which concerned a 16-year conspiracy charging perhaps the largest series of financial frauds in history. *Bonventre*, 646 F. App'x at 78-79. And many of the cases cited in this memo—such as *Menendez* and *Bankman-Fried*, to name two recent examples—denied motions for a bill of particulars in cases charging fraud and other white-collar crimes of similar or greater complexity to those here.

*Third*, Adams argues that a bill of particulars will not hamper the Government's investigation, in part because this case does not concern violent crimes. (Mot. 12, 17). But bills of particulars are regularly denied in white-collar cases, without any suggestion that granting them would have impaired an investigation. *See, e.g.*, *Bonventre*, 646 F. App'x at 78-79; *Starks*, 2024 WL 4528169, at *5; *Skelos*, 2015 WL 6159326, at *13. The burden is not on the Government to show that a bill of particulars would harm its investigation; rather "the defendant bears the burden of showing that 'the information sought is necessary' and that he will be prejudiced without it." *United States v. Raniere*, 384 F. Supp. 3d 282, 322 (E.D.N.Y. 2019) (quoting *United States v. Fruchter*, 104 F. Supp. 2d 289, 312 (S.D.N.Y. 2000)). Further, a principal harm courts seek to avoid in denying particularization is not compromising investigations, but constraining the proof at trial to the specifics in a bill, thereby hampering the search for truth by allowing a defendant to tailor his case to rebut an artificially limited universe of evidence. *See Henry*, 861 F. Supp. at 1197; *see also, e.g.*, *United States v. Samsonov*, No. 07 Cr. 1198 (CM), 2009 WL 176721, at *3 (S.D.N.Y. Jan. 23, 2009) ("The vehicle of a bill of particulars serves to inform a defendant of the nature of the charge, when he is otherwise insufficiently informed, and must not be misused to compel disclosure of how much the Government can prove, nor to foreclose the Government from using proof it may develop as the trial approaches.").

In any event, granting many of Adams's requests—such as his demand for the identity of every person the Government believes him to have conspired with him—*would* prejudice the ongoing investigation. Although the Indictment and discovery provide Adams with more than sufficient information as to his alleged co-conspirators and aiders and abettors, law enforcement has continued to identify additional individuals involved in Adams's conduct, and to uncover additional criminal conduct by Adams. The Indictment provides ample cause to believe that as

potential witnesses became known to Adams and his allies, measures were taken to influence their testimony. (Dkt. 1 at ¶ 49 (describing obstructive conduct, including witness tampering)). And even without a likelihood of physical violence, the threat of witness tampering further supports denial of a bill of particulars in a white-collar case. *See United States v. Shkreli*, No. 15 Cr. 637 (KAM), 2016 WL 8711065, at *6 (E.D.N.Y. Dec. 16, 2016).

## II.  The Request for Early Disclosure of Exhibits Should Be Denied

In the alternative, Adams asks that the Government be required to disclose its exhibits 60 days before trial. (Mot. 17-18). He seeks this order about three weeks after telling the Court that the Government's exhibits should be disclosed on a very different date: March 24, 2025, less than 30 days before trial. (Dkt. 64 at 3). Based on that input, which the Court had solicited, this Court issued a scheduling order, directing the mutual exchange of exhibits on March 31, 2024— one week later than Adams requested, but two weeks earlier than the Government proposed. (Dkt. 87). Adams's arbitrary change in position alone constitutes sufficient reason to reject what amounts to a motion to reconsider the Court's scheduling order.

In any event, when courts in this District exercise their inherent authority to order the early disclosure of exhibits, the overwhelming practice has been to do so several days or, at most, several weeks in advance of trial. This practice holds in complex and document-intensive cases. *See, e.g.*, *United States* v. *Freeman*, No. 18 Cr. 217 (KMW), 2019 WL 2590747, at *4 (S.D.N.Y. June 25, 2019) (in four-defendant case where "complex nature" and "large volume of documents produced by the government" justified early exhibit lists, ordering preliminary exhibit lists 30 days before trial, and rejecting defense request for earlier disclosure as "unwarranted"); *United States* v. *Mandell*, No. 09 Cr. 662 (PAC), 2011 WL 924891, at *7 (S.D.N.Y. Mar. 16, 2011) (exhibit list three weeks before trial in prosecution of 8-year-long international securities fraud scheme with

"substantial" volume of discovery).[9] Because, for all the same reasons the bill of particulars should be denied, Adams has more than enough information to prepare for trial, his belated request for an unusually early disclosure of Government exhibits should be denied.

