UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>        - against -<br><br>ERIC ADAMS,<br><br>        Defendant. | No. 24-CR-556 (DEH) |

**DEFENDANT ERIC ADAMS'S REPLY MEMORANDUM OF LAW IN SUPPORT OF
HIS MOTION FOR A BILL OF PARTICULARS**

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT .................................................................................... 1

I.     THE GOVERNMENT MISSTATES THE GOVERNING LEGAL STANDARDS IN IMPORTANT RESPECTS ................................................................................ 1

II.    THE GOVERNMENT HAS NOT PROVIDED CRITICAL INFORMATION ABOUT THE BRIBERY ALLEGATIONS .................................................................. 2

    A.  The Government Does Not Respond To Mayor Adams's Arguments ......................... 2

    B.  The Government's Arguments Lack Merit ................................................................ 6

III.   MAYOR ADAMS IS ENTITLED TO THE IDENTITIES OF UNINDICTED ALLEGED CO-CONSPIRATORS, STRAW DONORS, AND FOREIGN CONTRIBUTORS ........................................................................................................ 8

IV.   THE REQUEST FOR EARLY DISCLOSURE IS NOT A CHANGE IN POSITION ... 10

CONCLUSION .............................................................................................................. 10

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Snyder v. United States*,
603 U.S. 1 (2024)..........................................................................................................4

*United States v. Aliperti*,
867 F. Supp. 142 (E.D.N.Y. 1994) ............................................................................1

*United States v. Amendolara*,
2002 WL 31368279 (S.D.N.Y. Oct. 21, 2002) ..........................................................9

*United States v. Bortnovsky*,
820 F.2d 572 (2d Cir. 1987)......................................................................................10

*United States v. Catapano*,
2008 WL 2222013 (E.D.N.Y. May 22, 2008) ...........................................................2

*United States v. Davidoff*,
845 F.2d 1151 (2d Cir. 1988).....................................................................................2

*United States v. Grasso*,
585 F. Supp. 3d 484 (S.D.N.Y. 2022).........................................................................1

*United States v. Javice*,
223 Cr. 251 (AKH) (S.D.N.Y. 2024), ECF No. 138 ............................................1, 7

*United States v. Kanekar*,
2020 WL 730353 (E.D.N.Y. 2020).............................................................................8

*United States v. Lino*,
2001 WL 8356 (S.D.N.Y. Dec. 29, 2000) ..................................................................2

*United States v. McCarthy*,
292 F. Supp. 937 (S.D.N.Y. 1968) .........................................................................2, 5

*United States v. Mitlof*,
165 F. Supp. 2d 558 (S.D.N.Y. 2001).........................................................................1

*United States v. Murgio*,
209 F. Supp. 3d 698 (S.D.N.Y. 2016).....................................................................2, 4

*United States v. Nachamie*,
91 F. Supp. 2d 565 (S.D.N.Y. 2000).......................................................................8, 9

*United States v. Pinto-Thomaz,*
   352 F. Supp. 3d 287 (S.D.N.Y. 2018) ........................................................................8

*United States v. Rigas,*
   490 F.3d 208 (2d Cir. 2007) ......................................................................................1

*United States v. Shkreli,*
   2016 WL 8711065 (E.D.N.Y. Dec. 16, 2016) ...........................................................8

*United States v. Siddiqi,*
   2007 WL 549420 (S.D.N.Y. Feb. 21, 2007) .............................................................3

*United States v. Tournant,*
   2023 WL 8649893 (S.D.N.Y. Dec. 13, 2023) .......................................................6, 9

*United States v. Trie,*
   21 F. Supp. 2d 7 (D.D.C. 1998) ..........................................................................1, 10

*United States v. Wang,*
   2024 WL 1251105 (S.D.N.Y. Mar. 22, 2024) ..........................................................6

## **Rule**

Fed. R. Crim. P. 7(c)(1) ...................................................................................................1

## PRELIMINARY STATEMENT

In opposing Mayor Adams's motion for a bill of particulars, the government has done little more than recycle boilerplate arguments without addressing the specific reasons that its obfuscation has impeded Mayor Adams's ability to present a meaningful defense.

