**quinn emanuel** trial lawyers | new york

295 Fifth Avenue, New York, New York 10016 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7364**

WRITER'S EMAIL ADDRESS
alexspiro@quinnemanuel.com

January 18, 2025

**VIA ECF**

The Honorable Dale E. Ho
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, Courtroom 905
New York, New York 10007

Re:     <u>United States v. Adams</u>, No. 24 Cr. 556 (DEH)

Dear Judge Ho:

On Thursday, the former United States Attorney who secured the indictment in this case, Damian Williams, effectively announced his intent to challenge Mayor Adams in the political arena.  *See* Damian Williams, *An Indictment of the Sad State of New York Government*, City & State (Jan. 16, 2025), https://www.cityandstateny.com/opinion/2025/01/opinion-indictment-sad-state-new-york-government/402235/.  In an op-ed, Mr. Williams decried that "America's most vital city is being led with a broken ethical compass"; claimed that "without elected officials willing to disrupt the status quo, progress has been nonexistent"; alleged that campaign finance practices "reek[] of pay-to-play corruption . . . offensive to most New Yorkers"; and asserted that "[t]he ability to raise obscene sums of money for a campaign is precisely the wrong bottleneck to elected office."  *Id.*



> The public reporting alone paints a picture of New York City in deep crisis. ==America's most vital city is being led with a broken ethical compass.== All this while New Yorkers deal with a declining quality of life – high housing costs, a too-often-unsafe subway and a general sense of disorder.

\*   \*   \*

> For years, reformers have proposed commonsense, structural solutions for returning power to the people and making government more effective. But ==without elected officials willing to disrupt the status quo, progress has been nonexistent==. That needs to change.

\*   \*   \*

> Take campaign finance. At a bare minimum, no politician should be permitted to raise money from individuals or entities with business before the state. ==It reeks of pay-to-play corruption and is offensive to most New Yorkers.== And yet the practice has persisted for generations, fattening the coffers of elected officials while feeding the justifiable perception that politicians – and the taxpayer funds they control – are for sale. We also need to establish a truly transformative public financing system for state elections to minimize the toxic influence of special interest money. (The state's new matching funds program is woefully inadequate, a fig leaf meant to resemble reform without actually achieving much of it.) The goal should be empowering anyone with good ideas and leadership chops – teachers, nurses, veterans, homemakers and young people – to run for office, regardless of their access to donors. ==The ability to raise obscene sums of money for a campaign is precisely the wrong bottleneck to elected office.==

The op-ed, which mirrors Mr. Williams's earlier inflammatory remarks at a press conference announcing the indictment, is a patent violation of this Court's recent order directing "the Government, and all local and federal law enforcement agents . . . ***who have assisted*** with this case or the related investigation[,]" to comply with Local Criminal Rule 23.1. ECF No. 93, at 2 (emphasis added). That rule prohibits "a lawyer participating in or associated with the investigation" from engaging in extrajudicial commentary that would interfere with a fair trial, including with respect to "the character or reputation of" the defendant. Local Crim. Rule P. 23.1(b), (d)(1). Such comments "presumptively involve a substantial likelihood that their public dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice." *Id.* 23.1(d). Mr. Williams led this prosecution until he stepped down as U.S. Attorney, so he plainly still qualifies as a lawyer "who ha[s] assisted with this case" bound by these basic ethical guardrails designed to protect the judicial process. The New York Rules of Professional Conduct—which are also enforceable by this Court—similarly restrict trial publicity by "[a] lawyer who is participating in or ***has participated*** in a criminal" matter such as Mr. Williams. N.Y. Rules Pro. Conduct 3.6(a) (emphasis added); *see* Local Civ. Rule 1.5(b)(5); Local Crim. Rule 1.1(b) (incorporating Local Civil Rule 1.5 into criminal rules).

2

But the ethical misconduct likely runs even deeper here. The op-ed all but announces that Mr. Williams is planning to run against Mayor Adams or otherwise seek a high-profile elected office. Indeed, the domain <damianwilliamsofficial.com> was registered on December 26, 2024. That website links to articles with the headlines, "U.S. Attorney Damian Williams Has Come for the Kings" and "A Mayor, a Rapper, a Senator, a Billionaire: Meet the Man Who Has Prosecuted Them All," among others, that disparage Mayor Adams.





Media outlets already have reported on Mr. Williams's new website, observing "[t]he federal prosecutor who indicted Adams now looks like somebody who wants to run for office himself." *City Hall: The Latest*, Politico (Jan. 17, 2025), https://tinyurl.com/Politico-City-Hall-The-Latest. Indeed, on "his campaign-ready personal website, DamianWilliamsOfficial.com . . . the only thing missing is an office and an election year." *Id.*

The conclusion here is inevitable. Mr. Williams brought a meritless case against a political rival to bolster his own immediate candidacy for office, potentially including Mayor of New York City. Not only is this conduct highly unethical, but it confirms this U.S. Attorney's office's strategy of prejudicing the jury pool and should be considered by the Court when ruling on Mayor Adams's *Renewed Motion for an Evidentiary Hearing and for Sanctions Including Dismissal*, ECF No. 82.[1] Mr. Williams's statements and promotion of press coverage that tarnishes Mayor Adams

---

[1] Notably, in the government's declaration opposing Mayor Adams's initial request for an evidentiary hearing, Damian Williams was ***not*** one of the government attorneys who denied leaking grand jury matters to the media. *See* ECF No. 38-2. The absence of a denial from Mr. Williams was conspicuous then, given that he led this prosecution; it is even more so now.

3

are especially prejudicial because the jury pool may conclude that Mr. Williams is basing his statements on information that is available only to the U.S. Attorney's office.

It would be unprecedented in modern prosecutorial history for a U.S. Attorney to indict a political opponent, resign, and then challenge that opponent for office while the case remains pending. The taint on the jury pool is irrevocable. Mr. Williams—with all the prestige of a former government official and with the influence of someone who had insider information into the prosecution of Mayor Adams—has smeared Mayor Adams's reputation (and the impartiality of the jury pool) for his own political benefit. Even if Mr. Williams were to decide to ultimately not run for office, the fact that he used unproven allegations of corruption in this case to justify his own potential candidacy interferes with the election and gives ammunition to Mayor Adams's opponents. Indeed, Mr. Williams appears committed to building his brand no matter the cost to the Mayor's Due Process rights.

Mr. Williams's ethical obligations did not disappear when he resigned as U.S. Attorney. *See, e.g.*, N.Y. Rules Pro. Conduct 1.9. His conduct is impermissible and this Court should not let it stand. In addition, the appropriate components of the Department of Justice should open an investigation into whether this prosecution was brought for improper purposes.

Respectfully submitted,

Alex Spiro