**quinn emanuel** trial lawyers | new york

295 5th Avenue, New York, New York 10016-7103 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7364**

WRITER'S EMAIL ADDRESS
**alexspiro@quinnemanuel.com**

January 26, 2025

<u>VIA ECF</u>

The Honorable Dale E. Ho
United States District Judge
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, Room 905
New York, New York 10007

Re:   <u>United States v. Adams</u>, No. 24 Cr 556 (DEH)

Dear Judge Ho:

   I write on behalf of Mayor Eric Adams and in regards to recent developments that are relevant to this Court's consideration of his pending motion for a bill of particulars.  ECF No. 73.

   As the Court is aware, the government previously represented to the Court (and the Court thereafter ordered) that the government would complete all Rule 16 productions by December 4, 2024.  Yet, on January 17, the government informed the defense that its "next discovery production" was available for pickup.  This new Rule 16 production alone contains *millions* of new files, adding to the more than 10 million documents the government had previously produced.[1]  It also does not appear to have been the government's final Rule 16 production, given that it was described simply as the "next" production.  The government's belated and ongoing production of voluminous Rule 16 materials—which apparently will be continuing—further amplifies the concerns that underlie Mayor Adams's request for a bill of particulars.  *See United States v. Rajaratnam*, 2010 WL 2788168, at *2 (S.D.N.Y. July 13, 2010) (noting "the potential for unfair

---

[1]   The bulk of the new files in the most recent production appear to be pen register and cell phone location data.  The production also contains a full Yahoo account extraction, FBI case file materials, search warrants, records received from another individual, and other categories of information.  Especially concerning is the fact that the production also contains clear *Brady* information from witness interviews, some of which occurred in 2023.  This belated production violates the Rule 5(f) order that the government must produce *Brady* material "promptly after its existence becomes known to the government."  ECF No. 25 at 1.

quinn emanuel urquhart & sullivan, llp

ABU DHABI | ATLANTA | AUSTIN | BEIJING | BERLIN | BOSTON | BRUSSELS | CHICAGO | DALLAS | DOHA | HAMBURG | HONG KONG | HOUSTON | LONDON | LOS ANGELES | MANNHEIM | MIAMI | MUNICH | NEUILLY-LA DEFENSE | NEW YORK | PARIS | PERTH | RIYADH | SALT LAKE CITY | SAN FRANCISCO | SEATTLE | SHANGHAI | SILICON VALLEY | SINGAPORE | STUTTGART | SYDNEY | TOKYO | WASHINGTON, DC | WILMINGTON | ZURICH

surprise and the difficulty of preparing a defense are amplified" in complex cases where charges "depend heavily on the facts and context").

A huge amount of this documentary discovery has no apparent relevance to this case or to Mayor Adams. And nowhere in the millions of produced documents does there appear to be any evidence whatsoever that Mayor Adams committed any crime. None. To the contrary, though unsurprisingly, the documentary record contains extensive exculpatory information, as do all of the more than 30 witness statements that the government has produced so far. Yet, the government continues to make specious claims in public court filings about Mayor Adams and the purported "evidence" against him. In its most recent letter to the Court, the government referenced purported "concrete evidence that Adams had accepted illegal campaign contributions" and otherwise accused Mayor Adams of trying to distract "from the evidence of his guilt" and "[t]he evidence of [his] crimes" by raising concerns about the former United States Attorney's public self-promotion.[2] ECF No. 102.

In light of these recent government statements, and after receiving the government's untimely additional production, Mayor Adams again asked the government to identify with specificity the supposed evidence that the government continues to publicly tout. On January 25, the government responded that "[w]e refer you, without intending any limitation, to the Government's discovery productions and the indices accompanying those productions," a complete non-response and a further illustration of why a bill of particulars is necessary. *See United States v. Ikoli*, 2017 WL 396681, at *5 (S.D.N.Y. Jan. 26, 2017) ("[T]he Government cannot meet its burden by dumping voluminous discovery upon the defendant[] without any sort of guidance."). Absurdly, the government's response also referred Mayor Adams to the indictment, as well as the government's characterizations of its case in the initial hearing before Your Honor and its oppositions to Mayor Adams's motions to dismiss and for a bill of particulars. Of course, neither the government's indictment nor its advocacy on behalf of its own case constitute evidence, which makes clear the government's intent is to continue to obfuscate and avoid meaningful disclosure to the defense for as long as it can.

The Court should not permit the government to continue to frustrate Mayor Adams's defense through a combination of vague allegations and ongoing document dumping, all while loudly proclaiming at every chance it gets the supposed strength of "the evidence." A bill of

---

[2] The government's misleading claim about the timing of discovery and level of proof is not its only misleading claim to this Court. In its recent letter, the government also tried to rebut Mayor Adams's (and many others') concerns that this prosecution is improperly motivated. The government harps on the idea that an "investigation" into Mayor Adams began in 2021 (ECF No. 102 at 2), yet that ignores the reality that nearly every mayor of this city (as well as countless other prominent political figures) has been at one time or another the subject of some form of governmental probe or investigation while holding political office. If the government thought there was "concrete evidence" that Mayor Adams had committed crimes as of 2021, it begs the question why it took the government two more years to actually secure search warrants and begin approaching supposed key witnesses. Beginning in 2023, under the direction of Damian Williams, those investigative steps were taken and intentionally splashed all over the media. The timing and facts speak for themselves.

particulars is the appropriate remedy here, as it will help mitigate "the potential for unfair surprise and the difficulty of preparing a defense" to this misguided prosecution that spans years, continents, and scores of individuals whom the government might try to label as Mayor Adams's supposed co-conspirators. *Rajaratnam*, 2010 WL 2788168, at *2.

Respectfully submitted,

*/s/ Alex Spiro*

Alex Spiro