# The Law Office of Nathaniel H. Akerman

45 Rockefeller Plaza, New York, New York 10111| 917-848-3793 | nick@nickakermanlaw.com

**February 17, 2025**

**VIA ECF**
The Honorable Dale E. Ho
United States District Court Judge
The Southern District of New York
40 Foley Square
New York, New York 10007

Re: Letter Motion to Appear as Amicus Curiae on Government's Motion to Dismiss *U.S. v. Eric Adams* 24 Cr. 556

Dear Judge Ho:

## I. Preliminary Statement

I am a member of the bar of this Court. I formerly served as an Assistant U.S. Attorney for the Southern District of New York and am a member of the New York State Board of Directors of Common Cause.

This is submitted as a letter motion to be heard as an amicus curiae[1] on behalf of Common Cause[2] in opposition to the Department of Justice's ("DOJ") F. R. Crim. P., Rule 48(a) motion to dismiss without prejudice the prosecution captioned, U.S. v. Adams, 24 Cr. 556.

Rule 48(a) provides, in pertinent part, that "[t]he government may, with leave of court, dismiss an indictment." The U.S. Supreme Court has recognized that the phrase "with leave of court" means the district court is empowered "to deny a Government dismissal motion to which the defendant has consented if the motion is prompted by considerations clearly contrary to the public interest." *Rinaldi v. United States*, 434 U.S 22, 29, n.15 (1977); *U.S. v. Flynn*, 507 F. Supp.3d 116, 128 (D.C. 2020) ("the Court made it 'manifestly clear that [it] intended to clothe the federal courts with a discretion broad enough to protect the public interest in the fair administration of criminal justice'").

---

[1] *See, U.S. v. Flynn*, 507 F. Supp.3d 116, 124 (D.C. 2020) where the court in similar circumstances "appointed . . . [a private attorney] as amicus curiae to present arguments in opposition to the government's Rule 48(a) motion" where there was no party to argue against the government's position.

[2] Common Cause is a nonpartisan organization dedicated to protecting the integrity of U.S. election processes and making government at all levels more representative, open, and responsive to the interests of ordinary people. To that end, Common Cause routinely disseminates updates and news on current events relevant to its mission to its 1.2 million members who reside in all 50 states and in every congressional district.

First, there is overwhelming evidence from DOJ's own internal documents showing that the dismissal of the Adams indictment is not in the public interest and is part of a corrupt *quid pro quo* between Mayor Adams and the Trump administration. These internal documents show that in return for DOJ's dismissal of the indictment, Mr. Adams agreed to improperly assist the Trump administration in its immigration enforcement priorities.

A dismissal "without prejudice" is simply a sword of Damocles hanging over Adams, permitting the indictment to be re-filed at DOJ's discretion, to ensure Mr. Adams follows the administration's marching orders. Indeed, DOJ admitted in internal documents that this dismissal motion is not based on the proper grounds of innocence or lack of evidence.

Second, the motion to dismiss should be denied on the basis of the bad faith reflected by the inconsistent and threatening statements made by the Acting Deputy Attorney General to the Acting U.S. Attorney for the Southern District of New York after she refused his directive to dismiss the indictment.

## II.    DOJ's Motion to Dismiss Is Part of a Corrupt *Quid Pro Quo* Bargain

**Exhibit A** annexed to this letter is a February 10, 2025, DOJ memo from Acting Deputy Attorney General Emil Bove, Trump's former criminal defense lawyer, to Danielle R. Sassoon, the Acting U.S. Attorney for the Southern District of New York, directing her to dismiss the Adams indictment. That memo, outlining the reasons for the dismissal, conclusively shows the corrupt bargain between the Trump administration and Mr. Adams. Some of the same rationales for dismissal are repeated in the motion to dismiss before this Court.

Remarkably, nowhere in the memo or in the motion before this Court does DOJ claim that Mr. Adams is innocent of the charges, though Mr. Adams has publicly asserted that DOJ's decision to dismiss his indictment shows he is innocent of the charges. Rather, the memo acknowledged that "[t]he Justice Department has reached this conclusion [to dismiss the indictment] without assessing the strength of the evidence or the legal theories on which the case is based." **Exhibit A**, p. 1.

DOJ's motion represents that "the Acting Deputy Attorney General [Bove] concluded that dismissal is necessary because of appearances of impropriety and risks of interference with the 2025 elections in New York City." This conclusion was purportedly reached "based on, among other things, review of a website maintained by a former U.S. Attorney for the Southern District of New York and an op-ed published by that former U.S. Attorney." The former U.S. Attorney is Damien Williams.

The referenced website does nothing more than link to previously published news articles about the Adams prosecution. The Williams op-ed is a general opinion piece about "the sad state of New York government" and does not expressly mention Mr. Adams. DOJ does not explain, nor can it, how public articles already disseminated are improper or how a general opinion piece on New York government risks interfering "with the 2025 elections in New York City."

