**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

v.

ERIC ADAMS,

*Defendant.*

No. 1:24-cr-556 (DEH)

Judge Dale E. Ho

**BRIEF OF *AMICUS CURIAE* SEPARATION OF POWERS CLINIC IN SUPPORT OF IMMEDIATE DISMISSAL**

## TABLE OF CONTENTS

IDENTITY AND INTEREST OF *AMICUS CURIAE*......1

ARGUMENT......1

I. The Executive Branch's Discretion to Drop a Prosecution Is Limited, If at All, Only in Those Rare Circumstances Necessary to Vindicate a Defendant's Own Constitutional Rights......2

II. Article II Precludes a Court from Compelling the Executive Branch to Disclose Executive-Privileged Information......6

CONCLUSION......10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Aiken County*,
725 F.3d 255 (D.C. Cir. 2013) ....................2

*Blackledge v. Perry*,
417 U.S. 21 (1974) ....................2

*Dep't of the Interior v. Klamath Water Users Protective Ass'n*,
532 U.S. 1 (2001) ....................7

*Dep't of Navy v. Egan*,
484 U.S. 518 (1988) ....................8

*In re Flynn*,
961 F.3d 1215 (D.C. Cir. 2020) ....................3, 5, 6

*In re Flynn*,
973 F.3d 74 (D.C. Cir. 2020) ....................3

*ICC v. Bhd. of Locomotive Eng'rs*,
482 U.S. 270 (1987) ....................8

*Rinaldi v. United States*,
434 U.S. 22 (1977) ....................2

*In re Sealed Case*,
121 F.3d 729 (D.C. Cir. 1997) ....................8

*In re United States*,
345 F.3d 450 (7th Cir. 2003) ....................5, 6

*United States v. Agurs*,
427 U.S. 97 (1976) ....................7

*United States v. Armstrong*,
517 U.S. 456 (1996) ....................3

*United States v. Blaszczak*,
56 F.4th 230 (2d Cir. 2022) ....................4, 5

*United States v. Fokker Servs. B.V.*,
818 F.3d 733 (D.C. Cir. 2016) ....................3, 4

*United States v. Hamm*,
659 F.2d 624 (5th Cir. Unit A Oct. 1981) ....................4

*United States v. HSBC Bank USA, N.A.*,
863 F.3d 125 (2d Cir. 2017) ....................2, 4, 5

*United States v. Nixon*,
418 U.S. 683 (1974) ....................2, 6, 7, 8

*United States v. Pimentel*,
932 F.2d 1029 (2d Cir. 1991)....................4

*Wayte v. United States*,
470 U.S. 598 (1985)....................3

**Constitution**

U.S. Const. art. VI, cl. 2....................1

**Other Authorities**

*Prosecution for Contempt of Congress of an Executive Branch Official Who Has Asserted a Claim of Executive Privilege*,
8 Op. O.L.C. 101 (1984)....................6, 7

*Response to Congressional Requests for Information Regarding Decisions Made Under the Independent Counsel Act*, 10 Op. O.L.C. 68 (1986)....................7

*Congressional Requests for Confidential Executive Branch Information*,
13 Op. O.L.C. 153 (1989)....................6

*Whistleblower Protections for Classified Disclosures*,
22 Op. O.L.C. 92 (1998)....................8

*Temporary Certification Under the President John F. Kennedy Assassination Records Collection Act of 1992*,
41 Op. O.L.C. 80 (2017)....................8

## IDENTITY AND INTEREST OF *AMICUS CURIAE*[1]

*Amicus* the Separation of Powers Clinic at The Catholic University of America's Columbus School of Law provides students an opportunity to discuss, research, and write about separation of powers issues in ongoing litigation. The Clinic, which was previously at the Antonin Scalia Law School at George Mason University, has submitted numerous briefs at the Supreme Court and lower federal courts in cases implicating separation of powers, including the scope and importance of the President's Article II powers. The Clinic's briefs have been cited in appellate court decisions and quoted by Justices during Supreme Court oral arguments.

## ARGUMENT

Rule 48 must be read in conjunction with two core Article II tenets: (1) the Executive Branch has sole discretion regarding dismissal of criminal charges, with only a narrow exception in rare cases to ensure compliance with a defendant's constitutional rights, such as due process; and (2) the Executive Branch has constitutional authority to decline to reveal executive-privileged materials, including deliberative-process information. These Article II constitutional powers cannot be trumped by a statute, let alone by a rule of criminal procedure. *See* U.S. Const. art. VI, cl. 2 (the Constitution is the "supreme Law of the Land").

