IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Case No. 1:24-cr-556 (DEH) |
| ) | |
| ERIC ADAMS, ) | Judge Dale E. Ho |
| ) | |
| *Defendant*. ) | |

BRIEF *AMICUS CURIAE* OF
LT. GENERAL MICHAEL FLYNN (USA-RET.)
AMERICA'S FUTURE, AND
CONSERVATIVE LEGAL DEFENSE AND EDUCATION FUND
IN SUPPORT OF GRANTING THE DEPARTMENT OF JUSTICE'S
MOTION TO DISMISS WITHOUT PREJUDICE

William J. Olson
Jeremiah L. Morgan
William J. Olson, P.C.
370 Maple Avenue West, Suite 4
Vienna, Virginia  22180-5615
(703) 356-5070
wjo@mindspring.com

Steven J. Harfenist*
Harfenist Kraut & Perlstein, LLP
3000 Marcus Avenue, Suite 2E1
Lake Success, New York 11042
(516) 355-9600
sharfenist@hkplaw.com

*Counsel of Record
Counsel for *Amici Curiae*
Dated: February 28, 2025

Alicia Kutzner
Kutzer Law Firm, LLC
120 South Franklin Street
Wilkes-Barre, PA 18701
(570) 371-3184
akutzer@kutzerlaw.com

Patrick M. McSweeney
McSweeney, Cynkar & Kachouroff, PLLC
3358 John Tree Hill Rd.
Powhatan, VA 23139

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... ii

INTEREST OF AMICI ....................................................................................................... 1

STATEMENT OF THE CASE ........................................................................................... 1

ARGUMENT ...................................................................................................................... 2

POINT I      THE DISTRICT COURT HAS NO AUTHORITY TO SECOND-GUESS THE U.S. DEPARTMENT OF JUSTICE'S DECISION TO DISMISS A CRIMINAL INDICTMENT WITH CONSENT UNDER RULE 48 .......................................... 2

          A.    *Rinaldi* and Its Lineage ....................................................................... 2

          B.    Lessons to Be Learned from Justice Robert Jackson ............................. 5

          C.    None of the Questions Posed to the Appointed *Amicus* Are Relevant to Any Matter Before the District Court ................................................................. 7

POINT II     THE DISTRICT COURT RELIED ON THE DISTRICT COURT'S ERRONEOUS APPOINTMENT OF AN *AMICUS CURIAE* IN *UNITED STATES V. FLYNN* ............................................................................................... 8

POINT III    THE TRUMP JUSTICE DEPARTMENT IS DE-WEAPONIZING THE BIDEN ADMINISTRATION'S JUSTICE DEPARTMENT ........................................... 11

CONCLUSION ................................................................................................................. 12

# TABLE OF AUTHORITIES

**CASES**

*Rinaldi v. United States*
   434 U.S. 22 (1977) ............................................................................................... *passim*

*United States v. Garcia-Valenzuela*
   232 F.3d 1003 (9th Cir. 2000) ........................................................................................ 3

*United States v. Hamm*
   659 F.2d 624 (5th Cir. 1981) ........................................................................................... 4

*United States v. Smith*
   55 F.3d 157 (4th Cir. 1995) ............................................................................................. 4

**STATUTES**

18 U.S.C. § 1001 ................................................................................................................ 10
28 U.S.C. § 503 .................................................................................................................... 6
28 U.S.C. § 509 .................................................................................................................... 6
FRCP 48(a) ................................................................................................................. *passim*

**MISCELLANEOUS**

Executive Order "Ending the Weaponization of the Federal Government,"
   (Jan. 20, 2025) ............................................................................................................... 11

T.W. Frampton, "Why Do Rule 48(a) Dismissals Require 'Leave of Court'?",
   73 STAN. L. REV. ONLINE (June 2020) .......................................................................... 4

A. McCarthy, "The FBI Set Flynn Up to Preserve the Trump-Russia Probe," *National
   Review* (May 2, 2020) ..................................................................................................... 9

E. Meese, "Robert H. Jackson, Public Servant," 68 ALBANY L. REV. 777 (2005) ......................... 5

J. Wishon, "Justice Dept Exonerates Michael Flynn: 'He Was Targeted by the
   Obama Administration,'" *CBN* (May 8, 2020) ............................................................. 10

## INTEREST OF AMICI[1]

The interest of the *amici curiae* are set out in the accompanying motion for leave to file.

