# Exhibit 1



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

February 12, 2025

**BY EMAIL**
The Honorable Pamela Jo Bondi
Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, D.C. 20530

Re:    **United States v. Eric Adams, 24 Cr. 556 (DEH)**

Dear Attorney General Bondi:

On February 10, 2025, I received a memorandum from acting Deputy Attorney General Emil Bove, directing me to dismiss the indictment against Mayor Eric Adams without prejudice, subject to certain conditions, which would require leave of court. I do not repeat here the evidence against Adams that proves beyond a reasonable doubt that he committed federal crimes; Mr. Bove rightly has never called into question that the case team conducted this investigation with integrity and that the charges against Adams are serious and supported by fact and law. Mr. Bove's memo, however, which directs me to dismiss an indictment returned by a duly constituted grand jury for reasons having nothing to do with the strength of the case, raises serious concerns that render the contemplated dismissal inconsistent with my ability and duty to prosecute federal crimes without fear or favor and to advance good-faith arguments before the courts.

When I took my oath of office three weeks ago, I vowed to well and faithfully discharge the duties of the office on which I was about to enter. In carrying out that responsibility, I am guided by, among other things, the Principles of Federal Prosecution set forth in the Justice Manual and your recent memoranda instructing attorneys for the Department of Justice to make only good-faith arguments and not to use the criminal enforcement authority of the United States to achieve political objectives or other improper aims. I am also guided by the values that have defined my over ten years of public service. You and I have yet to meet, let alone discuss this case. But as you may know, I clerked for the Honorable J. Harvie Wilkinson III on the U.S. Court of Appeals for the Fourth Circuit, and for Justice Antonin Scalia on the U.S. Supreme Court. Both men instilled in me a sense of duty to contribute to the public good and uphold the rule of law, and a commitment to reasoned and thorough analysis. I have always considered it my obligation to pursue justice impartially, without favor to the wealthy or those who occupy important public office, or harsher treatment for the less powerful.

I therefore deem it necessary to the faithful discharge of my duties to raise the concerns expressed in this letter with you and to request an opportunity to meet to discuss them further. I cannot fulfill my obligations, effectively lead my office in carrying out the Department's priorities,

or credibly represent the Government before the courts, if I seek to dismiss the Adams case on this record.

### A.    The Government Does Not Have a Valid Basis To Seek Dismissal

Mr. Bove's memorandum identifies two grounds for the contemplated dismissal. I cannot advance either argument in good faith. As you know, the Government "may, with leave of court, dismiss an indictment" under Federal Rule of Criminal Procedure 48(a). "The principal object of the 'leave of court' requirement is apparently to protect a defendant against prosecutorial harassment, *e.g.*, charging, dismissing, and recharging, when the Government moves to dismiss an indictment over the defendant's objection." *Rinaldi v. United States*, 434 U.S. 22, 30 n.15 (1977). "But the Rule has also been held to permit the court to deny a Government dismissal motion to which the defendant has consented if the motion is prompted by considerations clearly contrary to the public interest." *Id.*; *see also* JM § 9-2.050 (reflecting Department's position that a "court may decline leave to dismiss if the manifest public interest requires it"). The reasons advanced by Mr. Bove for dismissing the indictment are not ones I can in good faith defend as in the public interest and as consistent with the principles of impartiality and fairness that guide my decision-making.

*First*, Mr. Bove proposes dismissing the charges against Adams in return for his assistance in enforcing the federal immigration laws, analogizing to the prisoner exchange in which the United States freed notorious Russian arms dealer Victor Bout in return for an American prisoner in Russia. Such an exchange with Adams violates commonsense beliefs in the equal administration of justice, the Justice Manual, and the Rules of Professional Conduct. The "commitment to the rule of law is nowhere more profoundly manifest" than in criminal justice. *Cheney v. United States Dist. Ct.*, 542 U.S. 367, 384 (2004) (alterations and citation omitted). Impartial enforcement of the law is the bedrock of federal prosecutions. *See* Robert H. Jackson, *The Federal Prosecutor*, 24 J. Am. Jud. Soc'y 18 (1940). As the Justice Manual has long recognized, "the rule of law depends upon the evenhanded administration of justice. The legal judgments of the Department of Justice must be impartial and insulated from political influence." JM § 1-8.100. But Adams has argued in substance—and Mr. Bove appears prepared to concede—that Adams should receive leniency for federal crimes solely because he occupies an important public position and can use that position to assist in the Administration's policy priorities.

