# Exhibit 6

P2JsADA1

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4              v.                          24 Cr. 556 (DEH)

 5   ERIC ADAMS,

 6
                  Defendant.
 7
     ------------------------------x
 8
                                         New York, N.Y.
 9                                       February 19, 2025
                                         2:00 p.m.
10

11   Before:

12                      HON. DALE E. HO,

13                                       District Judge

14                        APPEARANCES

15   EMIL J. BOVE III
          Acting Deputy Attorney General
16
     QUINN EMANUEL URQUHART & SULLIVAN LLP
17        Attorneys for Defendant
     BY:  ALEX SPIRO
18        WILLIAM A. BURCK

19

20

21

22

23

24

25
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1                  (Case called)

2                  THE DEPUTY CLERK:  Counsel, can you please state your

3      name for the record, starting with the government.

4                  MR. BOVE:  Thank you.

5                  Good afternoon, your Honor.  Emil Bove for the

6      government.

7                  THE COURT:  Good afternoon.  Please have a seat.

8                  MR. SPIRO:  Good afternoon, your Honor.  It's Alex

9      Spiro and William Burck on behalf of Eric Adams.

10                 THE COURT:  Good afternoon to you both.  Good morning,

11     Mayor Adams.  Please have a seat.

12                 First of all, thank you all for coming in on such

13     short notice.  On February 14, the government filed a motion to

14     dismiss the charges in the indictment without prejudice under

15     Rule 48.  I believe it is at ECF No. 122.  I called this

16     conference because I have a few questions.

17                 But before I jump in, I just want to emphasize a few

18     things.  The first is that, while there is not a lot of

19     authority on Rule 48, at least two basic things are relatively

20     clear to me.  One is that a court has very little discretion

21     here.  I'm well aware of that.  And that the government, in the

22     words of the Second Circuit, is the first and presumptively

23     best judge of whether a prosecution should be terminated.

24                 Second, notwithstanding what I just said, the case law

25     in this area also makes clear that the court does have a

P2JsADA1

1   limited role to play.  Otherwise, there would be no purpose for

2   the requirement of leave under Rule 48.  And so, to properly

3   discharge my duty, I want to proceed carefully starting by

4   making sure that I understand a few basic things about the

5   government's motion and where we are today.

6        Having reviewed it, I do have some basic questions

7   about issues, including the effect of the motion, if granted,

8   mayor Adams' consent to it, the basis for the motion, and what

9   I'm allowed to consider in resolving the motion.  So we'll get

10   to all of that in turn.

11        Second thing that I want to emphasize before we get

12   started is, I want to make very clear that the mere fact that I

13   have a few questions today is in no way a commentary on the

14   merits of this case.  For one thing, and most obviously, any

15   criminal defendant, and Mayor Adams, is presumed innocent in

16   the eyes of the law and this court.

17        For another thing, as I understand it, although I'll

18   want to confirm this as we go, my understanding is that the

19   government's motion to dismiss the indictment is being made

20   without reference to the strength of the case either in terms

21   of the facts or the government's legal theory.  So the

22   questions that I have today go to issues regarding the motion

23   to dismiss the indictment and not to the indictment itself.

24        So with that, I just want to reiterate that I really

25   appreciate you all coming in here today on short notice because

P2JsADA1

1    I need your assistance in sorting out how to handle what I

2    think everyone would agree is a somewhat unusual situation.

3            So I just want to start with the motion itself.  I've

4    reviewed it.  It was filed on February 14, and it's at ECF No.

5    122.  It's probably easiest for everyone to follow along if I

6    ask my courtroom deputy to bring it up on the screen.  So I'm

7    going to do that.

8            Ms. Morales, would you please bring up ECF No. 122 on

9    to the screen.

10           I want to ask about paragraph two, which states:

11           Through counsel, Defendant Eric Adams has consented in

12   writing to this motion and agreed that he is not a prevailing

13   party for purposes of the Hyde Amendment.  So I want to ask

14   about that written consent.  I believe that it was filed by

15   defense counsel yesterday and is on the document on ECF 131-1.

16           Ms. Morales, would you please bring that up.

17           Thank you.

18           So this is a letter dated February 14, 2025, from

19   Mr. Spiro and addressed to Mr. Bove.  And I assume the parties

20   have all seen this document.

21           Mr. Bove?

22           MR. BOVE:  Yes, Judge.

23           MR. SPIRO:  Yes, your Honor.

24           THE COURT:  OK.  And, Mr. Bove, is this the written

25   consent that is referenced in the government's motion?

P2JsADA1

1           MR. BOVE:  Yes, your Honor.

2           THE COURT:  OK.  And, Mr. Spiro, it's signed by you?

3           MR. SPIRO:  Yes, your Honor.

4           THE COURT:  OK.  And the letter is not signed by Mayor

5    Adams, is that right?

6           MR. SPIRO:  That's correct.

7           THE COURT:  OK.  So, Mayor Adams, I have to ask you

8    some questions about your consent to the motion, because my

9    understanding is that by entering your consent, you're waiving

10   certain rights which I intend to go over to make sure that your

11   consent is knowing and voluntary.

12          So in order to ensure that your consent is valid, I

13   have to ask two sets of questions.  One is a standard set of

14   questions about your mental state and your ability to

15   understand today's proceedings that I always ask of any

16   defendant that seeks, who seeks to waive certain rights.  And

17   then the second is a series of questions that is specific to

18   this consent and the scope of your consent.

19          I just have to do this to establish to my satisfaction

20   that you understand what you'll be waiving and that you're

21   doing so knowingly and voluntarily.  And I want to make clear,

22   I don't intend to ask you any questions about anything beyond

23   those two topics.

24          Is that OK?

25          THE DEFENDANT:  Yes, it is.

P2JsADA1

```
 1              THE COURT:  With respect to the questions that I do
 2     have, I have to -- and my typical practice is -- and I think I
 3     have to ask you these questions under oath to ensure that your
 4     consent to the motion and waiver of certain rights is knowing
 5     and voluntary.
 6              I just want to confirm that you and your counsel are
 7     OK with that before I proceed.
 8              MR. SPIRO:  No issue, your Honor.
 9              THE COURT:  OK.  All right.  Ms. Morales, would you
10     please swear in Mayor Adams.
11              (Defendant sworn)
12              THE DEPUTY CLERK:  Please state your name for the
13     record.
14              THE DEFENDANT:  Eric Leroy Adams.
15              THE COURT:  Thank you, Mr. Adams.  Please have a seat.
16              So, as I mentioned, I'm going to ask you a few
17     questions about your mental state today.
18              Is that OK?
19              THE DEFENDANT:  Yes, your Honor.
20              THE COURT:  OK.  Is your mind clear today?
21              THE DEFENDANT:  Yes, it is, your Honor.
22              THE COURT:  And you understand what's happening in
23     these proceedings today?
24              THE DEFENDANT:  Yes, I do.
25              THE COURT:  OK.  I'm going to ask you a few standard
```

P2JsADA1

1    questions about issues that sometimes come up when a defendant

2    purportedly waives some rights, but later there will questions

3    about the validity of that waiver.

4           I'm going to ask about certain circumstances and

5    whether or not those are present, and if so, whether they

6    affect your ability to participate in today's proceedings.

7           But at the same time, I want to be mindful of your

8    privacy and I don't want to make you uncomfortable.  I want to

9    make clear I'm not going to pry into any details.  Again, these

10   are standard questions that I ask defendants in cases when they

11   seek to waive rights.

12          Is that OK and may I proceed?

13          THE DEFENDANT:  Yes, it is.

14          THE COURT:  Thank you.

15          Are you now or have you recently been under the care

16   of a doctor or mental health professional, such as a

17   psychiatrist or a psychologist, and if so, I don't want to ask

18   you any details about that, but if so, is there anything about

19   such an experience, if you've had any, that would interfere

20   with your ability to understand what is happening in these

21   proceedings today?

22          THE DEFENDANT:  No, I have not.

23          THE COURT:  OK.  And, again, I won't pry into details,

24   but I have to ask if you have been treated or hospitalized for

25   any type of addiction, such as drug or alcohol addiction, and

P2JsADA1

 1    if so, if there is anything about such an experience, if you

 2    have had any, that would interfere with your ability to

 3    understand what is happening in these proceedings today?

