**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

v.

ERIC ADAMS,

*Defendant*.

Case No. 1:24-cr-00556-DEH

## BRIEF OF COURT-APPOINTED *AMICUS CURIAE* PAUL D. CLEMENT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.........................................................................................ii

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................ 1

STATEMENT OF THE CASE..................................................................................... 3

      A.      Legal Background .................................................................................. 3

      B.      Factual and Procedural Background .................................................... 11

ARGUMENT ............................................................................................................. 12

I.      Separation-Of-Powers Principles, Which Exist Primarily To Promote Individual Liberty, Inform The Courts' Role In Reviewing Motions Under Rule 48(a) .................................................................................................................. 12

II.     Rule 48(a) Vests Courts With A Limited, But Essential, Power To Vindicate Liberty By Avoiding Even The Appearance Of Executive Overreach ............................ 16

CONCLUSION.......................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Bond v. United States*,
  564 U.S. 211 (2011) ............................................................................... 13

*Bordenkircher v. Hayes*,
  434 U.S. 357 (1978) ............................................................................... 13

*Dortch v. United States*,
  203 F.2d 709 (6th Cir. 1953) ................................................................. 14

*Halloran v. State*,
  80 Ind. 586 (1881) ................................................................................... 3

*Heckler v. Chaney*,
  470 U.S. 821 (1985) ............................................................................... 14

*Hilbert v. Dooling*,
  476 F.2d 355 (2d Cir. 1973) ................................................................. 19

*In re Aiken Cnty.*,
  725 F.3d 255 (D.C. Cir. 2013) ......................................................... 14, 16

*In re Richards*,
  213 F.3d 773 (3d Cir. 2000) ............................................................... 8, 20

*In re United States*,
  345 F.3d 450 (7th Cir. 2003) ......................................................... *passim*

*Lorance v. Commandant, U.S. Disciplinary Barracks*,
  13 F.4th 1150 (10th Cir. 2021) ............................................................. 14

*Morrison v. Olson*,
  487 U.S. 654 (1988) ......................................................................... 10, 13

*Oyler v. Boles*,
  368 U.S. 448 (1962) ............................................................................... 16

*Raines v. Byrd*,
  521 U.S. 811 (1997) ............................................................................... 13

*Rice v. Rivera*,
  617 F.3d 802 (4th Cir. 2010) ................................................................. 9

*Rinaldi v. United States*,
  434 U.S. 22 (1977) ....................................................................... *passim*

*United States v. Abreu,*
  747 F.Supp. 493 (N.D. Ind. 1990) ......................................................... 4, 14

*United States v. Ammidown,*
  497 F.2d 615 (D.C. Cir. 1973) .............................................................. 4, 17

*United States v. Armstrong,*
  517 U.S. 456 (1996) ................................................................................ 15

*United States v. B. G. G.,*
  53 F.4th 1353 (11th Cir. 2022) ............................................................ 17, 19

*United States v. Batchelder,*
  442 U.S. 114 (1979) ................................................................................ 15

*United States v. Becker,*
  221 F.Supp. 950 (W.D. Mo. 1963) ........................................................... 6

*United States v. Bernard,*
  42 F.4th 905 (8th Cir. 2022) ..................................................................... 8

*United States v. Bettinger Corp.,*
  54 F.R.D. 40 (D. Mass. 1971) ................................................................... 6

*United States v. Blaszczak,*
  56 F.4th 230 (2d Cir. 2022) ...................................................................... 9

*United States v. Cowan,*
  524 F.2d 504 (5th Cir. 1975) ............................................................. 14, 17

*United States v. Cox,*
  342 F.2d 167 (5th Cir. 1965) ................................................................... 13

*United States v. Derr,*
  726 F.2d 617 (10th Cir. 1984) ........................................................... 10, 19

*United States v. Doe,*
  101 F.Supp. 609 (D. Conn. 1951) ............................................................. 6

*United States v. Doody,*
  2002 WL 562644 (S.D.N.Y. Apr. 16, 2002) ............................................. 7

*United States v. Fokker Servs. B.V.,*
  818 F.3d 733 (D.C. Cir. 2016) ....................................................... 8, 9, 18

*United States v. Friedman,*
  107 F.R.D. 736 (N.D. Ohio 1985) ........................................................... 17

*United States v. Greater Blouse, Skirt & Neckwear Contractors Ass'n*,
    228 F.Supp. 483 (S.D.N.Y. 1964) ........................................................................ 16, 18

*United States v. Henderson*,
    951 F.Supp.2d 228 (D. Mass. 2013) ........................................................................ 18

*United States v. HSBC Bank USA, N.A.*,
    863 F.3d 125 (2d Cir. 2017) ......................................................................... *passim*

*United States v. Hudson*,
    11 U.S. (7 Cranch) 32 (1812) .................................................................................. 13

*United States v. KPMG LLP*,
    2007 WL 541956 (S.D.N.Y. Feb. 15, 2007) .............................................................. 10

*United States v. Krakowitz*,
    52 F.Supp. 774 (S.D. Ohio 1943) .............................................................................. 4

*United States v. Madzarac*,
    678 F.Supp.3d 42 (D.D.C. 2023) .............................................................................. 10

*United States v. N.V. Nederlandsche Combinatie Voor Chemische Industrie*,
    428 F.Supp. 114 (S.D.N.Y. 1977) ......................................................................... 6, 23

*United States v. Nixon*,
    418 U.S. 683 (1974) ............................................................................................. 13

*United States v. Pimentel*,
    932 F.2d 1029 (2d Cir. 1991) .................................................................................. 8

*United States v. Raineri*,
    42 F.3d 36 (1st Cir. 1994) ...................................................................................... 10

*United States v. Rosenberg*,
    108 F.Supp.2d 191 (S.D.N.Y. 2000) ...................................................................... 7, 8

*United States v. Salinas*,
    693 F.2d 348 (5th Cir. 1982) .................................................................................... 7

*United States v. Shanahan*,
    168 F.Supp. 225 (S.D. Ind. 1958) ............................................................................ 6

*United States v. Smith*,
    55 F.3d 157 (4th Cir. 1995) ..................................................................................... 8

*United States v. Stevenson*,
    425 F.Supp.3d 647 (S.D.W. Va. 2018) .................................................................... 14

*United States v. Towill*,
    548 F.2d 1363 (9th Cir. 1977) ........................................................................... 10, 19

*United States v. Toyota Motor Corp.*,
    278 F.Supp.3d 811 (S.D.N.Y. 2017) ............................................................................ 21

*United States v. Vasquez*,
    966 F.2d 254 (7th Cir. 1992) ...................................................................................... 4

*United States v. Weiss*,
    1993 WL 77285 (S.D.N.Y. Mar. 12, 1993) .................................................................. 9

*Wayte v. United States*,
    470 U.S. 598 (1985) ............................................................................................. 18, 21

*Woodring v. United States*,
    311 F.2d 417 (8th Cir. 1963) ....................................................................................... 5

*Young v. United States ex rel. Vuitton et Fils S.A.*,
    481 U.S. 787 (1987) ................................................................................................... 15

**Constitutional Provision and Statutes**

U.S. Const. art. II, §2, cl. 1 ............................................................................................ 14

5 U.S.C. §552 ................................................................................................................ 21

