**E K L J N** | ELLIOTT KWOK LEVINE JAROSLAW NEILS LLP

One Grand Central Place
60 East 42nd Street, Suite 1570
New York, NY 10165
tel: +1 (212) 321-0510

www.ekljnlaw.com

Ilene Jaroslaw
ijaroslaw@ekljnlaw.com
Direct: +1 (917) 763-9852

March 11, 2025

**Via ECF**

The Honorable Dale E. Ho
United States District Court Judge
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, NY 10007

> *United States v. Eric Adams*, 24 Cr. 556 (DEH)
Re:    Supplemental Letter to Motion to File *Amicus Curiae* Brief

Dear Judge Ho:

State Democracy Defenders Fund and Lawyers Defending American Democracy ("*Amici*") filed a motion for leave to file an *Amicus Curiae* brief and attached their brief. This letter brief is a partial response to the Amended Brief of Court-Appointed *Amicus Curiae* Paul D. Clement, dated March 7, 2025 (ECF No.159) and the Department of Justice's ("DOJ") Response In Further Support of Motion to Dismiss Pursuant to Rule 48(a), dated March 7, 2025 (ECF No.160) ("DOJ Response").

*Amici* submit this letter brief in light of the Court's statement in its Order of February 21, 2025, that there is a need for "adversarial testing" in order to advance "'the public interest in truth and fairness.'" Order at 1. *Amici* take a broader adversarial perspective than Mr. Clement and present an alternative approach that neither Mr. Clement nor the parties have considered. In so doing, *Amici* seek to assist the Court with "its decision-making via an adversarial process." *Id*. at 3.

**Amicus Curiae Clement Frames the Court's Role Too Narrowly**

Mr. Clement argues that the Court's role in addressing the motion to dismiss the indictment against Mayor Eric Adams ("Motion") is limited to considering whether "the prosecution should be discontinued -- with or without prejudice – rather than empowering the court to take over the distinctly executive prosecutorial function." Clement Memo at 1. Relying on *Rinaldi v. United*

ELLIOTT KWOK LEVINE JAROSLAW NEILS LLP

*States*, 434 U.S. 22 (1977), Mr. Clement contends that the "'[t]he principal object of the 'leave of court' requirement is apparently to protect a defendant against prosecutorial harassment'". Clement Memo at 6 (citing *Rinaldi* at 29 n.15).

*Amici* respectfully point out that Mr. Clement frames the Court's role too narrowly because he fails to address the threshold issue, which is whether the Government's dismissal motion is "tainted with impropriety". In *Rinaldi*, the Supreme Court stated that in addressing a Rule 48(a) motion, the "salient issue" is whether the motion to terminate the prosecution is "tainted with impropriety". *Id*. at 30. See also, *United States v. Blaszczak*, 56 F.4th 230, 241 (2nd Cir. 2022) (citing *Rinaldi* at 30 for the proposition that "regardless of the government's reasons for initiating or maintaining a prosecution, the 'salient issue' as to its later decision to terminate it is whether the request to dismiss the indictment is 'tainted with impropriety'").

If Mr. Bove violated his ethical duties with respect to the Motion, it would be "tainted with impropriety". *Rinaldi* at 30. Comment [5] to the Preamble to New York's Rules of Professional Conduct ("RPC") explains that a lawyer's failure to comply with the Rules compromises the public interest, clients and the legal system:

> Every lawyer is responsible for observance of the Rules of Professional Conduct and also should aid in securing their observance by other lawyers. Neglect of these responsibilities compromises the independence of the profession and the public interest that it serves. Compliance with the Rules depends primarily upon the lawyer's understanding of the Rules and desire to comply with the professional norms they embody for the benefit of clients and the legal system, and, secondarily, upon reinforcement by peer and public opinion.

RPC, Preamble: A Lawyer's Responsibilities, Comment [5]. If Mr. Bove violated his ethical duties he compromised the public interest, the Department of Justice and the legal system and thereby "tainted" his Motion with "impropriety". The evidence in the public record as discussed in *Amici's* February 28th brief suggests that Mr. Bove may have violated his ethical duties by accepting a *quid pro quo* from Mayor Adams in exchange for agreeing to dismiss the indictment; pressuring lawyers in the Department of Justice to sign the Motion against their professional judgment; and engaging in conduct that is prejudicial to the administration of justice by disregarding Department of Justice prosecutorial policies.

Accordingly, judicial inquiry into whether Mr. Bove violated his ethical duties is essential to the Court's resolution of the Motion.

ELLIOTT KWOK LEVINE JAROSLAW NEILS LLP

**It Is Not "Beyond the Judicial Ken" For the Court to Decide If the Motion is Tainted**

*Amici* also respectfully point out that Mr. Clement argues for an overly narrow focus to the Court's role in analyzing the reasons provided by Mr. Bove in support of his Motion.  While Mr. Clement rightly acknowledges, citing *Rinaldi*, that the Court can "go beyond the four corners of the government's motion" (Clement Memo at 20) in analyzing the merits the Motion, he urges the Court not to evaluate the merits of Mr. Bove's argument.  Mr. Clement's Memo states:

> The government's own recent filings reflect a belief that this prosecution was initiated in bad faith. . . .  Other information that has become public casts doubt on that claim and suggests that the decision to dismiss the indictment was undertaken in bad faith. . . .  It is almost certainly beyond the judicial ken to definitely resolve that intramural dispute among executive-branch prosecutors.  It is also unnecessary. . . . While the 'salient issue' for the court concerns the decision to terminate, not initiate, the prosecution, *Rinaldi*, 434 U.S. at 30, if political considerations improperly influenced the initial decision to seek the defendant's indictment, then dismissal with prejudice would definitively eliminate that taint.

