UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

2 2 MAG 5134

In the Matter of a Warrant for All
Content and Other Information
Associated with the Email Account
████████████@gmail.com
Maintained at Premises Controlled by
Google LLC, USAO Reference No.
2021R00778

TO BE FILED UNDER SEAL

AGENT AFFIDAVIT

Agent Affidavit in Support of Application for a Search Warrant
for Stored Electronic Communications

STATE OF NEW YORK    )
                                          ) ss.
COUNTY OF NEW YORK  )

████████████ being duly sworn, deposes and states:

I. Introduction

A. Affiant

1. I have been a Special Agent with the Federal Bureau of Investigation ("FBI") for over two years. I am assigned to a public corruption squad in the FBI's New York office and have participated in investigations involving campaign finance offenses and public corruption. As part of those investigations, I have participated in the execution of search warrants involving electronic evidence.

B. The Provider, the Subject Account, and the Subject Offenses

2. I make this affidavit in support of an application for a search warrant pursuant to 18 U.S.C. § 2703 for all content and other information associated with the email account ████████████@gmail.com (the "Subject Account"), maintained and controlled by Google LLC (the "Provider"), headquartered at 1600 Amphitheatre Parkway, Mountain View, California

2

09.20.2021

SDNY_01_000004303
SUBJECT TO PROTECTIVE ORDER.

94043. The information to be searched is described in the following paragraphs and in Attachment A to the proposed warrant.

3. As detailed below, there is probable cause to believe that the Subject Account contains evidence, fruits, and instrumentalities of theft of federal funds and wire fraud, and conspiracy to commit the same, in violation of 18 U.S.C. §§ 371, 666, 1343, and 1349 (the "Subject Offenses"). This affidavit is based upon my personal knowledge, my review of documents and other evidence, and my conversations with other law enforcement officers, as well as my training and experience concerning the use of email in criminal activity. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts I have learned during my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

## C. Services and Records of the Provider

4. I have learned the following about the Provider:

a. The Provider offers email services to the public. In particular, the Provider allows subscribers to maintain email accounts under any domain name under the subscriber's control. For example, if a subscriber controls the domain name "xyzbusiness.com," the Provider enables the subscriber to host any email address under this domain name (*e.g.*, "john@xyzbusiness.com"), on servers operated by the Provider. A subscriber using the Provider's services can access his or her email account from any computer connected to the Internet.

b. The Provider maintains the following records and information with respect to every subscriber account:

i. *Email contents*. In general, any email (which can include attachments such as documents, images, and videos) sent to or from a subscriber's account, or

3

09.20.2021

SDNY_01_000004304
SUBJECT TO PROTECTIVE ORDER.

stored in draft form in the account, is maintained on the Provider's servers unless and until the subscriber deletes the email. If the subscriber does not delete the email, it can remain on the the Provider's computers indefinitely. Even if the subscriber deletes the email, it may continue to be available on the Provider's servers for a certain period of time.

ii.    *Subscriber and billing information.* The Provider collects and maintains (typically unverified) identifying information about each subscriber, including, for example, name, username, address, telephone number, recovery and alternate email addresses, and sign-in phone numbers. A recovery email address, which can be associated with more than one Gmail account, is used to regain access to an account if a password has been forgotten or a user has been locked out of their account. An alternate email address is a non-Gmail account that a user has provided that can be used to sign into a Gmail account. A sign-in phone number is a phone number that can be used as a primary/additional login identifier to access an account. The Provider also maintains records concerning the date on which the account was created, the Internet protocol ("IP")[1] address of the user at the time of account creation, the current status of the account (*e.g.*, active or closed), the length of service, and the types of The Provider services utilized by the subscriber. Finally, the Provider maintains records regarding (1) fetching and forwarding email addresses, which are email accounts from which the primary account receives emails and forwards emails, respectively; (2) email aliases, domain aliases or separate domains associated with the account, which are means by which accounts with other domain names or other email addresses can be associated with a primary the Provider account; (3) other the Provider accounts that have access to the primary account, which access can be granted by the

---

[1] Based on my training and experience, each electronic device connected to the Internet must be assigned a unique IP address so that communications from or directed to that electronic device are routed properly.

