UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

# 24 MAG 736

In the Matter of a Warrant for All
Content and Other Information
Associated with the iCloud Account
Associated With
███████@aol.com
Maintained at Premises Controlled by
Apple Inc., USAO Reference No.
2021R00778

**TO BE FILED UNDER SEAL**

**AGENT AFFIDAVIT**

**Agent Affidavit in Support of Application for a Search Warrant
for Stored Electronic Communications**

STATE OF NEW YORK      )
                       ) ss.
COUNTY OF NEW YORK  )

███████, Special Agent, Federal Bureau of Investigation, being duly sworn, deposes
and states:

## I. Introduction

### A. Affiant

1.  I have been a Special Agent with the Federal Bureau of Investigation ("FBI") since
2019. I am currently assigned to a public corruption squad of the New York Field Office, where,
among other things, I investigate crimes involving illegal campaign contributions, theft of federal
funds, and bribery.  Through my training and experience, I also have become familiar with some
of the ways in which individuals use smart phones and electronic communications, including social
media, email, and electronic messages, in furtherance of their crimes, and have participated in the
execution of search warrants involving electronic evidence.

09.20.2021

2

SUBJECT TO PROTECTIVE ORDER.

**B.  The Provider, the Subject Account and the Subject Offenses**

2.  I make this affidavit in support of an application for a search warrant pursuant to 18 U.S.C. § 2703 for all content and other information associated with the iCloud accounts associated with ██████████@aol.com (the "Adams iCloud Account" or the "Subject Account"), maintained and controlled by Apple Inc. (the "Provider"), headquartered at 1 Infinite Loop, Cupertino, California 95014. The information to be searched is described in the following paragraphs and in Attachment A to the proposed warrant.

3.  As detailed below, there is probable cause to believe that the Subject Account contains evidence, fruits, and instrumentalities of violations of (i) 18 U.S.C. §§ 371 and 666 (theft of federal funds and conspiracy to steal federal funds), (ii) 18 U.S.C. §§ 1343 and 1349 (wire fraud and attempt and conspiracy to commit wire fraud), and (iii) 18 U.S.C. § 371 and 52 U.S.C. § 30121 (campaign contributions by foreign nationals and conspiracy to commit the same) (collectively, the "Subject Offenses"). This affidavit is based upon my personal knowledge, my review of documents and other evidence, and my conversations with other law enforcement officers, as well as my training and experience concerning the use of email in criminal activity. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts I have learned during my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

**C.  Services and Records of the Provider**

4.  Apple is a United States company that produces the iPhone, iPad, and iPod Touch, all of which use the iOS operating system, and desktop and laptop computers based on the Mac OS operating system.

09.20.2021

3

SDNY_01_000005757
SUBJECT TO PROTECTIVE ORDER.

5.  Apple provides a variety of services that can be accessed from Apple devices or, in some cases, other devices via web browsers or mobile and desktop applications ("apps").  As described in further detail below, the services include email, instant messaging, and file storage:

a.  Apple provides email service to its users through email addresses at the domain names mac.com, me.com, and icloud.com.

b.  iMessage and FaceTime allow users of Apple devices to communicate in real-time.  iMessage enables users of Apple devices to exchange instant messages ("iMessages") containing text, photos, videos, locations, and contacts, while FaceTime enables those users to conduct audio and video calls.

c.  iCloud is a cloud storage and cloud computing service from Apple that allows its users to interact with Apple's servers to utilize iCloud-connected services to create, store, access, share, and synchronize data on Apple devices or via icloud.com on any Internet-connected device.  For example, iCloud Mail enables a user to access Apple-provided email accounts on multiple Apple devices and on iCloud.com.  iCloud Photo Library and My Photo Stream can be used to store and manage images and videos taken from Apple devices, and iCloud Photo Sharing allows the user to share those images and videos with other Apple subscribers.  iCloud Drive can be used to store presentations, spreadsheets, and other documents. iCloud Tabs and bookmarks enable iCloud to be used to synchronize bookmarks and webpages opened in the Safari web browsers on all of the user's Apple devices.  iCloud Backup allows users to create a backup of their device data.  iWork Apps, a suite of productivity apps (Pages, Numbers, Keynote, and Notes), enables iCloud to be used to create, store, and share documents, spreadsheets, and presentations.  iCloud Keychain enables a user to keep website username and

09.20.2021

SDNY_01_000005758
SUBJECT TO PROTECTIVE ORDER.

passwords, credit card information, and Wi-Fi network information synchronized across multiple Apple devices.

      d.      Game Center, Apple's social gaming network, allows users of Apple devices to play and share games with each other.

      e.      Find My iPhone allows owners of Apple devices to remotely identify and track the location of, display a message on, and wipe the contents of those devices.  Find My Friends allows owners of Apple devices to share locations.

      f.      Location Services allows apps and websites to use information from cellular, Wi-Fi, Global Positioning System ("GPS") networks, and Bluetooth, to determine a user's approximate location.

      g.  App Store and iTunes Store are used to purchase and download digital content.  iOS apps can be purchased and downloaded through App Store on iOS devices, or through iTunes Store on desktop and laptop computers running either Microsoft Windows or Mac OS.  Additional digital content, including music, movies, and television shows, can be purchased through iTunes Store on iOS devices and on desktop and laptop computers running either Microsoft Windows or Mac OS.

6.  Apple services are accessed through the use of an "Apple ID," an account created during the setup of an Apple device or through the iTunes or iCloud services.  The account identifier for an Apple ID is an email address, provided by the user.  Users can submit an Apple-provided email address (often ending in @icloud.com, @me.com, or @mac.com) or an email address associated with a third-party email provider (such as AOL).  The Apple ID can be used to access most Apple services (including iCloud, iMessage, and FaceTime) only after the user accesses and responds to a "verification email" sent by Apple to that "primary" email address.

09.20.2021

SDNY_01_000005759
SUBJECT TO PROTECTIVE ORDER.

Additional email addresses ("alternate," "rescue," and "notification" email addresses) can also be associated with an Apple ID by the user.  A single Apple ID can be linked to multiple Apple services and devices, serving as a central authentication and syncing mechanism.

7.    Apple captures information associated with the creation and use of an Apple ID. During the creation of an Apple ID, the user must provide basic personal information including the user's full name, physical address, and telephone numbers.  The user may also provide means of payment for products offered by Apple.  The subscriber information and password associated with an Apple ID can be changed by the user through the "My Apple ID" and "iForgot" pages on Apple's website.  In addition, Apple captures the date on which the account was created, the length of service, records of log-in times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to and utilize the account, the Internet Protocol address ("IP address") used to register and access the account, and other log files that reflect usage of the account.

8.    Additional information is captured by Apple in connection with the use of an Apple ID to access certain services.  For example, Apple maintains connection logs with IP addresses that reflect a user's sign-on activity for Apple services such as iTunes Store and App Store, iCloud, Game Center, and the My Apple ID and iForgot pages on Apple's website.  Apple also maintains records reflecting a user's app purchases from App Store and iTunes Store, "call invitation logs" for FaceTime calls, "query logs" for iMessage, and "mail logs" for activity over an Apple-provided email account.  Records relating to the use of the Find My iPhone service, including connection logs and requests to remotely lock or erase a device, are also maintained by Apple.

6

SDNY_01_000005760
SUBJECT TO PROTECTIVE ORDER.

9.  Apple also maintains information about the devices associated with an Apple ID. When a user activates or upgrades an iOS device, Apple captures and retains the user's IP address and identifiers such as the Integrated Circuit Card ID number ("ICCID"), which is the serial number of the device's SIM card.  Similarly, the telephone number of a user's iPhone is linked to an Apple ID when the user signs into FaceTime or iMessage.  Apple also may maintain records of other device identifiers, including the Media Access Control address ("MAC address"), the unique device identifier ("UDID"), and the serial number.  In addition, information about a user's computer is captured when iTunes is used on that computer to play content associated with an Apple ID, and information about a user's web browser may be captured when used to access services through icloud.com and apple.com.  Apple also retains records related to communications between users and Apple customer service, including communications regarding a particular Apple device or service, and the repair history for a device.

10. Apple provides users with five gigabytes of free electronic space on iCloud, and users can purchase additional storage space.  That storage space, located on servers controlled by Apple, may contain data associated with the use of iCloud-connected services, including: email (iCloud Mail); images and videos (iCloud Photo Library, My Photo Stream, and iCloud Photo Sharing); documents, spreadsheets, presentations, and other files (iWork and iCloud Drive); and web browser settings and Wi-Fi network information (iCloud Tabs and iCloud Keychain). iCloud can also be used to store iOS device backups, which can contain a user's photos and videos, iMessages, Short Message Service ("SMS") and Multimedia Messaging Service ("MMS") messages, voicemail messages, call history, contacts, calendar events, reminders, notes, app data and settings, Apple Watch backups, and other data.  Records and data associated

7

09.20.2021

with third-party apps may also be stored on iCloud; for example, the iOS app for WhatsApp, an instant messaging service, can be configured to regularly back up a user's instant messages on iCloud Drive.  Some of this data is stored on Apple's servers in an encrypted form but can nonetheless be decrypted by Apple.

11. In my training and experience, evidence of who was using an Apple ID and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above.  This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

12. For example, the stored communications and files connected to an Apple ID may provide direct evidence of the offenses under investigation.  Based on my training and experience, instant messages, emails, voicemails, photos, videos, and documents are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.