Adams relies on decisions driven by specific circumstances, without demonstrating similar circumstances here. (*See* Mot. 18). The discovery was voluminous in *United States v. Wey,* 15 Cr. 611 (AJN), 2017 WL 237651, at *22 (S.D.N.Y. Jan. 18, 2017). But *Wey* also emphasized a specific concern, and tailored the early disclosure accordingly: "In particular, in light of the relative scarcity of specific allegedly fraudulent misstatements, omissions, and wire communications ascribed to Wey in the Indictment and the Search Warrant Affidavit, the Government shall, no later than 60 days before trial, produce and identify to Wey all documents which it intends to introduce at trial to demonstrate a misstatement, omission, or wire communication in support of the substantive securities fraud and wire fraud charges." *Id.* Adams identifies no similar concerns with the Indictment, which describes his actions in detail, and correspondingly identifies no similarly tailored remedy. *Bonventure* also turned on "the particular circumstances of the case"—and those circumstances included being perhaps the largest fraud ever charged, with numerous defendants and conduct "span[ing] decades." *United States v. Bonventre*, No. 10 Cr. 228 (LTS), 2013 WL 2303726, at *7 (S.D.N.Y. May 28, 2013); *see also, e.g.*, *United States v. Vilar*, 530 F. Supp. 2d 616, 638, 639-40 (S.D.N.Y. 2008) (ordering disclosure of exhibit list 60 days before trial, where the conduct spanned 19 years and exhibit list could facilitate litigation of complex taint issues).

---

[9] Other courts, as well, have rejected claims that the volume of discovery entitles a defendant to the identification of documents to be used at trial well in advance of the trial date. *See, e.g.*, *United States v. Richards*, 659 F.3d 527, 545 (6th Cir. 2011) (affirming denial of identification of the documents to be relied on in case in chief); *United States v. Perraud*, No. 09 Cr. 60129 (WJZ), 2010 WL 228013, at *1, *9, *12 (S.D. Fl. Jan. 14, 2010) (ordering production of exhibit list 10 days before trial where defense complained the Government had produced "over 3 million mostly irrelevant and immaterial documents").

As it has explained, the disclosures this Court has ordered are already earlier than might be required in a case of this size. (*See* Dkt. 63 2 n.2). That is not only a reason to deny Adam's request to change the date for disclosure of Government exhibits, but another reason to deny the bill of particulars: Because Adams will receive witness statements and exhibits significantly in advance of trial, he will be more than able to prepare a defense without constraining the Government's proof. *See Starks*, 2024 WL 4528169, at *6 (denying bill of particulars on these grounds) (citing *Chambers*, 2018 WL 1726239, at *2 (rejecting motion for bill of particulars where the court "will require production of Jencks Act material in advance of trial to apprise the defendant of the essential facts") and *United States v. Ma*, No. 03 CR. 734 (DAB), 2006 WL 708559, at *15 (S.D.N.Y. Mar. 21, 2006) (denying bill of particulars in light of discovery already provided and Government's assurance that it would provide defendants with 18 U.S.C. § 3500 material "sufficiently in advance of trial")); *see also United States v. Al Jaber*, 436 F. App'x 9, 12 (2d Cir. 2011) (even if denial of bill of particulars was erroneous, defendant could articulate no prejudice due to extensive pretrial disclosures).

## **CONCLUSION**

For the reasons set forth above, the motion should be denied.

Dated:    New York, New York
          January 6, 2025

                          Respectfully submitted,

                          EDWARD Y. KIM
                          Acting United States Attorney

          By:    _____/s/_____
                 Celia V. Cohen
                 Andrew Rohrbach
                 Hagan Scotten
                 Derek Wikstrom
                 Assistant United States Attorneys
                 (914) 993-1921 / (212) 637-1944 / 2410 / 1085