## I.    THE GOVERNMENT MISSTATES THE GOVERNING LEGAL STANDARDS IN IMPORTANT RESPECTS

As a threshold matter, much of the government's argument rests on a basic misunderstanding of the law.  The government seems to believe if the indictment is sufficient to apprise a criminal defendant of the charged offenses, as this Court held with respect to the bribery count, then a bill of particulars is not warranted.  *See* Opp. 1, 3, 9.  But that is not correct.  The Second Circuit has held that "[a]n indictment that fulfills the requirements of Federal Rule of Criminal Procedure 7(c)(1) but is nonetheless insufficient to permit the preparation of an adequate defense may be supplemented with a bill of particulars."  *United States v. Rigas*, 490 F.3d 208, 237 (2d Cir. 2007) (internal quotation omitted).  That is why courts often grant an alternative motion for a bill of particulars after denying a motion to dismiss an indictment.[1]

Aside from that foundational error, throughout its brief, the government erroneously portrays case-specific holdings as uniform principles.  For example, it suggests on page 10 that "wheres, whens and with whoms" are "beyond the scope of a bill of particulars," citing a case not involving bribery.  Opp. 10 (quoting *United States v. Mitlof*, 165 F. Supp. 2d 558, 569 (S.D.N.Y. 2001)).  But that cannot be correct as a general principle, since the government concedes two pages later that courts often require the government to disclose the dates, times, and counterparties for

---

[1]    *United States v. Javice*, 23 Cr. 251 (AKH), ECF No. 138, at 10-18; *United States v. Grasso*, 585 F. Supp. 3d 484, 490 (S.D.N.Y. 2022); *United States v. Trie*, 21 F. Supp. 2d 7, 16, 22-23 (D.D.C. 1998); *see also United States v. Aliperti*, 867 F. Supp. 142, 149 (E.D.N.Y. 1994) (denying motion to dismiss but holding that "Defendants are entitled to some particularization").

alleged bribes.  Opp. 11, 13.[2]  And the government makes erroneous blanket assertions—like the claim that the motion for a bill of particulars in the *Menendez* prosecution is "materially identical" to the instant motion, Opp. 10, even though Mayor Adams has raised a series of case-specific problems that depend on the language of the indictment here.

## II.    THE GOVERNMENT HAS NOT PROVIDED CRITICAL INFORMATION ABOUT THE BRIBERY ALLEGATIONS

### A.    The Government Does Not Respond To Mayor Adams's Arguments

The motion explains in specific terms why the information provided to date does not allow Mayor Adams to prepare an adequate defense, and the government offers almost no response. Indeed, although the government claims that the answers can be found in the indictment, the ten million documents that it has provided in discovery, or its "extensive written or oral advocacy defending the bribery count," Opp. 8, if that were true the government would simply disclose the answers.  Moreover, the government's few substantive arguments bear almost no relation to the specific information that Mayor Adams has requested.  The government's central claim is that Mayor Adams seeks "one-to-one mapping" that "match[es] *quids* and *quos*," Opp. 11, but the motion does not seek that kind of matching, and the government articulates no serious objection to the information that the motion *does* seek:

***Specific Acts.***  The motion first seeks "[t]he specific acts that Mayor Adams agreed to do besides allegedly assist with the TCO matter."  Mot. 4.  The government *admits* that precedent requires the "identification of . . . official actions where . . . the indictment failed to provide that

---

    [2]  The government's own parentheticals are readily replaceable with the "five 'W's.'"  *See United States v. Davidoff*, 845 F.2d 1151,1154 (2d Cir. 1988) (who); *United States v. Murgio*, 209 F. Supp. 3d 698, 720, 723 (S.D.N.Y. 2016) (when, where, what); *United States v. Catapano*, 2008 WL 2222013, at *30 (E.D.N.Y. May 22, 2008) (what); *United States v. Lino*, 2001 WL 8356, at *4 (S.D.N.Y. Dec. 29, 2000) (who, how, what); *United States v. McCarthy*, 292 F. Supp. 937, 941 (S.D.N.Y. 1968) (who).

information." Opp. 11; *id.* ("which official acts were motivated by bribes"); *see, e.g.*, *United States v. Siddiqi*, 2007 WL 549420, at *3 (S.D.N.Y. Feb. 21, 2007). It is thus entirely unclear on what basis the government objects to providing this information.