The Bove memo, **Exhibit A**, p. 1, shows just how bogus this purported justification for dismissal is. Mr. Bove's memo asserted that the indictment should be dismissed because "the timing of the charges and more recent public actions by the former US Attorney responsible for initiating the case have threatened the integrity of the proceedings, including by increasing prejudicial pretrial publicity that risks impacting potential witnesses and the jury pool." As support for his statement, Mr. Bove relied on

Mr. Adams' criticism of the Biden administration's "immigration policies before the charges were filed." Mr. Bove cites zero proof of such a causal connection.

Mr. Bove speculates that "the former US Attorney's public actions created appearances of impropriety," without specifying any proof in the memo. **Exhibit A**, p. 1. Mr. Bove made a feeble effort to provide such proof in a letter to Ms. Sassoon three days later on February 13, 2025, accepting her resignation as the Acting U.S. Attorney. The letter is annexed hereto as **Exhibit B**.

Mr. Bove asserted there was the creation of an appearance of impropriety with the conclusory politically charged statement that the investigation into Mr. Adams was "led by a former U.S. Attorney with deep connections to the former Attorney General who oversaw the weaponization of the Justice Department." Mr. Bove also claimed that "in late - December 2024, the former U.S. Attorney launched a personal website- which closely resembles a campaign website--that touts articles about the ongoing prosecution of Mayor Adams." **Exhibit B,** pp. 3-4.

In a letter to Attorney General Pam Bondi, dated February 12, 2024, annexed to this letter as **Exhibit C**, Ms. Sassoon responded to Mr. Bove's unsupported claims. As to Mr. Williams' involvement in the Adams prosecution, she informed Attorney General Bondi that "[t]he investigation began before Mr. Williams took office, he did not manage the day-to-day investigation, and the charges in this case were recommended or approved by four experienced career prosecutors, the Chiefs of the SDNY Public Corruption Unit, and career prosecutors at the Public Integrity Section of the Justice Department. Mr. Williams's decision to ratify their recommendations does not taint the charging decision." **Exhibit C**, p. 4.

Ms. Sassoon wrote that "[r]egarding the timing of the indictment, the decision to charge in September 2024 — nine months before the June 2025 Democratic Mayoral Primary and more than a year before the November 2025 Mayoral Election- complied in every respect with longstanding Department policy regarding election year sensitivities and the applicable Justice Manual provisions."

She further wrote that "I am not aware of any instance in which the Department of Justice has concluded that an indictment brought this far in advance of an election is improper because it may be pending during an election cycle, let alone that a validly returned and factually supported indictment should be dismissed on this basis." **Exhibit C**, p. 4. DOJ provides no evidence in its motion to the contrary.

There is nothing in the Bove memo or Mr. Bove's other attempts to support his statement that a proper jury could not be assembled through a normal voir dire process of the court questioning individual jurors as to whether each can be fair and impartial. The fact the trial was scheduled before the June Democratic primary is not relevant since, as Ms. Sassoon explained, "Adams has selected the timing of the trial." **Exhibit C,** p. 3.

In its motion, DOJ further argues the false claims that Mr. Bove "also concluded that continuing these proceedings would interfere with the defendant's ability to govern in New York City, which poses unacceptable threats to public safety, national security, and related federal immigration initiatives and policies." DOJ's motion represents that Mr. Bove "reached that conclusion after learning, among other things, that as a result of these proceedings, Mr. Adams has been denied access to sensitive information that the Acting Deputy Attorney General believes is necessary for Adams to govern and to help protect the City." Mr. Bove's memo to Ms. Sassoon raises a similar bogus argument. **Exhibit B**, p. 6.

Mr. Adams has publicly argued that the indictment has not interfered with his official mayoral duties. It is also telling that DOJ does not provide any details of the "sensitive information" Mr. Adams allegedly lacks because of his indictment or how having such information would have made any difference in his ability to perform his duties as mayor.

The Bove memo, as reflected in the relief sought in DOJ's motion to dismiss, "directed" the Acting US Attorney in the Southern District of New York to dismiss Mr. Adams' indictment "without prejudice." Mr. Bove's memo explained that "the matter shall be reviewed by the confirmed U.S Attorney in the Southern District of New York, following the November 2025 mayoral election." **Exhibit A**, p.1[3]. This qualification on the dismissal provides the Trump administration with potent leverage over Mr. Adams to ensure he follows the administration's directives or else the indictment will be reinstated.

Mr. Bove attempted in footnote 1 to the memo to dispel such a corrupt bargain. He made the self-serving statement that "the Government is not offering to exchange dismissal of a criminal case for Adams's assistance on immigration enforcement." **Exhibit A**, p. 2.

However, the entirety of Mr. Bove's memo, further supported by the bogus representations in the motion to dismiss, is powerful evidence of a corrupt *quid pro quo* bribery scheme – the *quid* being the dismissal of the charges against Mr. Adams without prejudice in return for the *quo* of total control over Adams under the threat of reinstating his indictment if he does not perform his duties as the Mayor of New York City to the favor of the Trump administration.