This means the Court constitutionally can inquire only whether the dismissal of the charges here would violate a constitutional right of Defendant Adams, such as due process. But Adams, through his experienced counsel, expressly consents to the dismissal of these charges, and thus clearly does not believe that dismissal would raise constitutional concerns. Nor is there any reason

---

[1] The undersigned certifies that no party's counsel authored this brief in whole or in part, and that no party, party's counsel, or any other person other than *amicus* contributed money that was intended to fund preparing or submitting this brief.

to doubt that conclusion (e.g., there is no pattern of the government repeatedly indicting and dismissing solely to harass Adams or harm his defense). That should end the matter. Any further judicial inquiry would itself infringe on the Executive's prosecutorial and executive-privilege powers guaranteed by Article II of the Constitution, as explained in detail below.

## I. The Executive Branch's Discretion to Drop a Prosecution Is Limited, If at All, Only in Those Rare Circumstances Necessary to Vindicate a Defendant's Own Constitutional Rights.

Rule 48(a) provides that "[t]he government may, with leave of court, dismiss an indictment, information, or complaint." Fed. R. Crim. P. 48(a). The Supreme Court has held that "[t]he principal object of the 'leave of court' requirement" is "to protect a defendant against prosecutorial harassment." *Rinaldi v. United States*, 434 U.S. 22, 29 n.15 (1977); *see United States v. HSBC Bank USA, N.A.*, 863 F.3d 125, 140–41 (2d Cir. 2017); *see also Blackledge v. Perry*, 417 U.S. 21, 25–27 (1974) (discussing prosecutorial vindictiveness as a potential due process violation).

Any judicial inquiry under Rule 48(a) beyond a narrow focus on the defendant's constitutional rights would infringe on the Executive Branch's otherwise unfettered Article II authority to dismiss criminal prosecutions. "The Presidential power of prosecutorial discretion is rooted in Article II, including the Executive Power Clause, the Take Care Clause, the Oath of Office Clause, and the Pardon Clause." *In re Aiken County*, 725 F.3d 255, 262 (D.C. Cir. 2013) (Kavanaugh, J.). Under our Constitution, "the Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case." *United States v. Nixon*, 418 U.S. 683, 693 (1974). That includes the "indubitable" power to "direct that the criminal be prosecuted no further." *Aiken County*, 725 F.3d at 263 (Kavanaugh, J.).

Thus, "settled constitutional understandings" provide that "authority over criminal charging decisions resides fundamentally with the Executive, without the involvement of—*and*

*without oversight power in*—the Judiciary." *United States v. Fokker Servs. B.V.*, 818 F.3d 733, 741 (D.C. Cir. 2016) (emphasis added). Because that principle flows directly from Article II of the Constitution, it cannot be infringed or diminished by any rule of procedure or statute. Only another constitutional provision can possibly impose a limitation on that power. Accordingly, when the Executive seeks to end a prosecution, a court may "ensure that a defendant is not being harassed by a motion to dismiss," i.e., confirm there is no due process concern, but the court's "decision cannot turn on 'what the judge independently considers best in the public interest.'" *In re Flynn* (*Flynn I*), 961 F.3d 1215, 1225 (D.C. Cir. 2020). The Court may inquire into whether dismissing the charges would violate the defendant's constitutional rights, but the Court may not inquire further.

The Article II powers at issue here are no trifling matter. "Judicial supervision in this area … entails systemic costs of particular concern" because the decision to prosecute turns on factors only a politically accountable branch can determine, like "the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan." *Wayte v. United States*, 470 U.S. 598, 607–08 (1985); *see also In re Flynn* (*Flynn II*), 973 F.3d 74, 94–95 (D.C. Cir. 2020) (en banc) (Rao, J., dissenting) ("Fundamental principles of separation of powers require that individuals be prosecuted only by democratically accountable prosecutors, not by district judges with life tenure."). Judicial inquiry into those decisions would "chill law enforcement," cause delay, and "impair the performance of a core executive constitutional function." *United States v. Armstrong*, 517 U.S. 456, 465 (1996); *see Wayte*, 470 U.S. at 607–08. And it could lead to the untenable situation where "the prosecution no longer has a prosecutor," "[y]et the case continues" nonetheless. *Flynn II*, 973 F.3d at 90 (Rao, J., dissenting).