## PRELIMINARY STATEMENT

On February 14, 2025, the U.S. Department of Justice filed a Motion to Dismiss (identified as a notice of Nolle Prosequi), without prejudice, under Rule 48(a) of the Federal Rules of Criminal Procedure which authorizes the dismissal of a criminal matter with "leave of court". The defendant Mayor Eric Adams joined in the application.

On February 21, 2025, the district court issued an order which assumed that it had authority to withhold granting leave of court to prevent the dismissal of a prosecution without prejudice, and to launch an inquiry into how to proceed. The court then selected a lawyer to serve as an *amicus* and commissioned him to advise the court on six hypothetical issues which were not raised by either of the parties. *See* Order at 2-3.

Lastly, the district court invited other *amici* to file a motion for leave together with a proposed *amicus* brief by February 28, 2025, an invitation which these *amici* accepted.

Because the Court has neither the power to appoint counsel to respond to hypothetical questions posed by the Court nor the authority to prevent the dismissal of the case, the Court should grant the joint application to dismiss the matter.

---

[1] No party's counsel authored the brief in whole or in part. No party or party's counsel contributed money that was intended to fund preparing or submitting the brief. No person other than these *amici curiae*, their members, or their counsel contributed money that was intended to fund preparing or submitting this brief.

1

ARGUMENT

POINT I

THE DISTRICT COURT HAS NO AUTHORITY TO SECOND-GUESS THE U.S. DEPARTMENT OF JUSTICE'S DECISION TO DISMISS A CRIMINAL INDICTMENT WITH CONSENT UNDER RULE 48

A.   *Rinaldi* and Its Lineage

Federal Rule of Criminal Procedure 48(a) states "[t]he government may, with leave of court, dismiss an indictment, information, or complaint." The U.S. Supreme Court has explained that the purpose of the Rule 48(a) "leave-of-court" requirement is "to protect a defendant against prosecutorial harassment, *e.g.*, charging, dismissing, and recharging, when the Government moves to dismiss an indictment over the defendant's objection." *Rinaldi v. United States*, 434 U.S. 22, 29 n.15 (1977).

Nothing in *Rinaldi*, or any other appellate authority authorizes a district court to question the prosecutorial discretion of the Department of Justice to discontinue a matter. This is particularly true where both the Government and the Defendant join to seek dismissal.

As the Supreme Court made held in *Rinaldi* that the "leave of court" provision in Rule 48 (a) is designed to protect a defendant there can be no need for the Court to protect a defendant's interests when the defendant has consented to the decision of the prosecution to dismiss a case without prejudice. This is exactly the circumstances of this case and should end the Court's inquiry. It should also lead to the immediate dismissal of the matter.

What is apparent that after Rinaldi, once the Government and the Defendant agree on a dismissal without prejudice the Court lacks authority to withhold leave of court. And, if the Court has no authority to withhold leave of court, there is no issue before it.

Moreover, the Court has no authority to second-guess both the Department of Justice and the defendant on the issue of dismissal.

Because once the Government and the Defendant agree on a dismissal without prejudice the Court is without authority to deny it, the Court has no authority to appoint an *amicus* to carry on an investigation or to answer the hypothetical issues posed. This constituted an improper interference with the Government's discretionary authority to either proceed or not with a prosecution- a power left to the executive branch and not the judiciary by law. As the Court's Order of February 21, 2025 appointing *Amicus* was *ultra vires* it should be rescinded.