Federal prosecutors may not consider a potential defendant's "political associations, activities, or beliefs." *Id.* § 9-27.260; *see also Wayte v. United States*, 470 U.S. 598, 608 (1985) (politically motivated prosecutions violate the Constitution). If a criminal prosecution cannot be used to punish political activity, it likewise cannot be used to induce or coerce such activity. Threatening criminal prosecution even to gain an advantage in civil litigation is considered misconduct for an attorney. *See, e.g.*, D.C. Bar Ethics Opinion 339; ABA Criminal Justice Standard 3-1.6 ("A prosecutor should not use other improper considerations, such as partisan or political or personal considerations, in exercising prosecutorial discretion."). In your words, "the Department of Justice will not tolerate abuses of the criminal justice process, coercive behavior, or other forms of misconduct." Dismissal of the indictment for no other reason than to influence Adams's mayoral decision-making would be all three.

The memo suggests that the issue is merely removing an obstacle to Adams's ability to assist with federal immigration enforcement, but that does not bear scrutiny. It does not grapple with the differential treatment Adams would receive compared to other elected officials, much less other criminal defendants. And it is unclear why Adams would be better able to aid in immigration enforcement when the threat of future conviction is due to the possibility of reinstatement of the indictment followed by conviction at trial, rather than merely the possibility of conviction at trial. On this point, the possibility of trial before or after the election cannot be relevant, because Adams has selected the timing of his trial.

Rather than be rewarded, Adams's advocacy should be called out for what it is: an improper offer of immigration enforcement assistance in exchange for a dismissal of his case. Although Mr. Bove disclaimed any intention to exchange leniency in this case for Adams's assistance in enforcing federal law,[1] that is the nature of the bargain laid bare in Mr. Bove's memo. That is especially so given Mr. Bove's comparison to the Bout prisoner exchange, which was quite expressly a *quid pro quo*, but one carried out by the White House, and not the prosecutors in charge of Bout's case.

The comparison to the Bout exchange is particularly alarming. That prisoner swap was an exchange of official acts between separate sovereigns (the United States and Russia), neither of which had any claim that the other should obey its laws. By contrast, Adams is an American citizen, and a local elected official, who is seeking a personal benefit—immunity from federal laws to which he is undoubtedly subject—in exchange for an act—enforcement of federal law—he has no right to refuse. Moreover, the Bout exchange was a widely criticized sacrifice of a valid American interest (the punishment of an infamous arms dealer) which Russia was able to extract only through a patently selective prosecution of a famous American athlete.[2] It is difficult to imagine that the Department wishes to emulate that episode by granting Adams leverage over it akin to Russia's influence in international affairs. It is a breathtaking and dangerous precedent to reward Adams's opportunistic and shifting commitments on immigration and other policy matters with dismissal of a criminal indictment. Nor will a court likely find that such an improper exchange is consistent with the public interest. *See United States v. N.V. Nederlandsche Combinatie Voor Chemische Industrie ("Nederlandsche Combinatie"),* 428 F. Supp. 114, 116-17 (S.D.N.Y. 1977) (denying Government's motion to dismiss where Government had agreed to dismiss charges against certain defendants in exchange for guilty pleas by others); *cf. In re United States*, 345 F.3d 450, 453 (7th Cir. 2003) (describing a prosecutor's acceptance of a bribe as a clear example of a dismissal that should not be granted as contrary to the public interest).

---

[1] I attended a meeting on January 31, 2025, with Mr. Bove, Adams's counsel, and members of my office. Adams's attorneys repeatedly urged what amounted to a *quid pro quo*, indicating that Adams would be in a position to assist with the Department's enforcement priorities only if the indictment were dismissed. Mr. Bove admonished a member of my team who took notes during that meeting and directed the collection of those notes at the meeting's conclusion.

[2] *See, e.g.*, https://thehill.com/homenews/3767785-trump-pans-prisoner-swap-brittney-griner-hates-our-country/.

*Second*, Mr. Bove states that dismissal is warranted because of the conduct of this office's former U.S. Attorney, Damian Williams, which, according to Mr. Bove's memo, constituted weaponization of government as defined by the relevant orders of the President and the Department. The generalized concerns expressed by Mr. Bove are not a basis to dismiss an indictment returned by a duly constituted grand jury, at least where, as here, the Government has no doubt in its evidence or the integrity of its investigation.