 4              THE DEFENDANT:  No, I have not.

 5              THE COURT:  And have you taken any drugs, medicine,

 6    pills, or drunk any alcoholic beverages in the past two days

 7    that could affect your ability to follow these proceedings

 8    today?

 9              THE DEFENDANT:  No, I have not.

10              THE COURT:  OK.  Mr. Spiro, you've discussed this

11    matter with your client?

12              MR. SPIRO:  I have, your Honor.

13              THE COURT:  And in your judgment, is he capable of

14    understanding today's proceedings?

15              MR. SPIRO:  Yes, sir.

16              THE COURT:  OK.  And does counsel for either side have

17    any doubt as to the defendant's competence to consent to the

18    government's motion at this time?

19              MR. BOVE:  No, Judge.

20              MR. SPIRO:  No, your Honor.

21              THE COURT:  Thank you both.

22              On the basis of Mayor Adams' responses to my

23    questions, my observations of his demeanor here in court, and

24    the representations of counsel, I find that he is fully

25    competent to enter a knowing and voluntary consent at this

1    time.

2              So I want to ask about now, turn to the second bucket

3    of questions about the scope of your consent, Mayor Adams.

4              And, Ms. Morales, if you could please bring the

5    government's motion back up.  ECF No. 122.  Could you scroll to

6    the top of it, please.

7              And I don't know if you have a hard copy of it there,

8    Mr. Spiro, that you could show to Mayor Adams, or we could flip

9    through it.

10             But I just want to ask, Mayor Adams, if you have seen

11   the government's motion to dismiss this matter?

12             THE DEFENDANT:  Yes, I have, your Honor.

13             THE COURT:  Have you had a chance to read it?

14             THE DEFENDANT:  Yes, your Honor.

15             THE COURT:  And did you have a chance to read it

16   before you consented to it?

17             THE DEFENDANT:  No, your Honor.  It was explained to

18   me.

19             THE COURT:  It was explained to you by your attorney,

20   Mr. Spiro?

21             THE DEFENDANT:  Yes, it was, your Honor.

22             THE COURT:  And we'll go over the content of the

23   motion.  But did you fully understand the substance of the

24   motion before you authorized your consent to it?

25             THE DEFENDANT:  Yes, I did, your Honor.

P2JsADA1

1          THE COURT:  OK.  I want to turn back to your consent

2     letter, if I could, the document at ECF 131-1.

3          This is a pretty short letter, Mayor Adams, but did

4     you have a chance to read this letter indicating your consent

5     in writing before your attorney signed it?

6          THE DEFENDANT:  I did not read it.  It was explained

7     to me, your Honor.

8          THE COURT:  OK.  So you discussed it with Mr. Spiro?

9          THE DEFENDANT:  Yes, your Honor.

10          THE COURT:  And you authorized him to sign this

11     consent letter on your behalf?

12          THE DEFENDANT:  Yes, I have, your Honor.

13          THE COURT:  Did you fully understand it before you did

14     so and before he signed it?

15          THE DEFENDANT:  Yes, I did, your Honor.

16          THE COURT:  Now, Mayor Adams, you understand that in

17     this consent letter, you're waiving the right to assert that

18     you're a prevailing party for purposes of a Hyde Amendment?

19          THE DEFENDANT:  Yes, your Honor.

20          THE COURT:  And you understand that the Hyde Amendment

21     provides, in relevant part, that the court in any criminal case

22     ... may award to a prevailing party, other than the United

23     States, a reasonable attorney's fee and other litigation

24     expenses where a court finds that the position of the United

25     States was vexatious, frivolous, or in bad faith, unless the

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

 1    court finds that special circumstances make such an award

 2    unjust.

 3              Do you understand that?

 4              THE DEFENDANT:  Yes, your Honor.

 5              THE COURT:  And so you understand that by consenting

 6    to the government's motion, you are giving up your right to

 7    obtain attorneys' fees resulting from a finding that the United

 8    States was vexatious, frivolous, or in bad faith in prosecuting

 9    you unless the government finds that special circumstances

10    would make such an award unjust?

11              Do you understand that?

12              THE DEFENDANT:  Yes, your Honor.

13              THE COURT:  OK.  Now, Mr. Bove, the motion represents

14    that Mayor Adams has consented to dismissal without prejudice,

15    is that right?

16              MR. BOVE:  Yes.  Correct, Judge.

17              THE COURT:  OK.  And, Mayor Adams, you understand that

18    you're consenting to dismissal of your case without prejudice?

19              THE DEFENDANT:  Yes, your Honor.

20              THE COURT:  OK.  I want to confirm that everyone is on

21    the same page about what that means, what effect that granting

22    the motion to dismiss without prejudice would have.  And I

23    would like to ask you, Mr. Bove, some questions, if I may,

24    because I confess I'm not entirely sure about what that effect

25    would be.  So I appreciate you helping me out here.

P2JsADA1

1              Mr. Bove, if and when the motion is granted, can these

2    charges be brought again?

3              MR. BOVE:  They could be, in the Department's

4    discretion, yes, Judge.

5              THE COURT:  OK.  So Mayor Adams could be reindicted at

6    a future date?

7              MR. BOVE:  It's possible, in the Department's

8    discretion, as is standard and would be the default even if the

9    motion didn't say that under Rule 48 and the governing law.

10             THE COURT:  OK.  If the motion is granted, are there

11   any limits as to the circumstances under which the government

12   could bring charges again in the future?

13             MR. BOVE:  I mean, there is some standard limitations

14   on the Department's discretion relating to impermissible

15   considerations, protect the classes, things like that.  I think

16   those would apply.  Otherwise not.

17             THE COURT:  OK.  And if the motion's granted, would

18   there be any time limits as to when the government could

19   reindict on these charges, other than the statute of

20   limitations?

21             MR. BOVE:  Well, I think there would be -- I'm just

22   going off-the-cuff here.  There is a statute of limitations, I

23   agree.  There is separate speedy trial obligations that are

24   both constitutional that could come into play, if we're talking

25   about a situation that involves pre-indictment delay, and the

1    statute could also potentially come into play.

2                THE COURT:  I'm sorry.  What was the last thing that

3    you said?

4                MR. BOVE:  I think the Speedy Trial Act could also

5    come into play.  Certainly, there would be a constitutional

6    concern if there was a long delay in the charges and then they

7    were refiled.  Just to clarify, right now as the record stands,

8    the Department and the Department's criminal division is

9    responsible for all of these decisions.

10               THE COURT:  The main Justice's Department?

11               MR. BOVE:  Correct.

12               THE COURT:  OK.  Is there currently any anticipated

13   timeframe in which the government would make such a

14   determination?  And the analogy I'm thinking about is with

15   something like a deferred prosecution agreement where the

16   government says, you know, in a year or two years, three years

17   or something like that, we'll come back.

18               MR. BOVE:  There is not, Judge.

19               I think you may have seen, in some of the attachments

20   to one of the amicus filings, the correspondence that I had

21   with the U.S. Attorney's office for the Southern District of

22   New York that contemplated that office revisiting the situation

23   when there was a Senate-confirmed U.S. Attorney in that seat.

24               That is not a condition on this motion.  And so, right

25   now, and I think this is really important, right now this is a

P2JsADA1

 1    standard Rule 48 motion where we memorialize the default, which

 2    is that the dismissal would be without prejudice.  That's all

 3    that is.

 4            And the Department Main Justice, the Criminal

 5    Division, in its discretion, may or may not at some point

 6    revisit whether these charges are appropriate.  I don't have

 7    any plans for that at this time.

 8            THE COURT:  OK.  In the motion, is the government

 9    committing to stopping any additional investigative steps with

10    respect to Mayor Adams?

11            MR. BOVE:  No.

12            THE COURT:  OK.  Thank you for clarifying all of that

13    with me.  I appreciate it.

14            I just want to now turn to defense, and I want to

15    confirm that defense shares the same understanding now.

16            Let me start with Mr. Spiro.  Does defense counsel

17    understand that granting the motion would not prohibit the

18    government from, just starting with that last question that I

19    posed to Mr. Bove, taking any additional investigative steps

20    right now?

21            MR. SPIRO:  We agree with everything that was just

22    said.

23            THE COURT:  OK.  Sorry.  I just want the record to be

24    very clear as to what everything constitutes.