18 U.S.C. §371 .............................................................................................................. 11

18 U.S.C. §666 .............................................................................................................. 11

18 U.S.C. §1343 ............................................................................................................ 11

18 U.S.C. §3161 ...................................................................................................... 17, 18

52 U.S.C. §30109 .......................................................................................................... 11

52 U.S.C. §30121 .......................................................................................................... 11

**Rule and Other Authorities**

Fed. R. Crim. P. 48 .................................................................................................. 1, 3, 4

10 Annals of Cong. 596 (1800) ...................................................................................... 3

Lucilius A. Emery, *The* Nolle Prosequi *in Criminal Cases*, 6 Me. L. Rev. 199 (1913) ...................... 3

Thomas Ward Frampton, *Why Do Rule 48(a) Dismissals Require "Leave of Court"?*,
    73 Stan. L. Rev. Online 28 (2020) ........................................................................... 4, 7

Memorandum for Respondent, *Rinaldi v. United States*, No. 76-6194 (U.S. July 19, 1977)............... 6

*Memorandum from the Sup. Ct. to the Advisory Comm. on Rules of Crim. Proc.*
(June 10, 1942)..................................................................................................................... 5

*Memorandum with Suggestions with Reference to the Proposed Rules of Criminal*
*Procedure* (Apr. 11, 1944) .................................................................................................. 5

Saikrishna Prakash, *The Chief Prosecutor*, 73 Geo. Wash. L. Rev. 521 (2005) ................................... 3

Press Release, U.S. Dep't of Just., Off. of Pub. Affs. (Jan. 14, 1976),
https://perma.cc/ZY5Y-YLJ2............................................................................................ 10

Madeleine J. Wilken & Nicholas Triffin, *Drafting History of the Federal Rules of*
*Criminal Procedure* (1991).................................................................................................. 5

Charles H. Winfield, Nolle Prosequi, 5 Crim. L. Mag. 1 (1884)......................................................... 3

Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc. Crim.*
(4th ed. June 2024 Update). .......................................................................... 5, 17, 20, 24

## INTRODUCTION AND SUMMARY OF ARGUMENT

Since their adoption in the 1940s, the Federal Rules of Criminal Procedure have consistently provided (with minor changes in wording) that "[t]he government may, *with leave of court*, dismiss an indictment." Fed. R. Crim. P. 48(a) (emphasis added). Rule 48(a) deliberately departed from prior practice by reserving a judicial role when the executive seeks to unwind criminal process that has proceeded past the grand jury phase. The Rule does not allow the executive to dismiss a prosecution unilaterally or dictate that a dismissal be without prejudice. But Rule 48(a) does not—and could not—fundamentally transform the dynamic among the branches. Nothing in the Rule expressly authorizes the Article III branch to force the Article II branch to continue a prosecution against its will, or to appoint a private party to take it over. Moreover, like the constitutional separation of powers itself, the principal office of Rule 48(a) is the protection of individual liberty. It protects the speedy-trial rights and other liberty interests of the defendant. Consistent with these principles, Rule 48(a) provides the court with an important, but limited, role in assessing the government's motion to discontinue an ongoing prosecution. The Rule authorizes the court to consider how the prosecution should be discontinued—with or without prejudice—rather than empowering the court to take over the distinctly executive prosecutorial function.

The same basic separation-of-powers principles that counsel against a court maintaining a prosecution over the executive's objection support dismissal *with* prejudice here. The executive's unilateral option for ending a prosecution—namely, a pardon—more closely resembles a dismissal with prejudice. And the executive's undoubted power to decline to initiate a prosecution leaves a citizen's liberty untouched. But a dismissal without prejudice creates a palpable sense that the prosecution outlined in the indictment and approved by a grand jury could be renewed, a prospect that hangs like the proverbial Sword of Damocles over the accused. Such an ongoing prospect of re-indictment is particularly problematic when it comes to the sensitive task of prosecuting public

officials. There is an inherent risk that once an indictment has been procured, the prospect of re-indictment could create the appearance, if not the reality, that the actions of a public official are being driven by concerns about staying in the good graces of the federal executive, rather than the best interests of his constituents. That prospect explains the absence of deferred prosecution agreements involving public officials. Dismissal with prejudice avoids those concerns and promotes another important separation-of-powers virtue—namely, accountability.

These general principles inform the specific questions the Court has asked the parties and *amicus* to address. In short, Rule 48(a) gives the court an important, but limited, role, principally focused on how—not whether—a prosecution should be dismissed. In discharging that function, a court can consider materials outside the Rule 48(a) motion itself, but should conduct that inquiry with sensitivity to separation-of-powers principles and avoid unnecessary intrusion into the prosecutorial function. In a rare case like this, where executive deliberations have already been made public, the Court need not ignore those materials. Moreover, the proper scope of judicial inquiry is informed by the primary judicial mission under Rule 48(a)—namely, deciding whether to dismiss the prosecution with or without prejudice. Thus, where the publicly available materials are sufficient to support dismissal with prejudice, there is no need for further inquiry. Here, the publicly available materials—and the basic dynamic of a federal prosecution of a popularly elected public official—counsel in favor of dismissal with prejudice. Finally, even if this Court were to deny the government's motion, it could not constitutionally force the executive to proceed, which would likely necessitate a dismissal with prejudice on speedy-trial grounds.

In short, Rule 48(a) gives this Court a vital, but limited, role in determining whether dismissal should be with or without dismissal. And all roads here—including the same separation-of-powers principles that constrain the Court's options—lead to dismissal *with* prejudice.

## STATEMENT OF THE CASE

### A.  Legal Background

1. Before the adoption of Rule 48, "the public prosecutor" had plenary authority to "enter a *nolle prosequi* in his discretion, without any action by the court."  Fed. R. Crim. P. 48(a) advisory committee's note 1 (1944).  That unilateral authority represented a continuation from English practice.  By at least the mid-1600s, "the power of the prosecuting officer" to enter *nolle prosequi* in the law courts of England "[wa]s absolute."  Charles H. Winfield, Nolle Prosequi, 5 Crim. L. Mag. 1, 2 (1884); *see also id.* at 6-7 (describing as "very clear" the absence of a judicial role in *nolle prosequi*).  In line with that tradition, Presidents Washington, Adams, and Jefferson all exercised the power to direct "district attorneys to begin *and cease* prosecutions."  Saikrishna Prakash, *The Chief Prosecutor*, 73 Geo. Wash. L. Rev. 521, 553 (2005) (emphasis added); *see, e.g.*, *id.* at 554, 559.  Then-Congressman (and future Chief Justice) John Marshall likewise opined that the prerogative to "direct that [a] criminal" under indictment "be prosecuted no farther" is "an indubitable and a Constitutional power" of the Executive.  10 Annals of Cong. 596, 615 (1800).

This understanding generally prevailed in both state and federal courts until after the Civil War, when some states began to authorize a judicial role with regard to *nolle prosequi*, *see, e.g.*, *Halloran v. State*, 80 Ind. 586, 589 (1881) (discussing an 1876 Indiana statute to this effect), to protect the accused from "fear[s]" (founded or not) about prosecutorial "abuse" of the power to pretermit prosecutions with strings attached, Winfield, *supra*, at 7.  For example, a former Maine Chief Justice castigated the "reprehensible practice" of prosecutors entering a *nolle prosequi* after conviction if the defendant "pa[id] into the county treasury" amounts determined by the prosecutor. Lucilius A. Emery, *The* Nolle Prosequi *in Criminal Cases*, 6 Me. L. Rev. 199, 202-03 (1913).