Clement Memo at 22.

*Amici* do not contend that the Court should resolve the "intramural dispute among executive-branch prosecutors".  As Mr. Clement acknowledges, the merits of the prosecution are irrelevant to the Court's consideration of the Motion.  However, we respectfully disagree with Mr. Clement's assertion that the Court should not evaluate the merits of Mr. Bove's motion to dismiss the indictment.

Mr. Clement's "beyond the judicial ken" argument is not persuasive because judges routinely act as the trier of fact in bench trials and other evidentiary settings such as, for example, preliminary injunction and *Daubert* hearings.  The facts here are no more complicated than in many such cases.  A judge makes factual determinations by holding an evidentiary hearing and reviewing relevant documents, which is exactly the approach that the Cout should take here. As Mr. Clement rightly acknowledges, citing *In re Richards*, 213 F.3d 773 (3d Cir. 2000), a court can hold a hearing before deciding a Rule 48(a) motion.  *In re Richards*, the Third Circuit held that the trial judge "had discretion to hold a hearing on the parties' claims, especially in light of the checkered course of the case up to that point."  *Id*. at 787.

*Amici* urge the Court to hold an evidentiary hearing so that it can determine whether Mr. Bove violated his ethical and prosecutorial duties and thereby "tainted" the Motion with "impropriety".  An evidentiary hearing will ensure that the Court can determine if the "reasons

ELLIOTT KWOK LEVINE JAROSLAW NEILS LLP

advanced for the proposed dismissal are substantial and the real grounds upon which the application is based." *United States v. Greater Blouse, Skirt & Neckwear Contractors Ass'n*, 228 F. Supp. 483, 486 (S.D.N.Y. 1964).

**DOJ's Arguments In Response to *Amici's* Brief**

DOJ makes several arguments in response to *Amici's* brief, all of which fail.

First, DOJ contends that *Amici* have "seized on false claims by SDNY to suggest that the Motion involves some kind of improper *quid pro quo*" and that "[t]hese arguments are frivolous." DOJ Response at 10. To disprove the existence of a *quid pro quo,* however, DOJ points only to representations made to the Court. It is precisely for this reason that *Amici* urge the Court to conduct an evidentiary hearing so that the Court can determine who is telling the truth – Ms. Sassoon or Mr. Bove and Mayor Adams. Without a hearing, the Court has conflicting narratives on an issue that is critical to its resolution of the Motion.

Second, DOJ, without acknowledging Rule 1.11(f)(3), attempts to defeat its application by contending that a public official only violates this Rule if they accept a personal gift or bribe in exchange for something of value from a defendant. DOJ Response at 10. But Rule 1.11(f)(3) places no such limitation on its application but rather applies if a lawyer holding public office "**accept[s] anything of value** from any person when the lawyer knows or its obvious the offer is for the purpose of influencing the lawyer's action as a public official." (Emphasis added.) Further, DOJ's reliance on *United States v. Blagojevich*, 794 F.3d 729, 734 (7th Cir. 2015) for the proposition that there is nothing improper in a public official trading one public act for another is inapposite because there was no claim that Mr. Blagojevich was acting as a lawyer bound by the Rules of Professional Conduct. Additionally, there is a serious issue here as to whether, as reported in the press, Mayor Adams's proposed exchange for the dismissal of the indictment was a tainted public act because it was "a clear shift in the city's sanctuary policies" by allowing federal immigration authority in the Rikers Island jail complex in exchange for a dismissal of his indictment. *Amici* Brief at 5.

Third, DOJ's attempt to dismiss the relevance of U.S. Attorneys who resigned rather than accede to Mr. Bove's demand that they sign the Motion because of "their obligations under the Departments chain of command" falls flat. DOJ Response at 11. This assertion ignores the fundamental point that attorneys have ethical duties that take precedence over the demands of the lawyer who supervises them. The words of Rule 5.2(a) are absolutely clear:

A lawyer is bound by these rules notwithstanding that the lawyer acted at the direction of another person.

ELLIOTT KWOK LEVINE JAROSLAW NEILS LLP

Ms. Sassoon and lawyers in the Public Integrity Section had an ethical duty under Rule 2.1 to "exercise their independent professional judgment and render candid advice". That fundamental ethical duty is not, as DOJ contends, subject to "the Department's chain of command." DOJ lawyers are ethically *required* to refuse to follow a supervisor's order if it would be unethical to do so.

Finally, in its Response at page 13, DOJ challenges the need for an evidentiary hearing because in *In re Flynn*, 973 F.3d 74, 81 (D.C. 2020), the *amicus* did not seek discovery or an evidentiary hearing. Plainly, the fact that an evidentiary hearing wasn't requested in *In re Flynn* has absolutely no bearing on whether it is appropriate in this case.

For the reasons stated in our *Amici* brief and above, an evidentiary hearing is necessary in order for the Court to determine whether DOJ's Motion is "tainted" with "impropriety".

Respectfully submitted,

_____

Ilene Jaroslaw
Elliot Kwok Levine Jaroslaw Neils LLP
One Grand Central Place
60 East 42nd Street, Suite 1570
New York, NY 10165
(212) 321-0510
ijaroslaw@ekljnlaw.com
Bar No. IW0569

Lawyer for *State Democracy Defenders Fund* and *Lawyers Defending American Democracy*

cc: Counsel of Record (via ECF)