4

09.20.2021

SDNY_01_000004305
SUBJECT TO PROTECTIVE ORDER.

user of the primary account; and (4) other email accounts that are associated with the primary the Provider account.

        iii.     *Device Information.* The Provider may also collect and maintain information identifying devices (including both computers and mobile devices) used to access accounts, including, for example, device serial number, a GUID or Global Unique Identifier, a phone number, MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), International Mobile Subscriber Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI").

        iv.     *Cookie Data.* The Provider typically uses features to track the activity of users of its accounts, including whether or not the user of an account accesses other accounts at the Provider using the same computer or device, or accesses accounts maintained by other companies while logged into an account. One of the ways they do that is by using cookies, a string of characters stored on the user's computer or web browser that is recognized by The Provider when a computer visits its site or logs into an account.

        v.     *Transactional information.* The Provider also typically retains certain transactional information about the use of each account on its system, including records of login and logout events relating to the Provider accounts, including user IP addresses and dates and timestamps.

        vi.     *Customer correspondence.* The Provider also typically maintains records of any customer service contacts with or about the subscriber, including any inquiries or complaints concerning the subscriber's account.

09.20.2021

SDNY_01_000004306
SUBJECT TO PROTECTIVE ORDER.

vii.   *Preserved and backup records.* The Provider also maintains preserved copies of the foregoing categories of records with respect to an account, for at least 90 days, upon receiving a preservation request from the Government pursuant to 18 U.S.C. § 2703(f).  The Provider may also maintain backup copies of the foregoing categories of records pursuant to its own data retention policy.

### D.  Jurisdiction and Authority to Issue Warrant

5.   Pursuant to 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A), the Government may require a provider of an electronic communications service or a remote computing service, such as the Provider, to disclose all stored content and all non-content records or other information pertaining to a subscriber, by obtaining a warrant issued using the procedures described in the Federal Rules of Criminal Procedure.

6.   A search warrant under § 2703 may be issued by "any district court of the United States (including a magistrate judge of such a court)" that "has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

7.   When the Government obtains records under § 2703 pursuant to a search warrant, the Government is not required to notify the subscriber of the existence of the warrant. 18 U.S.C. § 2703(a), (b)(1)(A), (c)(2) & (3).  Additionally, the Government may obtain an order precluding the Provider from notifying the subscriber or any other person of the warrant, for such period as the Court deems appropriate, where there is reason to believe that such notification will seriously jeopardize an investigation.  18 U.S.C. § 2705(b).

## II. Probable Cause

### A.  Probable Cause Regarding the Subject Offenses

8.   Since in or about August 2021, the FBI and the Office of the United States Attorney for the Southern District of New York have been investigating the possible receipt of so-called

6

09.20.2021

SDNY_01_000004307
SUBJECT TO PROTECTIVE ORDER.



"straw" donations by the 2021 New York City mayoral campaign of Eric Adams (the "Adams Campaign") by employees of ███████████████████ a construction company that operates in New York City. A straw, or "conduit," donation occurs when a donation to a political campaign is made in the name of one donor, but the funds in question in fact belong to a different person. This warrant seeks permission to search an email account used by ████

████ an individual associated with Adams who has acted as a point of contact between the Adams Campaign and ████

### The Adams Campaign and New York City's Matching Funds Program

9. I understand, based on my review of publicly available information, that:

    a. The Adams Campaign accepted matching funds from the New York City Campaign Finance Board throughout a significant part of its campaign ("Matching Funds"), meaning that the Adams Campaign received funds from the New York City government as a result of donations the Adams Campaign received from private donors that were eligible for matching funds.[2]

    b. Under New York City law, the Adams Campaign was eligible to receive $2,000 in Matching Funds, and no more than $2,000 in Matching Funds, for each donation of $250 from an individual donor who resides within New York City. If an individual donated more than $250, any amount in excess of $250 would not be eligible for matching funds.[3]

---

[2]    See, e.g., https://www.ny1.com/nyc/all-boroughs/news/2021/10/08/eric-adams-is-taking-a-rare-step--turning-down-campaign-cash (reporting on the Adams Campaign's prior acceptance of matching funds and decision to turn down some matching funds as of October 7, 2021); https://www.nyccfb.info/VSApps/CandidateSummary.aspx?as_cand_id=1545&as_election_cycl e=2021&cand_name=Adams%2C+Eric+L&office=Mayor&report=summ (New York City Campaign Finance Board's report detailing total public funds disbursed to Adams Campaign).

[3]    See https://www.nyccfb.info/program/how-it-works.