13. In addition, the user's account activity, logs, stored electronic communications, and other data retained by Apple can indicate who has used or controlled the account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time.  As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device

8

SDNY_01_000005762
SUBJECT TO PROTECTIVE ORDER.

identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

14. Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

15. Other information connected to an Apple ID may lead to the discovery of additional evidence. For example, the identification of apps downloaded from App Store and iTunes Store may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators. In addition, emails, instant messages, Internet activity, documents, and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

16. Therefore, Apple's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Apple's services. In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

**D. Jurisdiction and Authority to Issue Warrant**

17. Pursuant to 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A), the Government may require a provider of an electronic communications service or a remote computing service, such as the Provider, to disclose all stored content and all non-content records or other information pertaining to a subscriber, by obtaining a warrant issued using the procedures described in the Federal Rules of Criminal Procedure.

9

09.20.2021

SDNY_01_000005763
SUBJECT TO PROTECTIVE ORDER.

18. A search warrant under § 2703 may be issued by "any district court of the United States (including a magistrate judge of such a court)" that "has jurisdiction over the offense being investigated."  18 U.S.C. § 2711(3)(A)(i).

19. When the Government obtains records under § 2703 pursuant to a search warrant, the Government is not required to notify the subscriber of the existence of the warrant. 18 U.S.C. § 2703(a), (b)(1)(A), (c)(2) & (3).  Additionally, the Government may obtain an order precluding the Provider from notifying the subscriber or any other person of the warrant, for such period as the Court deems appropriate, where there is reason to believe that such notification will seriously jeopardize an investigation.  18 U.S.C. § 2705(b).

**II. Probable Cause**

   **A.  Probable Cause Regarding the Subject Offenses**

20. Since in or about August 2021, the FBI and the Office of the United States Attorney for the Southern District of New York have been investigating the receipt of so-called "straw" donations by the 2021 and 2025 New York City mayoral campaigns of Eric Adams (the "2021 Adams Campaign," the "2025 Adams Campaign," and, collectively, the "Adams Campaigns"), including certain straw donations that were funded by and/or made at the direction of foreign government officials and other foreign persons.[1]

21. As part of this investigation, law enforcement has obtained various warrants for electronic evidence, including but not limited to the following:

   a.  On December 2, 2022, the Honorable Stewart D. Aaron, United States Magistrate Judge for the Southern District of New York, issued a warrant permitting a search of the Adams

---

[1] A straw, or "conduit," donation occurs when a donation to a political campaign is made in the name of one donor, but the funds in question in fact belong to a different person.

09.20.2021

SDNY_01_000005764
SUBJECT TO PROTECTIVE ORDER.

iCloud Account.[2]  The warrant and supporting affidavit are attached hereto as Exhibit A and incorporated by reference herein.

      b.   On November 5, 2023, the Honorable Gary Stein, United States Magistrate Judge for the Southern District of New York, issued a warrant permitting the seizure and search of electronic devices in Adams's possession (the "November 5 Warrant").[3]  The November 5 Warrant and supporting affidavit are attached hereto as Exhibit B and incorporated by reference herein.[4]

      c.   On November 9, 2023, the Honorable Sarah Netburn, United States Magistrate Judge for the Southern District of New York, issued a warrant permitting the search of two Apple iPhones used by Adams but not seized at the time the November 5 Warrant was executed (the "November 9 Warrant").[5]  The November 9 Warrant and supporting affidavit are attached hereto as Exhibit C and incorporated by reference herein.

---

[2] The December 2, 2022 warrant permitted a search of the Adams iCloud Account for evidence of violations of 18 U.S.C. §§ 371, 666, 1343, and 1349 between January 1, 2018 an December 2, 2022.  The instant application seeks a warrant to search the Adams iCloud Account for evidence of violations of 18 U.S.C. § 371 and 52 U.S.C. § 30121 (campaign contributions by foreign nationals and conspiracy to commit the same), in addition to the crimes in the December 2, 2022 warrant, and to do so through the present.

[3] Pursuant to this warrant, law enforcement seized one iPhone, one Samsung Galaxy, and one iPad. Law enforcement also seized a laptop, but it was returned to Adams without being searched. The extracted content from the Samsung Galaxy has been released to the investigative team, but the extracted content from the iPhone and iPad is currently undergoing a filter review in coordination with counsel for New York City and for Adams and his campaigns and is not available to the investigative team.

[4] We are continuing to investigate the conversation described in paragraph 13 of Exhibit B and are not presently asking the Court to rely on that conversation in making its probable cause determination.

[5] Pursuant to this warrant, law enforcement received authorization to search two iPhones, one of which is fully extracted, while the other is only partially extracted. The extracted content of the fully extracted and of the partially extracted iPhone has been released to the investigative team.

09.20.2021

SDNY_01_000005765
SUBJECT TO PROTECTIVE ORDER.

22. As detailed more fully in the attached affidavits, this investigation has revealed, in substance an in part, the following:

a.  On or about May 7, 2021, employees of ▮▮▮▮▮▮▮▮▮▮▮▮ ("▮▮▮") a construction company that operates in New York City, made donations to the 2021 Adams Campaign in approximately the same amount as monies paid to each of the employees by ▮▮▮ on April 28, 2021.[6]  (*See, e.g.*, Ex A ¶¶ 10-12).

b.  Many of ▮▮▮ employees are of Turkish origin.[7]  (*See, e.g.*, Ex A ¶ 8).

c.  The Adams Campaigns cultivated a relationship with Turkey's New York Consul General, as well as the broader Turkish community, beginning at least in 2018.  (*See, e.g.*, Ex A ¶ 19; Ex. A of Ex. B ¶¶ 16, 19).

d.  Turkey's Consul General in New York was involved in fundraising for the Adams Campaigns, including the arrangement of the fundraiser where the ▮▮▮ straw donations were made, and communicated about fundraising with members of Adams's staff.[8]  (*See, e.g.*, Ex A ¶ 19; Ex. A of Ex. B ¶¶ 12(a), 12(b), 13, 16).

---

[6] Out of eleven donations from ▮▮▮ employees made at the fundraiser, the co-owner of ▮▮▮ who organized the fundraiser did not receive a ▮▮▮ reimbursement check, one donor received $50 more from ▮▮▮ than the donor donated to the Adams Campaign, and one ▮▮▮ employee's wife donated, while the employee himself received the ▮▮▮ reimbursement check.

[7] Certain earlier affidavits in this investigation stated that ▮▮▮ was affiliated with a larger Turkish corporation. Law enforcement has since interviewed several ▮▮▮ employees who have stated, in substance and in part, that although ▮▮▮ was started by personnel formerly employed by that larger Turkish corporation, the two entities have no formal connection.

[8] Certain earlier affidavits in this investigation described ▮▮▮▮▮▮ and ▮▮▮▮▮▮ as staff of the Adams Campaigns.  Counsel for Adams has since told the Government that, at least with respect to the 2021 Adams Campaign, ▮▮▮ was a volunteer and ▮▮▮ was a volunteer before becoming an employee of the Campaign.  As used herein, "Adams's staff" is an inclusive term referring to persons who have worked for Adams (whether as Brooklyn Borough President or Mayor) and/or the Adams Campaigns.

09.20.2021

SDNY_01_000005766
SUBJECT TO PROTECTIVE ORDER.

e.   Turkish national ▊▊▊▊ was involved in fundraising for the Adams Campaigns and attempted, in agreement with Adams Campaign staff, to donate funds from Turkish nationals to the Adams Campaigns and communicated about fundraising with members of Adams Campaign staff.[9]  (*See, e.g.*, Ex. A of Ex. B ¶ 19-24).

f.   Adams communicated with members of his staff about fundraising in the Turkish community and the potential provision of benefits to the Consul General.  (*See, e.g.*, Ex A ¶¶ 16(c), 16(j)).

g.   Adams and members of his staff intervened in at least one matter within the purview of the New York City government to obtain favorable action for the Consul General; specifically, obtaining a Temporary Certificate of Occupancy ("TCO") for the official opening of a building associated with the Turkish Consulate in New York in time for a visit by Turkey's president in 2021.  (*See, e.g.*, Ex. A of Ex. B ¶¶ 25-29).

h.   Adams and others associated with him received various benefits from persons affiliated with the Consul General, including travel to Turkey via ▊▊▊▊ that was provided at no cost in some instances, and reduced cost in others.  (*See, e.g.*, Ex. A of Ex. B ¶ 17).

23. Pursuant to a search warrant, I have reviewed Signal messages obtained from an iPhone used by ▊▊▊▊ a fundraiser who worked for the Adams Campaigns and was involved in the ▊▊ fundraiser at which the ▊▊ straw donations were made.  Based on those messages, I

---

[9] In addition to other such donations, ▊▊▊▊ assisted in coordinating straw donations from employees of ▊▊▊▊ ("▊ a Washington, D.C.-based university partnered with a Turkish university named ▊▊▊▊  Records maintained by the New York City Campaign Finance Board indicate that on September 27, 2021, five employees of ▊▊ donated $2,000 each to the 2021 Adams Campaign.  According to public reporting, the 2021 Adams Campaign returned the ▊▊ donations approximately 17 days later, claiming that "[t]he campaign had raised more money than it could spend," but the article notes that "campaign records show [the 2021 Adams Campaign] accepted and did not return other contributions in the weeks that followed."  *See* https://www.thecity.nyc/2023/11/03/fbi-probe-eric-adams-campaign-turkey.