As the motion explained, Mayor Adams has a pressing need for this information to prepare his defense. The indictment does not explain what it means by an agreement to assist in the "regulation" of Turkish House—which the Court itself called "a somewhat general concept." Mot. 5. Indeed, another part of the indictment says that the agreement pertained to the "operation" of Turkish House—a word with that does not mean the same thing as "regulation." Indictment ¶ 36. Each term could encompass such a wide range of conduct that it leaves Mayor Adams at sea as to what conduct the government thinks was the product of an illegal agreement. For example, if the government intends to elicit testimony that Mayor Adams agreed to perform some official act other than the TCO assistance, Mayor Adams's counsel must be prepared to cross-examine the witness about that topic. If the government's contention really is that Mayor Adams merely agreed to assist with the "regulation" or "operation" of the Turkish House in exchange for travel benefits—however implausible such a vague agreement—it should state that directly.

***Benefits.*** The motion also asks for "the benefits that [Mayor Adams] agreed to accept in exchange for these specific acts." Mot. 4. That doesn't seek one-to-one matching, but just an identification of which payments the government claims were bribes for *some* official act. Here again, the government *admits* that it must provide the defense with the "identification of improper payments." Opp. 11; *id.* ("which payments were bribes"). Its refusal to do so is inexplicable.

Mayor Adams has clearly explained his need for this information in preparing his defense. The indictment alleges that Mayor Adams agreed to receive benefits in 2016 and 2017, before the Turkish House had broken ground. Mot. 6. It is entirely unclear what relevance the government

3

attributes to those purported benefits—and the government couldn't coherently answer that question at argument. Nov. 1, 2024 Hr'g Tr. 26. In addition, with respect to the TCO matter, the only payments that the indictment describes either occurred before the TCO matter had arisen or after Mayor Adams's alleged intervention with the FDNY, so it is not apparent which payments were supposedly encompassed by that agreement.

*Timing of Agreements.* The motion next seeks "the timing of the agreements." Mot. 4. Contrary to the government's characterization, Mayor Adams is not seeking the "exact time and place of each *alleged act* associated with each offense identified in the indictment." Opp. 13 (emphasis added) (quotation omitted). Rather, he is seeking the timing of the *agreements* alleged in the indictment. The government admits that precedent requires that it disclose the "*dates*, locations, and amounts of any bribe." Opp. 11 (emphasis added) (quoting *Murgio*, 209 F. Supp. at 720, 723); *see id.* at 13. But it seems to draw a distinction between the timing of the "agreement" and the timing of the "bribe." Opp. 13. That makes no sense. The agreement is what that renders any later payment inculpatory. *See Snyder v. United States*, 603 U.S. 1, 19 (2024).

Mayor Adams's need for this information is obvious: the indictment is confusing and internally inconsistent on the timing of the agreements, with the Court politely describing the TCO allegations as "not perfectly clear as to the timeline." MTD Op. & Order 29 n.12; *see* Mot. 9-11.[3] The government argues that the only "relevant question" is whether the agreement was reached

_____

[3]    The government offers a tortured comparison of its TCO allegation to an engagement agreement in which attorneys "agreed both to defend [a client] against the charges" and "as part of that defense, agreed to represent him at trial." Opp. 9 n.4. But of course in the real world, there would likely be only one agreement, the terms of which would encompass the trial. If the government's claim is that the only agreement here was the general agreement about the "regulation" or "operation" of the Turkish House, and that Mayor Adams intervened on the TCO matter in furtherance of that agreement, it should say so directly. But it cannot continue to maintain that there was a separate agreement about the TCO matter without disclosing its basic timing and terms.