This bribery scheme is shockingly detailed in Ms. Sassoon's letter to Attorney General Bondi, **Exhibit C**, p. 3, in which she wrote, "Adam's advocacy should be called out for what it is: an improper offer of immigration enforcement assistance in exchange for a dismissal of his case." In footnote 1 of Ms. Sassoon's letter, Ms. Sassoon recounted to Attorney General Bondi a meeting that she attended at DOJ on January 31, 2025, "with Mr. Bove, Adams's counsel, and members" of the Office of the Southern District of New York. Ms. Sassoon wrote that "Adams's attorneys repeatedly urged what amounted to a *quid pro quo*, indicating that Adams would be in a position to assist with the Department's enforcement priorities only if the indictment were dismissed."

To conceal this meeting from public scrutiny, Ms. Sassoon revealed that "Mr. Bove admonished a member of my team who took notes during that meeting and directed the collection of those notes at the meeting's conclusion."

### III. Mr. Bove's Bad Faith Is Demonstrated by His Inconsistent Statements in Response to Sassoon's Refusal to Dismiss the Adams Indictment

In his February 10th memo to Ms. Sassoon, Mr. Bove had written that "this directive in no way calls into question the integrity and efforts of the line prosecutors responsible for the case, or your efforts in leading those prosecutors in connection with a matter you inherited." **Exhibit A**, p. 1.

But three days later, on February 13th, in response to Ms. Sassoon's "refusal to comply with . . . [his] instructions," **Exhibit C**, p. 1, Mr. Bove unleashed a full-frontal attack on the U.S. Attorney's Office

---

[3] Mr. Bove also directed Ms. Sassoon that "[t]here shall be no further targeting of Mayor Adams or additional investigative step prior to that review."

4

with a series of false accusations that contradicted his statements made three days earlier in his memo by "call[ing] into question the integrity and efforts of the" Office.

Mr. Bove wrote that "by 2024 your office's work on the case was extremely problematic." **Exhibit C**, p. 5. Mr. Bove also asserted without evidence that there was "questionable behavior reflected in certain of the prosecution team's decisions" and threatened Ms. Sassoon that this "questionable behavior" "will be addressed in the forthcoming investigations" to "evaluate your conduct." **Exhibit C**, p. 1, 7.

Mr. Bove further wrote that prosecutors had tried to bait Mr. Adams, who was represented by counsel, into making "unprotected statements" under false pretenses. **Exhibit C**, p. 8. No evidence was cited for this statement. Mr. Bove went on to disparage the prosecution, claiming "[t]he case turns on factual and legal theories that are, at best, extremely aggressive." **Exhibit C**, p. 7. If that were so, Mr. Adams' motions to dismiss his indictment would have been granted but were instead denied.

Mr. Bove also upped his false attack on the previous U.S. Attorney, Williams, who had approved the filling of the Adams indictment. In his February 10th memo, Mr. Bove told Ms. Sassoon that "the former U.S. Attorney" "threatened the integrity of the proceedings, including by increasing prejudicial pretrial publicity." **Exhibit A**, p. 1. Three days later Mr. Bove changed his tune and called it "a politically motivated prosecution." **Exhibit C**, p. 1.

Mr. Bove's shift in strategy to attack the integrity of the U.S. Attorney's Office can only be explained as a further corrupt effort to take retribution against Ms. Sassoon for not signing the motion to dismiss the complaint and as a warning to others refusing to sign the motion to dismiss the complaint.

### IV. Under Rule 48(a), This Court Should Deny the Government's Motion to Dismiss the Indictment

The addition of the phrase "with leave of court" in Rule 48(a) provides this Court with a sound legal basis to deny DOJ's motion on the ground that its dismissal motion is central to this corrupt bargain between DOJ and Mr. Adams.

In *U.S. v. Flynn*, 507 F. Supp.3d at 127, the court recognized that "the text and history of Rule 48(a), as well as precedent in this and other circuits, demonstrate that courts have the authority to review unopposed Rule 48(a) motions." One of the reasons for Rule 48(a) providing the district court a role in determining whether an indictment should be dismissed is because there was an existing "perception that prosecutors were seeking dismissals for politically well-connected defendants led some judges to 'feel complicit in dealings they deemed corrupt.'"

### V. Conclusion

With the Government agreeing with Mr. Adams to dismiss the indictment, no party before the Court is representing the public interest. We respectfully ask the Court to appoint a special counsel to advise the Court in resolving this unfortunate matter.

Most obviously, the Court should deny the motion to dismiss. In addition, it may consider the following: allowing discovery of the DOJ with respect to its decision-making in this matter; directing Mr. Bove to appear in person to explain his position; sanctioning DOJ and/or Mr. Bove personally for making improper and unethical demands on prosecutors in New York and Washington.

The Court may also consider appointing an independent special prosecutor to continue the prosecution of Mr. Adams in this Court, *see*, *Young v. United States ex rel. Vuitton Et Fils S.*, 481 U.S. 787, 794-802 (1987), and ordering that the special prosecutor have access to grand jury materials and other evidence assembled by the SDNY.

Respectfully submitted,

Nathaniel (Nick) H. Akerman
Attorney for Common Cause