Circuit courts have accordingly recognized that the Judiciary's role under Rule 48(a) is confined to "extremely limited circumstances in extraordinary cases." *United States v. Hamm*, 659 F.2d 624, 629 (5th Cir. Unit A Oct. 1981). In *United States v. Fokker Services B.V.*, 818 F.3d 733, for example, the court held that Rule 48(a)'s inquiry is "narrow" and aimed at protecting the "defendant against prosecutorial harassment when the government moves to dismiss an indictment over the defendant's objection," *id.* at 742 (cleaned up). The court explained that it must read Rule 48(a) "against the background of settled constitutional understandings under which authority over criminal charging decisions resides fundamentally with the Executive." *Id.* at 741–42. Absent evidence that a dismissal would itself yield violation of a constitutional right, the court has no choice but to dismiss without further inquiry. Thus, "the Supreme Court has declined to construe Rule 48(a)'s 'leave of court' requirement to confer any substantial role for courts in the determination whether to dismiss charges." *Id.* at 742.

The Second Circuit's precedents are not to the contrary. In fact, it has favorably and repeatedly cited the D.C. Circuit's *Fokker* decision for these same points. *See HSBC Bank*, 863 F.3d at 134–35, 137. The Second Circuit has recognized that prosecutors have "considerable discretion to dismiss entire cases under Fed. R. Crim. P. 48(a)," *United States v. Pimentel*, 932 F.2d 1029, 1033 (2d Cir. 1991), and the Executive "may elect to eschew or discontinue prosecutions for any of a number of reasons," *United States v. Blaszczak*, 56 F.4th 230, 238 (2d Cir. 2022). Thus, judicial review of a Rule 48(a) motion necessarily "involves the constitutional issue of the Separation of Powers Doctrine," as "[f]ew subjects are less adapted to judicial review than the exercise by the Executive of his discretion in deciding when and whether to institute criminal proceedings, or what precise charge shall be made, or whether to dismiss a proceeding once brought." *Id.* at 240. The "leave of court" requirement was not "promulgated to shift absolute

power from the Executive to the Judicial Branch" but, rather, the "Executive remains … presumptively the best judge of whether a pending prosecution should be terminated." *Id.* Again, the Court's inquiry is limited to whether the exercise of Article II authority is affected by a competing constitutional principle, namely whether dismissing the charges would cause constitutional harm to the defendant. That is the only way to respect Article II while giving effect to Rule 48.

There is no concern here that dismissal of charges against Defendant Adams would raise due process or other constitutional concerns. His sophisticated counsel agrees with the dismissal motion, and this is the first dismissal sought by the government, meaning there is no pattern of repeatedly indicting and dismissing for purposes of harassment or harming Defendant Adams's defense. *See Flynn I*, 961 F.3d at 1220 ("Flynn agrees with the government's motion to dismiss," and "there has been no allegation that the motion reflects prosecutorial harassment"). Respectfully, that is the end of the Court's inquiry. Anything further risks serious harm for the separation of powers.

To be sure, some courts have suggested that a district court may deny an unopposed motion to dismiss, if at all, only in an extraordinary case where a rogue prosecutor appears to be acting without "the approval of the Justice Department." *In re United States*, 345 F.3d 450, 453–54 (7th Cir. 2003). The Second Circuit has likewise indicated that it may inquire into whether "the prosecutor appears motivated by bribery, animus towards the victim, or a desire to attend a social event rather than [the] trial." *HSBC Bank*, 863 F.3d at 141. But this is not a substantive inquiry about the reasons for the Executive Branch's dismissal, but rather purely one to confirm the Executive Branch *actually* wants to dismiss the case—i.e., whether the prosecutor "is acting alone

rather than at the direction or with the approval of the Justice Department." *United States*, 345 F.3d at 454.

There is clearly no such concern here, as the Acting Deputy Attorney General of the United States himself has appeared and confirmed the Department's intent to dismiss the charges, and there is no doubt that he has the authority to make that decision.

## II. Article II Precludes a Court from Compelling the Executive Branch to Disclose Executive-Privileged Information.

Any judicial inquiry into criminal dismissal decisions beyond the narrow scope identified above would violate Article II for another reason: it "[i]nterfere[s] with the internal deliberations of the [Executive Branch]" by requiring it "to reveal the internal deliberative process behind its exercise of prosecutorial discretion." *Flynn I*, 961 F.3d at 1221–22.

The President's authority "to prevent disclosure of certain Executive Branch documents under the doctrine of executive privilege" is "fundamental to the President's ability to carry out his constitutionally prescribed duties." *Prosecution for Contempt of Congress of an Executive Branch Official Who Has Asserted a Claim of Executive Privilege*, 8 Op. O.L.C. 101, 116 (1984). "[I]n order for the President to carry out his constitutional responsibility to enforce the laws, he must be able to protect the confidentiality of certain types of documents and communications within the Executive Branch." *Id.* at 115. Executive privilege therefore "is a necessary corollary of the executive function vested in the President by Article II of the Constitution." *Congressional Requests for Confidential Executive Branch Information*, 13 Op. O.L.C. 153, 154 (1989).