Interestingly, the Court's Order did not actually ask the *amicus* to address whether the decision of the Justice Department not to prosecute was improper, but this is exactly what one *amicus* believes the court should do.[2] This would be encouraging the Court to violate *Rinaldi* and its clear limitations on a district court when the parties' consent to a dismissal under Rule 48(a).

The Ninth Circuit has directly addressed the issue currently before the Court. In *United States v. Garcia-Valenzuela,* 232 F.3d 1003, 1008 (9th Cir. 2000) the court held that when the parties to a criminal matter consent to a discontinuance without prejudice, there is nothing more for a district court to do but dismiss the case.

Specifically, the Ninth Circuit has held that "[w]here a defendant consents to the government's motion to dismiss, it is not clear that the district court has any discretion to deny the government's motion.". Whether or not that was the original intention when the leave-of-court

---

[2] *See* Brief *Amicus Curiae* of Former U.S. Attorneys (Feb. 17, 2025).

requirement was implemented,[3] the protection of the defendant has been understood to be the primary purpose and effect of the requirement.[4]

Here, there is nothing for the Court to do but dismiss the case. There is no balancing to be performed by the Court. There is no "burden of proof" for the Government to meet with respect to a Rule 48(a) motion to dismiss. The judge's role in considering the motion is narrowly focused on whether the Government's application was potentially detrimental to the defendant. Where a defendant consents to the dismissal even this singular issue drops from the Court's inquiry.

In a case involving a post-plea Rule 48(a) motion, the Fourth Circuit explained that the why the district court has not involved in the determination as to whether to dismiss a case under in Rule 48(a). *United States v. Smith*, 55 F.3d 157, 160 (4th Cir. 1995)

In *Smith* Fourth Circuit held:

> Fair and efficient administration of the criminal laws by the Executive Branch and punishment of the guilty by the Judicial Branch are both in the public interest. Nevertheless, **balancing** these considerations to determine which interest prevails **does not govern the disposition of the prosecutor's motion** to dismiss an indictment. Weighing these interests does not give adequate recognition to the Executive in the context of the **Separation of Powers** Doctrine as it exercises its duty in good faith to take care that the laws are faithfully executed (emphasis added).

The Fifth Circuit is in accord with the Fourth Circuit on the inability of a district court to interfere with the Government's determination to discontinue a prosecution. *United States v. Hamm*, 659 F.2d 624, 631 n.23 (5th Cir. 1981) (*en banc*) ("If *United States v. Ammidown*, is read

---

[3] *See* T.W. Frampton, "Why Do Rule 48(a) Dismissals Require 'Leave of Court'?", 73 STAN. L. REV. ONLINE (June 2020).

[4] Lest there be any confusion with court approval of plea agreements, the Ninth Circuit differentiated plea considerations from a motion to dismiss, noting that "[w]e have recognized that a court's power to deny a prosecutor's **motion to dismiss** under Fed. R. Crim. P. 48(a) is **more limited** than its discretion under Fed. R. Crim. P. 11(e)(2) to reject a **plea bargain** that includes dismissal of a charge." *Id*. at 1007, n.4 (emphasis added).

4

to place the burden on the prosecutor to prove that dismissal is in the public interest, however, then it is contrary to our rule enunciated in *United States v. Cowan* and to the Supreme Court's holding in *Rinaldi*."(cleaned up)

Here, the Court, based upon an incorrect assumption of its authority has made a number of errors. First, it incorrectly assumed that it had jurisdiction over the case when both parties consent to the discontinuance without prejudice. Second, it incorrectly assumed that it had the authority to investigate the circumstances of the agreement between the Government and the defendant. Third, it believed it had the authority to appoint an *amicus* to assist the district court in the consideration of an unopposed motion. Fourth, it believed it had authority to inquire into the internal decision-making of the U.S. Department of Justice. Finally, with no case or controversy before it, it believed it had the authority to create a controversy that the court could resolve.