As Mr. Bove's memo acknowledges, and as he stated in our meeting of January 31, 2025, the Department has no concerns about the conduct or integrity of the line prosecutors who investigated and charged this case, and it does not question the merits of the case itself. Still, it bears emphasis that I have only known the line prosecutors on this case to act with integrity and in the pursuit of justice, and nothing I have learned since becoming U.S. Attorney has demonstrated otherwise. If anything, I have learned that Mr. Williams's role in the investigation and oversight of this case was even more minimal than I had assumed. The investigation began before Mr. Williams took office, he did not manage the day-to-day investigation, and the charges in this case were recommended or approved by four experienced career prosecutors, the Chiefs of the SDNY Public Corruption Unit, and career prosecutors at the Public Integrity Section of the Justice Department. Mr. Williams's decision to ratify their recommendations does not taint the charging decision. And notably, Adams has not brought a vindictive or selective prosecution motion, nor would one be successful. *See United States v. Stewart*, 590 F.3d 93, 121-23 (2d Cir. 2009); *cf. United States v. Biden*, 728 F. Supp. 3d 1054, 1092 (C.D. Cal. 2024) (rejecting argument that political public statements disturb the "'presumption of regularity' that attaches to prosecutorial decisions").

Regarding the timing of the indictment, the decision to charge in September 2024—nine months before the June 2025 Democratic Mayoral Primary and more than a year before the November 2025 Mayoral Election—complied in every respect with longstanding Department policy regarding election year sensitivities and the applicable Justice Manual provisions. The Justice Manual requires that when investigative steps and charges involving a public official could be seen as affecting an election the prosecuting office must consult with the Public Integrity Section, and, if directed to do so, the Office of the Deputy Attorney General or Attorney General. *See* JM §§ 9-85.210, 9-85.500. As you are aware, this office followed this requirement. Further, the Justice Department's concurrence was unquestionably consistent with the established policies of the Public Integrity Section. *See, e.g.*, Public Integrity Section, Federal Prosecution of Election Offenses 85 (2017) (pre-election action may be appropriate where "it is possible to both complete an investigation and file criminal charges against an offender prior to the period immediately before an election"). The Department of Justice correctly concluded that bringing charges nine months before a primary election was entirely appropriate.

The timing of the charges in this case is also consistent with charging timelines of other cases involving elected officials, both in this District and elsewhere. *See, e.g., United States v. Robert Menendez*, 23 Cr. 490 (SHS) (S.D.N.Y.) (indictment in September 2023); *United States v. Duncan Hunter*, 18 Cr. 3677 (S.D. Cal.) (indictment in August 2018). I am not aware of any instance in which the Department has concluded that an indictment brought this far in advance of an election is improper because it may be pending during an electoral cycle, let alone that a validly returned and factually supported indictment should be dismissed on this basis.

When first setting the trial date, the District Court and the parties agreed on the importance of completing the trial *before* the upcoming mayoral election—including before the Democratic primary in which Adams is a candidate—so that the voters would know how the case resolved before casting their votes. (*See* Dkt. 31 at 38-44). Adams has decided that he would prefer the trial to take place before rather than after the June 2025 primary, notwithstanding the burden trial preparation would place on his ability to govern the City or campaign for re-election. But that is his choice, and the District Court has made clear that Adams is free to seek a continuance. (*See* Dkt. 113 at 18 n.6). The parties therefore cannot argue with candor that dismissing serious charges before an election, but holding open the possibility that those charges could be reinstated if Adams were re-elected, would now be other than "clearly contrary to the manifest public interest." *United States v. Blaszczak*, 56 F.4th 230, 238-39 (2d Cir. 2022) (internal quotation marks omitted).

Mr. Bove's memo also refers to recent public actions by Mr. Williams. It is not my role to defend Mr. Williams's motives or conduct. Given the appropriate chronology of this investigation and the strength of the case, Mr. Williams's conduct since leaving government service cannot justify dismissal here. With respect to pretrial publicity, the District Court has already determined that Mr. Williams's statements have not prejudiced the jury pool. The District Court has also repeatedly explained that there is no evidence that any leaks to the media came from the prosecution team—although there is evidence media leaks came from the defense team—and no basis for any relief. (*See* Dkt. 103 at 3-6; Dkt. 49 at 4-21). Mr. Williams's recent op-ed, the Court concluded, generally talks about bribery in New York *State*, and so is not a comment on the case. (Dkt. 103 at 6 n.5). Mr. Williams's website does not even reference Adams except in the news articles linked there. (*See* Dkt. 99 at 3). And it is well settled that the U.S. Attorneys in this and other districts regularly conduct post-arrest press conferences. *See United States v. Avenatti*, 433 F. Supp. 3d 552, 567-69 (S.D.N.Y. 2020) (describing the practice); *see also, e.g.*, "New Jersey U.S. Attorney's Office press conference on violent crime," YouTube, https://www.youtube.com/watch?v=oAEDHQCE91A (announcing criminal charges against 42 defendants). In short, because there is in fact nothing about this prosecution that meaningfully differs from other cases that generate substantial pretrial publicity, a court is likely to view the weaponization rationale as pretextual.