25            MR. SPIRO:  Sure.

P2JsADA1

1           THE COURT:  So defense counsel understands that the

2   government, in its discretion, could bring these charges again?

3           MR. SPIRO:  Yes.

4           THE COURT:  Subject to, obviously, the limitations

5   that Mr. Bove identified, protected classes, improper motives,

6   and the like.

7           MR. SPIRO:  Yes.

8           THE COURT:  And that with respect to time limits, the

9   government could bring these charges again at any time subject

10  to statute of limitations and speedy trial, both constitutional

11  and statutory speedy trial concerns.

12          MR. SPIRO:  Yes.  Again, I don't know that it's been

13  fully exhaustive of what would prevent them from re-bringing a

14  case, but we understand that the case could be re-brought.

15  It's a dismissal without prejudice.

16          THE COURT:  Could I just ask you to elaborate on what

17  you just said about exhaustive?

18          MR. SPIRO:  Well, sure.  Your Honor was listing

19  reasons why, you know, protected classes and things like that,

20  that it could never be brought, that would be a problem with

21  them bringing it back, and then some speedy trial and statute

22  of limitations concerns.

23          I agree in large part.  I can't say exclusively those

24  are the things that would prevent it from being brought back.

25  This motion, we understand, allows them to bring it back.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

P2JsADA1

1          THE COURT:  OK.  And you've discussed this with Mayor

2     Adams?

3          MR. SPIRO:  I have.

4          THE COURT:  OK.  And, Mayor Adams, I just want to

5     confirm with you that, under the terms of the motion to which

6     you're consenting, the government may reindict you on charges

7     arising from the same events underlying your current indictment

8     subject to, you know, prohibitions on protected classes and

9     statute of limitations, but that they could do that in the

10     future in their discretion?

11          (Defendant confers with counsel)

12          THE DEFENDANT:  Yes, I understand that, Judge.  I have

13     not committed a crime and I don't see them bringing it back.

14     I'm not afraid of that.

15          THE COURT:  OK.  Thank you, Mayor Adams.

16          If at any time you want to consult with Mr. Spiro or

17     your legal team, just let me know.  It's really important that,

18     you know, to have a valid understanding of what is happening

19     today, that you have any questions answered before you answer

20     any of mine.

21          THE DEFENDANT:  I appreciate that because I failed my

22     law class.

23          THE COURT:  I'm sorry.  The first question I posed to

24     Mr. Spiro, I just want to make sure that I pose to you.

25          You understand that granting the motion would not

P2JsADA1

1  prohibit the government from taking any additional

2  investigative steps at this time, there is no binding agreement

3  with the government with respect to that, and so if they do

4  take additional investigative steps and then you're reindicted

5  later, you won't be able to argue that they violated some

6  agreement not to take additional investigative steps.

7            You understand that?

8            THE DEFENDANT:  Yes, I fully understand that.

9            THE COURT:  OK.  And I just want to confirm that no

10  one has told you anything to the contrary that, for example,

11  the government cannot reindict you in the future?

12            No one said that to you?

13            THE DEFENDANT:  Not at all.

14            THE COURT:  OK.  And no one has told you that the

15  government will not reindict you on these charges in the

16  future?

17            THE DEFENDANT:  Not at all.

18            THE COURT:  OK.  Here is a set of questions that I

19  always request when someone waives something or consents to

20  something, that they understand they have the right not to do

21  those things.

22            I just want to confirm with you that you understand

23  that, just as you have the right to consent to this motion in

24  its current form, you also have the right not to consent to

25  this motion.

P2JsADA1

1          Do you understand that?

2          THE DEFENDANT:  Yes, I do, your Honor.

3          THE COURT:  OK.  And to clarify what that means, you

4    have the right to oppose this motion in whole or in part.

5          Do you understand that?

6          THE DEFENDANT:  Yes, I do, your Honor.

7          THE COURT:  OK.  And you understand that you have the

8    right to oppose the government's motion solely with respect to

9    the issue of whether or not dismissal is without prejudice and

10   that you could request that the case be dismissed with

11   prejudice.

12         You understand that?

13         THE DEFENDANT:  Yes, I do, your Honor.

14         THE COURT:  And if the government were to dismiss with

15   prejudice, assuming that there would be a valid -- I'm sorry,

16   excuse me.

17         If the court were to dismiss with prejudice, assuming

18   that there was some valid basis for that, that would mean that

19   the government would not be able to reindict you on the same

20   charges.

21         Do you understand that?

22         THE DEFENDANT:  Yes, I do, your Honor.

23         THE COURT:  OK.  And hearing all of that, you are

24   consenting to the motion for dismissal without prejudice, is

25   that right?

P2JsADA1

1                THE DEFENDANT:  Yes, I do, your Honor.

2                THE COURT:  Now, Mayor Adams, you understand that

3      under normal circumstances, you have the right to a speedy

4      trial?

5                THE DEFENDANT:  Yes, I do, your Honor.

6                THE COURT:  And you understand that if, for whatever

7      reason, this motion were withdrawn or denied, the government

8      would have to bring you to trial within the period prescribed

9      under the Speedy Trial Act, I think most relevant here, within

10     70 days of indictment minus any time that has already been or

11     could be excluded by the court.  And if the government failed

12     to do that, it would face dismissal of the charges.

13                Do you understand that?

14                THE DEFENDANT:  Yes, I do, your Honor.

15                THE COURT:  You understand that you're consenting to a

16     motion that, if granted, would mean that there is no trial,

17     right?

18                THE DEFENDANT:  Yes, I do, your Honor.

19                THE COURT:  Now, Mr. Bove, if I may ask, you said

20     something earlier that about the Speedy Trial Act.  And what's

21     unclear to me, please enlighten me here, if I were to grant the

22     motion, but the government, if the government were to, at a

23     subsequent time, reindict Mayor Adams, my understanding is that

24     the speedy trial clock would restart from the date of a new

25     indictment, that is, the clock with respect to the time for

P2JsADA1

```
 1    trial.
 2                Do I have that right?
 3                MR. BOVE:  I believe so, yes.
 4                THE COURT:  OK.  So, Mr. Spiro, is that the defense's
 5    understanding as well?
 6                MR. SPIRO:  I believe so as well, yes.
 7                THE COURT:  OK.  So, Mayor Adams, you understand that
 8    if the government were to reindict you on these charges in the
 9    future, it wouldn't give you an ability to -- you wouldn't have
10    the ability to argue that your right to a speedy trial under
11    the Speedy Trial Act had been violated based on the passage of
12    time between this indictment and this hypothetical future one?
13                Do you understand that?
14                THE DEFENDANT:  Yes, I do, your Honor.
15                THE COURT:  OK.  Just a few more questions for you,
16    Mayor Adams, before I wrap up and turn to a different topic.
17                Does the consent in writing, that letter from
18    Mr. Spiro that we were talking about earlier, does that
19    constitute the sum total of your agreement with the government?
20                THE DEFENDANT:  Yes, your Honor.
21                THE COURT:  Has there been anything left out of your
22    consent in writing?
23                THE DEFENDANT:  No, your Honor.
24                THE COURT:  Are there any other agreements, written or
25    otherwise, that you've entered into with the government?
```

P2JsADA1

```
 1              THE DEFENDANT:  No, your Honor.

 2              THE COURT:  And then other than what's in the

 3    government's motion itself, has anything been promised to you

 4    to induce you to consent to the motion?

 5              THE DEFENDANT:  Not at all, your Honor.

 6              THE COURT:  OK.  Has anyone threatened you in any way

 7    to induce you to consent to the motion?

 8              THE DEFENDANT:  No, your Honor.

 9              THE COURT:  Thank you, Mayor Adams.  I think those are

10    all the questions that I'll have for you today.

11              Just so the parties understand, I'm going to review

12    this transcript to ensure that I've asked all the correct

13    questions.  But does counsel for either side believe that there

14    is any reason that I should not find that Mayor Adams has

15    knowingly and voluntarily consented to the motion for a

16    dismissal without prejudice?

17              MR. BOVE:  No, Judge.

18              MR. SPIRO:  No, your Honor.

19              THE COURT:  OK.  Thank you.

20              If we could, I would like to turn back to the basis

21    for the motion itself.  That's at ECF No. 122.  The motion, I

22    mean.

23              Ms. Morales, would you please bring it back up on the

24    screen, back up on the screen.

25              While she's doing that, Mr. Bove, just so you see
```

P2JsADA1

1  where I'm going, I just have a few questions so that I can

2  understand the basis for the motion and what I should or should

3  not consider while I'm reviewing the motion.