By the time the Advisory Committee convened to draft the Federal Rules of Criminal Procedure, "more than thirty (30) states had modified common law to give the court a responsible

role in the dismissal of a pending criminal proceeding by requiring an 'order', or 'leave', or 'consent' of court." *United States v. Abreu*, 747 F.Supp. 493, 501 (N.D. Ind. 1990), *aff'd sub nom. United States v. Vasquez*, 966 F.2d 254 (7th Cir. 1992). While some federal courts had "on occasion" exercised their inherent authority and "prevented dismissals pregnant with the possibility of harassment," *United States v. Ammidown*, 497 F.2d 615, 620 (D.C. Cir. 1973); *see, e.g.*, *United States v. Krakowitz*, 52 F.Supp. 774 (S.D. Ohio 1943), federal cases reviewing (rather than simply effectuating) *nolle prosequi* dismissals were few and far between; the prevailing federal-court rule was that the executive had the unilateral authority to dismiss indictments.

2. Rule 48(a) deliberately changed that dynamic, aligning federal practice with the then-prevailing state-court practice of allowing dismissal only "with leave of court." *See* Fed. R. Crim. P. 48(a); *see also Rinaldi v. United States*, 434 U.S. 22, 29 n.15 (1977) (per curiam). The impetus for that change came from the Supreme Court itself. The Advisory Committee's initial proposal "would have adopted the common law rule that the power of the prosecutor to enter a nolle prosequi in a criminal case was unrestricted, and added only the requirement, prevalent in state practice, that the prosecutor state his reasons for seeking dismissals." *Ammidown*, 497 F.2d at 620. That proposal was a compromise: While many members favored a broader judicial role, a majority objected to "requiring the court's approval for a dismissal" and favored a statement-of-reasons requirement. Thomas Ward Frampton, *Why Do Rule 48(a) Dismissals Require "Leave of Court"?*, 73 Stan. L. Rev. Online 28, 33-36 (2020). The Justices, however, sided with the former camp, "substitut[ing] the requirement that dismissal be obtained only by leave of court." *Ammidown*, 497 F.2d at 620; *see also Rinaldi*, 434 U.S. at 34 (Rehnquist, J., dissenting).

The Court did not publicly explain that change. *See Rinaldi*, 434 U.S. at 29 n.15 ("The words 'leave of court' were inserted in Rule 48(a) without explanation."). The non-public

memoranda from the Justices to the Advisory Committee during the drafting process (which *Rinaldi* did not discuss) reveal that some of the Justices, who had just recently reaffirmed that the Court had a role in overseeing executive-branch confessions of error, were uncomfortable with the idea that the Executive "should" have "unqualified authority to *nolle pros* a case without consent of the court," "any more than … the Government can confess error in a criminal case without the consent of the court."  *Memorandum from the Sup. Ct. to the Advisory Comm. on Rules of Crim. Proc.* 7 (June 10, 1942) (citing *Young v. United States*, 315 U.S. 257 (1942)), *reproduced in* 1 Madeleine J. Wilken & Nicholas Triffin, *Drafting History of the Federal Rules of Criminal Procedure* 13, 19 (1991); *see also Memorandum with Suggestions with Reference to the Proposed Rules of Criminal Procedure* 5 (Apr. 11, 1944) ("Two members of the Court think that the United States [] should not be permitted to dismiss an indictment without the consent of the court."), *reproduced in* 7 Madeleine J. Wilken & Nicholas Triffin, *Drafting History of the Federal Rules of Criminal Procedure* 5, 9 (1991).  According to Wright & Miller, "the addition of the requirement for court approval prior to a dismissal was motivated by a concern that prosecutors were seeking dismissals of politically well-connected defendants."  3B Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc. Crim.* §802 n.2.50 (4th ed. June 2024 Update).

Given the diversity of views that produced Rule 48(a), it is no great surprise that federal courts were divided over how much discretion Rule 48(a) affords them.  Some held that the Rule allowed them to intercede only when necessary "to protect a defendant from harassment by the government through charging, dismissing and then re-charging without placing a defendant in jeopardy."  *Woodring v. United States*, 311 F.2d 417, 424 (8th Cir. 1963) (per curiam).  Other courts, in contrast, viewed Rule 48(a) as conferring "judicial discretion" "to agree or disagree with the conclusion of the [Executive] that [a] dismissal is 'in the interests of justice.'"  *United States*

5

*v. Shanahan*, 168 F.Supp. 225, 229 (S.D. Ind. 1958). A few judges (including some in this Circuit) held that they could deny a motion to dismiss "against any given defendant unless satisfied that the government lacks sufficient evidence to warrant a prosecution." *United States v. Doe*, 101 F.Supp. 609, 611 (D. Conn. 1951); *see also, e.g.*, *United States v. N.V. Nederlandsche Combinatie Voor Chemische Industrie*, 428 F.Supp. 114, 116 (S.D.N.Y. 1977) ("In addition to protecting the rights of the defendant, the court is vested with the responsibility of protecting the interests of the public on whose behalf the criminal action is brought.").[1]

3. The Supreme Court provided material guidance in *Rinaldi*, albeit without definitively resolving this split in approach. The Court declared it "obvious[]" that Rule 48(a) "vest[s] some discretion in the court" upon receipt of a motion to dismiss an indictment. 434 U.S. at 29 n.15; *accord id.* at 34 (Rehnquist, J., dissenting); *see also* Memorandum for Respondent at 8, *Rinaldi v. United States*, No. 76-6194 (U.S. July 19, 1977) (acknowledging that "the district court has some discretion under Rule 48(a) … to deny a government motion to dismiss an indictment"). And it expressly endorsed the view that "[t]he principal object of the 'leave of court' requirement is apparently to protect a defendant against prosecutorial harassment," providing the example of "charging, dismissing, and recharging, when the Government moves to dismiss an indictment over the defendant's objection." *Rinaldi*, 434 U.S. at 29 n.15. The Court noted that some courts had interpreted Rule 48(a) "to permit the court to deny a Government dismissal motion … if the motion is prompted by considerations clearly contrary to the public interest," but deemed it "unnecessary to decide whether [a] court has discretion under [such] circumstances." *Id.*

---

[1] *Accord, e.g.*, *United States v. Bettinger Corp.*, 54 F.R.D. 40, 41 (D. Mass. 1971); *United States v. Becker*, 221 F.Supp. 950, 953 (W.D. Mo. 1963).