09.20.2021

SDNY_01_000004308
SUBJECT TO PROTECTIVE ORDER.

c. New York City receives in excess of $10,000 per year in federal funding.[4]

### The Suspected Straw Donations

10. I understand, based on contribution forms provided by the New York City Campaign Finance Board, that the Adams Campaign received the following donations, among others, on May 7, 2021:

| AMOUNT | NAME | CITY | STATE | OCCUPATION | EMPLOYER NAME |
|--------|------|------|-------|------------|---------------|
| $1,500 | Arkan, Erden | New York | NY | Owner | ███████ |
| $1,200 | ██████ | Flushing | NY | Sr.      Prod. Manager | ███████ |
| $1,250 | ██████ | Brooklyn | NY | Account Manager | ███████ |
| $1,250 | ██████ | Flushing | NY | Construction | ███████ |
| $1,250 | ██████ | Cliffside Park | NJ | Business Logistics | ███████ |
| $1,250 | ██████ | Brooklyn | NY | PM | ███████ |
| $1,250 | ██████ | Brooklyn | NY | Engineer/ Lawyer | ███████ |
| $1,250 | ██████ | Brooklyn | NY | Project manager | ███████ |
| $1,250 | ██████ | Ridgewood | NJ | Finance Director | ███████ |

---

[4]  *See* https://comptroller.nyc.gov/wp-content /uploads/2016/11/Federal_Budget_ Vulnerabilities_Memo.pdf

[5]  The description of ████ as an "Engineer/lawyer" at ████ s taken from the donation form submitted to the New York City Campaign Finance Board as part of her donation, but it appears from publicly available information that ████ may not in fact be employed at ████ although as explained in ¶ 11, her husband does appear to be employed at ████

8

SDNY_01_000004309
SUBJECT TO PROTECTIVE ORDER.

| $1,250 | ████████ | Flushing | NY | Partner | ████████ |
| $1,250 | ██████ | New York | NY | Accountant | |

The individuals listed in this table are hereinafter referred to as the "Donors."

11. I have further confirmed that, with the exception of the donations by ████████ and ████████ Matching Funds were issued in connection with each of the donations identified above.[6]

12. Bank records for ████ indicate that on April 28, 2021, ████ issued checks in the amount of $1,250 to each of the Donors with the exception of Arkan and ████ and also issued a $1,250 check to ████████ I know from law enforcement databases that ████ is ████ spouse. I know from my review of emails sent to and from each of the Donors except for ████ and also including emails sent to and from ████ (collectively, the "████ Emails"), obtained pursuant to a search warrant, that ████ is also employed by ████ As noted above, Arkan's donation to the Adams Campaign identifies Arkan as an or the owner of ████ Thus, on April 28, 2021, ████ paid each of the Donors the amount of their May 7, 2021 donation, with the exceptions of ████ whose husband instead received a check for that amount; Arkan, whose donation form describes him as the owner of ████ and ████ who donated $50 less to the Adams Campaign than ████ received from ████

---

[6]    I understand that Matching Funds are only available for donations made by persons who reside in New York City, and both ████ and ████ reside in New Jersey.

9

09.20.2021

SDNY_01_000004310
SUBJECT TO PROTECTIVE ORDER.

*The* ▮ *Emails*

13. I know from my review of the ▮ emails, in substance and in part, that:

a. On April 10, 2021, Arkan sent an email (the "April 10 Email") in Turkish[7, 8] to seven individuals, five of whom have corporate email addresses indicating involvement in the construction industry. Arkan also copied seven ▮ employees, of whom four are Donors and one of whom, ▮ is the husband of a Donor. Arkan wrote, in substance and in part, that: In the previous week he had met with (then) Brooklyn Borough President Eric Adams, and the New York General Consul also joined them; Adams is running for New York City Mayor and has warm feelings for Turkish business people; Arkan knows that the recipients of the email have been supporting Adams so far, but "they" (from context, ▮ are organizing a very special event in Arkan's office on May 5th between 5 and 6:30 pm; the recipients of the email should participate in the event and contribute; this may "feel like swimming against the current" but unfortunately, this is how things are done in this country; and this will hopefully be a successful fundraising event.

b. On April 21, 2021, Arkan sent an email to four individuals to thank them all for participating in an unspecified event. Arkan further wrote that in the morning, he spoken with "Consul General ▮" who was very happy and thought that mid-May would be an appropriate target date. I know from publicly available materials that ▮ s the consul general of Turkey's New York consulate.