09.20.2021

SDNY_01_000005767
SUBJECT TO PROTECTIVE ORDER.

know that in August 2023, ███ and ████████ a member of Adams's staff who liaised with the Consul General and other members of the Turkish community and helped arrange the ███ and ███ straw donations, discussed a fundraiser for Adams's 2025 mayoral campaign organized by ███ who I believe to be ████████, and attended by people that Adams "knows" "from [T]urkey" "who has [*sic*] business here as well." A calendar entry on Adams's calendar, also recovered from ███ iPhone, shows that this fundraiser was held on September 20, 2023.

### B. Probable Cause Regarding the Subject Account

24. On or about November 1, 2023, a preservation request for the Subject Account was served on Apple (Reference #: 202300407674). This request was renewed on or about January 30, 2024.

25. As detailed in the attached affidavits, there is probable cause to believe that Adams used electronic communications in furtherance of the Subject Offenses. (*See* Ex. A ¶¶ 19(c), (d); Ex. B ¶¶ 14, 15). Based on my training and experience, such communications can be stored not only on the device on which they were sent or received, but also on any iCloud account associated with that device.

26. Furthermore, based on my review of the Adams iCloud Account pursuant to the December 2, 2022 warrant, I know that that particular account contains relevant data, for example:

a. A note that appears to concern fundraising and reflect involvement by the Consul General in a "turkish fundraiser."

b. Messages between Adams and the FDNY Commissioner regarding the TCO requested by the Consul General.

14

SDNY_01_000005768
SUBJECT TO PROTECTIVE ORDER.

27. In addition, based on my training and experience, I know that iCloud data like that requested here can demonstrate the fact of deletions, even if the deleted content itself cannot be recovered.

28. <u>Temporal Limitation</u>. This application is limited to all created, sent, received, accessed, modified, or deleted on or after January 1, 2018, which is the year in which the current records reflect Adams, ████████ and ██████ beginning to communicate about the Consul General's assistance to the Adams Campaign.

**C. Evidence, Fruits and Instrumentalities**

29. Based upon the foregoing, I respectfully submit there is probable cause to believe that information stored on the Providers' servers associated with the Subject Account will contain evidence, fruits, and instrumentalities of the Subject Offenses, as more fully described in Section II of Attachment A to the proposed warrant.

**III. Review of the Information Obtained Pursuant to the Warrant**

30. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for service of a search warrant issued under § 2703, or for the collection or production of responsive records. Accordingly, the warrant requested herein will be transmitted to the Provider, which shall be directed to produce a digital copy of any responsive records to law enforcement personnel within 14 days from the date of service. Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) will retain the records and review them for evidence, fruits, and instrumentalities of the Subject Offenses as specified in Section III of Attachment A to the proposed warrant.

15

09.20.2021

SDNY_01_000005769
SUBJECT TO PROTECTIVE ORDER.

31. In conducting this review, law enforcement personnel may use various methods to locate evidence, fruits, and instrumentalities of the Subject Offenses, including but not limited to undertaking a cursory inspection of all emails within the Subject Account.  This method is analogous to cursorily inspecting all the files in a file cabinet in an office to determine which paper evidence is subject to seizure.  Although law enforcement personnel may use other methods as well, particularly including keyword searches, I know that keyword searches and similar methods are typically inadequate to detect all information subject to seizure.  As an initial matter, keyword searches work only for text data, yet many types of files commonly associated with emails, including attachments such as scanned documents, pictures, and videos, do not store data as searchable text.  Moreover, even as to text data, keyword searches cannot be relied upon to capture all relevant communications in an account, as it is impossible to know in advance all of the unique words or phrases that investigative subjects will use in their communications, and consequently there are often many communications in an account that are relevant to an investigation but that do not contain any keywords that an agent is likely to search for.

**IV. Request for Non-Disclosure and Sealing Order**

32. The existence and general nature of this investigation are publicly known, because of media reporting, and are known to Adams himself, including because of the execution of various warrants and communications between his counsel and the Government.  However, the exact nature of this ongoing criminal investigation and the particular types of evidence the Government is covertly seeking as part of that investigation are not publicly known.  As a result, premature public disclosure of this affidavit or the requested warrant could alert potential criminal targets to as-yet non-public information about the nature and scope of the Government's investigation, which could cause them to destroy evidence, flee from prosecution, or otherwise seriously jeopardize the investigation.  Indeed, as is set forth above, the targets of this investigation are known to use

16

09.20.2021

SDNY_01_000005770
SUBJECT TO PROTECTIVE ORDER.

computers and electronic communications in furtherance of their activity and thus could easily delete, encrypt, or otherwise conceal such digital evidence from law enforcement were they to learn of the Government's investigation.  See 18 U.S.C. § 2705(b)(3).

33. Accordingly, there is reason to believe that, were the Provider to notify the subscriber or others of the existence of the warrant, the investigation would be seriously jeopardized. Pursuant to 18 U.S.C. § 2705(b), I therefore respectfully request that the Court direct the Provider not to notify any person of the existence of the warrant for a period of one year from issuance, subject to extension upon application to the Court, if necessary.

34. For similar reasons, I respectfully request that this affidavit and all papers submitted herewith be maintained under seal until the Court orders otherwise, except that the Government be permitted without further order of this Court to provide copies of the warrant and affidavit as need be to personnel assisting it in the investigation and prosecution of this matter, and to disclose those materials as necessary to comply with discovery and disclosure obligations in any prosecutions related to this matter.

17

09.20.2021

SUBJECT TO PROTECTIVE ORDER.

**V. Conclusion**

      35. Based on the foregoing, I respectfully request that the Court issue the warrant sought

herein pursuant to the applicable provisions of the Stored Communications Act, 18 U.S.C.

§ 2703(b)(1)(A) (for contents) and § 2703(c)(1)(A) (for records and other information), and the

relevant provisions of Federal Rule of Criminal Procedure 41.



                                        /s           (By Court with Authorization)
                                          SA
                                          FBI

Sworn to me through the transmission of this
Affidavit by reliable electronic means, pursuant to
Federal Rules of Criminal Procedure 41(d)(3) and 4.1, this
20th day of February, 2024

Honorable Sarah L. Cave
United States Magistrate Judge
Southern District of New York

09.20.2021

18

SDNY_01_000005772
SUBJECT TO PROTECTIVE ORDER.

**24 MAG 736**

# EXHIBIT A

## [22 MAG 9730]

SDNY_01_000005782
SUBJECT TO PROTECTIVE ORDER.

# EXHIBIT B

[23 MAG 7090]

SDNY_01_000005810
SUBJECT TO PROTECTIVE ORDER.

# **EXHIBIT C**

# [23 MAG 7151]

SDNY_01_000005961
SUBJECT TO PROTECTIVE ORDER.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

# 24 MAG 736

In the Matter of a Warrant for All
Content and Other Information
Associated with the iCloud Account
Associated With
███████████@aol.com
Maintained at Premises Controlled by
Apple Inc., USAO Reference No.
2021R00778

## SEARCH WARRANT AND NON-DISCLOSURE ORDER

TO:    Apple Inc. ("Provider")

Federal Bureau of Investigation (the "FBI" or "Investigative Agency")

**1. Warrant.** Upon an affidavit of Special Agent ████████ of the FBI, and pursuant to

the provisions of the Stored Communications Act, 18 U.S.C. § 2703(b)(1)(A) and § 2703(c)(1)(A),

and the relevant provisions of Federal Rule of Criminal Procedure 41, the Court hereby finds there

is probable cause to believe the iCloud account associated with ████████████@aol.com,

maintained at premises controlled by the Provider, contains evidence, fruits, and instrumentalities

of crime, all as specified in Attachment A hereto.  Accordingly, the Provider is hereby directed to

provide to the Investigative Agency, within 14 days of the date of service of this Warrant and

Order, the records specified in Section II of Attachment A hereto, for subsequent review by law

enforcement personnel as authorized in Section III of Attachment A.  The Government is required

to serve a copy of this Warrant and Order on the Provider within 14 days of the date of issuance.

The Warrant and Order may be served via electronic transmission or any other means through

which the Provider is capable of accepting service.

**2. Non-Disclosure Order.** Pursuant to 18 U.S.C. § 2705(b), the Court finds that there is

reason to believe that notification of the existence of this warrant will result in destruction of or

SUBJECT TO PROTECTIVE ORDER.

tampering with evidence or otherwise will seriously jeopardize an ongoing investigation. Accordingly, it is hereby ordered that the Provider shall not disclose the existence of this Warrant and Order to the listed subscriber or to any other person for a period of one year from the date of this Order, subject to extension upon application to the Court if necessary, except that Provider may disclose this Warrant and Order to an attorney for Provider for the purpose of receiving legal advice.

**3. Sealing.** It is further ordered that this Warrant and Order, and the Affidavit upon which it was issued, be filed under seal, except that the Government may without further order of this Court serve the Warrant and Order on the Provider; provide copies of the Affidavit or Warrant and Order as need be to personnel assisting the Government in the investigation and prosecution of this matter; and disclose these materials as necessary to comply with discovery and disclosure obligations in any prosecutions related to this matter.

Dated: New York, New York

2/20/2024
_____
Date Issued

12:18pm
_____
Time Issued

_____
UNITED STATES MAGISTRATE JUDGE
Southern District of New York

2

09.20.2021

SDNY_01_000005774
SUBJECT TO PROTECTIVE ORDER.

**Attachment A**

**I. Subject Account and Execution of Warrant**

This warrant is directed to Apple Inc. ("Apple" or the "Provider"), headquartered at 1 Infinite Loop, Cupertino, California 95014, and applies to all content and other information within the Provider's possession, custody, or control associated with the iCloud account associated with ███████████ @aol.com (the "Subject Account").