before the official act, citing *Snyder*.  Opp. 13-14.  While that is a requirement for legal sufficiency, a criminal defendant needs more than that to prepare an adequate defense.  Defense counsel needs some sense of what correspondence, conversation, or course of conduct the government thinks created an illicit agreement.  And if the government's position is that an agreement was reached implicitly at some point over a reasonably defined period of time, *see* Opp. 13-14, it should make that clear.  But leaving Mayor Adams to guess at what point in a *five-year* window the government alleges the agreements were formed does not permit him to prepare an adequate defense.

*Counterparties.*  The motion requests "the counterparties to the agreements besides the Turkish Official and the Airline Manager."  Mot. 4.  The indictment is internally inconsistent as to whether the Turkish Official was the only counterparty to the alleged agreements.  Mot. 7.  The government just reinforces that problem in its response, stating vaguely that "[t]he indictment leaves no doubt that the Turkish Official was the counterparty with respect to the improper agreements regarding the Turkish House"—without clarifying whether it contends that there were other counterparties.  Opp. 10.  Yet again, the government concedes that precedent requires disclosure of "the names of those who paid money to defendants."  Opp. 11 (quoting *United States v. McCarthy*, 292 F. Supp. 937, 941 (S.D.N.Y. 1968)).

*Form of Agreements.*  The motion requests the government's allegation about "how the agreements were formed, even if implicitly."  Mot. 4.  The government does not dispute—because it cannot—that understanding whether the government claims an express written or oral argument, or just an implicit agreement from conduct, is vital to preparing a defense.

*Invoked Positions.*  Finally, the motion seeks "Mayor Adams's official position as relevant to the agreements."  Mot. 5.  The government responds that Mayor Adams knew "what City positions he held on what dates."  Opp. 10.  But that does not address Mayor Adams's concern

that the government may be claiming that he invoked a candidacy or an anticipated future position, *i.e.*, Mayor, in entering into the supposed agreements. *See* Mot. 7.

### B.    The Government's Arguments Lack Merit

The government offers a series of justifications for refusing to answer these basic questions, but they lack merit.

*First*, throughout its brief, the government emphasizes the length of the indictment. Opp. 1, 5, 6, 8. But it is well-settled that "[t]he length of the indictment is not dispositive if the defendant is still left with an insufficient understanding of the parameters of the scheme with which she is charged." *United States v. Wang*, 2024 WL 1251105, at *3 (S.D.N.Y. Mar. 22, 2024) (ordering partial particularization of forty-nine page indictment); *United States v. Tournant*, 2023 WL 8649893, at *3 (S.D.N.Y. Dec. 13, 2023) (ordering partial particularization of forty-eight page indictment). As explained in Section II.A, *supra*, the portion of the indictment covering Count V is internally inconsistent and lacks critical information.

*Second*, the government claims that Mayor Adams's prior arguments made a number of admissions relevant here, but its citations show nothing of the sort. For example, the government states that in moving to dismiss Count V, Mayor Adams "made no claim that the Indictment failed to adequately inform him of the charges." Opp. 1-2, 8-19. But that is not the legal standard for a bill of particulars. *See* Section I, *supra*. And at any rate, it is incorrect. Mayor Adams's motion relied on the principle that "[a]n indictment must do more than simply repeat the language of the criminal statute . . . —it must descend to particulars"; that the allegation about the "regulation" of Turkish House was "too broad and vague" to state a criminal offense; and that "nowhere does the indictment allege that the Mayor agreed to take action on the permit matter (or any specific matter) in exchange for benefits." ECF No. 14, at 5, 13, 14. The reply brief likewise argued that the indictment violated the "generally applicable rule . . . that the indictment may use the language of

the statute, but that language must be supplemented with enough detail to apprise the accused of the particular offense with which he is charged."  ECF No. 41, at 1 (internal quotations omitted).