Accordingly, the Supreme Court has held that executive privilege is "fundamental to the operation of Government and inextricably rooted in the separation of powers under the Constitution." *Nixon*, 418 U.S. at 708. Although there is no "absolute, unqualified Presidential

privilege" to prevent the disclosure of all privileged information, *id.* at 706, criminal charging and dismissal decisions fall in the heartland of information that the Executive Branch must be able to protect.

The deliberative process component of executive privilege encompasses "advisory opinions, recommendations and deliberations comprising part of a process by which government decisions and policies are formulated"—i.e., opinions and statements often made in the course of bringing and dropping criminal prosecutions. *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). As the Supreme Court has explained, "the valid need for protection" of such communications is "too plain to require further discussion." *Nixon*, 418 U.S. at 705.

Forcing disclosure of such deliberative rationale and the bases for them could compromise other ongoing investigations or reveal sensitive information. "[T]he Executive's ability to enforce the law would be seriously impaired … if the Executive were forced to disclose sensitive information on case investigations and strategy from open enforcement files." 8 Op. O.L.C. at 117–18. DOJ's Office of Legal Counsel has explained that the Executive Branch has an Article II right to avoid disclosing "unpublished details of allegations against particular individuals and details that would reveal confidential sources, and investigative techniques and methods." *Response to Congressional Requests for Information Regarding Decisions Made Under the Independent Counsel Act*, 10 Op. O.L.C. 68, 77 (1986). And the Supreme Court has held that although prosecutors are constitutionally obligated to disclose material favorable evidence if nondisclosure would deny a defendant a fair trial under the Constitution, there is "no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work." *United States v. Agurs*, 427 U.S. 97, 108–13 (1976). Again, the only

thing that can limit this Article II authority is another constitutional provision, not a statute or rule of criminal procedure. "[I]t is entirely clear," therefore, that the legal reasoning underlying a refusal to prosecute "cannot be the subject of judicial review." *ICC v. Bhd. of Locomotive Eng'rs*, 482 U.S. 270, 283 (1987).

Moreover, this particular case involves not just law enforcement proceedings but also national security concerns, which likewise are entitled to stringent disclosure protections under Article II. "[S]ince the Washington Administration, Presidents and their senior advisers have repeatedly concluded that our constitutional system grants the executive branch authority to control the disposition of secret information." *Whistleblower Protections for Classified Disclosures*, 22 Op. O.L.C. 92, 97 (1998). And thus the Supreme Court requires courts to "show[] the utmost deference to Presidential responsibilities" over the control of "military or diplomatic secrets." *Nixon*, 418 U.S. at 710.

The Executive has "concluded" that "continuing these proceedings would interfere with the defendant's ability to govern in New York City" and would therefore create "unacceptable threats to public safety, national security, and related federal immigration initiatives and policies." ECF No. 122 at 2. That decision may very well be based on information that is protected from disclosure by Article II and cannot be compelled "even in the face of statutory disclosure requirements," let alone a rule of criminal procedure. *Temporary Certification Under the President John F. Kennedy Assassination Records Collection Act of 1992*, 41 Op. O.L.C. 80, 96 (2017); *see also In re Sealed Case*, 121 F.3d 729, 736–39 (D.C. Cir. 1997). "The authority to protect [information related to national security] falls on the President as head of the Executive Branch and as Commander in Chief." *Dep't of Navy v. Egan*, 484 U.S. 518, 527 (1988).

An analogy may help demonstrate the separation-of-powers harms from making the Executive explain why it has dropped a prosecution: imagine Executive officials called in appellate judges or their law clerks and asked them to explain why a judicial case has been resolved on one basis rather than another, or why discretionary review had been denied or granted. In the end, of course, the Executive officials would still have to follow the court's decision—just as this Court must ultimately dismiss this prosecution regardless of what explanation is given—but forcing disclosure of internal, constitutionally protected rationales in the meantime is itself a violation of separation of powers.

As explained above, there is no concern that dismissal would raise constitutional concerns for Defendant Adams. Any further inquiry by the Court would violate Article II in numerous respects. Accordingly, not only should the Court inquire no further, but it *cannot* do so. It should instead order immediate dismissal of the charges.

## CONCLUSION

The Court should immediately dismiss the charges without further inquiry.

February 26, 2025

Respectfully submitted,

*/s/ R. Trent McCotter*
R. TRENT MCCOTTER (*pro hac vice pending*)
SEPARATION OF POWERS CLINIC
COLUMBUS SCHOOL OF LAW
THE CATHOLIC UNIVERSITY OF AMERICA
3600 John McCormack Rd. NE
Washington, DC 20064
(202) 706-5488
mccotter@cua.edu