**B.     Lessons to Be Learned from Justice Robert Jackson**

In 2005, former U.S. Attorney General Edwin Meese penned a law review article which traced Justice Robert Jackson's illustrious career from trial attorney to General Counsel of the Bureau of Revenue, to Assistant Attorney General for the Antitrust Division, to Solicitor General of the United States, and then, in 1940, to being sworn in as our nation's 57th Attorney General, and his subsequent service as an Associate Justice of the U.S. Supreme Court, and Chief Prosecutor at the Nuremberg Trials following World War II.

It was during Justice Jackson's brief tenure as Attorney General that he made a lasting contribution to the U.S. Department of Justice in promoting fairness in the administration of justice and in protecting constitutional rights. In his law review article, former Attorney General Meese identified the central lessons to be learned from Justice Jackson's famous April 1, 1940 remarks in the Great Hall of Justice, as follows:

> "**The prosecutor**," he said, "has more control over life, liberty, and reputation than any other person in America." He pointed out the **tremendous discretion** that is held by the prosecutor in the ability to decide whether to investigate, order arrests, seek an indictment by a grand jury, present a case for trial **or dismiss it**,...[5]   ["Robert H. Jackson, Public Servant," 68 ALBANY L. REV. 777, 779 (2005) (emphasis added)]

Justice Jackson knew, however, that those who wield this great prosecutorial power can, from time to time, be wrong. If prosecutors brought a case that should be dismissed, who has responsibility to correct that injustice? The district court apparently believes it has that power to challenge the Government's prosecutorial decision making. This is simply incorrect.

Some lawyers who formerly served as U.S. Attorneys who filed an *amicus* brief appear to believe that they should have that power.[6] Although each federal prosecutor has a measure of authority to act for the United States, "[t]he Attorney General is the head of the Department of Justice." 28 U.S.C. § 503.

Except with respect to certain discrete matters not involved here: "[a]ll functions of other officers of the Department of Justice and all functions of agencies and employees of the Department of Justice are vested in the Attorney General...." 28 U.S.C. § 509. Thus, in truth, that responsibility and power is vested in the Attorney General of the United States.

Here, Attorney General Pam Bondi was appointed by President Trump and confirmed by the U.S. Senate on February 4, 2025, assuming office on February 5, 2025. Among her first acts in office was to investigate the prosecution of Mayor Eric Adams, and then to take decisive action to fulfil her duty as Attorney General to direct the filing of the government's motion to dismiss on

---

[5] *See also* Brief *Amicus Curiae* of Former United States Attorney General Edwin Meese III, et al. in Support of Petitioner, On Petition for Writ of Mandamus, *In Re: Michael T. Flynn*, USCA-DC, No. 20-5143 (June 1, 2020).
[6] *See* Brief *Amicus Curiae* of Former U.S. Attorneys (Feb. 17, 2025).

February 14, 2025. Neither the district court nor the court's appointed *amici* has any authority to investigate or second-guess the internal decision-making of the Executive Branch on such a matter.

**C.     None of the Questions Posed to the Appointed *Amicus* Are Relevant to Any Matter Before the District Court**

The six questions posed to the *amicus* by the district court are as follows:

**1)     The legal standard for leave to dismiss an indictment under Rule 48(a);**

This is an issue of law on which the Supreme Court has already ruled, and no guidance on that legal issue should be required.

**2)     Whether, and to what extent, a court may consider materials other than the Rule 48(a) motion itself;**

If there is no matter before the district court, which is the case when both parties seek to dismiss it, this question answers itself- there are no "materials" that can be considered.

**3)     Under what circumstances, if any, additional procedural steps and/or further inquiry would be appropriate before resolving a Rule 48(a) motion;**

Such further inquiry would be beyond the authority of the district court.

**4)     Under what circumstances, if leave is granted, dismissal should be with or without prejudice;**

The defendant has consented to dismissal without prejudice which moots this question.