Moreover, dismissing the case will amplify, rather than abate, concerns about weaponization of the Department. Despite Mr. Bove's observation that the directive to dismiss the case has been reached without assessing the strength of the evidence against Adams, Adams has already seized on the memo to publicly assert that he is innocent and that the accusations against him were unsupported by the evidence and based only on "fanfare and sensational claims." Confidence in the Department would best be restored by means well short of a dismissal. As you know, our office is prepared to seek a superseding indictment from a new grand jury under my leadership. We have proposed a superseding indictment that would add an obstruction conspiracy count based on evidence that Adams destroyed and instructed others to destroy evidence and provide false information to the FBI, and that would add further factual allegations regarding his participation in a fraudulent straw donor scheme.

That is more than enough to address any perception of impropriety created by Mr. Williams's personal conduct. The Bove memo acknowledges as much, leaving open the possibility

of refiling charges after the November 2025 New York City Mayoral Election. Nor is conditioning the dismissal on the incoming U.S. Attorney's ability to re-assess the charges consistent with either the weaponization rationale or the law concerning motions under Rule 48(a). To the contrary, keeping Adams under the threat of prosecution while the Government determines its next steps is a recognized reason for the *denial* of a Rule 48(a) motion. *See United States v. Poindexter*, 719 F. Supp. 6, 11-12 (D.D.C. 1989) (allowing Government to "to keep open the option of trying [certain] counts" would effectively keep the defendant "under public obloquy for an indefinite period of time until the government decided that, somehow, for some reason, the time had become more propitious for proceeding with a trial").

### B.    Adams's Consent Will Not Aid the Department's Arguments

Mr. Bove specifies that Adams must consent in writing to dismissal without prejudice. To be sure, in the typical case, the defendant's consent makes it significantly more likely for courts to grant motions to dismiss under Rule 48(a). *See United States v. Welborn*, 849 F.2d 980, 983 (5th Cir. 1988) ("If the motion is uncontested, the court should ordinarily presume that the prosecutor is acting in good faith and dismiss the indictment without prejudice."). But Adams's consent— which was negotiated without my office's awareness or participation—would not guarantee a successful motion, given the basic flaws in the stated rationales for dismissal. *See Nederlandsche Combinatie,* 428 F. Supp. at 116-17 (declining to "rubber stamp" dismissal because although defendant did not appear to object, "the court is vested with the responsibility of protecting the interests of the public on whose behalf the criminal action is brought"). Seeking leave of court to dismiss a properly returned indictment based on Mr. Bove's stated rationales is also likely to backfire by inviting skepticism and scrutiny from the court that will ultimately hinder the Department of Justice's interests. In particular, the court is unlikely to acquiesce in using the criminal process to control the behavior of a political figure.

A brief review of the relevant law demonstrates this point. Although the judiciary "[r]arely will . . . overrule the Executive Branch's exercise of these prosecutorial decisions," *Blaszczak*, 56 F.4th at 238, courts, including the Second Circuit, will nonetheless inquire as to whether dismissal would be clearly contrary to the public interest. *See, e.g.*, *id.* at 238-42 (extended discussion of contrary to public interest standard and cases applying it); *see also* JM § 9-2.050 (requiring "a written motion for leave to dismiss . . . explaining fully the reason for the request" to dismiss for cases of public interest as well as for cases involving bribery). At least one court in our district has rejected a dismissal under Rule 48(a) as contrary to the public interest, regardless of the defendant's consent. *See Nederlandsche Combinatie*, 428 F. Supp. at 116-17 ("After reviewing the entire record, the court has determined that a dismissal of the indictment against Mr. Massaut is not in the public interest. Therefore, the government's motion to dismiss as to Mr. Massaut must be and is denied."). The assigned District Judge, the Honorable Dale E. Ho, appears likely to conduct a searching inquiry in this case. Notably, Judge Ho stressed transparency during this case, specifically explaining his strict requirements for non-public filings at the initial conference. (*See* Dkt. 31 at 48-49). And a rigorous inquiry here would be consistent with precedent and practice in this and other districts.