4          MR. BOVE:  Yes, Judge.

5          THE COURT:  OK.  The first thing, though, before I

6  dive into the contents of it, I just want to confirm that the

7  motion is a full and complete statement of the government's

8  reasons for the motion.  That is, beyond what is stated in the

9  motion, is the government asserting any other reasons for

10  dismissal.

11          MR. BOVE:  We're not asking the court to rely on any.

12  I do have other concerns, but these are the ones that I think

13  are dispositive here.

14          THE COURT:  I think I heard you say that you're not

15  asking the court to rely on any reasons other than what is

16  stated in the motion, is that right?

17          MR. BOVE:  Correct.

18          THE COURT:  OK.  And I just want to confirm my

19  understanding that the motion contains no statement about the

20  government's views regarding the strength of the case in terms

21  of the facts or the legal theory?

22          MR. BOVE:  That's correct.

23          THE COURT:  OK.  Could you please, Mr. Bove, just give

24  me a very high-level overview of the bases for the motion?

25          MR. BOVE:  Yes, your Honor.  There are two.  They are

P2JsADA1

1    laid out and they are articulated at paragraphs five and six of

2    the motion that's on the screen right now.

3            The first is just a straightforward exercise of

4    prosecutorial discretion guided by President Trump's Executive

5    Order 14147 relating to weaponization of the criminal justice

6    process as well as guidance issued by the Attorney General on

7    the day she was sworn in, February 5, 2025.

8            And basically what is set forth here is my conclusion

9    that this case, as a matter of prosecutorial discretion, should

10   not proceed because it reflects, at minimum, appearances of

11   impropriety that give cause for concern about abuse of the

12   criminal justice process.  And I believe it actually goes

13   further than that and it is an abuse of the criminal justice

14   process.

15           That matter, which, again, in an exercise of

16   prosecutorial discretion, is, I think, as your Honor alluded to

17   earlier, virtually unreviewable in this courtroom, especially

18   where guided by an Executive Order and direct guidance from the

19   Attorney General.

20           Paragraph six sets forth a separate basis, which I

21   believe invocates concerns about executive power that go right

22   to the core of Article II of the Constitution, as does

23   paragraph five, in such serious ways that they are also

24   virtually unreviewable in this courtroom.

25           Specifically, paragraph six sets forth my concerns

P2JsADA1

1    that the continuation of this prosecution is interfering with

2    both national security and immigration enforcement initiatives

3    being run and conducted by the Executive Branch.  Again,

4    pursuant to just vital core Article II powers of President

5    Trump.

6            THE COURT:  OK.  Thank you.

7            So, just so I understand, I just want to confirm my

8    understanding.  Broadly speaking, there are two bases for the

9    motion, and that's the appearances of impropriety as set forth

10   in paragraph five and the interference with the mayor's ability

11   to govern in New York City, as set forth in paragraph six.

12           MR. BOVE:  Five and six set forth my conclusions, and

13   I was mindful while preparing the motion of the need to give

14   the court more than just conclusory assertions.  There is also

15   each paragraph includes a partial factual basis that led to my

16   conclusions.  I emphasize partial.

17           THE COURT:  OK.  With respect to paragraph -- the

18   conclusion in paragraph five, which maybe for short I'll refer

19   to as appearances of impropriety, I just have a few questions

20   about the contours of what is here.  And, again, I just want to

21   be clear.  I'm not taking issue with it.

22           What I'm wanting to do is make sure that I understand

23   the metes and bounds of what the government's position is here.

24   And I guess the first question is whether what's asserted in

25   paragraph five refers to the actual purpose of the prosecution,

P2JsADA1

 1    the appearances around it, or both?

 2              I guess what I mean is, is paragraph five saying that

 3    the prosecution was actually motivated by improper reasons, has

 4    the appearance of being motivated by improper reasons, or both?

 5              MR. BOVE:  I use the word "appearances" in paragraph

 6    five because I believe that's sufficient to merit the motion

 7    that I filed.

 8              THE COURT:  OK.  But just in terms of what you're

 9    asking the court to rely on, you're not asking the court to

10    rely on any representation about the actual purpose of the

11    prosecution, but merely -- and when I say "merely," I don't

12    mean to downplay it, I mean to distinguish it -- the

13    appearances of impropriety?

14              Do I have that right?

15              MR. BOVE:  Well, I would -- I would say that the

16    actual purpose in the prosecution is the subject of a couple

17    ongoing investigations at the Department.  What I've relied on

18    in paragraph five is the appearances.

19              I respectfully submit that this paragraph is

20    independently sufficient for the court to grant the motion.

21    Obviously, I'm here personally to answer your Honor's questions

22    to give you the assurance you need to sign this.

23              I want to be clear, I think the only question is

24    whether there is any basis to believe that I made these

25    representations to the court in bad faith, and the answer to

P2JsADA1

1    that question is absolutely not.

2            THE COURT:  OK.  Well, Mr. Bove, I'm certainly not

3    taking any issue with that right now.  What I'm just trying to

4    make sure that I understand what the representation is.  And

5    what I hear you saying is the appearances of impropriety.

6            Now, so let me just stop there.  That's right,

7    appearances?

8            MR. BOVE:  That's what it says, yes.

9            THE COURT:  OK.  There is also a reference, I think,

10   in the paragraph to interference with the 2025 mayoral

11   election.  I have a similar question here, and it's whether or

12   not that's a representation about the purpose or the effect of

13   the prosecution or both?

14           MR. BOVE:  I mean, frankly, I think the fact that

15   Mayor Adams is sitting to my left right now is part of the

16   problem.  He's not able to be out running the City and

17   campaigning.  I think that is actual interference with the

18   election.

19           THE COURT:  It's having that effect.

20           MR. BOVE:  Correct.  I think the pendency of this

21   motion right now has that effect.

22           THE COURT:  OK.

23           Can I ask about paragraph six.  I think this is the

24   ability to govern rationale.

25           MR. BOVE:  I'm sorry to interrupt.

P2JsADA1

1          THE COURT:  I think this is where you talk about the

2     second rationale that you outlined at the top, the ability to

3     govern.  And the last sentence here refers to denial of access

4     to sensitive information.

5          And is that a reference to Mayor Adams not having a

6     security clearance?

7          MR. BOVE:  Yes.

8          THE COURT:  And let me make sure I have it right.

9          Is it that Mayor Adams had a security clearance before

10     and then lost it as a result of this case?

11          MR. BOVE:  I think defense counsel is probably in a

12     better position to speak to that.  My understanding is that he

13     currently does not have one as a result, I think, it's my

14     conclusion that he cannot communicate with the appropriate

15     authorities in a full, candid, complete way that is necessary

16     for Mayor Adams to protect the public.

17          I think, perhaps, more importantly for purposes of my

18     motion, the concern is that Mayor Adams' inability to

19     participate in that process impacts the national security and

20     immigration objectives that are referenced in the first

21     sentence, which, again, are core Article II powers of President

22     Trump.

23          THE COURT:  Mr. Spiro, perhaps I can --

24          Mr. Bove suggested I ask you.  Is it that Mayor Adams

25     had security clearance before the indictment was brought and

P2JsADA1

1    has lost it as a result?

2            MR. SPIRO:  Yes, that's right.  And he was also part

3    of the Joint Task Force at certain levels that he can't be part

4    of.  And he also can't, as I have answered before, deal with

5    and interact with the very federal government that brought a

6    case.

7            I think the court knows well what I think of this

8    case.  But he can't interact with them in a normal fashion, in

9    normal functioning, when they are the ones that brought this

10   kind of a case against him.

11           THE COURT:  Just focusing on the issue of the security

12   clearance for now, I'm not sure who the question is best posed

13   to.

14           Is the fact of an indictment the basis for losing a

15   security clearance, or is it something more specific than that

16   about the nature of the indictment?

17           MR. BOVE:  I can't speak to the internal processes

18   that led to that decision.  My core concern here, whether it's

19   the security clearance or more generally, is the mayor's

20   inability to communicate directly in a fulsome way.  I'm not

21   saying there have been no communications, but I think there

22   would be, my understanding, more and more complete

23   communications were he not subject to an indictment.