Importantly, the Court expressly endorsed a judicial inquiry that goes beyond the four corners of the government's motion to dismiss. In fact, the Court based its ultimate disposition—reversing the Fifth Circuit and upholding the government's effort to dismiss the indictment—on "[o]ur examination of the record." *Id.* at 30. The Court also confirmed that it would not presume bad faith on the part of the government, and that "[t]he salient issue" is not whether the decision to initiate the prosecution "was made in bad faith but rather whether the Government's later efforts to terminate the prosecution were similarly tainted with impropriety." *Id.*[2]

4. In the wake of *Rinaldi*, "courts have agreed that the primary purpose of the rule is protection of a defendant's rights." *United States v. Salinas*, 693 F.2d 348, 351 (5th Cir. 1982). In particular, Rule 48(a) authorizes courts to protect defendants who generally will accept a dismissal without prejudice as preferable to continuing to labor under indictment, even if the prospect of re-indictment creates the possibility of harassment or undue influence. *See United States v. Doody*, 2002 WL 562644, at *2 n.2 (S.D.N.Y. Apr. 16, 2002) ("In fact, 'it is precisely because a dismissal under Rule 48(a) does not bar a subsequent prosecution that the rule requires the consent of the court.'" (quoting *United States v. Rosenberg*, 108 F.Supp.2d 191, 207 (S.D.N.Y. 2000))). But, owing to *Rinaldi*'s "vague[ness] on what other circumstances may justify [Rule 48(a)'s] application," courts continue to express divergent views on the scope of their discretion to deny—

---

[2] In evaluating the statements about the authority of prosecutors to dismiss indictments or courts to review dismissals under Rule 48, an appreciation of chronology is essential. For example, Attorney General Jackson's justly famous speech about the prosecutor's solemn responsibilities and power to dismiss an indictment *preceded* Rule 48. Indeed, Justice Jackson served on the Supreme Court when Rule 48(a) and its "leave of court" language was adopted. Moreover, many of the judicial statements emphasizing the breadth of judicial discretion under Rule 48(a) preceded *Rinaldi* and its statement that the "principal object" of Rule 48 is "to protect a defendant against prosecutorial harassment." 434 U.S. at 29 n.15. While some have questioned the accuracy of that assessment, *see* Frampton, *supra*, there is little doubt that this considered statement in the Supreme Court's sole Rule 48(a) decision has guided courts to a more circumscribed view of their authority. In fact, every case in note 1 and the related text, including *Nederlandsche*, pre-dated *Rinaldi*.

or grant but modify—*nolle prosequi* motions beyond what is strictly necessary to "prevent harassment by prosecutors." *In re Richards*, 213 F.3d 773, 786 (3d Cir. 2000). *Compare, e.g.*, *United States v. Bernard*, 42 F.4th 905, 909 (8th Cir. 2022) (judge may deny a Rule 48(a) motion upon finding that "the prosecutor … had an illegitimate motive rising to the level of bad faith," such as "'acceptance of a bribe, personal dislike of the victim, and dissatisfaction with the jury impaneled'" (quoting *United States v. Smith*, 55 F.3d 157, 159 (4th Cir. 1995))), *and Rosenberg*, 108 F.Supp.2d at 206 (denying *nolle prosequi* and opining that courts may "consider the motivations of the prosecutor, the effects of dismissal, including whether the dismissal is with or without prejudice, on the defendant, and the public interest, more generally, when evaluating the nolle"); *with, e.g.*, *United States v. Fokker Servs. B.V.*, 818 F.3d 733, 742 (D.C. Cir. 2016) ("[T]he 'leave of court' authority gives no power to a district court to deny a prosecutor's Rule 48(a) motion to dismiss charges based on a disagreement with the prosecution's exercise of charging authority."), *and In re United States*, 345 F.3d 450, 453 (7th Cir. 2003) (doubting that a judge "could properly refuse to dismiss a prosecution merely because he was convinced that the prosecutor was acting in bad faith or contrary to the public interest").

Second Circuit caselaw reflects this ambivalence. *United States v. Pimentel*, 932 F.2d 1029 (2d Cir. 1991), "suggested (in dictum) that any authority a court might have to deny a Rule 48(a) motion would be limited to cases in which dismissal is 'clearly contrary to manifest public interest.'" *United States v. HSBC Bank USA, N.A.*, 863 F.3d 125, 141 (2d Cir. 2017) (quoting *Pimentel*, 932 F.2d at 1033 n.5). But that observation was plainly dictum, as the court allowed dismissal in *Pimentel*, while noting that the prosecutor has "considerable discretion" to dismiss cases. 932 F.2d at 1033. Subsequent cases are similarly equivocal. In *HSBC*, the Second Circuit underscored that "'[d]ecisions to initiate charges, *or to dismiss charges once brought*, lie at the

8

core of the Executive's duty to see to the faithful execution of the laws.'" 863 F.3d at 134-35 (emphasis added) (quoting *Fokker*, 818 F.3d at 741). But given the posture of that case, *HSBC* declined either to fully distance itself from courts that "have emphasized that a court deciding a Rule 48(a) motion should not 'serve merely as a rubber stamp for the prosecutor's decision'" or to delineate "the precise contours of a district court's authority in resolving a Rule 48(a) motion." *Id.* at 141. *HSBC* did indicate, however, that the monitor's report in dispute there could be relevant to the ultimate disposition of a Rule 48(a) motion at the end of the DPA, further underscoring that a court's review of a Rule 48(a) motion extends beyond the four corners of the government's motion. *Id.* Most recently, the Second Circuit declared that only "[r]arely will the judiciary overrule the Executive Branch's" "elect[ion] to eschew or discontinue prosecutions," without providing concrete guidance on when (if ever) a court could "overrule the Executive" without transgressing constitutional bounds. *United States v. Blaszczak*, 56 F.4th 230, 238 (2d Cir. 2022).

5. While views diverge on the theoretical limits of judicial review under Rule 48(a), actual practice appears more consistent. There are relatively few cases denying a motion to dismiss under Rule 48(a) altogether without appellate reversal, and those cases involve prosecutorial harassment or the need to protect a defendant from suffering prejudice. *See, e.g.*, *United States v. Weiss*, 1993 WL 77285 (S.D.N.Y. Mar. 12, 1993) ("deny[ing] leave to the government to dismiss the [] indictment" under Rule 48(a) based on court's "conclu[sion] that [the] defendant [wa]s entitled to a decision on his pending motion," which, if granted, "would have a *res judicata* effect on any subsequent government effort at prosecution"). Conversely, courts of appeals have often reversed and even mandamused decisions denying leave to dismiss altogether based on more amorphous considerations, such as a view that the evidence is sufficient to proceed. *See, e.g.*, *Rice v. Rivera*, 617 F.3d 802, 812 (4th Cir. 2010) (per curiam); *In re United States*, 345 F.3d at 453. And "no

appellate court has upheld a denial of a motion to dismiss, where the defendant has consented to the dismissal, grounded on a finding of 'bad faith' or action 'contrary to the public interest' alone." *United States v. KPMG LLP*, 2007 WL 541956, at *6 (S.D.N.Y. Feb. 15, 2007).

The primary means through which district courts have exercised their discretion under Rule 48(a) without reversal has been in dismissing prosecutions with prejudice, even when the government seeks dismissal without prejudice. *See, e.g.*, *United States v. Madzarac*, 678 F.Supp.3d 42, 52 (D.D.C. 2023) (ordering dismissal with prejudice); *United States v. Derr*, 726 F.2d 617, 619 (10th Cir. 1984) (affirming dismissal with prejudice); *United States v. Towill*, 548 F.2d 1363, 1369-70 (9th Cir. 1977) (same). Other courts have gone out of their way to endorse the practice, *see, e.g.*, *In re United States*, 345 F.3d at 453; *United States v. Raineri*, 42 F.3d 36, 43 (1st Cir. 1994), which advances what *Rinaldi* identified as the primary office of Rule 48(a)—namely, the protection of defendants from manipulative practices involving the threat of re-indictment.