---

[7] Many of the ▮ emails are written wholly or partly in Turkish. I have reviewed draft summaries of those emails prepared by a Turkish linguist employed by the FBI, which are reflected in this Affidavit. Quotations to these emails are to the summaries prepared by the linguist.

[8] Based on my review of publicly available information, ▮ is affiliated with a larger Turkish company and many of its employees are Turkish nationals.

10

09.20.2021

SDNY_01_000004311
SUBJECT TO PROTECTIVE ORDER

c.  Also on April 21, 2021, Arkan sent ███████████ (a Donor and ████

employee) the phone number for "███████ Brooklyn Borough."  From my review of

publicly available information, I know that ████ was a fundraiser for the Adams Campaign, and

was employed with the Brooklyn Borough President's office when Adams was the Brooklyn

Borough President.

d.  On April 26, 2021, ███████ emailed Arkan and stated that she had "texted"

with ████ and that ████ "said the checks can [b]e made payable to: Eric Adams 2021."

███████ also asked Arkan: "do you want me to email all the people on our list that are capable of

making contributions to find out if they are willing to do it? Also Food and beverages, who would

you like me to get to cater it?"  Arkan responded by forwarding ████ the April 10 Email.

e.  From on or about April 27, 2021 through on or about May 7, 2021, ██████

sent a series of emails inviting persons and businesses associated with ████ including the

recipients of the April 10 Email, to attend a fundraiser for the Adams Campaign, which Adams

personally was scheduled to attend, hosted by ████ on May 7, 2021. Arkan and ████ were

consistently copied on these emails.

f.  On April 27 and 28, 2021, Arkan exchanged three emails with ███████, who

is not a Donor, but based on his email address and the statements in his email, is a ████ employee.

In the first email, ██████ responds to one of the emails sent by ██████ described above in

paragraph 13(e), asking whether he should set up a " 'go fund me' kind of thing and share the link

with everyone" so that the group could raise funds for Adams toward a target amount using a

website. Arkan replied in Turkish and only to ██████ stating that it would "cramp their style" to

use the method proposed by ██████ Arkan further explained that "the goal is to host the man

there and to hand the checks to his secretary," that ███████ method "is too professional" and that

11

SDNY_01_000004312
SUBJECT TO PROTECTIVE ORDER

████ 'need[s] to be hands on." ████ replied that he would "polish his checkbook" and attend. According to other ████ Emails I have reviewed, ████ donated $200 to the Adams Campaign.

g. On May 5, 2021, Arkan emailed ████ and ████ (another Donor and ████ employee), "Don't forget to remind our guest for fundraising event!" Subsequently on May 5, 2021, ████ sent a "friendly reminder regarding our fundraiser with 'Eric Adams for Mayor'" to the parties described above in paragraphs 13(b) and 13(e).

h. On May 7, 2021, shortly after the scheduled time for the fundraiser, Arkan thanked ████ and ████ (another Donor and ████ employee) for their hard work in making "this event" successful. Arkan copied ████ on this email. As noted above, also on May 7, 2021, the Donors made donations to the Adams Campaign that largely matched the amount of money ████ had paid them on April 28, 2021.

i. On May 10, 2021, ████ sent ████ an email with no subject heading or body, attaching a photograph of a handwritten list (the "List"). The List is entitled "Eric Adams 2021 Donation," and consists of a column of names with corresponding dollar amounts. The List includes all of the Donors and accurately reflects the amount of their donations, except that ████ is listed as a donor of $1,250, when according to records maintained by the New York City Board of Elections, it was ████ wife, ████ who donated that amount. The List also reflects smaller donations by ten other individuals or corporations, most of whom appear to have received the emails from ████ and Arkan urging contribution that are described above in paragraphs 13(b) and 13(e). In total, the list records $20,000 in donations, of which nearly 70% came from the Donors.

---

9 On the records provided by the New York City Campaign Finance Board, ████ first name is spelled ████ On ████ bank records as well as the underlying donation slip, however, she uses the common spelling ████

12

09.20.2021

SDNY_01_000004313
SUBJECT TO PROTECTIVE ORDER.