A law enforcement officer will serve this warrant by transmitting it via email or another appropriate manner to the Provider. The Provider is directed to produce to the law enforcement officer an electronic copy of the information specified in Section II below.  Upon receipt of the production, law enforcement personnel will review the information for items falling within the categories specified in Section III below.

**II. Information to be Produced by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of Apple, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Apple, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f) (Reference #: 202300407674), Apple is required to disclose the following information to the government, in unencrypted form whenever available, for each account or identifier listed in Attachment A:

a.   All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers, email addresses (including primary, alternate, rescue, and notification email addresses, and verification information for each email address), the date on which the account was created, the length of service, the IP address used to register the

SUBJECT TO PROTECTIVE ORDER.

account, account status, associated devices, methods of connecting, and means and source of payment (including any credit or bank account numbers);

b.   All records or other information regarding the devices associated with, or used in connection with, the account (including all current and past trusted or authorized iOS devices and computers, and any devices used to access Apple services), including serial numbers, Unique Device Identifiers ("UDID"), Advertising Identifiers ("IDFA"), Global Unique Identifiers ("GUID"), Media Access Control ("MAC") addresses, Integrated Circuit Card ID numbers ("ICCID"), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identities ("IMSI"), and International Mobile Station Equipment Identities ("IMEI");

c.   The contents of all emails associated with the account from January 1, 2018 through the date of this Warrant and Order, including stored or preserved copies of emails sent to and from the account (including all draft emails and deleted emails), the source and destination addresses associated with each email, the date and time at which each email was sent, the size and length of each email, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the emails, and all attachments;

d.   The contents of all instant messages associated with the account from January 1, 2018 through the date of this Warrant and Order, including stored or preserved copies of instant messages (including iMessages, SMS messages, and MMS messages) sent to and from the account (including all draft and deleted messages), the source and destination account or phone number associated with each instant message, the date and time at which each instant message

09.20.2021

SDNY_01_000005776
SUBJECT TO PROTECTIVE ORDER.

was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;

e.  The contents of all files and other records stored on iCloud, including all iOS device backups, all Apple and third-party app data, all files and other records related to iCloud Mail, iCloud Photo Sharing, My Photo Stream, iCloud Photo Library, iCloud Drive, iWork (including Pages, Numbers, Keynote, and Notes), iCloud Tabs and bookmarks, and iCloud Keychain, and all address books, contact and buddy lists, notes, reminders, calendar entries, images, videos, voicemails, device settings, and bookmarks;

f.  All activity, connection, and transactional logs for the account (with associated IP addresses including source port numbers), including FaceTime call invitation logs, messaging and query logs (including iMessage, SMS, and MMS messages), mail logs, iCloud logs, iTunes Store and App Store logs (including purchases, downloads, and updates of Apple and third-party apps), My Apple ID and iForgot logs, sign-on logs for all Apple services, Game Center logs, Find My iPhone and Find My Friends logs, logs associated with web-based access of Apple services (including all associated identifiers), and logs associated with iOS device purchase, activation, and upgrades;

g.  All records and information regarding locations where the account or devices associated with the account were accessed, including all data stored in connection with Location Services, Find My iPhone, Find My Friends, and Apple Maps;

h.  All records pertaining to the types of service used;

i.  All records pertaining to communications between Apple and any person regarding the account, including contacts with support services and records of actions taken; and

3

09.20.2021

SDNY_01_000005777
SUBJECT TO PROTECTIVE ORDER.

j. All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Apple (including, but not limited to, the keybag.txt and fileinfolist.txt files).

## III. Review of Information by the Government

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate any evidence, fruits, and instrumentalities of violations of: (i) 18 U.S.C. §§ 371 and 666 (theft of federal funds and conspiracy to steal federal funds), (ii) 18 U.S.C. §§ 1343 and 1349 (wire fraud and attempt and conspiracy to commit wire fraud), and (iii) 18 U.S.C. § 371 and 52 U.S.C. § 30121 (campaign contributions by foreign nationals and conspiracy to commit the same) (collectively, the "Subject Offenses"), for content created, sent, received, accessed, modified, or deleted on or after January 1, 2018, including the following:

1. Evidence concerning the identity or location of the owner(s) or user(s) of the Subject Account.

2. Evidence of knowledge or understanding of, or intent to violate, laws and regulations governing the conduct of the 2021 New York City Mayoral campaign of Eric Adams (the "2021 Adams Campaign") on the part of any donor or associate of any donor; the Turkish Government, including its Consulate General in New York and its employees, officers, or associates; or the 2021 Adams Campaign.

3. Evidence of knowledge or understanding of, or intent to violate, laws and regulations governing the conduct of the 2025 New York City Mayoral campaign of Eric Adams (the "2025

4

09.20.2021

SUBJECT TO PROTECTIVE ORDER.

Adams Campaign," and together with the 2021 Adams Campaign, the "Adams Campaigns") on the part of any donor or associate of any donor; the Turkish Government, including its Consulate General in New York and its employees, officers, or associates; or the 2025 Adams Campaign.

4. Evidence relating to coordination between Turkish nationals or the Turkish Government and the Adams Campaigns concerning political contributions to the Adams Campaigns, including, but not limited to, evidence of motive and intent for Turkish nationals or the Turkish Government to provide or facilitate campaign contributions to the Adams Campaigns, and evidence of motive and intent by any person who is or was associated with or employed by the Adams Campaigns to provide benefits, whether lawfully or unlawfully, to Turkish nationals or the Turkish Government in return for campaign contributions.

5. Evidence relating to payments to employees, officers, and associates of ████ to facilitate those employees, officers, and associates making campaign contributions to the Adams Campaigns.

6. Evidence relating to the source of funds for payment or reimbursement of employees, officers, and associates of ████ for campaign contributions to the Adams Campaigns.

7. Evidence relating to the source of funds for payment or reimbursement of persons serving as conduits for campaign contributions to the Adams Campaigns originating from Turkish national.

8. Evidence of individuals or entities who donated to the Adams Campaigns before or after receiving transfers of funds similar to the amount of the donation.

5

09.20.2021

SDNY_01_000005779
SUBJECT TO PROTECTIVE ORDER.

9.  Evidence regarding straw donations to the Adams Campaigns, including without limitation evidence regarding the identities of any persons or entities involved, wittingly or unwittingly, in straw donations, and evidence regarding the sources of funds for straw donations.

10. Evidence of the relationship between and among (i) persons or entities that coordinated or made straw donations or (ii) foreign nationals and/or governments, and any person who is or was associated with or employed by the Adams Campaigns, including all communications with or about, contact information for, and meetings and appointments with co-conspirators.

11. Evidence of an intent to exchange benefits between the Turkish Government or entities and persons acting at its behest, and any person who is or was associated with or employed by the Adams Campaigns, including but not limited to straw donations and any actions taken by any person who is or was associated with or employed by the Adams Campaigns on behalf of the Turkish Government, ███ or entities and persons acting at the behest of the Turkish Government.

12. Evidence regarding any requests by the Adams Campaigns for matching funds based on straw donations, including any discussions of matching funds.

13. Passwords or other information needed to access the user's online accounts, including encrypted data stored in the Subject Account.

14. Evidence of the geographic location of users, computers, or devices involved in the commission of the Subject Offenses at times relevant to the Subject Offenses.

15. Evidence concerning efforts to conceal communications, meetings, or associations between Turkish nationals, the Turkish Government, ███ or entities and persons acting at the

6

09.20.2021

SDNY_01_000005780
SUBJECT TO PROTECTIVE ORDER.

behest of the Turkish Government, and persons associated with or employed by the Adams Campaigns.

16. Evidence concerning efforts to destroy or conceal evidence of the Subject Offenses or to devise or coordinate false exculpatory explanations for the conduct underlying the Subject Offenses, or to otherwise obstruct law enforcement from investigating the Subject Offenses.

7

09.20.2021

SDNY_01_000005781
SUBJECT TO PROTECTIVE ORDER.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

# 24 MAG 737

In the Matter of a Warrant for All
Content and Other Information
Associated with the iCloud Accounts
Associated With
███████████@gmail.com and
███████████@aol.com
Maintained at Premises Controlled by
Apple Inc., USAO Reference No.
2021R00778

**TO BE FILED UNDER SEAL**

**AGENT AFFIDAVIT**

### Agent Affidavit in Support of Application for a Search Warrant
### for Stored Electronic Communications

STATE OF NEW YORK   )
                     ) ss.
COUNTY OF NEW YORK   )

██████████, Special Agent, Federal Bureau of Investigation, being duly sworn, deposes

and states:

## I. Introduction

### A. Affiant

1. I have been a Special Agent with the Federal Bureau of Investigation ("FBI") since

2019. I am currently assigned to a public corruption squad of the New York Field Office, where,

among other things, I investigate crimes involving illegal campaign contributions, theft of federal

funds, and bribery.  Through my training and experience, I also have become familiar with some

of the ways in which individuals use smart phones and electronic communications, including social

media, email, and electronic messages, in furtherance of their crimes, and have participated in the

execution of search warrants involving electronic evidence.

2

09.20.2021

SDNY_01_000006128
SUBJECT TO PROTECTIVE ORDER.