Even more egregious is the government's claim that at the argument on the motion to dismiss, Mayor Adams's counsel "described the Government as having 'shown their cards' on the bribery theory."  Opp. 2 (quoting Nov. 1, 2024 Hr'g Tr. 4); *see* Opp. 6, 21.  That comment was addressed solely to the allegation that Mayor Adams pressured the FDNY to issue the TCO. Nov. 1, 2024 Hr'g Tr. 4 ("They have alleged a pressure theory, but they have shown their cards. They have shown the three messages that supposedly amounted to pressure and they don't satisfy that.").  Mayor Adams's request for a bill of particulars does not seek any information pertaining to that topic.  In the same vein, the government claims that Mayor Adams's counsel conceded that this is not complex case.  Opp. 1, 16.  Those comments, made at an initial hearing on October 2, 2024, related to the straw-donation allegations, because Mayor Adams's position was that the bribery count failed to state an offense.  Nov. 1, 2024 Hr'g Tr. 60. They were also made before the government produced *ten million* documents.  But more importantly, the government itself has steadfastly maintained that this case *is* complex, and it convinced the Court to so hold.  Oct. 2, 2024 Hr'g Tr. 53-56.

*Third*, the government points to the volume of discovery that it has provided.  Opp. 7-8. That discovery, however, does not answer the questions presented above—and the government does not even claim that it does.  The government admits that "the inability to find particular, essential facts within the discovery" supports a bill of particulars.  Opp. 20.  That is precisely the case here.  *United States v. Javice*, 23 Cr. 251 (AKH), ECF No. 122 (opposing motion for bill of particulars with appeal to provision of loadable files and index); May 30, 2024 Hr'g Tr. 10-18, *Javice*, ECF No. 138 (ordering bill of particulars).

*Fourth*, the government claims that a bill of particulars would unduly constrain its proof at trial. Opp. 10, 11, 14, 18, 19, 22. It is hard to know what to make of this argument. The information that Mayor Adams seeks comprises the basic components of the charged offenses—what Mayor Adams agreed to do in exchange for benefits, whom he reached an agreement with, and so on. If the government can't answer those questions, it should not have sought an indictment.

*Finally*, the government outrageously suggests that Mayor Adams will engage in obstruction of justice if he receives the requested information, stating vaguely (with a healthy dose of the passive voice) that "measures were taken to influence [witnesses' testimony]." Opp. 22-23.[4] The government cites no evidence for this claim. And the argument makes no sense: How could disclosing whether the government alleges *quos* beyond the TCO matter, for example, lead to witness intimidation? The government doesn't say, because it's not a real concern.

## III. MAYOR ADAMS IS ENTITLED TO THE IDENTITIES OF UNINDICTED ALLEGED CO-CONSPIRATORS, STRAW DONORS, AND FOREIGN CONTRIBUTORS

Contrary to the government's suggestion, requests for disclosure of co-conspirators are common and often granted. *United States v. Pinto-Thomaz*, 352 F. Supp. 3d 287, 303 (S.D.N.Y. 2018); *United States v. Nachamie*, 91 F. Supp. 2d 565, 573-74 (S.D.N.Y. 2000); *see also United States v. Kanekar*, 2020 WL 730353, at *6 (E.D.N.Y. 2020). A defendant often cannot prepare an adequate defense to a claim of concerted illegal activity without knowing whom the government thinks the confederates were. Here, all of the *Nachamie* factors—especially "the number of co-conspirators," "the duration and breadth of the alleged conspiracy," and "whether the government

---

[4] The government cites a case that bears no resemblance to this one. *See United States v. Shkreli*, 2016 WL 8711065, at *6 (E.D.N.Y. Dec. 16, 2016) (citing *S.E.C. v. Shkreli*, No. 15 Cr. 7175, at 14 (E.D.N.Y. Feb. 18, 2016), ECF No. 26, at 12-16 (defendant stating in public interview, "Did you see that thing where I threatened that dude and his [expletive] kids, right?")).

otherwise has provided adequate notice of the particulars"—favor disclosure. *Nachamie*, 91 F. Supp. 2d at 572-73. The government's counterarguments are meritless.