**5)     If leave were denied under Rule 48(a), what practical consequences would follow, including whether dismissal would nevertheless be appropriate or necessary under other rules or legal principles (e.g., for "unnecessary delay" under Rule 48(b) or under speedy trial principles, *see United States v. N.V. Nederlandsche Combinatie Voor Chemische Industrie*, 453 F. Supp. 462, 463 (S.D.N.Y. 1978))**

If leave were denied, an appeal would be taken, and the district court's order vacated as being beyond the authority of the district court.

7

**6)** **Any other issues the parties or *amicus* consider relevant to the Court's resolution of the Government's motion.** [*See* Order at 3-4 (emphasis added).]

There are no issues relevant to the district court's resolution of the Government's motion, as it simply should be granted.

## POINT II

## THE DISTRICT COURT RELIED ON THE ERRONEOUS APPOINTMENT OF AN *AMICUS CURIAE* IN *UNITED STATES V. FLYNN*

Perhaps the primary precedent relied on by the district court for the appointment of an *amicus* were two decisions issued during the prosecution of Lt. Gen. Michael T. Flynn, an *amicus* herein. The district court first stated:

> Where, as here, nominal adversaries are aligned in their positions, "precedent and experience have recognized the authority of courts to appoint an *amicus* to assist their decision-making ... including in criminal cases and even when the movant is the government."

*In re Flynn*, 973 F.3d 74, 81 (D.C. Cir. 2020) (denying mandamus where district court appointed *amicus* counsel on unopposed Rule 48(a) motion). [Order at 2 (emphasis added).

Then, the district court asserted:

> there is precedent for the appointment of *amicus* to assist a district court in the consideration of an unopposed motion under Rule 48(a) specifically. *See United States v. Flynn*, No. 17-232, 2020 WL 2466326 at *1 (D.D.C. May 13, 2020) *mandamus denied* 973 F.3d 74 (D.C. Cir. 2020) (en banc). [Order at 3 (emphasis added).]

Because the district court in *Flynn* issued two decisions the district court was able to citation to two court decisions, even though there was only one "precedent". But the district court's determination in *Flynn* was wrong.

First, the status of the case in *Flynn* was radically different that this one. The appointment by Judge Sullivan was made in the context of withdrawal of a guilty plea based, *inter alia*, on breach by the government of the agreement, and motion to dismiss for egregious government

8

conduct. It was not a pre-plea or judgment dismissal as in this case. This is a significant distinction as the defendant and the Government are in a different posture once a defendant has been found guilty.

In *Flynn*, District Judge Emmet G. Sullivan appointed an *amicus* on May 12, 2020. But the authority to make such an appointment was never fully resolved General Flynn received a presidential pardon.

And, the district court's order was vacated by the D.C. Circuit Court of Appeals sitting *en banc*, which granted General Flynn's mandamus requests for relief and ordered the dismissal of the case. The *en banc* ruling indicated the legitimacy of Judge Sullivan's appointment of the *amicus* was not ripe for resolution.

When looked at light of the D.C. Circuit's decision, there is no rational basis to follow the lead of Judge Sullivan in connection with appointing an *amicus* here. Notably, the only case Judge Sullivan pointed to as authority was *United States v. Simmons*, No. 18-cr-344 (EGS) a case in which he was presiding at that same time as *Flynn*. *See* Min. Order, *United States v. Simmons*, No. 18-cr-344 (EGS) (D.D.C. May 5, 2020).

While the stage of the *Flynn* matter post-plea, is radically different than this case, the Government's basis for dismissal is also distinguishable. The charges against Flynn were manufactured, as admitted by former FBI Director James Comey, who confessed that he tried to set up Flynn by sending investigators to the White House on a pretense to create a perjury trap.[7]

---

[7] *See* A. McCarthy, "The FBI Set Flynn Up to Preserve the Trump-Russia Probe," *National Review* (May 2, 2020).