Nor is there any realistic possibility that Adams's consent will prevent a lengthy judicial inquiry that is detrimental to the Department's reputation, regardless of outcome. In that regard,

although the *Flynn* case may come to mind as a comparator, it is distinct in one important way. In that case, the Government moved to dismiss an indictment with the defendant's consent and faced resistance from a skeptical district judge. But in *Flynn*, the Government sought dismissal with prejudice because it had become convinced that there was insufficient evidence that General Flynn had committed any crime. That ultimately made the Government's rationale defensible, because "[i]nsufficient evidence is a quintessential justification for dismissing charges." *In re Flynn*, 961 F.3d 1215, 1221 (D.C. Cir.), *reh'g en banc granted, order vacated*, No. 20-5143, 2020 WL 4355389 (D.C. Cir. July 30, 2020), and *on reh'g en banc*, 973 F.3d 74 (D.C. Cir. 2020). Here no one in the Department has expressed any doubts as to Adams's guilt, and even in *Flynn*, the President ultimately chose to cut off the extended and embarrassing litigation over dismissal by granting a pardon.

### C.    I Cannot in Good Faith Request the Contemplated Dismissal

Because the law does not support a dismissal, and because I am confident that Adams has committed the crimes with which he is charged, I cannot agree to seek a dismissal driven by improper considerations. As Justice Robert Jackson explained, "the prosecutor at his best is one of the most beneficent forces in our society, when he acts from malice or other base motives, he is one of the worst." The Federal Prosecutor, 24 J. Am. Jud. Soc'y 18 ("This authority has been granted by people who really wanted the right thing done—wanted crime eliminated—but also wanted the best in our American traditions preserved."). I understand my duty as a prosecutor to mean enforcing the law impartially, and that includes prosecuting a validly returned indictment regardless whether its dismissal would be politically advantageous, to the defendant or to those who appointed me. A federal prosecutor "is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all." *Berger v. United States*, 295 U.S. 78, 88 (1935).

For the reasons explained above, I do not believe there are reasonable arguments in support of a Rule 48(a) motion to dismiss a case that is well supported by the evidence and the law. I understand that Mr. Bove disagrees, and I am mindful of your recent order reiterating prosecutors' duty to make good-faith arguments in support of the Executive Branch's positions. *See* Feb. 5, 2025 Mem. "General Policy Regarding Zealous Advocacy on Behalf of the United States." But because I do not see any good-faith basis for the proposed position, I cannot make such arguments consistent with my duty of candor. N.Y.R.P.C. 3.3; *id.* cmt. 2 ("A lawyer acting as an advocate in an adjudicative proceeding has an obligation to present the client's case with persuasive force. Performance of that duty while maintaining confidences of the client, however, is qualified by the advocate's duty of candor to the tribunal.").

In particular, the rationale given by Mr. Bove—an exchange between a criminal defendant and the Department of Justice akin to the Bout exchange with Russia—is, as explained above, a bargain that a prosecutor should not make. Moreover, dismissing without prejudice and with the express option of again indicting Adams in the future creates obvious ethical problems, by implicitly threatening future prosecution if Adams's cooperation with enforcing the immigration laws proves unsatisfactory to the Department. *See In re Christoff*, 690 N.E.2d 1135 (Ind. 1997) (disciplining prosecutor for threatening to renew a dormant criminal investigation against a potential candidate for public office in order to dissuade the candidate from running); Bruce A.

Green & Rebecca Roiphe, *Who Should Police Politicization of the DOJ?*, 35 Notre Dame J.L. Ethics & Pub. Pol'y 671, 681 (2021) (noting that the Arizona Supreme Court disbarred the elected chief prosecutor of Maricopa County, Arizona, and his deputy, in part, for misusing their power to advance the chief prosecutor's partisan political interests). Finally, given the highly generalized accusations of weaponization, weighed against the strength of the evidence against Adams, a court will likely question whether that basis is pretextual. *See, e.g.*, *United States v. Greater Blouse, Skirt & Neckwear Contractors*, 228 F. Supp. 483, 487 (S.D.N.Y. 1964) (courts "should be satisfied that the reasons advanced for the proposed dismissal are substantial and the real grounds upon which the application is based").

I remain baffled by the rushed and superficial process by which this decision was reached, in seeming collaboration with Adams's counsel and without my direct input on the ultimate stated rationales for dismissal. Mr. Bove admonished me to be mindful of my obligation to zealously defend the interests of the United States and to advance good-faith arguments on behalf of the Administration. I hope you share my view that soliciting and considering the concerns of the U.S. Attorney overseeing the case serves rather than hinders that goal, and that we can find time to meet.

In the event you are unwilling to meet or to reconsider the directive in light of the problems raised by Mr. Bove's memo, I am prepared to offer my resignation. It has been, and continues to be, my honor to serve as a prosecutor in the Southern District of New York.

Very truly yours,

DANIELLE R. SASSOON
United States Attorney
Southern District of New York