24           That is the motivating factor here.  Again, based on

25   the national security and immigration concerns that are flagged

P2JsADA1

1    in the first sentence.

2                THE COURT:  OK.

3                MR. SPIRO:  Your Honor, I also should just add that

4    there is other sensitive information that I don't know if it is

5    directly tied to security clearances that he is not getting

6    access to regarding terroristic threats and other things like

7    that from the federal government because of the pendency of

8    this case.

9                THE COURT:  OK.  Is Mayor Adams currently in the

10   process of reobtaining his security clearance, or does that

11   hinge upon resolution of this motion?

12               MR. SPIRO:  It hinges upon resolution of this motion.

13               THE COURT:  Is there any sense for how quickly

14   security clearance can be restored?

15               MR. BOVE:  Just a correction.  I don't concede that it

16   hinges, his security clearance resolution, hinges on the

17   resolution of this motion, because the security clearance issue

18   is another executive power issue that may or may not be

19   addressed depending on what the court does here.

20               I think they are separate questions, and it's not my

21   representation that that one is predicated on the other.

22               THE COURT:  Are they, in fact, separate, Mr. Bove,

23   just so I understand?

24               MR. BOVE:  I think the President in the Executive

25   Branch does have separate authority to grant a security

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

P2JsADA1

clearance.  And right now, this Executive Branch could revisit

that, but I think Mr. Spiro's point is the controlling one,

which is that separate from whether or not there is a formal

federal government security clearance for Mayor Adams, the

continuation of these proceedings impedes his ability to

communicate with federal authorities in a clear and complete

way.

THE COURT:  OK.  But just so I understand the

situation with the security clearance, it's possible that a

security clearance could be restored independently of how this

motion is resolved?

MR. BOVE:  I believe so.  That's just a matter of the

discretion of the Executive Branch would have to go through the

people who control those clearances.  I don't have the

particulars in front of me.

The sentence we're talking about is not limited to the

security clearance issue, it refers to sensitive information,

which is why I'm making the point that there is the security

clearance issue that I think, if it wasn't caused by this case,

it has happened concurrent to this case.  And there is the

related concern that, just more generally, a charged defendant

represented by counsel cannot communicate with some of the

federal authorities who are responsible for immigration

initiatives in the City.  For example, the U.S. Attorney's

office for the Southern District of New York.

1            THE COURT:  And just closing out on the security

2    clearance issue, is there any sense of how long it might take,

3    if the Executive decided to restore Mayor Adams' security

4    clearance, how long that process takes?

5            MR. BOVE:  No, because what I'm speaking about is the

6    President's ability, as the one elected official responsible

7    for the national security, to drive that process through his

8    discretion.  There is a lot of bureaucratic parts to these and

9    processes that will have to take place to get it restored.

10           THE COURT:  Do you have any sense as to how long those

11   bureaucratic processes could take?

12           MR. BOVE:  No.

13           THE COURT:  OK.  Mr. Bove, could I ask, are there

14   other examples you could point me to where this rationale has

15   been invoked in a decision to dismiss an indictment or to cease

16   a prosecution in some way where the defendant is a public

17   official with important responsibilities with respect to public

18   safety, immigration, or national security, or the like?

19           MR. BOVE:  I'm not aware of a case where it's a public

20   official at issue.

21           But there are cases where the U.S. Attorney's office

22   in this district has invoked "significant foreign policy

23   interests" as a basis to seek relief in a case.  One is the

24   *Victor Bout* case, which is docketed at 08 CR 365, in this

25   district.  I quote "significant foreign policy interests." I'm

P2JsADA1

1    quoting from docket entry 130.

2            The second case that uses a very similar quote,

3    "significant foreign policy interests," is *U.S. v.* -- I'm going

4    to struggle with the pronunciation here -- *Goudarzi*,

5    G-o-u-d-a-r-z-i, which is docketed in this district at

6    12 CR 830, at docket entry 8.  That's the government's

7    submission there.

8            And, you know, more broadly, the government, the

9    prosecutors, federal prosecutors, make decisions all the time

10   about how prosecutorial discretion is to be exercised and

11   whether it merits continuing with a case or not.  This motion

12   reflects a decision made at the Department of Justice about

13   this particular case.

14           Other than the fact that, you know, I think there is a

15   lot of people in the courtroom today, I don't think there is

16   anything particularly exotic about it.  This is a standard

17   exercise of prosecutorial discretion pursuant to guidelines

18   that the President and the Attorney General have put in place.

19           THE COURT:  If I may ask a question just about, again,

20   kind of the contours of this argument.  And, again, I'm not

21   taking issue with it.  I'm just trying to understand it.

22           Would a rationale like this, this ability to govern

23   rationale, potentially apply to other public officials with

24   significant public safety national security responsibilities

25   here in New York, like, the police commissioner, for example?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1          Could it potentially be applicable in the event that

2   the police commissioner were subject to some sort of

3   investigation or prosecution?

4          MR. BOVE:  Yes, absolutely.  I think that it's an

5   obligation of federal prosecutors at the outset of a case and

6   throughout to consider whether their work is impacting the

7   safety of the community in a public official's ability to

8   protect the public, especially in such a critical time in this

9   City with the immigration problems that we face, the violent

10  crime problems that we face.

11         I say we.  I'm not a resident here anymore.  I think

12  it's clear that we do.  So it's absolutely an obligation of the

13  Department to consider those things and totally appropriate

14  exercise to do so as a matter of the Take Care Clause

15  obligation under the Constitution.

16         THE COURT:  And separate and apart from New York's,

17  the context of New York City, could it apply to other chief

18  executive-type public officials, like the mayor, like a

19  governor of a border state, for example, who also has public

20  safety immigration-related and national security

21  responsibilities, if one of them were ever subject to

22  investigation or prosecution?

23         MR. BOVE:  Yes.  You know, every case requires a fact-

24  specific analysis about the federal interests in play, whether

25  the case is worth bringing, what policy priorities it may or

P2JsADA1

may not interfere with.  Absolutely.

        If a case, if an ongoing prosecution presents national security concerns or concerns about the President's ability to maintain an immigration policy that he was elected to implement and enforce, then it would absolutely, the Department will absolutely consider that in connection with current cases, ongoing cases, cases that are under investigation.  It's a totally appropriate consideration.

        THE COURT:  And just so, again, I'm trying to understand the rationales.

        MR. BOVE:  Yes.

        THE COURT:  The other one had to do with, in part anyway, the appearance of impropriety had to do with the election.  So I guess I shouldn't assume.  Again, I should ask you.

        I'm sorry.  Let me back up and ask you about that rationale.

        My understanding of that rationale is that it arises from a defendant's status as a candidate.  That it's because, at least that portion about election interference, I mean, it's because the defendant in this case is a candidate for office, not because he's a public official.

        So, in other words, that rationale could apply to a candidate who's not a public official?

        MR. BOVE:  Correct.

P2JsADA1

 1          THE COURT:  And it wouldn't apply to a public official

 2    who's not a candidate, so an unelected public official or a

 3    retiring public official or retired public official wouldn't

 4    apply, the election interference component of what you're

 5    applying to?

 6          MR. BOVE:  It applies to candidates.

 7          THE COURT:  This rationale, the ability to govern,

 8    that doesn't apply to candidates?

 9          I'm sorry that my questions are so elementary.

10          MR. BOVE:  No, it's...

11          THE COURT:  I'm trying...

12          MR. BOVE:  We're talking about two separate

13    paragraphs.

14          THE COURT:  So this one applies to current public

15    officials, not candidates, the ability to govern rationale.

16          MR. BOVE:  Well, if I could, Judge.

17          THE COURT:  Yes.

18          MR. BOVE:  What I have emphasized here about paragraph

19    six and the rationale is federal national security concerns and

20    federal immigration concerns.  Again, core constitutional

21    powers of the Executive Branch.

22          So I don't think, in our exchange, I don't sense that

23    there is an effort by the court to narrow the rationale, but I

24    just want to place emphasis on the points that I think are

25    dispositive, which is that paragraph six reflects an exercise

P2JsADA1

1    of prosecutorial discretion based on concerns that this

2    particular case, under these current circumstances, interferes

3    with the President's efforts in the national security realm and

4    to implement his immigration agenda.