6.    Finally, it bears emphasis that the Justice Department has long recognized that prosecutions of public officials raise distinct sensitivities. Concerns with the appearance that the executive branch was either targeting political opponents or seeking to exert undue influence over other officeholders prompted the creation of the public integrity unit within the Justice Department, *see* Press Release, U.S. Dep't of Just., Off. of Pub. Affs. (Jan. 14, 1976), https://perma.cc/ZY5Y-YLJ2, and passage of the short-lived Independent Counsel Act, *see Morrison v. Olson*, 487 U.S. 654, 660-65 & n.1 (1988). Moreover, perhaps as a consequence of the distinct problems posed by even the appearance that the executive branch was exercising leverage over an elected official via the threat of re-indictment, *amicus* is not aware of any example of a DPA involving a public official who continues to serve, even as the use of DPAs have proliferated in other contexts.

### B.  Factual and Procedural Background

On September 24, 2024, a grand jury indicted Eric Adams on five counts:  two counts of soliciting, accepting, and receiving a campaign contribution by a foreign national, in violation of 52 U.S.C. §§30121 and 30109(d)(1)(A); one count of federal-program bribery, in violation of 18 U.S.C. §666(a); one count of wire fraud, in violation of 18 U.S.C. §1343; and one count of conspiracy to do the same, in violation of 18 U.S.C. §371.  *See* Dkt.2.  The government alleges that, while serving as Brooklyn Borough President and later while campaigning for Mayor of New York City, Adams accepted various things of value from Turkish government officials and businesspeople, solicited and collected straw campaign contributions from those foreign nationals, and, in exchange, assisted Turkey with resolving certain regulatory holdups relating to the construction and opening of a new Turkish consulate in Manhattan.

The parties actively engaged in contested motions practice and the government turned over multiple volumes of discovery material.  The case was set for trial in April 2025.

Then, on February 14, 2025, the government filed a motion "seeking dismissal without prejudice of the charges in this case, with leave of the Court, pursuant to Rule 48(a)."  Dkt.122 ¶1. As recounted in the motion, the government has determined "that dismissal is necessary and appropriate … based on the unique facts and circumstances of this case."  *Id.* ¶4.  Specifically, "the Acting Deputy Attorney General concluded that dismissal is necessary" as a result of "appearances of impropriety" relating to the institution of the proceedings against Adams under the prior Administration, "risks of interference with the 2025 [mayoral] elections in New York City," and actual "interfere[nce] with the defendant's ability to govern in New York City [as Mayor], which poses unacceptable threats to public safety, national security, and related federal immigration initiatives and policies."  *Id.* ¶¶5-6.  Adams consented to the motion.  *Id.* ¶2.

The filing of that motion precipitated a series of resignations and unusual public disclosures concerning internal deliberations about the case and the decision to seek dismissal. While some of the materials became public outside official channels, other statements were made through official channels. Suffice it to say that those materials raised material questions concerning both the initial decision to pursue the indictment and the subsequent decision to seek dismissal.

The Court held a hearing on the government's motion on February 19, 2025. At the hearing, Adams affirmed his consent to the motion to dismiss without prejudice. *See* 2/19/2025 Tr. at 9:22-11:19. Two days later, the Court entered an order adjourning all upcoming deadlines *sine die*. Dkt.136. The same order appointed an "*amicus curiae* to present arguments on the Government's Motion to Dismiss." *Id.* at 3. Specifically, the Court ordered *amicus* (and the parties) to address, *inter alia*: "[t]he legal standard for leave to dismiss an indictment under Rule 48(a)"; when "dismissal should be with or without prejudice"; "[w]hether, and to what extent, a court may consider materials other than the Rule 48(a) motion itself" or take "additional procedural steps and/or further inquiry … before resolving a Rule 48(a) motion"; and "what practical consequences would follow" "[i]f leave were denied." *Id.* at 3-4.[3]

## ARGUMENT

### I.    Separation-Of-Powers Principles, Which Exist Primarily To Promote Individual Liberty, Inform The Courts' Role In Reviewing Motions Under Rule 48(a).

It is well settled that the Framers established our system of separation of powers in an effort to protect and promote individual liberty. For that reason, the Supreme Court has repeatedly observed that powers were separated not principally to protect the branches from each other, but

---

[3] On February 26, 2025, Adams—who previously "knowingly consented to the government's motion to dismiss this case without prejudice," Dkt.141 at 2—filed a "Motion to Dismiss for Prosecutorial Misconduct" in which he now seeks dismissal *with* prejudice, *see id.* at 2-3, 14, 15. That motion likely will be subject to adversarial testing, and in all events lies beyond the scope of the questions raised in the Court's February 21 Order, so this brief does not address it further.

to protect the people from government overreach and to secure individual liberty.  *See, e.g.*, *Bond v. United States*, 564 U.S. 211, 222 (2011) ("The structural principles secured by the separation of powers protect the individual as well."); *Morrison*, 487 U.S. at 697 (Scalia, J., dissenting) ("Without a secure structure of separated powers, our Bill of Rights would be worthless, as are the bills of rights of many nations of the world that have adopted, or even improved upon, the mere words of ours.").  Indeed, the Supreme Court generally insists that the constitutional separation of powers be vindicated by private litigants, rather than the branches suing in their official capacities. *See, e.g.*, *Raines v. Byrd*, 521 U.S. 811 (1997).

Constitutional separation-of-powers principles play a particularly critical role in securing individual liberty in the context that poses one of the most direct and obvious threats to that liberty—namely, federal criminal prosecutions.  Unlike the dynamic in many other countries, here "no one can be convicted of a crime without the concurrence of all three branches." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978).  Congress must first pass a law, *see, e.g.*, *United States v. Hudson*, 11 U.S. (7 Cranch) 32 (1812) (rejecting common-law crimes); the executive must exercise its discretion to initiate a prosecution (and, for most crimes, secure an indictment); and the judiciary must oversee a fair trial leading to a conviction.  *See also United States v. Cox*, 342 F.2d 167, 186  (5th Cir. 1965) (Wisdom, J., concurring) (emphasizing that "the Grand Jury" protects liberty and "earned its place in the Bill of Rights by its shield, not by its sword").

Prosecutorial discretion can play an important role in promoting individual liberty.  No matter how clearly someone has violated a federal criminal statute, neither the courts nor the citizenry can compel the executive to initiate a criminal prosecution.  *See, e.g.*, *United States v. Nixon*, 418 U.S. 683, 693 (1974) ("[T]he Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case[.]").  "One of the greatest *unilateral* powers a

13

President possesses under the Constitution, at least in the domestic sphere, is the power *to protect individual liberty* by essentially under-enforcing federal statutes regulating private behavior— more precisely, the power either not to seek charges against violators of a federal law or to pardon violators of a federal law." *In re Aiken Cnty.*, 725 F.3d 255, 263 (D.C. Cir. 2013) (Kavanaugh, J.) (second emphasis added); *United States v. Cowan*, 524 F.2d 504, 511 (5th Cir. 1975) (courts are "constitutionally powerless to compel the government to proceed"). And even after the criminal process has run its course, the President retains a virtually unreviewable power to issue reprieves and pardons. U.S. Const. art. II, §2, cl. 1; *see also In re Aiken Cnty.*, 725 F.3d at 263-64.