### B. Probable Cause Regarding the Subject Account

14. I know from my review of media reports, among other sources, that █████████████ is a longtime advisor of Eric Adams who worked in the Special Counsel's office of the Brooklyn Borough President when Adams was Brooklyn Borough President, was involved with the Adams Campaign, and now works in the Mayor's Office for International Affairs.  As detailed below, during the course of Adams's mayoral campaign, ████████ had regular contact both with Turkish consular officials and with ██████ and was personally involved with the May 7, 2021 Adams fundraiser held by █████ pursuant to which the Donors made their straw donations.

15. Phone records indicate that from between February 8, 2021 and January 14, 2022, a phone number subscribed in █████████ name (the ████████████ exchanged 23 calls with a phone number subscribed to the Turkish Consulate General (the "Consulate Number").[10]  This includes a call on April 2, 2021.  As explained above, in the April 10 Email, Arkan stated that he had met with the Consul General and Adams in the prior week, and planned to hold a fundraiser for Adams.

16. Records provided by WhatsApp, an internet-based messaging program, show that between December 3, 2021—which is the first date for which the FBI was able to obtain this data—and June 10, 2022—which is the last date on which I reviewed this data—there were 189 WhatsApp communications between an account subscribed to the █████████ number and an account subscribed to the Consulate Number.[11]

---

[10]    These records are not complete, but rather do not include April 2022 and parts of March and May 2022.

[11]    These records are not complete, but rather do not include parts or March and April 2022.

13

09.20.2021

SDNY_01_000004314
SUBJECT TO PROTECTIVE ORDER.

17. I have reviewed photographs posted to the Internet on November 18, 2021 by the Turkish General Consulate in New York City showing persons I believe to be ███████ (the Consul General), and Eric Adams together.

18. Toll records indicate that on May 19, 2021, a phone number subscribed to by ███████ ███████ and a phone number subscribed to by Arkan exchanged two calls, one of which resulted in a call of one minute and 11 seconds duration and the other of which did not result in a listed duration (possibly indicating that the call was not answered).

19. On May 20, 2021, Arkan emailed ███ that ███████ had called seeking copies of invoices "for the cheese plate and fruits, except the alcohol." On May 20, 2021, Arkan sent the email address for the Subject Account to ███ then sent the Subject Account two receipts for purchases of fruits, nuts, juices, and other snack-type items. I understand that campaigns, such as the Adams Campaign, often request receipts of this type because the provision of food and beverages at a campaign event can be considered an "in kind contribution" that campaigns must report, although according to records maintained by New York City Campaign Finance Board, no in-kind donation was reported for this event.

20. On November 2, 2021, Arkan received an email from the Subject Account forwarding information about an Adams campaign election night party and providing an internet link for a "VIP RSVP."

21. I believe that the Subject Account is used by ███████ because, among other reasons, the username of the Subject Account is largely composed of ███████ name, and the May 19, 2021 email to the Subject Account discussed above would be consistent with use of the Subject Account by ███████

14

SDNY_01_000004315
SUBJECT TO PROTECTIVE ORDER

22. <u>Temporal Limitation</u>. This application is limited to all content created, sent, or received on or after February 1, 2021 through November 2, 2021, which runs from the earliest month in which the available evidence establishes communications between ▮▮▮▮▮ and the Turkish General Consulate, and the close of the 2021 election in which the Adams Campaign participated.

## C. Evidence, Fruits and Instrumentalities

23. Based upon the foregoing, I respectfully submit there is probable cause to believe that information stored on the Providers' servers associated with the Subject Account will contain evidence, fruits, and instrumentalities of the Subject Offenses, as more fully described in Section II of Attachment A to the proposed warrant.

## III. Review of the Information Obtained Pursuant to the Warrant

24. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for service of a search warrant issued under § 2703, or for the collection or production of responsive records. Accordingly, the warrant requested herein will be transmitted to the Provider, which shall be directed to produce a digital copy of any responsive records to law enforcement personnel within 30 days from the date of service. Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) will retain the records and review them for evidence, fruits, and instrumentalities of the Subject Offenses as specified in Section III of Attachment A to the proposed warrant.