### B. The Provider, the Subject Accounts and the Subject Offenses

2.   I make this affidavit in support of an application for a search warrant pursuant to 18 U.S.C. § 2703 for all content and other information associated with the iCloud accounts for (i) ██████████ associated with ████████@gmail.com (the "████████ iCloud Account"), and (ii) ████████ associated with ████████@aol.com (the "████ iCloud Account") (collectively, the "Subject Accounts"), maintained and controlled by Apple Inc. (the "Provider"), headquartered at 1 Infinite Loop, Cupertino, California 95014. The information to be searched is described in the following paragraphs and in Attachment A to the proposed warrant.

3.   As detailed below, there is probable cause to believe that the Subject Accounts contain evidence, fruits, and instrumentalities of violations of (i) 18 U.S.C. §§ 371 and 666 (theft of federal funds and conspiracy to steal federal funds), (ii) 18 U.S.C. §§ 1343 and 1349 (wire fraud and attempt and conspiracy to commit wire fraud), and (iii) 18 U.S.C. § 371 and 52 U.S.C. § 30121 (campaign contributions by foreign nationals and conspiracy to commit the same) (collectively, the "Subject Offenses"). This affidavit is based upon my personal knowledge, my review of documents and other evidence, and my conversations with other law enforcement officers, as well as my training and experience concerning the use of email in criminal activity. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts I have learned during my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

### C. Services and Records of the Provider

4.   Apple is a United States company that produces the iPhone, iPad, and iPod Touch, all of which use the iOS operating system, and desktop and laptop computers based on the Mac OS operating system.

09.20.2021

SDNY_01_000006129
SUBJECT TO PROTECTIVE ORDER.

5.   Apple provides a variety of services that can be accessed from Apple devices or, in some cases, other devices via web browsers or mobile and desktop applications ("apps").  As described in further detail below, the services include email, instant messaging, and file storage:

a.        Apple provides email service to its users through email addresses at the domain names mac.com, me.com, and icloud.com.

b.        iMessage and FaceTime allow users of Apple devices to communicate in real-time.  iMessage enables users of Apple devices to exchange instant messages ("iMessages") containing text, photos, videos, locations, and contacts, while FaceTime enables those users to conduct audio and video calls.

c.        iCloud is a cloud storage and cloud computing service from Apple that allows its users to interact with Apple's servers to utilize iCloud-connected services to create, store, access, share, and synchronize data on Apple devices or via icloud.com on any Internet-connected device.  For example, iCloud Mail enables a user to access Apple-provided email accounts on multiple Apple devices and on iCloud.com.  iCloud Photo Library and My Photo Stream can be used to store and manage images and videos taken from Apple devices, and iCloud Photo Sharing allows the user to share those images and videos with other Apple subscribers. iCloud Drive can be used to store presentations, spreadsheets, and other documents.  iCloud Tabs and bookmarks enable iCloud to be used to synchronize bookmarks and webpages opened in the Safari web browsers on all of the user's Apple devices.  iCloud Backup allows users to create a backup of their device data.  iWork Apps, a suite of productivity apps (Pages, Numbers, Keynote, and Notes), enables iCloud to be used to create, store, and share documents, spreadsheets, and presentations.  iCloud Keychain enables a user to keep website username and passwords, credit card information, and Wi-Fi network information synchronized across multiple Apple devices.

4

SDNY_01_000006130
SUBJECT TO PROTECTIVE ORDER.

d.      Game Center, Apple's social gaming network, allows users of Apple devices to play and share games with each other.

e.      Find My iPhone allows owners of Apple devices to remotely identify and track the location of, display a message on, and wipe the contents of those devices. Find My Friends allows owners of Apple devices to share locations.

f.      Location Services allows apps and websites to use information from cellular, Wi-Fi, Global Positioning System ("GPS") networks, and Bluetooth, to determine a user's approximate location.

g.   App Store and iTunes Store are used to purchase and download digital content. iOS apps can be purchased and downloaded through App Store on iOS devices, or through iTunes Store on desktop and laptop computers running either Microsoft Windows or Mac OS. Additional digital content, including music, movies, and television shows, can be purchased through iTunes Store on iOS devices and on desktop and laptop computers running either Microsoft Windows or Mac OS.

6.   Apple services are accessed through the use of an "Apple ID," an account created during the setup of an Apple device or through the iTunes or iCloud services. The account identifier for an Apple ID is an email address, provided by the user. Users can submit an Apple-provided email address (often ending in @icloud.com, @me.com, or @mac.com) or an email address associated with a third-party email provider (such as AOL). The Apple ID can be used to access most Apple services (including iCloud, iMessage, and FaceTime) only after the user accesses and responds to a "verification email" sent by Apple to that "primary" email address. Additional email addresses ("alternate," "rescue," and "notification" email addresses) can also be

5

09.20.2021

SDNY_01_000006131
SUBJECT TO PROTECTIVE ORDER.

associated with an Apple ID by the user.  A single Apple ID can be linked to multiple Apple services and devices, serving as a central authentication and syncing mechanism.

7.  Apple captures information associated with the creation and use of an Apple ID. During the creation of an Apple ID, the user must provide basic personal information including the user's full name, physical address, and telephone numbers.  The user may also provide means of payment for products offered by Apple.  The subscriber information and password associated with an Apple ID can be changed by the user through the "My Apple ID" and "iForgot" pages on Apple's website.  In addition, Apple captures the date on which the account was created, the length of service, records of log-in times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to and utilize the account, the Internet Protocol address ("IP address") used to register and access the account, and other log files that reflect usage of the account.

8.  Additional information is captured by Apple in connection with the use of an Apple ID to access certain services.  For example, Apple maintains connection logs with IP addresses that reflect a user's sign-on activity for Apple services such as iTunes Store and App Store, iCloud, Game Center, and the My Apple ID and iForgot pages on Apple's website.  Apple also maintains records reflecting a user's app purchases from App Store and iTunes Store, "call invitation logs" for FaceTime calls, "query logs" for iMessage, and "mail logs" for activity over an Apple-provided email account.  Records relating to the use of the Find My iPhone service, including connection logs and requests to remotely lock or erase a device, are also maintained by Apple.

9.  Apple also maintains information about the devices associated with an Apple ID. When a user activates or upgrades an iOS device, Apple captures and retains the user's IP address and identifiers such as the Integrated Circuit Card ID number ("ICCID"), which is the serial

6

09.20.2021

SDNY_01_000006132
SUBJECT TO PROTECTIVE ORDER.

number of the device's SIM card.  Similarly, the telephone number of a user's iPhone is linked to an Apple ID when the user signs into FaceTime or iMessage.  Apple also may maintain records of other device identifiers, including the Media Access Control address ("MAC address"), the unique device identifier ("UDID"), and the serial number.  In addition, information about a user's computer is captured when iTunes is used on that computer to play content associated with an Apple ID, and information about a user's web browser may be captured when used to access services through icloud.com and apple.com.  Apple also retains records related to communications between users and Apple customer service, including communications regarding a particular Apple device or service, and the repair history for a device.

10. Apple provides users with five gigabytes of free electronic space on iCloud, and users can purchase additional storage space.  That storage space, located on servers controlled by Apple, may contain data associated with the use of iCloud-connected services, including: email (iCloud Mail); images and videos (iCloud Photo Library, My Photo Stream, and iCloud Photo Sharing); documents, spreadsheets, presentations, and other files (iWork and iCloud Drive); and web browser settings and Wi-Fi network information (iCloud Tabs and iCloud Keychain).  iCloud can also be used to store iOS device backups, which can contain a user's photos and videos, iMessages, Short Message Service ("SMS") and Multimedia Messaging Service ("MMS") messages, voicemail messages, call history, contacts, calendar events, reminders, notes, app data and settings, Apple Watch backups, and other data.  Records and data associated with third-party apps may also be stored on iCloud; for example, the iOS app for WhatsApp, an instant messaging service, can be configured to regularly back up a user's instant messages on iCloud Drive.  Some of this data is stored on Apple's servers in an encrypted form but can nonetheless be decrypted by Apple.

09.20.2021

SDNY_01_000006133
SUBJECT TO PROTECTIVE ORDER.

11. In my training and experience, evidence of who was using an Apple ID and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above.  This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

12. For example, the stored communications and files connected to an Apple ID may provide direct evidence of the offenses under investigation.  Based on my training and experience, instant messages, emails, voicemails, photos, videos, and documents are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.

13. In addition, the user's account activity, logs, stored electronic communications, and other data retained by Apple can indicate who has used or controlled the account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

14. Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation.  For example, information on the account

09.20.2021

SDNY_01_000006134
SUBJECT TO PROTECTIVE ORDER.

may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

15. Other information connected to an Apple ID may lead to the discovery of additional evidence. For example, the identification of apps downloaded from App Store and iTunes Store may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators. In addition, emails, instant messages, Internet activity, documents, and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

16. Therefore, Apple's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Apple's services. In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

### D. Jurisdiction and Authority to Issue Warrant

17. Pursuant to 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A), the Government may require a provider of an electronic communications service or a remote computing service, such as the Provider, to disclose all stored content and all non-content records or other information pertaining to a subscriber, by obtaining a warrant issued using the procedures described in the Federal Rules of Criminal Procedure.

18. A search warrant under § 2703 may be issued by "any district court of the United States (including a magistrate judge of such a court)" that "has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

19. When the Government obtains records under § 2703 pursuant to a search warrant, the Government is not required to notify the subscriber of the existence of the warrant. 18 U.S.C.

9

09.20.2021

SDNY_01_000006135
SUBJECT TO PROTECTIVE ORDER.