*First*, the government notes that in cases where courts have granted similar disclosure requests, the defendant had a specific need for the information that is not present here. Opp. 16-17. Fair enough; every case is different. But the need for the disclosure here is obvious and overwhelming: Mayor Adams regularly interacts with hundreds (if not thousands) of people involved with fundraising, political support, and community outreach. Because he did not in fact engage in any unlawful activity with anyone—as must be presumed—Mayor Adams has no idea which of these people the government imagines were co-conspirators or otherwise involved in the charged offenses. Critically, the government refuses to say that the co-conspirators are limited to those described in the indictment or even identify which persons in the indictment it deems co-conspirators (seemingly an easy thing to disclose).

*Second*, the government notes that sometimes courts have denied similar disclosure requests, often in circumstances very different than here, such as where the government alleged that there were only "three unindicted coconspirators," *United States v. Amendolara*, 2002 WL 31368279, at *6 (S.D.N.Y. Oct. 21, 2002); or where the "Government provided significant disclosures that go to the identity of the co-conspirators," *Tournant*, 2023 WL 8649893, at *6 (S.D.N.Y. Dec. 13, 2023). While it is fair to say that courts have not been perfectly consistent in when to grant these requests, the weight of authority supports granting the request when, as here, the government alleges numerous co-conspirators. *Nachamie*, 91 F. Supp. 2d at 573-74.

*Third*, the government argues that Mayor Adams does not need names of the alleged straw donors because he can ascertain them from discovery. Opp. 17-18. But the motion explains how the indictment's use of "at least" renders indeterminate the number of straw donors. Mot. 15. The

government offers no real response, stating only that *some* of the alleged donors are identifiable.[5]

*Finally*, in response to Mayor Adams's request for the identity of foreign donors, the government presents only a *non-sequitur*: that it doesn't know the names of *all* the foreign donors and that it does not need to prove that Mayor Adams knew their names.  Opp. 19.  So what?  The government should disclose the names it *does* know.

## IV.    THE REQUEST FOR EARLY DISCLOSURE IS NOT A CHANGE IN POSITION

The early disclosure of pretrial exhibits is an alternative for ensuring that "[t]he relevance of key events" will not be "shrouded in mystery at the commencement of and throughout the trial," *United States v. Bortnovsky*, 820 F.2d 572, 575 (2d Cir. 1987).  *See* Mot. 17-18; *see also United States v. Trie*, 21 F. Supp. 2d 7, 21 (D.D.C. 1998) (observing, in campaign-finance fraud case, that "[a] defendant . . . should not have to waste precious pre-trial preparation time guessing which statements he has to defend against or which contributors may be witnesses against him at trial").  The government's exhibits will presumably disclose—finally—the timing and circumstances of the alleged bribery agreements and the allegedly unlawful donations.  The government accuses Mayor Adams of changing positions regarding the pretrial schedule.  But Mayor Adams seeks early disclosure of the government's trial exhibits only in the alternative to particularization.

## CONCLUSION

For the foregoing reasons and those stated in the motion, Mayor Adams requests that this Court grant his motion for a bill of particulars.

---

[5]    The government certifies that the only "organizers" of the straw donations are those "clearly identifie[d]" in the indictment.  Opp. 18-19.  The government should be bound by that representation at trial.

Date:  January 13, 2025

Respectfully submitted,

QUINN EMANUEL URQUHART
& SULLIVAN, LLP

By:  */s/ Alex Spiro*

Alex Spiro
295 Fifth Ave.
New York, NY 10016
(212) 849-7000

William A. Burck
John F. Bash (*admitted pro hac vice*)
Avi Perry
1300 I Street NW, 9th Floor
Washington, D.C. 20005
(202) 538-8000

*Attorneys for Mayor Eric Adams*