9

A subsequent investigation by the Justice Department led to the conclusion that no violation of 18 U.S.C. § 1001 had been committed.[8]

Making the precedent even less persuasive that Judge Sullivan may have made the appointment to prolong the ordeal for General Flynn and ensure the process provided some punishment which he apparently believed General Flynn deserved-the position of the Justice Department notwithstanding.[9]

Using the ploy of appointing an *amicus*, Judge Sullivan caused the prosecution to continue indefinitely, forcing General Flynn to continue to pay lawyers, and the Justice Department to expend resources, until President Trump ended the ordeal by pardoning General Flynn. Even after the pardon, Judge Sullivan continued to attack General Flynn, Attorney General William P. Barr, and by implication, President Trump.

As the Supreme Court's decision in *Rinaldi* and the D.C. Circuit's in *Flynn* make this Court's role in effectuating a Rule 48(a) dismissal ministerial, there is simply no basis for appointment of an *amicus*. Accordingly, the Court should vacate the order appointing the *amicus* and enter the dismissal of the case.

---

[8] *See* J. Wishon, "Justice Dept Exonerates Michael Flynn: 'He Was Targeted by the Obama Administration,'" *CBN* (May 8, 2020).

[9] For example, Judge Sullivan at one point made a baseless charge about violation of the Foreign Agents Registration Act, and an even more reckless allegation of treason. After a recess, Judge Sullivan apparently regained composure and walked these back. See Brief *Amicus Curiae* of Former Attorney General Edwin Meese, *et al.,* at 2.

# POINT III

## THE TRUMP JUSTICE DEPARTMENT IS DE-WEAPONIZING THE BIDEN ADMINISTRATION'S JUSTICE DEPARTMENT

There is no reason for the Court to believe that every prosecution begun by the Justice Department is well-founded. Over the last four years significant issues of the weaponization of the Justice Department have been raised.

Having personal experience with much of this weaponization, President Trump, at the outset of his second term, issued an Executive Order entitled "Ending the Weaponization of the Federal Government," (Jan. 20, 2025). Section 3(a) of that Order states:

> The **Attorney General**, ... shall take appropriate action to review the activities of all departments and agencies exercising civil or **criminal enforcement authority** of the United States, including, but not limited to, the **Department of Justice** ... over the last 4 years and identify any instances where a department's or agency's conduct appears to have been contrary to the purposes and policies of this order.... (Emphasis added.)

This Executive Order was a clear indication of this administration's discretion as to evaluating prosecutions. In accordance with this directive to the Attorney General, the Department of Justice has taken, and no doubt will be taking, many efforts de-weaponize "criminal enforcement authority."

But whether the Court agrees or disagrees with the executive order, its role is not invade prosecutorial discretion-that is purely left to the executive branch.

## CONCLUSION

The order appointing an *amicus* should be rescinded, no report from the court-appointed *amicus* should be accepted, and the Justice Department's Motion to Dismiss should be granted.

Dated: February 28, 2025

Respectfully submitted,

William J. Olson  
Jeremiah L. Morgan  
William J. Olson, P.C.  
370 Maple Avenue West, Suite 4  
Vienna, Virginia  22180-5615  
(703) 356-5070  
wjo@mindspring.com  

Steven J. Harfenist*  
Harfenist Kraut & Perlstein, LLP  
3000 Marcus Avenue, Suite 2E1  
Lake Success, New York 11042  
(516) 355-9600  
sharfenist@hkplaw.com  

*Counsel of Record  
Counsel for *Amici Curiae*

Alicia Kutzner  
Kutzer Law Firm, LLC  
120 South Franklin Street  
Wilkes-Barre, PA 18701  
(570) 371-3184  
akutzer@kutzerlaw.com  

Patrick M. McSweeney  
McSweeney, Cynkar & Kachouroff, PLLC  
3358 John Tree Hill Rd.  
Powhatan, VA 23139