5          THE COURT:  And I don't think I'm trying to narrow it.

6    I'm trying to figure out who it potentially applies to.  I

7    think I just have one more question about it.

8          Is this a rationale that applies regardless of the --

9    is this a rationale that turns in any way on the nature of the

10   charges?

11         Is it about the characteristics of the defendant, or

12   is it some balancing between those things and the charges?

13         MR. BOVE:  Well, I think in this particular case, one

14   of the things that makes -- especially the concerns in

15   paragraph six about interference with the mayor's ability to

16   govern, arises from the complexity of the charges and the

17   volume of discovery and the burdens on the mayor and the need

18   to prepare for a trial.  A trial that, I think, is worth noting

19   is scheduled to begin just about only two months before the

20   primaries in that election.

21         So part of the analysis here, the concerns that I have

22   are about this specific case, the huge volume of discovery, and

23   the need for any defendant to have a fair and reasonable amount

24   of time to prepare for trial.

25         THE COURT:  OK.  Thank you, Mr. Bove.

P2JsADA1

1          I don't think I have any other questions about the

2     motion right now.  I'll circle back if I do.  I don't think I

3     do.

4          At this point, I really only have questions about some

5     documents that were recently filed on the docket.

6          So maybe I could turn to you, Mr. Spiro.

7          MR. SPIRO:  Yes, your Honor.

8          THE COURT:  I'm not planning on getting into the

9     substance of them, I just want to make sure I understand the

10    timing and what they are.

11         MR. SPIRO:  Your Honor, if I may just --

12         THE COURT:  Oh, sure.

13         MR. SPIRO:  -- comment on a couple of things the court

14    asked me during that discussion of Mr. Bove.

15         THE COURT:  Questions that I had for Mr. Bove, or

16    questions that I had for you?

17         MR. SPIRO:  Well, I did want to revisit just the

18    revocation of the security clearance question that came to me

19    and bounced off.

20         THE COURT:  Oh, sure.

21         MR. SPIRO:  Because, you know, I was there.  It was

22    revoked after and because of the indictment.  I don't think it

23    was an independent act.  It was because of this case.

24         And I don't think that the theoretical ability of an

25    executive order or some other, you know, third-tier ability for

1    somebody to get it back is sort of relevant to that analysis.

2              The other thing that I just wanted to say, because you

3    asked the government about, sort of, these collateral issues

4    that they talk about in the motion.  You know, I will say,

5    again, it comes up as a criminal defense lawyer constantly.  If

6    a doctor can't prescribe medication, if a company can't make

7    some device, the government is always and constantly, and we

8    are constantly as defense lawyers, telling the government that

9    if a case makes very little sense and is very weak and the

10   consequences to collateral consequences are very drastic, that

11   it makes no sense to bring the prosecution or to continue with

12   the prosecution.

13             It's literally an everyday thing.  I just wanted to

14   comment on those two notions that came up.

15             THE COURT:  Thank you, Mr. Spiro.

16             To the point about, you just raised about the security

17   clearance, I think my question was not geared so much at

18   whether the loss of the security clearance here was independent

19   of the indictment, but whether it was the result of the

20   indictment itself or the specific nature of the charges in

21   the -- if there was something about the nature of the charges

22   in the indictment that affected the security clearance.

23             I'm not an expert in this, so I don't know if you have

24   any indictment for any kind of offense on you, regardless of

25   the nature of it.  You know, it's hard for me to think of a

P2JsADA1

1  good example right now.  But something that, I don't know, to

2  an ordinary person's mind might not be obviously connected to

3  something that might impinge upon security and whether you

4  would lose your security clearance as a result of that, or if

5  there was something specific about these charges.  That's all.

6          MR. SPIRO:  If they are revoking them on an airline

7  upgrade case, I think they are revoking them on every case.

8          THE COURT:  OK.  Thank you, Mr. Spiro.

9          So I just want to ask you, I think, about some of the

10  submissions that you've put in.  I want to start with ECF, I

11  guess it's, 130-1.

12          This was an exhibit that I think, if memory serves,

13  you attached to in response to a couple of requests to put in

14  amicus briefs in this case.  It's a letter from you to Mr. Bove

15  dated February 2 -- I'm sorry -- February 3, 2025.

16          MR. SPIRO:  Yes, your Honor.

17          THE COURT:  OK.  I believe in this letter you make

18  some of the same arguments that are raised by the government in

19  its motion.  You raise concerns about appearances of

20  impropriety and also the mayor's ability to govern.  I'm kind

21  of talking about it at a very high level.  And also about the

22  strengths, or lack thereof, of the case in your view.

23          Is that basically right?

24          MR. SPIRO:  Yes.  The same, many of the same arguments

25  that I've been making since this happened, that the court is

P2JsADA1

1   well aware, I think everyone is well aware of.  Obviously at

2   that time, I was pointing to a couple of additional questions

3   the government had.  And so I obviously addressed those as

4   well.

5            THE COURT:  OK.  And the amicus brief that you're

6   responding to, or I should say briefs, there is one at ECF No.

7   128 that's proposed by some former United States Attorneys and

8   that's their letter.  I want to ask about document 128-2.

9            (Continued on next page)

P2JAAda2

1           THE COURT:  And, I'm sorry, this actually was not a

2  question for Mr. Spiro.  These questions will be addressed to

3  Mr. Bove.

4           Mr. Bove, I believe this is a memorandum dated

5  February 10, 2025, regarding the Justice Department's decision

6  to dismiss the case, and that is titled "Dismissal Without

7  Prejudice of Prosecution of Mayor Adams."

8           Is that right?

9           MR. BOVE:  Yes, Judge.

10          THE COURT:  And you're familiar with this memo?

11          MR. BOVE:  Yes.

12          THE COURT:  Are you the author of the memo?

13          MR. BOVE:  Yeah.  Those are my initials.

14          THE COURT:  Okay.  And this is authentic?  It was

15  submitted in connection with an amicus brief.  I want to

16  confirm that.

17          MR. BOVE:  This is the memorandum I sent to

18  Ms. Sassoon on that date.

19          I do have a procedural objection to the amicus brief

20  we're talking about, but I want to be responsive first to the

21  Court's question.

22          THE COURT:  Okay.  I mean, I haven't made any kind of

23  ruling on the amicus brief.

24          MR. BOVE:  I would like to be heard on that point.

25          THE COURT:  I do want to address your views about

P2JAAda2

1    whether or not the Court should consider certain things,

2    including the amicus brief.

3          But this memo, Mr. Bove, did this represent the

4    official views of the Justice Department as of this date?

5          MR. BOVE:  I mean, this is the authentic document that

6    I sent to Danielle Sassoon.

7          THE COURT:  Okay.  And when I consider the

8    government's motion to dismiss, is it appropriate for me to

9    consider what's in this memo?

10          MR. BOVE:  No.

11          THE COURT:  Okay.  Explain that to me.

12          MR. BOVE:  The record here is the motion that I made.

13    The only question -- basically, if you start with the *Rinaldi*

14    footnote 15, the Supreme Court case, you look at the more

15    recent Second Circuit cases, *Blaszczak*, *HSBC*, the only two

16    questions are is there some concern about harassment.  Your

17    Honor has addressed that conclusively today.

18          And then, second, is there a question about whether

19    the motion is so clearly contrary to the public interest that

20    the Court should not grant it.

21          I'm not sure that I've seen a case where that

22    conclusion has been reached.  But I think what the Second

23    Circuit has said is ultimately that boils down to whether

24    there's bad faith.  The question of bad faith is just me, as an

25    officer of the Court, who has practiced in this district for

1    almost 10 years, here as the Deputy Attorney General, telling

2    you these are the good faith bases for the motion based on

3    prosecutorial discretion.  That's the end of the inquiry.  That

4    is, first of all, I'm telling you as an officer of the court

5    that that is made in good faith.

6        Second, I'm entitled to a presumption of regularity

7    around that.  That presumption is guided by the case law around

8    selective and vindictive prosecution in *Armstrong*, the Supreme

9    Court case.  The only way that that presumption is really

10   rebutted is by clear evidence to the contrary.  That's a quote

11   from *Armstrong*.  There's no evidence to the contrary of my

12   representation of good faith.  I think what these amicus briefs

13   have suggested is they believe -- they speculate about some

14   kind of *quid pro quo*.  Your Honor has conclusively addressed

15   that on the record today by questions to Mayor Adams under

16   oath.