Most exercises of prosecutorial discretion or the pardon power promote individual liberty. While a decision to refrain from initiating a prosecution does not preclude the possibility of a subsequent prosecutor reaching a different decision before the statute of limitations has run, in the interim it leaves the individual untouched. Similarly, a pardon typically precludes the possibility of re-indictment for the same offense. *See Lorance v. Commandant, U.S. Disciplinary Barracks*, 13 F.4th 1150, 1165 (10th Cir. 2021) ("Lorance can never be retried because of the pardon"). The grant of a motion to dismiss without prejudice, by contrast, leaves the defendant vulnerable to re-indictment. *See Dortch v. United States*, 203 F.2d 709, 710 (6th Cir. 1953) (per curiam).

Equally important, there is a "distinction between the commencement of a criminal case by the filing of charges and the termination of a criminal case by moving to dismiss those charges." *Abreu*, 747 F.Supp. at 500. "[O]nce the grand jury returns an indictment, the prosecutor is no longer *entirely* within the realm of his executive authority." *United States v. Stevenson*, 425 F.Supp.3d 647, 651 (S.D.W. Va. 2018). As a result, the fact that "the decision of a prosecutor in the Executive Branch not to indict" in the first place "has long been regarded as the special province of the Executive Branch," *Heckler v. Chaney*, 470 U.S. 821, 832 (1985), does not mean

the executive has equivalent discretion to end a prosecution already underway, as the text and history of Rule 48(a) underscore.  That said, the courts' role under Rule 48(a) remains distinctly judicial.  There is no express authorization for the courts to take over a prosecution or to appoint a special prosecutor to maintain a prosecution that the executive wishes to abandon.

There is one narrow context in which the Supreme Court has recognized that a court has authority to exercise what would otherwise be a core executive function:  "[I]t is long settled that courts possess inherent authority to initiate contempt proceedings for disobedience to their orders, authority which necessarily encompasses the ability to appoint a private attorney to prosecute the contempt."  *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 793 (1987).  While the precise provenance of that authority is contestable, *see id.* at 815-25 (Scalia. J., concurring in the judgment), the Supreme Court has upheld it as "essential to ensuring that the Judiciary has a means to vindicate its own authority without complete dependence on other Branches," *id.* at 796 (majority op.).  As *Young* explained, "[i]f the Judiciary were completely dependent on the Executive Branch to redress direct affronts to its authority, it would be powerless to protect itself if that Branch declined prosecution."  *Id.* at 801.  But a court's authority to initiate a contempt prosecution is limited by a rule of necessity; it should be "exercise[d] … only as a last resort."  *Id.*

Finally, where special circumstances justify judicial review of prosecutorial functions, the courts have generally limited inquiries and tailored remedies to protect individual liberty while minimizing intrusion into executive decisionmaking.  For example, because the Constitution's individual rights amendments constrain all three branches, "a prosecutor's discretion is 'subject to constitutional constraints.'"  *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (quoting *United States v. Batchelder*, 442 U.S. 114, 125 (1979)).  And the Constitution does not tolerate a "selection … deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary

classification." *Oyler v. Boles*, 368 U.S. 448, 456 (1962). Thus, there is a critical judicial role in protecting individual liberties from prosecutorial abuse. But even then, courts strive to minimize intrusion into prosecutorial deliberations—for example, by requiring heightened showings before allowing discovery, *see HSBC*, 863 F.3d at 138—and selecting remedies that promote, rather than restrict, individual liberty—e.g., "[if] the Executive selectively prosecutes someone based on impermissible considerations, the equal protection remedy is to dismiss the prosecution, *not to compel the Executive to bring another prosecution*," *In re Aiken Cnty.*, 725 F.3d at 264 n.7 (emphasis added). In short, where separation-of-powers principles permit judicial oversight of prosecutorial decisions, they work to promote individual liberty, not to maximize law enforcement.

## II.    Rule 48(a) Vests Courts With A Limited, But Essential, Power To Vindicate Liberty By Avoiding Even The Appearance Of Executive Overreach.

1. These general separation-of-powers principles inform the proper understanding and application of Rule 48(a). As noted at the outset, Rule 48(a) deliberately departed from the common-law rule by expressly granting the courts a role when the government seeks to dismiss an indictment even before jeopardy has attached. The impetus for that change came from the Supreme Court itself. *See* p.4, *supra*. And, in discharging that function, the Court has authorized courts to go beyond the four corners of the government's motion. *See Rinaldi*, 434 U.S. at 30 (upholding the government's effort to dismiss the indictment based on "[o]ur examination of the record").

As a judge of this Court noted, however, that "leave-of-court" directive "sets forth no criteria to guide the Court in the exercise of its discretion." *United States v. Greater Blouse, Skirt & Neckwear Contractors Ass'n*, 228 F.Supp. 483, 486 (S.D.N.Y. 1964). Furthermore, while *Rinaldi* agreed that the "principal object of the 'leave of court' requirement" is "to protect a defendant against prosecutorial harassment," 434 U.S. at 29 n.15, it did not definitively resolve "whether" it could ever be "permissible" for a court "'to deny a Government dismissal motion to

which the defendant has consented'" on grounds that "'the motion is prompted by considerations clearly contrary to the public interest,'" *HSBC*, 863 F.3d at 141 (quoting *Rinaldi*, 434 U.S. at 29 n.15). "Thus, the rule requires leave of the court, and each judge is left to struggle with its uncertainties as best he or she can." Wright & Miller, *supra*, §802 (footnote omitted).

2. That said, no court of appeals has ever affirmed a decision to deny a motion to dismiss under Rule 48(a) except in circumstances where necessary to protect the defendant's liberty. *See* pp.9-10, *supra*. "That is not surprising." *In re United States*, 345 F.3d at 453. Following *Rinaldi*, courts have "discerned" that "[t]he primary concern" underlying Rule 48(a) "was that of protecting a defendant from harassment, through a prosecutor's charging, dismissing without having placed a defendant in jeopardy, and commencing another prosecution at a different time or place deemed more favorable to the prosecution." *Ammidown*, 497 F.2d at 620; *see also United States v. Friedman*, 107 F.R.D. 736, 740 (N.D. Ohio 1985) ("[T]he words of reservation inserted into Rule 48(a) ['leave of court'] … are for the ultimate benefit and protection of the people themselves."). Furthermore, "although rule 48(a) is meant to be 'a check on the abuse of [e]xecutive prerogatives,' it is not 'intended to confer on the [j]udiciary the power and authority to usurp or interfere with the good faith exercise of the [e]xecutive power to take care that the laws are faithfully executed.'" *United States v. B. G. G.*, 53 F.4th 1353, 1361 (11th Cir. 2022) (quoting *Cowan*, 524 F.2d at 513).