25. In conducting this review, law enforcement personnel may use various methods to locate evidence, fruits, and instrumentalities of the Subject Offenses, including but not limited to undertaking a cursory inspection of all emails within the Subject Accounts. This method is analogous to cursorily inspecting all the files in a file cabinet in an office to determine which paper

15

09.20.2021

SDNY_01_000004316
SUBJECT TO PROTECTIVE ORDER.

evidence is subject to seizure. Although law enforcement personnel may use other methods as well, particularly including keyword searches, I know that keyword searches and similar methods are typically inadequate to detect all information subject to seizure. As an initial matter, keyword searches work only for text data, yet many types of files commonly associated with emails, including attachments such as scanned documents, pictures, and videos, do not store data as searchable text. Moreover, even as to text data, keyword searches cannot be relied upon to capture all relevant communications in an account, as it is impossible to know in advance all of the unique words or phrases that investigative subjects will use in their communications, and consequently there are often many communications in an account that are relevant to an investigation but that do not contain any keywords that an agent is likely to search for.

## IV. Request for Non-Disclosure and Sealing Order

26. The existence and scope of this ongoing criminal investigation is not publicly known. As a result, premature public disclosure of this affidavit or the requested warrant could alert potential criminal targets that they are under investigation, causing them to destroy evidence, flee from prosecution, or otherwise seriously jeopardize the investigation. As is set forth above, subjects of this investigation are known to use computers and electronic communications in furtherance of their activity and thus could easily delete, encrypt, or otherwise conceal such digital evidence from law enforcement were they to learn of the Government's investigation. *See* 18 U.S.C. § 2705(b)(3).

27. Accordingly, there is reason to believe that, were the Provider to notify the subscribers or others of the existence of the warrant, the investigation would be seriously jeopardized. Pursuant to 18 U.S.C. § 2705(b), I therefore respectfully request that the Court direct the Provider not to notify any person of the existence of the warrant for a period of one year from issuance, subject to extension upon application to the Court, if necessary.

16

SDNY_01_000004317
SUBJECT TO PROTECTIVE ORDER.

28. For similar reasons, I respectfully request that this affidavit and all papers submitted herewith be maintained under seal until the Court orders otherwise, except that the Government be permitted without further order of this Court to provide copies of the warrant and affidavit as need be to personnel assisting it in the investigation and prosecution of this matter, and to disclose those materials as necessary to comply with discovery and disclosure obligations in any prosecutions related to this matter.

**V. Conclusion**

29. Based on the foregoing, I respectfully request that the Court issue the warrant sought herein pursuant to the applicable provisions of the Stored Communications Act, 18 U.S.C. § 2703(b)(1)(A) (for contents) and § 2703(c)(1)(A) (for records and other information), and the relevant provisions of Federal Rule of Criminal Procedure 41.



Special Agent
Federal Bureau of Investigation

Sworn to before me this
15th of June, 2022

HONORABLE JENNIFER E. WILLIS
United States Magistrate Judge
Southern District of New York

17

09.20.2021

SDNY_01_000004318
SUBJECT TO PROTECTIVE ORDER.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In the Matter of a Warrant for All
Content and Other Information
Associated with the Email Account
███████████@gmail.com
Maintained at Premises Controlled by
Google LLC, USAO Reference No.
2021R00778

2 2 MAG 5134

## SEARCH WARRANT AND NON-DISCLOSURE ORDER

TO:    Google LLC ("Provider")

Federal Bureau of Investigation ("Investigative Agency")

**1. Warrant.** Upon an affidavit of Special Agent ██████████ of the Federal Bureau of

Investigation, and pursuant to the provisions of the Stored Communications Act, 18 U.S.C.

§ 2703(b)(1)(A) and § 2703(c)(1)(A), and the relevant provisions of Federal Rule of Criminal

Procedure 41, the Court hereby finds there is probable cause to believe that the email account

██████████@gmail.com (the "Subject Account"), maintained at premises controlled by the

Provider, contains evidence, fruits, and instrumentalities of crime, all as specified in Attachment

A hereto. Accordingly, the Provider is hereby directed to provide to the Investigative Agency,

within 30 days of the date of service of this Warrant and Order, the records specified in Section II

of Attachment A hereto, for subsequent review by law enforcement personnel as authorized in

Section III of Attachment A. The Government is required to serve a copy of this Warrant and

Order on the Provider within 14 days of the date of issuance. The Warrant and Order may be

served via electronic transmission or any other means through which the Provider is capable of

accepting service.

SUBJECT TO PROTECTIVE ORDER.

**2. Non-Disclosure Order.** Pursuant to 18 U.S.C. § 2705(b), the Court finds that there is reason to believe that notification of the existence of this warrant will result in destruction of or tampering with evidence, or otherwise will seriously jeopardize an ongoing investigation. Accordingly, it is hereby ordered that the Provider shall not disclose the existence of this Warrant and Order to the listed subscriber or to any other person for a period of one year from the date of this Order, subject to extension upon application to the Court if necessary, except that Provider may disclose this Warrant and Order to an attorney for Provider for the purpose of receiving legal advice.