§ 2703(a), (b)(1)(A), (c)(2) & (3).  Additionally, the Government may obtain an order precluding the Provider from notifying the subscriber or any other person of the warrant, for such period as the Court deems appropriate, where there is reason to believe that such notification will seriously jeopardize an investigation.  18 U.S.C. § 2705(b).

## II. Probable Cause

### A. Probable Cause Regarding the Subject Offenses

20. Since in or about August 2021, the FBI and the Office of the United States Attorney for the Southern District of New York have been investigating the receipt of so-called "straw" donations by the 2021 and 2025 New York City mayoral campaigns of Eric Adams (the "2021 Adams Campaign," the "2025 Adams Campaign," and, collectively, the "Adams Campaigns"), including certain straw donations that were funded by and/or made at the direction of foreign government officials and other foreign persons.[1]

21. As part of this investigation, law enforcement has obtained various warrants for electronic evidence, including but not limited to the following:

a.  On November 1, 2023, the Honorable James B. Clark III, United States Magistrate Judge for the District of New Jersey, issued a warrant authorizing a search of the home of ███ ███████ for evidence of the Subject Offenses, including any electronic devices used by ███████. The warrant and supporting affidavit are attached hereto as Exhibit A and incorporated by reference herein.

b.  On November 5, 2023, the Honorable Gary Stein, United States Magistrate Judge for the Southern District of New York, issued a warrant authorizing the seizure and search of

---

[1] A straw, or "conduit," donation occurs when a donation to a political campaign is made in the name of one donor, but the funds in question in fact belong to a different person.

09.20.2021

SDNY_01_000006136
SUBJECT TO PROTECTIVE ORDER.

electronic devices in Adams's possession.[2]   The warrant and supporting affidavit are attached

hereto as Exhibit B and incorporated by reference herein.[3]

22. As detailed more fully in the attached affidavit, this investigation has revealed, in

substance and in part, the following:

a.   On or about May 7, 2021, employees of ██████████████████  ("███

a construction company that operates in New York City, made donations to the 2021 Adams

Campaign in approximately the same amount as monies paid to each of the employees by ██ on

April 28, 2021.[4]  (*See, e.g.*, Ex. A ¶¶ 10-12).

b.   Many of ████ employees are of Turkish origin.[5] (*See, e.g.*, Ex A ¶ 8).

c.   The Adams Campaigns cultivated a relationship with Turkey's New York Consul

General, as well as the broader Turkish community, beginning at least in 2018.  (*See, e.g.*, Ex. A

¶¶ 16, 19).

---

[2] Pursuant to this warrant, law enforcement seized one iPhone, one Samsung Galaxy, and one iPad. Law enforcement also seized a laptop, but it was returned to Adams without being searched. The extracted content from the Samsung Galaxy has been released to the investigative team, but the extracted content from the iPhone and iPad is currently undergoing a filter review in coordination with counsel for New York City and for Adams and his campaigns and is not available to the investigative team.

[3] We are continuing to investigate the conversation described in paragraph 13 of Exhibit B and are not presently asking the Court to rely on that conversation in making its probable cause determination.

[4] Out of eleven donations from ████ employees made at the fundraiser, the co-owner of ████ who organized the fundraiser did not receive a ████ reimbursement check, one donor received $50 more from ████ than the donor donated to the 2021 Adams Campaign, and one ████ employee's wife donated, while the employee himself received the ████ reimbursement check.

[5] Certain earlier affidavits in this investigation stated that ████ was affiliated with a larger Turkish corporation. Law enforcement has since interviewed several ████ employees who have stated, in substance and in part, that although ████ was started by personnel formerly employed by the larger Turkish corporation, the two entities have no formal connection.

09.20.2021

SDNY_01_000006137
SUBJECT TO PROTECTIVE ORDER.

d.  Turkey's Consul General in New York was involved in fundraising for the Adams Campaigns, including arranging the fundraiser where the ███ straw donations were made, and communicated about fundraising with members of Adams's staff.[6]  (*See, e.g.*, Ex A. ¶¶ 12(a), 12(b), 13, 16).

e.  Turkish national ███████ was involved in fundraising for the Adams Campaigns and attempted, in agreement with members of Adams's staff, to donate funds from Turkish nationals to the Adams Campaigns and communicated about fundraising with members of Adams's staff.[7]  (*See, e.g.*, Ex. A ¶¶ 19-24).

f.  Adams communicated with members of his staff about fundraising in the Turkish community and the potential provision of benefits to the Consul General.  (*See, e.g.*, Ex. A ¶¶ 16(c), 16(j)).

g.  Adams and members of his staff intervened in at least one matter within the purview of the New York City government to obtain favorable action for the Consul General; specifically, obtaining a Temporary Certificate of Occupancy ("TCO") for the official opening of a building

---

[6] Certain earlier affidavits in this investigation described ███████ and ███████ as staff of the Adams Campaigns.  Counsel for Adams has since told the Government that, at least with respect to the 2021 Adams Campaign, ███ was a volunteer and ███ was a volunteer before becoming an employee of the Campaign.  As used herein, "Adams's staff" is an inclusive term referring to persons who have worked for Adams (whether as Brooklyn Borough President or Mayor) and/or the Adams Campaigns.

[7] In addition to other such donations, ███████ assisted in coordinating straw donations from employees of ███████ a Washington, D.C.-based university partnered with a Turkish university named ███████  Records maintained by the New York City Campaign Finance Board indicate that on September 27, 2021, five employees of ███ donated $2,000 each to the 2021 Adams Campaign.  According to public reporting, the 2021 Adams Campaign returned the ███ donations approximately 17 days later, claiming that "[t]he campaign had raised more money than it could spend," but as one article notes, "campaign records show [the 2021 Adams Campaign] accepted and did not return other contributions in the weeks that followed."  *See* https://www.thecity.nyc/2023/11/03/fbi-probe-eric-adams-campaign-turkey.

09.20.2021

12

SDNY_01_000006138
SUBJECT TO PROTECTIVE ORDER.

associated with the Turkish Consulate in New York in time for a visit by Turkey's president in 2021. (*See, e.g.*, Ex. A. ¶¶ 25-29).

      h. Adams and others associated with him received various benefits from persons affiliated with the Consul General, including travel to Turkey via ████████ that was provided at no cost in some instances, and reduced cost in others. (*See, e.g.*, Ex. A. ¶ 17).

      i. ████████ was one of Adams's key intermediaries to the Turkish community and worked in the Special Counsel's office of the Brooklyn Borough President when Adams was Brooklyn Borough President, was involved with the Adams Campaigns, and most recently worked in the Mayor's Office for International Affairs. During the relevant time period, ████ had regular contact both with Turkish consular officials and with ████ was personally involved with the May 7, 2021 Adams fundraiser held by ████ at which the straw donations were made; and was personally involved in the exchange of other benefits between Adams and those associated with him and the Consul General and those associated with him. (*See, e.g.*, Ex. A ¶¶ 7, 13-18).

      23. ████████ is a longtime advisor of Adams, serving as Deputy Brooklyn Borough President when Adams was Brooklyn Borough President, Chief Advisor to the Mayor starting in 2022, and a member of the Adams Campaigns. ████ is regularly described in the press as Adams's closest advisor.[8]

      24. I have reviewed the contents of an iCloud account and an Apple iPhone used by ████ obtained pursuant to search warrants, including text messages exchanged between

---

[8]    *See, e.g.*, *See* Brian M. Rosenthal & Jeffery C. Mays, *The 'Fiercely Loyal' Adams Adviser Agitating From Inside City Hall*, N.Y. Times, June 18, 2023, https://www.nytimes.com/2023/06/18/nyregion/████████-adams.html (describing ████ as Adams's "chief adviser" and reporting that "colleagues say she has more power than anyone but Mr. Adams").

09.20.2021

SDNY_01_000006139
SUBJECT TO PROTECTIVE ORDER.

██████ and ██████████ .   On or about July 22, 2022, █████████████ exchanged the
following text messages with ███████████ regarding a meeting with Turkey's New York
Consul General, ████████████ :



| FROM | TO | |
|------|----|--|
| ▉ | ▉ | H████<br>The dates for private meeting is 8/25 at 8 pm<br>8/26 at 8:15 or 8:30 pm |
| ▉ | ▉ | Regarding NYPD he will send you an email |
| ▉ | ▉ | Thanks again for following up 🙏 |
| ▉ | ▉ | Please send some other date options for the night rooftop and send his name. Thanks |
| ▉ | ▉ | Consul Generals name is ████████<br>He will be in vacation from July 27 till August 21<br>We can check the dates after August 21 |
| ▉ | ▉ | Thanks |

Based on my training and experience and involvement in this investigation, I believe that in this
conversation █████████ and ███████████ discussed an NYPD-related concern that ██████
intended to email ██████████ about and ███████████ assisting in arranging a "private meeting"
with ██████

14

09.20.2021

SUBJECT TO PROTECTIVE ORDER.

████████

25. I know based on, among other sources, public reporting, that ████████ is Adams's long-term romantic partner.[9]  In addition, based on public reporting, I believe that in or about February and March 2023, ██████ was Senior Adviser to a Deputy Chancellor of the New York City Department of Education ("NYCDOE").