17       And, so, I could go on.  The fact of seeking dismissal

18   without prejudice, as I've already said today, is the default

19   state of matters under Rule 48.  If I hadn't said that in the

20   motion, the Court would presume that that was my intention.  I

21   think it's also, you know, there's no appearances of

22   impropriety around a federal prosecution seeking dismissal

23   without prejudice of a criminal case.  The President of the

24   United States is currently subject to a dismissal without

25   prejudice of a case in the District of Columbia, where the

P2JAAda2

```
1    district court went out of its way to say that when the

2    President's immunity no longer applies when he leaves office,

3    in the district court's view, that that case could be resumed.

4    So, if that was okay, there's no basis to question my

5    representations to this Court, especially after the record your

6    Honor created today, in the motion.

7              And so I do think -- you have some discretion here,

8    and I think you noted at the outset that it was cabined.

9    Considering documents outside the record I don't think is part

10   of that discretion.  Even if your Honor considers this, it's

11   entirely consistent with everything that I've said.

12             THE COURT:  Okay.  Thank you, Mr. Bove.

13             I want to ask Mr. Spiro now about another letter you

14   filed.  I think it's at ECF 130.

15             Ms. Morales, will you please bring that up on the

16   screen.

17             So, Mr. Spiro, this is a letter from you to the Court

18   dated February 18, 2025, responding to the proposed amicus

19   briefs.  Actually, I just want to turn to the last sentences in

20   it.  The last two sentences are "what we never said or

21   suggested to anyone was that Mayor Adams would do X in exchange

22   for Y, and no one said or suggested to us that they would do Y

23   in exchange for X.  We are prepared to confirm these points

24   under oath in sworn declarations."

25             I just want to understand what this is a reference to.
```

P2JAAda2

| | |
|---|---|
| 1 | This is a response to a letter from the former acting U.S. |
| 2 | Attorney, Ms. Sassoon.  Is that right? |
| 3 | Or, rather, what the amicus briefs represent as one. |
| 4 | MR. SPIRO:  Yeah.  I don't know what I'm responding to |
| 5 | anymore.  But when somebody says something false enough, enough |
| 6 | times, I'm going to say something.  And so I think it's |
| 7 | responding to anyone who suggests such a thing, because it |
| 8 | never happened. |
| 9 | THE COURT:  When you say "we are prepared to confirm |
| 10 | these points under oath," may I ask just who you're referring |
| 11 | to?  It wasn't clear to me from reading this. |
| 12 | MR. SPIRO:  My colleague and I who were at the |
| 13 | meeting.  And I don't expect -- in fact, I know no one is going |
| 14 | to come in and say anything otherwise. |
| 15 | And I'm happy to raise my right hand right now. |
| 16 | THE COURT:  Thank you, Mr. Spiro.  I just wanted |
| 17 | clarification on what you were referring to in that letter. |
| 18 | Thank you for all that.  Unrelated question, and it |
| 19 | may be a moot question.  The last order that I issued on the |
| 20 | speedy trial clock was I believe on November 1, 2024, which |
| 21 | excluded time until the date of trial, which is set to begin on |
| 22 | April 21st.  Now, the basis for that was that the exclusion of |
| 23 | time was necessary to give the parties time to review |
| 24 | discovery, consider motions, including under CIPA, and to |
| 25 | provide effective assistance while preparing for trial. |

1              Now, I have a request before me to dismiss the case

2    and not have trial.  Does that have an effect on the order that

3    I issued earlier?  Or because the trial date has not been taken

4    off the calendar, the motion has not yet been granted, does the

5    previous order stay in place?

6              MR. SPIRO:  I mean, I think it runs until this case is

7    dismissed.

8              THE COURT:  Mr. Bove?

9              MR. BOVE:  I'm not following exactly the sequence

10   here.

11             THE COURT:  Well, I've excluded time through

12   April 21st.  And I'm asking if that order should be vacated

13   given that it was premised on review of discovery in

14   preparation for trial.

15             On the other hand, I still haven't granted the motion,

16   so perhaps it shouldn't be.  And, again, all of this might be

17   moot very soon.  There's also the provision under the Speedy

18   Trial Act that automatically excludes time once a motion has

19   been filed.  I tend to think of that as applying to defense

20   motions, not to government ones, but I'm just not sure how the

21   pieces interlock, so I'm asking for your help.

22             MR. BOVE:  I think the automatic exclusion does apply

23   for government motions as well.  But I think the effect of, if

24   the Court were to grant this motion, would be to close the case

25   and vacate all orders.

P2JAAda2

1          THE COURT:  Yes.  Understood.  Okay.  Thank you.

2          Mr. Spiro, do you have a different view?

3          MR. SPIRO:  I think that if the case is dismissed, it

4    will vacate the issue.

5          THE COURT:  Yes.  I just meant sitting here at this

6    precise moment, what is the effect on the speedy trial clock?

7          MR. SPIRO:  I hate to digress, your Honor, but sitting

8    here, this precise moment, I'm looking and no appellate court

9    in this country ever, never once, has upheld a district court's

10   denial of an unopposed Rule 48 motion, ever.  And so that's

11   where my mind very much is.

12         And so the answer to the question, genuinely, is I

13   haven't given the idea of what would happen if not much thought

14   in terms of the Speedy Trial Act.

15         THE COURT:  Fair enough.  I think I got the answer

16   from Mr. Bove, at least as things currently stand.

17         I appreciate your patience and your time answering

18   these questions today.  This is a very complicated situation,

19   at least from where I sit.

20         The one other thing that I did reference and that you

21   eluded to, Mr. Bove, the amicus briefs and whether or not they

22   should be considered.

23         So I have two pending requests for amicus filings.

24   Something I've given some thought to, but haven't decided, is

25   whether it's helpful for me to consider either of those briefs

P2JAAda2

1    or the views of an appointed amicus on I know what seemed like

2    very simple legal issues here, but just on things like the

3    legal standard.  From my limited research, Rule 48 motions are

4    often unopposed, as this one is, but they are sometimes

5    opposed, particularly on the issue of whether or not dismissal

6    should be with or without prejudice.

7         As a general matter, in our system, adversarial

8    testing of a position is sometimes helpful to clarify a Court's

9    thinking and assist in the Court's decision making process to

10   make sure that the right process is engaged and the correct

11   results are achieved, but that may not be necessary here

12   either.

13        So I just want to hear your views on those things,

14   without regard to the specifics of these particular briefs,

15   just in terms of the Court's decision making process.  The

16   Supreme Courts sometimes, when there's no one to defend the

17   judgment below and the two sides that are normally adverse

18   converge on a position, will sometimes hear from someone else

19   to just kind of sharpen the thinking and make sure that the

20   Court is considering everything that it ought to.  And I just

21   wonder what your views are as to that here.

22        MR. BOVE:  I think that your Honor has created a very

23   clear record today by putting Mayor Adams under oath and

24   putting questions to him about -- that go I think directly to

25   this *quid pro quo* claim that no party has made to your Honor,

P2JAAda2

```
 1    but that the amicus, the proposed amicus briefs make.  And I
 2    think the mayor's responses are dispositive and controlling on
 3    that issue.  And you have a record undisputed that there is no
 4    *quid pro quo*.

 5           I don't concede, and I don't think it's correct, that
 6    even if there was a *quid pro quo*, there would be any issue with
 7    this motion.  But the Court doesn't even need to reach that
 8    based on the record that your Honor exercised discretion to
 9    create today, and I think in a very helpful way.

10           The government's position is that this motion should
11    be resolved as soon as possible.  And I say that because of the
12    serious concerns that we have raised, particularly with respect
13    to the national security issue and the immigration agenda
14    issue.  I do -- I acknowledge that the Court has a lot of
15    discretion about consideration of amicus arguments, inviting
16    amicus participation, but I don't think this is a case where
17    that will meaningfully aid the record that your Honor created
18    today.  Particularly if you accept and consider the common
19    cause amicus at Dkt. 124, to which the government has no
20    objection.

21           I think what your Honor -- I have no doubt that you
22    reviewed it already as a filing before the Court.  That's just
23    a document full of speculation about a *quid pro quo* that
24    doesn't exist, that's been refuted today.  And that gives, I
25    think, the Court a sense of what smart, professional, educated,
```

P2JAAda2

1    prepared lawyers, when they take the opposite adversarial view

2    to the parties here are going to come up with.  I don't expect

3    it would get any better.