That caselaw is buttressed by decisions recognizing the circumscribed judicial role regarding deferred prosecution agreements. The Speedy Trial Act generally requires trial to begin within 70 days of the filing of an information or indictment, 18 U.S.C. §3161(c)(1), but excludes various pretrial periods, including, *inter alia*, "[a]ny period of delay during which prosecution is deferred by the attorney for the Government pursuant to written agreement with the defendant, *with the approval of the court*, for the purpose of allowing the defendant to demonstrate his good

conduct," *id.* §3161(h)(2) (emphasis added).  That "approval-of-the-court" requirement parallels Rule 48(a)'s "leave of court" language.  In the DPA context, courts have squarely rejected the notion that the language "confer[s] free-ranging authority in district courts to scrutinize the prosecution's discretionary charging decisions." *Fokker*, 818 F.3d at 741 (reversing district court decision "disapprov[ing a] DPA based on the court's view that the prosecution had been too lenient").  The Second Circuit, for its part, held in *HSBC* that in light of "the ordinary distribution of power between the judiciary and the Executive in the realm of criminal prosecution," it could not interpret §3161(h)(2) "as imbuing courts with an ongoing oversight power over the government's entry into or implementation of a DPA."  863 F.3d at 138.

This reluctance to exercise oversight reflects the reality that, in typical cases, the considerations that influence whether to continue a prosecution are designed to guide executive discretion, not provide judicially manageable standards.  As the Supreme Court has emphasized, the executive branch's discretion is typically guided by a range of "factors [such] as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan"—none of which is "readily susceptible to the kind of analysis the courts are competent to undertake." *Wayte v. United States*, 470 U.S. 598, 607 (1985).  An unduly expansive view of Rule 48(a) would thus leave courts intruding on executive decisionmaking with little or no law to apply.  *See, e.g.*, *United States v. Henderson*, 951 F.Supp.2d 228, 230 (D. Mass. 2013).  It would also be futile.  "Even were leave of Court to the dismissal of the indictment denied, the Attorney General would still have the right to … decline to move the case for trial," and the court "would be without power to issue a mandamus or other order to compel prosecution of the indictment." *Greater Blouse*, 228 F.Supp. at 489.  In other words, the executive branch could quite literally run out the speedy-trial clock,

leaving the court with little recourse but to dismiss the prosecution on speedy-trial grounds. Moreover, even if a district judge tried to compel a prosecution, it would leave the President with one last card to play—namely, the pardon power. *See In re United States*, 345 F.3d at 454 (observing that "a judge could not possibly win a confrontation with the executive branch over its refusal to prosecute, since the President has plenary power to pardon a federal offender").

3. None of this is to say that Rule 48(a) consigns courts to rubber-stamp prosecutorial dismissals, or that the Supreme Court's deliberate addition of the leave-of-court requirement granted courts only a Potemkin power. To the contrary, Rule 48(a) grants courts a limited, but critical, power that is fully consistent with the judiciary's typical office of vindicating individual liberty by protecting the rights of the accused. In particular, judges can order dismissal *with* prejudice, even over the government's objection or in the face of the parties' agreement to dismissal without prejudice, where doing so protects the defendant from harassment or vindicates liberty. *See, e.g.*, *Derr*, 726 F.2d at 619; *Towill*, 548 F.2d at 1369-70.[4]

While the Second Circuit has not ruled directly on that question, it has expressly declined to "rule out discretionary dismissals with prejudice." *Hilbert v. Dooling*, 476 F.2d 355, 361 (2d Cir. 1973). Moreover, the Second Circuit's DPA caselaw strongly suggests that it would approve of a limited, liberty-protecting role for district courts under Rule 48(a). *See HSBC*, 863 F.3d at 138 (holding "that §3161(h)(2) authorizes courts to determine that a DPA is bona fide before granting a speedy trial waiver—that is, that the DPA in question is genuinely intended to 'allow[]

---

[4] To be sure, not all courts endorse this practice: The Eleventh Circuit has held that "rule 48(a) limits the district court to granting or denying the government permission to dismiss the information without prejudice (unless the government expresses a contrary intent)." *B. G. G.*, 53 F.4th at 1369. But that court appears to be an outlier in this respect, and for all the reasons articulated in this brief, that circumscribed role is difficult to square with the history of Rule 48 or the liberty-protecting spirit that animates Rule 48 and the separation of powers more generally.

the defendant to demonstrate his good conduct,' and does not constitute a disguised effort to circumvent the speedy trial clock" (citation omitted)); *id.* at 141 (reserving the possibility that a monitor's confidential report could inform judicial inquiry at the final Rule 48 dismissal stage).

That leaves the questions of whether a court may consider materials beyond the Rule 48(a) motion itself and what further inquiry is appropriate in resolving an unopposed Rule 48(a) motion. *Rinaldi* sheds substantial light on both questions. By the time that case reached the Supreme Court, the Solicitor General and the defendant were in full agreement that the federal prosecution should be dismissed. But the Court did not simply defer to the government's wishes or the agreed position of the parties. To the contrary, it upheld the dismissal based on its own "examination of the record," 434 U.S. at 30, and three Justices dissented. It thus seems clear both that a court can go beyond the government's motion and that its inquiry need not be truncated by the parties' agreement.

That all makes sense. Given the express leave-of-court role that Rule 48(a) carves out for the judiciary, it would be more than passing strange if courts were limited to the four corners of the government's motion. Moreover, given the delicate position of a defendant facing criminal indictment, it will often be the case that the defendant gladly acquiesces in a dismissal without prejudice, even though it will always be in the defendant's best interests to push for a dismissal with prejudice to guard against re-indictment. In light of that dynamic, a court should not be constrained in looking beyond the pleadings to other publicly available information. *Accord In re Richards*, 213 F.3d at 787 (rejecting the argument that a trial judge's "power under that rule was so circumscribed as to prohibit his conducting a hearing on the circumstances surrounding the Government's requested dismissal"); Wright & Miller, *supra*, §802 n.10 ("there is no binding law preventing the court from investigating whether the government's motion to dismiss the indictment

was brought in bad faith," and nothing in Rule 48(a) prevents a court from "order[ing] the government to produce certain information regarding its decision before ruling on the motion").

To be sure, *Rinaldi* indicates that bad faith will not be presumed, 434 U.S. at 30, and the Second Circuit has held that "[i]n the absence of evidence to the contrary, the Department of Justice is entitled to a presumption of regularity—that is, a presumption that it is lawfully discharging its duties." *HSBC*, 863 F.3d at 129; *accord, e.g.*, *United States v. Toyota Motor Corp.*, 278 F.Supp.3d 811, 813 (S.D.N.Y. 2017). In the ordinary case, there will be little basis for overcoming that presumption. But a presumption is only that, not an absolute bar to judicial inquiry. And the presumption does not present any obstacle to considering publicly available information that could inform the judicial role under Rule 48(a) in general and the decision whether to grant dismissal with or without prejudice in particular. Indeed, while there may be more difficult questions about what showing is necessary to overcome the presumption of regularity and allow a judicial inquiry into non-public prosecutorial decisionmaking, there is no basis for ignoring publicly available materials in the unusual case where materials shedding light on prosecutorial decisionmaking have become public. Needless to say, this is the unusual case.