**3. Sealing.** It is further ordered that this Warrant and Order, and the Affidavit upon which it was issued, be filed under seal, except that the Government may without further order of this Court serve the Warrant and Order on the Provider; provide copies of the Affidavit or Warrant and Order as need be to personnel assisting the Government in the investigation and prosecution of this matter; and disclose these materials as necessary to comply with discovery and disclosure obligations in any prosecutions related to this matter.

Dated: New York, New York

_6-15-22_
Date Issued

_11:57 am_
Time Issued

_____
UNITED STATES MAGISTRATE JUDGE
Southern District of New York

2

09.20.2021

SDNY_01_000004320
SUBJECT TO PROTECTIVE ORDER.

### Email Search Attachment A

**I. Subject Account and Execution of Warrant**

This warrant is directed to Google LLC (the "Provider"), headquartered at 1600 Amphitheatre Parkway, Mountain View, California 94043, and applies to all content and other information within the Provider's possession, custody, or control associated with the email account ▮▮▮▮▮▮▮▮▮▮▮@gmail (the "Subject Account").

A law enforcement officer will serve this warrant by transmitting it via email or another appropriate manner to the Provider. The Provider is directed to produce to the law enforcement officer an electronic copy of the information specified in Section II below. Upon receipt of the production, law enforcement personnel will review the information for items falling within the categories specified in Section III below.

**II. Information to be Produced by the Provider**

To the extent within the Provider's possession, custody, or control, the Provider is directed to produce the following information associated with the Subject Account:

a. *Email content.* All emails sent to or from, stored in draft form in, or otherwise associated with the Subject Account, including all message content, attachments, and header information (specifically including the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email) limited to items sent, received, or created between February 1, 2021 and November 2, 2021, inclusive;

b. *Address book information.* All address book, contact list, or similar information associated with the Subject Account.

c. *Subscriber and payment information.* All subscriber and payment information regarding the Subject Account, including but not limited to name, username, address, telephone

SUBJECT TO PROTECTIVE ORDER.

number, alternate email addresses, registration IP address, account creation date, account status, length of service, types of services utilized, means and source of payment, and payment history.

    d. *Transactional records.* All transactional records associated with the Subject Account, including any IP logs or other records of session times and durations.

    e. *Customer correspondence.* All correspondence with the subscriber or others associated with the Subject Account, including complaints, inquiries, or other contacts with support services and records of actions taken.

    f. *Preserved or backup records.* Any preserved or backup copies of any of the foregoing categories of records, whether created in response to a preservation request issued pursuant to 18 U.S.C. § 2703(f) or otherwise.

## III. Review of Information by the Government

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate any evidence, fruits, and instrumentalities of theft of federal funds and wire fraud, and conspiracy to commit the same, in violation of 18 U.S.C. §§ 371, 666, 1343, and 1349, including the following:

    a. Evidence of knowledge or understanding of, or intent to violate, laws and regulations governing the conduct of the 2021 New York City Mayoral campaign on the part of ███████████████████████ and its employees, officers, or associates.

    b. Evidence relating to coordination between employees, officers, and associates of ████ and employees, officers, and associates of the 2021 New York City mayoral campaign of Eric Adams (the "Adams Campaign") concerning political contributions to the Adams Campaign.

2

09.20.2021

SDNY_01_000004322
SUBJECT TO PROTECTIVE ORDER

c.  Evidence relating to payments to employees, officers, and associates of ▮▮ to facilitate those employees, officers, and associates making political contributions to the Adams Campaign.

d.  Evidence of the motive or purpose of political contributions to the Adams Campaign by employees, officers, and associates of ▮▮

e.  Evidence relating to the source of funds for payment or reimbursement of employees, officers, and associates of ▮▮ for political contributions to the Adams Campaign.

f.  Evidence of other individuals or entities who donated to the Adams Campaign before or after receiving transfers of funds similar to the amount of the donation.

g.  Identity of any persons or entities involved, wittingly or unwittingly, in straw donations to the Adams Campaign.

h.  Passwords or other information needed to access user's online accounts.

3

09.20.2021

SDNY_01_000004323
SUBJECT TO PROTECTIVE ORDER.