26. I have reviewed the contents of an iCloud account and an Apple iPhone used by ████████, obtained pursuant to search warrants, including text messages exchanged between ████████ and ██████.  In February and March 2023, ████████ and ████████ exchanged the following text messages:

| Date | From | To |  |
|------|------|-----|--|
| 2/13/2023 | ██ | ██ | Hi██████<br>Here is the contact information for the Consul General of Turkey<br><br>████████-4260 ████████ |
| 2/13/2023 | ██ | ██ | Thank you so much ████. I will share the number with ████████ when I see him. Please save my personal cell and I will also save your personal cell number too. Warmly, ████ |
| 2/13/2023 | ██ | ██ | Thank you, ████<br>Appreciate all your help |
| 3/10/2023 | ██ | ██ | Good evening ████<br>Such a pleasure to meet you today<br>great personality and full of positive energy |

---

[9]    *See, e.g.*, Sandra E. Garcia, *The 'Swagger Mayor' Attends His First Met Gala*, N.Y. Times, May 3, 2022, https://www.nytimes.com/2022/05/03/style/met-gala-party-eric-adams.html ("Mayor Eric Adams of New York was . . . accompanied by his girlfriend, ████████, whom he introduced as his 'other half.'").

15

09.20.2021

SDNY_01_000006141<br>SUBJECT TO PROTECTIVE ORDER.

| 3/10/2023 | ■ | ■ | Here is the information for the CG's son<br><br>Student Name: ■<br>Student ID: ■<br>Current School: ■<br>Looking to get into M.S. 255 Salk School of Science<br>Thank you 🙏 |
|-----------|---|---|---|
| 3/12/2023 | ■ | ■ | Loved "Good evening ■<br>Such a pleasure to meet you t…" |
| 3/12/2023 | ■ | ■ | ■ it was so good seeing you on Friday and meeting with the team. Thank you for your kind words. Much appreciated. Talk soon. 🥲 |
| 3/28/2023 | ■ | ■ | Hi ■<br>Hope you are doing well<br>Sorry to bother you, but is there any update regarding the Turkish Consul General's request?<br>Or do you need additional information about the student |

Based on my training and experience and involvement in this investigation, I believe that in this conversation ■ asked ■ to assist ■ son in gaining admittance to M.S. 255 Salk School of Science, a highly sought-after New York City public middle school within the purview of NYCDOE, and that ■ agreed to contact ■, Director of Intergovernmental Affairs for NYCDOE. The conversation also indicates that ■ met with ■.

27. I have reviewed records from ■ and ■ traveled with Adams to or through Turkey on approximately four occasions and on at least two of those occasions, ■ received a complimentary upgrade. Based on open-source information, I know that a sovereign wealth fund owned by the Turkish Government owns slightly less than 50% of the shares of ■ and is the airline's single largest shareholder.[10]

---

[10] ■

09.20.2021

SDNY_01_000006142
SUBJECT TO PROTECTIVE ORDER

**B. Probable Cause Regarding the Subject Accounts**

28. On or about January 5, 2024 and January 16, 2024, preservation requests for the ███ and ███ accounts were served on Apple (Reference #s: 202400468364 and 202400474208).

29. Based on my training and experience, electronic communications like those detailed above can be stored not only on the device on which they were sent or received, but also on any iCloud account associated with that device.

30. Furthermore, based on records obtained from Apple, I know that the ███ and ███ iCloud Accounts contain, *inter alia*, iCloud backup, calendars, photos, contacts, mail, messages, and notes.

31. I also know from my experience in this case searching other iCloud accounts that such accounts can contain communications exchanged on encrypted applications such as WhatsApp and Signal, even if that cannot be discerned from the records I currently possess.

32. Temporal Limitation. This application is limited to all content created, sent, received, accessed, modified, or deleted on or after January 1, 2018, which is the year in which the current records reflect Adams, ███, and ███ beginning to communicate about the Consul General's assistance to the 2021 Adams Campaign.

**C. Evidence, Fruits and Instrumentalities**

33. Based upon the foregoing, I respectfully submit there is probable cause to believe that information stored on the Provider's servers associated with the Subject Accounts will contain evidence, fruits, and instrumentalities of the Subject Offenses, as more fully described in Section II of Attachment A to the proposed warrant.

09.20.2021

SDNY_01_000006143
SUBJECT TO PROTECTIVE ORDER.

### III. Review of the Information Obtained Pursuant to the Warrant

34. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for service of a search warrant issued under § 2703, or for the collection or production of responsive records. Accordingly, the warrant requested herein will be transmitted to the Provider, which shall be directed to produce a digital copy of any responsive records to law enforcement personnel within 14 days from the date of service. Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) will retain the records and review them for evidence, fruits, and instrumentalities of the Subject Offenses as specified in Section III of Attachment A to the proposed warrant.

35. In conducting this review, law enforcement personnel may use various methods to locate evidence, fruits, and instrumentalities of the Subject Offenses, including but not limited to undertaking a cursory inspection of all communications and other data within the Subject Accounts. This method is analogous to cursorily inspecting all the files in a file cabinet in an office to determine which paper evidence is subject to seizure. Although law enforcement personnel may use other methods as well, particularly including keyword searches, I know that keyword searches and similar methods are typically inadequate to detect all information subject to seizure. As an initial matter, keyword searches work only for text data, yet many types of files commonly associated with emails, including attachments such as scanned documents, pictures, and videos, do not store data as searchable text. Moreover, even as to text data, keyword searches cannot be relied upon to capture all relevant communications in an account, as it is impossible to know in advance all of the unique words or phrases that investigative subjects will use in their communications, and consequently there are often many communications in an account that are

18

SDNY_01_000006144
SUBJECT TO PROTECTIVE ORDER.

relevant to an investigation but that do not contain any keywords that an agent is likely to search for.

**IV. Request for Non-Disclosure and Sealing Order**

36. The existence and general nature of this investigation are publicly known, because of media reporting, and are known to certain subjects and targets such as Adams, ███████ and ███ including because of the execution of various warrants.  However, the exact nature of this ongoing criminal investigation and the particular types of evidence the Government is covertly seeking as part of that investigation are not publicly known.  As a result, premature public disclosure of this affidavit or the requested warrant could alert potential criminal targets to as-yet non-public information about the nature and scope of the Government's investigation, which could cause them to destroy evidence, flee from prosecution, or otherwise seriously jeopardize the investigation.  Indeed, as is set forth above, the targets of this investigation are known to use computers and electronic communications in furtherance of their activity and thus could easily delete, encrypt, or otherwise conceal such digital evidence from law enforcement were they to learn of the Government's investigation.  See 18 U.S.C. § 2705(b)(3).

37. Accordingly, there is reason to believe that, were the Provider to notify the subscribers or others of the existence of the warrant, the investigation would be seriously jeopardized. Pursuant to 18 U.S.C. § 2705(b), I therefore respectfully request that the Court direct the Provider not to notify any person of the existence of the warrant for a period of one year from issuance, subject to extension upon application to the Court, if necessary.

38. For similar reasons, I respectfully request that this affidavit and all papers submitted herewith be maintained under seal until the Court orders otherwise, except that the Government be permitted without further order of this Court to provide copies of the warrant and affidavit as need be to personnel assisting it in the investigation and prosecution of this matter, and to disclose

19

09.20.2021

SUBJECT TO PROTECTIVE ORDER.

those materials as necessary to comply with discovery and disclosure obligations in any prosecutions related to this matter.

**V.Conclusion**

39. Based on the foregoing, I respectfully request that the Court issue the warrant sought herein pursuant to the applicable provisions of the Stored Communications Act, 18 U.S.C. § 2703(b)(1)(A) (for contents) and § 2703(c)(1)(A) (for records and other information), and the relevant provisions of Federal Rule of Criminal Procedure 41.



/s _____ (By Court with Authorization)

S

FBI

Sworn to me through the transmission of this
Affidavit by reliable electronic means, pursuant to
Federal Rules of Criminal Procedure 41(d)(3) and 4.1, this
20th day of February, 2024

Honorable Sarah L. Cave
United States Magistrate Judge
Southern District of New York

20

09.20.2021

SDNY_01_000006146
SUBJECT TO PROTECTIVE ORDER.

**24 MAG 737**

# EXHIBIT A

# [23 MJ 12234]

SDNY_01_000006156
SUBJECT TO PROTECTIVE ORDER.

# EXHIBIT B

## [23 MAG 7090]

SDNY_01_000006205
SUBJECT TO PROTECTIVE ORDER.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In the Matter of a Warrant for All
Content and Other Information
Associated with the iCloud Accounts
Associated With
███████@gmail.com and
██████@aol.com
Maintained at Premises Controlled by
Apple Inc., USAO Reference No.
2021R00778

# 24 MAG 737

## SEARCH WARRANT AND NON-DISCLOSURE ORDER

TO:    Apple Inc. ("Provider")

Federal Bureau of Investigation ("Investigative Agency")

**1. Warrant.** Upon an affidavit of Special Agent ████████ of the FBI, and pursuant to the provisions of the Stored Communications Act, 18 U.S.C. § 2703(b)(1)(A) and § 2703(c)(1)(A), and the relevant provisions of Federal Rule of Criminal Procedure 41, the Court hereby finds there is probable cause to believe the iCloud accounts associated with ████████@gmail.com and ██████████@aol.com, maintained at premises controlled by the Provider, contain evidence, fruits, and instrumentalities of crime, all as specified in Attachment A hereto. Accordingly, the Provider is hereby directed to provide to the Investigative Agency, within 14 days of the date of service of this Warrant and Order, the records specified in Section II of Attachment A hereto, for subsequent review by law enforcement personnel as authorized in Section III of Attachment A. The Government is required to serve a copy of this Warrant and Order on the Provider within 14 days of the date of issuance. The Warrant and Order may be served via electronic transmission or any other means through which the Provider is capable of accepting service.

SUBJECT TO PROTECTIVE ORDER.