4         I do object to consideration of the second amicus at

5    Dkt. 128 purported to be filed on behalf of a series of former

6    U.S. Attorneys.  And, again, acknowledging the Court has broad

7    discretion about if, how, and when to invite amicus

8    participation, a brief authored by Carey Dunne and Mark

9    Pomerantz, who are both central to the investigation at the New

10   York District Attorney's Office of President Trump, it just

11   comes from a place of such bias and lack of impartiality, that

12   that's not a friend of the Court's submission.  That's a group

13   of people claiming that -- I think the words in the brief are

14   there should be -- I think the word "roving" might have even

15   been used, a roving factual inquiry into the situation.

16        That's just partisan noise.  That's not an amicus

17   brief actually trying to help your Honor with the issues that

18   are before you.  So I submit that the Court should not accept

19   the amicus at Dkt. 128.

20        And, ultimately, as I've said, I think the legal

21   issues, the legal issues that this motion presents, they are

22   straightforward, Judge.  They're controlled by Second Circuit

23   authority in *Blaszczak* and in *HSBC*.  There's only two prongs

24   for the Court to consider, whether leave of the Court under

25   Rule 48 is necessary.  Neither is -- they're both consented to

P2JAAda2

1    here.  The only one that I think even warrants a pause is the

2    question of whether this motion is so clearly contrary to the

3    public interest that the Court should intervene.

4            Your Honor has created a record here today that I

5    think establishes that it's not based on Mayor Adams' sworn

6    responses.  Based on my representations as the decision maker,

7    that's why I'm here today, is to make very clear and so you can

8    look me in the eye and see how I came to these conclusions and

9    we can talk about them.

10            There's no basis, legal basis -- I understand there's

11   some people behind me who doubt me -- but there's no legal

12   basis to question the things that I've said in that motion that

13   I signed.  And as a result of that, this motion should be

14   granted promptly so that the mayor can get back to work,

15   unhindered, unburdened, not having to deal with this case and

16   he can focus on protecting the city.

17            THE COURT:  Thank you, Mr. Bove.

18            Mr. Spiro, would you like to speak about the amicus

19   briefs?

20            MR. SPIRO:  Yes, your Honor.

21            So as the Court has pretty much said, and I'll

22   paraphrase, this is an extremely simple and very narrow legal

23   issue.  Your Honor came out and correctly articulated the

24   standard.  Any nonparties involved in this at all create major

25   issues in terms of separation of powers, due process rights.

1  Any appointment or allowance at all of doing anything beyond

2  the submission of papers, which is -- it was already done, is

3  fraught with peril.

4  Any person that comes before the Court could have

5  political motivations.  The Court would then have to assess all

6  of that.  Meanwhile, as this process has played out since the

7  Department of Justice announced their dismissal, there have

8  been prejudicial things, lies, misleading statements, leaks.

9  Right?  The Court may remember, I took issue with the

10  Department of Justice prosecutors leaking all that information

11  all that time.

12  Now we have letters going back and forth --

13  THE COURT:  Mr. Spiro, I found that there wasn't

14  evidence that any information out there in the media was

15  attributable to the prosecution team.

16  MR. SPIRO:  Well, I don't want to digress.  We didn't

17  have a hearing about it.  But the reality is, the letter that

18  leaked, the letter that I think we can both agree, sir, the

19  letter that leaked with the back and forth between the

20  Department of Justice did have prejudicial and false

21  information about the mayor in it.  There was a letter that

22  leaked, that we can I hope both agree, couldn't have been

23  leaked, since it was internal to the Department of Justice,

24  from any third outside party or bogeyman.

25  THE COURT:  I'm sorry.  You're not referring to stuff

P2JAAda2

1   that was the subject of motions practice earlier?

2          MR. SPIRO:  No, I'm talking about now.

3          THE COURT:  Okay.

4          MR. SPIRO:  Yes, your Honor.

5          THE COURT:  I got confused.  I apologize.  Go ahead.

6          MR. SPIRO:  Not at all.  But I'm just saying, I think

7   the Court has to think about that.  And the Court can keep

8   thinking about, and the Court can always revisit its beliefs.

9          Earlier in the case when I said things like, doesn't

10  this seem a little off, and doesn't this seem a little

11  politically motivated, and doesn't it seem there are a lot of

12  leaks going on.  The Court can look at the cavalier nature with

13  which the prosecutors put things in those letters that went

14  back and forth when the Department of Justice was discussing

15  this matter.

16         Those prejudicial and harmful and untrue statements

17  then leaked, those implicated 6(e), I don't think anyone can

18  come to this Court and tell me credibly that that could have

19  been anybody other than the people within the Department of

20  Justice.  How could that be?  Didn't go to a defense lawyer.

21  Didn't go to a bogeyman.

22         So we are, as we stand here today, being actively

23  harmed by this ongoing process, which I think is another

24  argument to curtail this, to keep it simple.  And there's no

25  reason to sort of carry on here.

P2JAAda2

1          Every day harms the election and those concerns harms

2    democracy every minute that it's not entered.  And so I think

3    those arguments are fair to make in this unique circumstance in

4    the Court evaluating.  Again, all of this is a balancing, the

5    kind of case that is brought versus the other equities and

6    collateral issues.  The amount of help the Court really

7    needs -- the Court doesn't need legal help on this issue, I'm

8    quite confident.  The Court already stated the standard right.

9          So it's the value of that versus all these harms we're

10   talking about, harms of delay, harms like the leaks that have

11   happened because the case wasn't immediately dismissed when it

12   should have been.

13         So I think all of those counts against expanded amicus

14   submissions that the Court doesn't need.

15         THE COURT:  Just so I understand it, what I heard from

16   the government, and, Mr. Bove, correct me if I'm wrong, is that

17   you object to the brief, the second of the two amicus briefs

18   that was filed, the former U.S. Attorneys one, but not to the

19   common cause one.  Whereas, Mr. Spiro, you object to both?

20         MR. SPIRO:  We take no position on whether the pending

21   letter motion is part of the record.  If it ends there.

22         THE COURT:  I'm sorry.  Do you object to the Court

23   considering -- granting either of the motions?  I shouldn't put

24   it in terms of the Court.

25         Do you object to either of the motions for amicus

P2JAAda2

1    submissions?  I just want to make sure my record is clear so I

2    understand what I'm doing when I'm ruling.

3            MR. SPIRO:  I don't take a position on the first

4    letter motion.

5            THE COURT:  Okay.  Thank you.

6            MR. SPIRO:  I don't take a position on it.  Any

7    further involvement, I rest on the record I just made.

8            THE COURT:  The second letter motion you object to?

9            MR. SPIRO:  Correct.

10           THE COURT:  Okay.

11           MR. SPIRO:  And any further involvement.

12           THE COURT:  Okay.  Thank you, Mr. Spiro.

13           So I think I understand your position on that.  I

14   think I understand your answers to my questions.  I'm going to

15   take everything that you said under careful consideration.  I

16   understand that there is an important interest here in -- I

17   should say it's not in anyone's interest here for this to drag

18   on.  I understand that.  It's not in the government's interest.

19   It's not in Mayor Adams', as the defendant, and it's not in the

20   public's interest.  But to exercise my discretion properly, I'm

21   not going to shoot from the hip right here on the bench.  I

22   want to take the time that is necessary to carefully consider

23   everything that you have put before me and said today, and I am

24   considering all of that.  I want to make sure that I consider

25   everything appropriate, and that I don't consider anything

P2JAAda2

1   inappropriate, and make a reasoned decision that is mindful of

2   my role, which I understand here is quite narrow.

3          So I really appreciate you coming here on short

4   notice.  I appreciate the submissions.  I am grateful for your

5   patience as I consider these issues carefully.

6          Is there anything further that would you like to

7   raise?

8          MR. BOVE:  No, your Honor.  Thank you for the time.

9          THE COURT:  Thank you, Mr. Bove.

10          Mr. Spiro?

11          MR. SPIRO:  No, your Honor.  Thank you.

12          THE COURT:  Thank you all very much.  We're adjourned

13   for today.

14          (Adjourned)

15

16

17

18

19

20

21

22

23

24

25