At the same time, courts should apply what amounts to a rule of parsimony and inquire no further than necessary into prosecutorial deliberations. After all, the sensitive nature of those deliberations have been recognized by both the judiciary, *see, e.g.*, *Wayte*, 470 U.S. at 607, and Congress, *see, e.g.*, 5 U.S.C. §552(b)(5), and are jealously guarded by the executive. Thus, unnecessary intrusion into the deliberative process is not only unwarranted, but likely to precipitate collateral proceedings and mandamus efforts. In short, when the publicly available information is sufficient to inform judicial decisionmaking, there are sound reasons to avoid further inquiries.

4. This is such a case. Here, the materials that have already been made public provide ample reasons to order dismissal *with* prejudice. The government's own recent filings reflect a belief that this prosecution was initiated in bad faith. *See* Dkt.122 ¶5; *see also* Dkts.125-1, 125-2. Other information that has become public casts doubt on that claim and suggests the decision to dismiss the indictment was undertaken in bad faith. *See, e.g.*, Dkts.150-3, 150-8. It is almost certainly beyond the judicial ken to definitively resolve that intramural dispute among executive-branch prosecutors. It is also unnecessary. Under either view, there is little justification for preserving the possibility of re-indictment by dismissing without prejudice. While the "salient issue" for the court concerns the decision to terminate, not initiate, the prosecution, *Rinaldi*, 434 U.S. at 30, if political considerations improperly influenced the initial decision to seek the defendant's indictment, then dismissal with prejudice would definitively eliminate that taint. And if improper considerations tainted the decision to seek dismissal, then there is *a fortiori* every reason to protect the defendant from the threat of re-indictment.

Three additional, closely related factors support dismissal with prejudice as the appropriate remedy here. First, the fact that this case involves a currently serving elected official raises distinct concerns that are eliminated by a dismissal with prejudice but exacerbated by a without-prejudice dismissal. Prosecutions of incumbent public officials are among the Justice Department's most sensitive undertakings and raise inevitable suspicions of political motivations or improper leverage over the official's discharge of his duties to constituents. Even the appearance that the prospect of re-indictment would cause public officials to be more attendant to the executive branch than to constituents is deeply troubling and raises serious accountability concerns. A dismissal without prejudice fuels those concerns by expressly preserving the possibility of re-indictment.

Second, dismissal with prejudice more closely resembles the options the executive can achieve unilaterally, while dismissal without prejudice leaves the accused subject to re-indictment at the executive's discretion. Nothing a court can do under Rule 48 can prevent the President from issuing a pardon that ends the prosecution and typically precludes further jeopardy for the offense (and even a conditional pardon must make any conditions explicit). Similarly, the unreviewable executive decision to refrain from prosecution leaves the individual's liberty untouched. Dismissal without prejudice, by contrast, leaves a once-indicted defendant in a uniquely vulnerable position.

Third, dismissal with prejudice best accords with the principal office of Rule 48(a) in particular and the separations of powers more generally—namely, the promotion of individual liberty. The prospect of the court ordering the prosecution to proceed runs directly counter to the court's usual liberty-preserving role in a criminal trial. Insisting on dismissal with prejudice, by contrast, preserves individual liberty while eliminating the problematic incentives and appearance issues occasioned by a without-prejudice dismissal of an incumbent public official.

To be sure, an argument can be made—and has been made, *see* Dkts.128-1, 150-1—that the court can go further and effectively try to force the executive to maintain a prosecution it wishes to drop. But there are both practical and doctrinal problems with that extraordinary course. As a practical matter, even if the court were to deny the motion to dismiss, there is little the court could do to force the prosecutors to proceed with dispatch or stop them from dragging their feet and running out the speedy-trial clock. While a speedy-trial dismissal can be with or without prejudice, such delay at no fault of the defendant would likely produce a with-prejudice dismissal, but only after an unnecessary confrontation between the branches. That problem is particularly acute in a case like this, where the executive wants to drop the entire prosecution, not just specific defendants, *cf. Nederlandsche*, 428 F.Supp. at 116, and in circumstances, again like this, where the dismissal

23

decision comes from the highest levels of the Justice Department, rather than reflecting an idiosyncratic decision by a line prosecutor.  At a more theoretical level, as just noted, the prospect of the judiciary being the instrument for the ongoing constraint on the defendant's liberty is difficult to square with the identified purposes for Rule 48 and the separation of powers more broadly.  While there may be circumstances where the inversion of the normal roles of the branches may be unavoidable, there are prudent reasons to avoid that in circumstances where a with-prejudice dismissal eliminates any appearance that the executive is asserting undue influence over a public official and any incentive to seek dismissals for those purposes going forward.

* * *

To summarize, the foregoing principles and precedents inform the answers to the questions posed in the February 21 order and support dismissal with prejudice here:

First, Rule 48(a) vests courts with an important, but limited, role—one that is principally focused on how, not whether, a prosecution should be dismissed.

Second, in deciding whether to grant leave to dismiss an indictment with or without prejudice, a court is not restricted to the four corners of the Rule 48(a) motion itself.  In fact, the Supreme Court has indicated that the judicial role can properly extend to "examination of the record" in the case.  *Rinaldi*, 434 U.S. at 30.  Moreover, whatever special showing that would be appropriate before a court could explore non-public deliberations, there is no reason for a court to ignore materials that have become public.

Third, "there is no binding law preventing the court from investigating whether the government's motion to dismiss the indictment was brought in bad faith."  Wright & Miller, *supra*, §802 n.10.  That said, the separation-of-powers concerns with judicial inquiries into prosecutorial deliberations are obvious, and courts have adopted what might be thought of as a rule of parsimony,

24

inquiring no further than necessary to decide the appropriate relief. In the unusual circumstances here, there is enough public information for the Court to resolve the government's motion.

<u>Fourth</u>, most courts have recognized that granting leave to dismiss *with* prejudice, despite the parties' agreement that it be without prejudice, is appropriate in certain circumstances. Dismissal with prejudice is consistent with Rule 48(a)'s "principal object" of protecting the accused. *Rinaldi*, 434 U.S. at 29 n.15. And dismissal with prejudice eliminates the appearance problems inherent when a publicly elected official labors under the specter of re-indictment.

<u>Fifth</u>, if a court simply denied a Rule 48(a) motion, it could likely precipitate standoff that would eventually lead to a with-prejudice dismissal on speedy-trial grounds.

In conclusion, a court has a limited, but critical, role under Rule 48(a)—a role that can be traced to the Supreme Court's insistence that the courts not simply rubber stamp prosecutorial dismissal motions, as at common law. In discharging that responsibility, courts can go beyond the four corners of the government's motion, but should go no further than necessary to decide the appropriate remedy. And, here, there is no need to go beyond the publicly available materials to determine that dismissal with prejudice is the proper remedy. Whether one credits the government's motion or the views of prosecutors who resigned rather than file that motion, there is ample reason to dismiss this prosecution with prejudice. That disposition not only advances the liberty-preserving values that animate Rule 48(a) and the constitutional separation of powers, but also eliminates the distinct appearance problems inherent in a public official serving his constituents with the ever-looming prospect of re-indictment by the executive on charges already laid bare in a public indictment.

## CONCLUSION

The Court should dismiss the indictment with prejudice.

Respectfully submitted,

<u>s/Paul D. Clement</u>
PAUL D. CLEMENT
MATTHEW D. ROWEN
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
paul.clement@clementmurphy.com

*Court-Appointed* Amicus Curiae

March 7, 2025