**2. Non-Disclosure Order.** Pursuant to 18 U.S.C. § 2705(b), the Court finds that there is reason to believe that notification of the existence of this warrant will result in destruction of or tampering with evidence or otherwise will seriously jeopardize an ongoing investigation. Accordingly, it is hereby ordered that the Provider shall not disclose the existence of this Warrant and Order to the listed subscriber or to any other person for a period of one year from the date of this Order, subject to extension upon application to the Court if necessary, except that Provider may disclose this Warrant and Order to an attorney for Provider for the purpose of receiving legal advice.

**3. Sealing.** It is further ordered that this Warrant and Order, and the Affidavit upon which it was issued, be filed under seal, except that the Government may without further order of this Court serve the Warrant and Order on the Provider; provide copies of the Affidavit or Warrant and Order as need be to personnel assisting the Government in the investigation and prosecution of this matter; and disclose these materials as necessary to comply with discovery and disclosure obligations in any prosecutions related to this matter.

Dated: New York, New York

2/20/2024
_____
Date Issued

12:19pm
_____
Time Issued

_____
UNITED STATES MAGISTRATE JUDGE
Southern District of New York

09.20.2021

2

SDNY_01_000006148
SUBJECT TO PROTECTIVE ORDER.

**Search Attachment A**

**I.Subject Accounts and Execution of Warrant**

This warrant is directed to Apple Inc. ("Apple" or the "Provider"), headquartered at 1 Infinite Loop, Cupertino, California 95014, and applies to all content and other information within the Provider's possession, custody, or control associated with the iCloud accounts associated with ██████████@gmail.com and ██████████@aol.com (the "Subject Accounts").

A law enforcement officer will serve this warrant by transmitting it via email or another appropriate manner to the Provider. The Provider is directed to produce to the law enforcement officer an electronic copy of the information specified in Section II below.  Upon receipt of the production, law enforcement personnel will review the information for items falling within the categories specified in Section III below.

**II.Information to be Produced by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of Apple, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Apple, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f) (*see* Reference #s: 202400468364 and 202400474208), Apple is required to disclose the following information to the government, in unencrypted form whenever available, for each account or identifier listed in Attachment A:

a.  All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers, email addresses (including primary, alternate, rescue, and notification email addresses, and verification information for each email address), the date on which the account was created, the length of service, the IP address used to register the

SUBJECT TO PROTECTIVE ORDER.

account, account status, associated devices, methods of connecting, and means and source of payment (including any credit or bank account numbers);

b.  All records or other information regarding the devices associated with, or used in connection with, the account (including all current and past trusted or authorized iOS devices and computers, and any devices used to access Apple services), including serial numbers, Unique Device Identifiers ("UDID"), Advertising Identifiers ("IDFA"), Global Unique Identifiers ("GUID"), Media Access Control ("MAC") addresses, Integrated Circuit Card ID numbers ("ICCID"), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identities ("IMSI"), and International Mobile Station Equipment Identities ("IMEI");

c.  The contents of all emails associated with the account from January 1, 2018 through the date of this Warrant and Order, including stored or preserved copies of emails sent to and from the account (including all draft emails and deleted emails), the source and destination addresses associated with each email, the date and time at which each email was sent, the size and length of each email, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the emails, and all attachments;

d.  The contents of all instant messages associated with the account from January 1, 2018 through the date of this Warrant and Order, including stored or preserved copies of instant messages (including iMessages, SMS messages, and MMS messages) sent to and from the account (including all draft and deleted messages), the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent,

2

09.20.2021

SUBJECT TO PROTECTIVE ORDER.

the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;

e.   The contents of all files and other records stored on iCloud, including all iOS device backups, all Apple and third-party app data, all files and other records related to iCloud Mail, iCloud Photo Sharing, My Photo Stream, iCloud Photo Library, iCloud Drive, iWork (including Pages, Numbers, Keynote, and Notes), iCloud Tabs and bookmarks, and iCloud Keychain, and all address books, contact and buddy lists, notes, reminders, calendar entries, images, videos, voicemails, device settings, and bookmarks;

f.   All activity, connection, and transactional logs for the account (with associated IP addresses including source port numbers), including FaceTime call invitation logs, messaging and query logs (including iMessage, SMS, and MMS messages), mail logs, iCloud logs, iTunes Store and App Store logs (including purchases, downloads, and updates of Apple and third-party apps), My Apple ID and iForgot logs, sign-on logs for all Apple services, Game Center logs, Find My iPhone and Find My Friends logs, logs associated with web-based access of Apple services (including all associated identifiers), and logs associated with iOS device purchase, activation, and upgrades;

g.   All records and information regarding locations where the account or devices associated with the account were accessed, including all data stored in connection with Location Services, Find My iPhone, Find My Friends, and Apple Maps;

h.   All records pertaining to the types of service used;

i.   All records pertaining to communications between Apple and any person regarding the account, including contacts with support services and records of actions taken; and

09.20.2021

SDNY_01_000006151
SUBJECT TO PROTECTIVE ORDER.

j.  All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Apple (including, but not limited to, the keybag.txt and fileinfolist.txt files).

### III. Review of Information by the Government

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate any evidence, fruits, and instrumentalities of violations of: (i) 18 U.S.C. §§ 371 and 666 (theft of federal funds and conspiracy to steal federal funds), (ii) 18 U.S.C. §§ 1343 and 1349 (wire fraud and attempt and conspiracy to commit wire fraud), and (iii) 18 U.S.C. § 371 and 52 U.S.C. § 30121 (campaign contributions by foreign nationals and conspiracy to commit the same), for content created, sent, received, accessed, modified, or deleted on or after January 1, 2018, including the following:

1.  Evidence concerning the identity or location of the owner(s) or user(s) of the Subject Account.

2.  Evidence of knowledge or understanding of, or intent to violate, laws and regulations governing the conduct of the 2021 New York City Mayoral campaign of Eric Adams (the "2021 Adams Campaign") on the part of any donor or associate of any donor; the Turkish Government, including its Consulate General in New York and its employees, officers, or associates; or the 2021 Adams Campaign.

3.  Evidence of knowledge or understanding of, or intent to violate, laws and regulations governing the conduct of the 2025 New York City Mayoral campaign of Eric Adams (the "2025 Adams Campaign," and together with the 2021 Adams Campaign, the "Adams Campaigns") on

4

09.20.2021

SDNY_01_000006152
SUBJECT TO PROTECTIVE ORDER.

the part of any donor or associate of any donor; the Turkish Government, including its Consulate General in New York and its employees, officers, or associates; or the 2025 Adams Campaign.

4.   Evidence relating to coordination between Turkish nationals or the Turkish Government and the Adams Campaigns concerning political contributions to the Adams Campaigns, including, but not limited to, evidence of motive and intent for Turkish nationals or the Turkish Government to provide or facilitate campaign contributions to the Adams Campaigns, and evidence of motive and intent by any person who is or was associated with or employed by the Adams Campaigns to provide benefits, whether lawfully or unlawfully, to Turkish nationals or the Turkish Government in return for campaign contributions.

5.   Evidence relating to payments to employees, officers, and associates of ▆▆ to facilitate those employees, officers, and associates making campaign contributions to the Adams Campaigns.

6.   Evidence relating to the source of funds for payment or reimbursement of employees, officers, and associates of ▆▆ for campaign contributions to the Adams Campaigns.

7.   Evidence relating to the source of funds for payment or reimbursement of persons serving as conduits for campaign contributions to the Adams Campaigns originating from Turkish national.

8.   Evidence of individuals or entities who donated to the Adams Campaigns before or after receiving transfers of funds similar to the amount of the donation.

5

SDNY_01_000006153
SUBJECT TO PROTECTIVE ORDER.

9.  Evidence regarding straw donations to the Adams Campaigns, including without limitation evidence regarding the identities of any persons or entities involved, wittingly or unwittingly, in straw donations, and evidence regarding the sources of funds for straw donations.

10. Evidence of the relationship between and among (i) persons or entities that coordinated or made straw donations or (ii) foreign nationals and/or governments, and any person who is or was associated with or employed by the Adams Campaigns, including all communications with or about, contact information for, and meetings and appointments with co-conspirators.

11. Evidence of an intent to exchange benefits between the Turkish Government or entities and persons acting at its behest, and any person who is or was associated with or employed by the Adams Campaigns, including but not limited to straw donations and any actions taken by any person who is or was associated with or employed by the Adams Campaigns on behalf of the Turkish Government, ████ or entities and persons acting at the behest of the Turkish Government.

12. Evidence regarding any requests by the Adams Campaigns for matching funds based on straw donations, including any discussions of matching funds.

13. Passwords or other information needed to access the user's online accounts, including encrypted data stored in the Subject Account.

14. Evidence of the geographic location of users, computers, or devices involved in the commission of the Subject Offenses at times relevant to the Subject Offenses.

15. Evidence concerning efforts to conceal communications, meetings, or associations between Turkish nationals, the Turkish Government, ████ or entities and persons acting at the

09.20.2021

SDNY_01_000006154
SUBJECT TO PROTECTIVE ORDER.

behest of the Turkish Government, and persons associated with or employed by the Adams Campaigns.

16. Evidence concerning efforts to destroy or conceal evidence of the Subject Offenses or to devise or coordinate false exculpatory explanations for the conduct underlying the Subject Offenses, or to otherwise obstruct law enforcement from investigating the Subject Offenses.

7

09.20.2021

SDNY_01_000006155
SUBJECT TO PROTECTIVE ORDER.