| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK | |
| In re: Warrant and Order For Prospective and Historical Location Information and Pen Register Information for the Cellphone Assigned Call Number ████7009, USAO Reference No. 2021R00778 | APPLICATION<br>24 MAG 2164 |

**Application for Warrant and Order**
**for Cellphone Location and Pen Register Information**

The United States of America, by its attorney, Damian Williams, United States Attorney for the Southern District of New York, Andrew Rohrbach, Assistant United States Attorney, of counsel, respectfully requests that the Court issue the accompanying proposed Warrant and Order for prospective and historical location information and pen register information for a cellphone. As grounds for this Application the Government relies on the following facts and authorities.

**I. Introduction**

1. I am an Assistant United States Attorney in the U.S. Attorney's Office for the Southern District of New York. This Application is submitted in conjunction with the accompanying affidavit of a law enforcement agent ("Agent Affidavit"), to be sworn before this Court, and incorporated by reference herein. I make this Application based on information and belief, including the Agent Affidavit, my review of other documents in the case, and information received from investigative personnel.

2. The Investigating Agency, Target Cellphone, Subscriber, Target Subject(s), Service Provider, Subject Offenses, Successor Service Provider, and Successor Cellphone referenced in this Application are as specified in the Agent Affidavit.

2019.07.24

**II. Legal Authority**

    **A.  Prospective Location Information**

    3.  The Government seeks to obtain both precision location information and cell site data for the Target Cellphone on a prospective basis (the "Prospective Location Information") for a period of 45 days from the date of this order – the same period of time for which a warrant for a tracking device may be granted under Rule 41(e)(2)(C).  It bears noting, however, that while the Prospective Location Information may permit "tracking" the user of the phone in the colloquial sense, this is not an application for a warrant for a "tracking device" as defined in Fed. R. Crim. P. 41(a)(2)(E) and 18 U.S.C. § 3117(b).  Those provisions only apply where an agent is seeking to physically install a tracking device on a given object.  Instead, the Prospective Location Information will be obtained by requiring the Service Provider to provide the information.

    4.  The authority for this application is found in 18 U.S.C. § 2703(c)(1), which authorizes a court of competent jurisdiction to require any electronic communication service provider (which includes a cellular telephone service provider[1]) to disclose any "record or other information pertaining to a subscriber" other than the "contents of communications," when the government obtains, *inter alia*, a warrant under the applicable procedures of Rule 41.  *See* 18 U.S.C. § 2703(c)(1)(A).  Because data concerning a subscriber's location, such as precision location information and cell site data, constitutes "information pertaining to a subscriber" that does not include the "contents of communications," that data is among the types of information available

---

[1] *See* 18 U.S.C. § 2711(1) (incorporating by cross-reference statutory definitions set forth in 18 U.S.C. § 2510); 18 U.S.C. § 2510(15) (defining "electronic communication service" as "any service which provides to users thereof the ability to send or receive wire or electronic communications").

2019.07.24

2

SDNY_01_000008017
SUBJECT TO PROTECTIVE ORDER.

under § 2703(c)(1)(A).[2]  Further, as specified in 18 U.S.C. § 2711(3), this Court is a court of competent jurisdiction under the Stored Communications Act because it has jurisdiction over the Subject Offenses.

5. The Government's request for cell site data also implicates the pen register statute, because such data constitutes signaling information used by the Service Provider to route communications to and from the Target Cellphone. In order to collect such data, a valid pen register order is required.[3]  Accordingly, I hereby certify pursuant to 18 U.S.C. § 3122 that such signaling information is relevant to an ongoing investigation being conducted by the Investigating Agency into suspected violations of the Subject Offenses by the Target Subject(s).

**B. Historical Location Information**

6. The Government also seeks historical cell site data for the Target Cellphone for the period from May 15, 2024 to the present (the "Historical Location Information"). Because such data—like "Prospective Location Information"—constitutes information concerning a subscriber, the Court is authorized to order the Service Provider to provide this data pursuant to a warrant

---

[2] *See In re Application*, 460 F. Supp. 2d 448, 459–60 & n. 55 (S.D.N.Y. 2006) (Kaplan, J.) (cellphone location information falls within § 2703(c)(1)); *accord, e.g.*, *United States v. Caraballo*, 963 F. Supp. 2d 341, 361 (D.Vt. 2013); *In re Order*, 632 F. Supp. 2d 202, 207 (E.D.N.Y. 2008); *In re Application*, 405 F. Supp. 2d 435, 444-45 (S.D.N.Y. 2005). *But see In re Application*, 849 F. Supp. 2d 526, 574 (D.Md. 2011) (rejecting view that cellular location data falls within the scope of the SCA and finding that phone must be treated as "tracking device" for purposes of Rule 41 where used to collect location data); *In re Application*, 2009 WL 159187, at *5-*6 (S.D.N.Y. Jan.13, 2009) (McMahon, J.) (same).

[3] *See* 18 U.S.C. § 3121 (prohibiting use of pen register or trap and trace device without an order under the pen register statute); 3127(3) & (4) (defining pen register and trap and trace device to include devices or processes that record, *inter alia*, signaling information). Although cell site data constitutes "signaling" information within the meaning of the pen register statute, a separate statute precludes the Government from relying "solely" on the authority provided by the pen register statute to ascertain a subscriber's location. 47 U.S.C. § 1002(a). Here, the Government seeks to obtain such data pursuant to 18 U.S.C. § 2703(c) as well as the pen register statute, rather than "solely" under the latter statute. *See In re Application*, 460 F. Supp. 2d at 456-59.

SDNY_01_000008018
SUBJECT TO PROTECTIVE ORDER.

application under 18 U.S.C. § 2703(c), under the applicable procedures of Rule 41.  *See* 18 U.S.C. § 2703(c)(1)(A).   I respectfully submit that the same probable cause supporting the Government's request for a warrant to obtain the Prospective Location Information requested above also supports the issuance of a warrant under § 2703(c) for the requested Historical Location Information.  In addition, the Government seeks toll records for the same period as the Historical Location Information.  Pursuant to 18 U.S.C. § 2703(d), I respectfully submit that the Agent Affidavit offers specific and articulable facts showing that there are reasonable grounds to believe that the toll record information sought is relevant and material to an ongoing criminal investigation.

    C.  **Pen Register Information**

7.  Finally, the Government seeks an order pursuant to 18 U.S.C. §§ 3121-26 authorizing the use of a pen register on the Target Cellphone for a period of 45 days from the date of this order.  Specifically, the Government seeks an order directing the Service Provider to furnish any information, facilities, and technical assistance necessary to operate, unobtrusively and with minimum disruption of service, a pen register and trap and trace device to capture all dialing, routing, addressing, or signaling information associated with each call transmitted to or from the Target Cellphone, as specified further in the proposed Warrant and Order (the "Pen Register Information").[4]

---

[4] The Government is also not seeking authorization to obtain post-cut-through dialed digits ("PCTDD"), or digits that are dialed after a telephone call from the Target Cellphone has been connected.  Pursuant to the attached Order, if possible, the Service Provider will forward only pre-cut-through-dialed digits to the Investigating Agency.  However, if the Service Provider's technical capabilities require it to forward all dialed digits, including PCTDD, to the Investigating Agency, the Investigating Agency will only decode and forward to the agents assigned to the investigation the numbers that are dialed before the call is cut through.

4

2019.07.24

SDNY_01_000008019
SUBJECT TO PROTECTIVE ORDER

8. I hereby certify pursuant to 18 U.S.C. § 3122 that the Pen Register Information is relevant to an ongoing investigation being conducted by the Investigating Agency into suspected violations of the Subject Offenses by the Target Subject(s).

**D. Sealing and Non-Disclosure Order to Service Provider**

9. When the Government obtains records or information under § 2703(c), it is not required to notify the subscriber or customer. 18 U.S.C. § 2703(c)(3). Additionally, the Government may obtain an order precluding the Service Provider from notifying the subscriber or any other third-party of the warrant or order obtained, for such period as the Court deems appropriate, where there is reason to believe that such notification will result in endangering the life or physical safety of an individual, flight from prosecution, destruction of or tampering with evidence, or intimidation of potential witnesses, or will otherwise seriously jeopardize the investigation. 18 U.S.C. § 2705(b).

10. Further, 18 U.S.C. § 3123(d) provides that an order directing installation of a pen register or trap and trace device shall direct the pertinent service provider "not to disclose the existence of the pen register or trap and trace device or the existence of the investigation to the listed subscriber, or to any other person unless or until otherwise ordered by the Court."

11. Accordingly, as explained further in the Agent Affidavit, in light of the confidential nature of the continuing criminal investigation and the adverse consequences expected in the event of premature notification, the Government respectfully requests that the Court direct the Service Provider not to notify the Subscriber or any other person of the Warrant and Order sought herein for a period of one year, subject to extension upon application to the Court, if necessary.

12. For similar reasons, I respectfully request that the proposed Warrant and Order, this Application, and the accompanying Agent Affidavit, be maintained under seal until the Court orders otherwise, except that the Government be permitted without further order of this Court to

2019.07.24

5

SDNY_01_000008020
SUBJECT TO PROTECTIVE ORDER.

serve this Warrant and Order on the Service Provider; provide copies of the Warrant and Order or the supporting Application and Agent Affidavit as need be to personnel assisting the Government in the investigation and prosecution of this matter; and disclose these materials as necessary to comply with discovery and disclosure obligations in any prosecutions related to this matter.

### III.  Prior Requests

13. Except as may be set forth above, no prior request for the relief requested herein has been made.

Dated: New York, New York

      June 6, 2024

                                                         _____
                                                         Andrew Rohrbach
                                                         Assistant United States Attorney
                                                         Tel.: (212) 637-1944

SDNY_01_000008021
SUBJECT TO PROTECTIVE ORDER

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

In re: Warrant and Order For Prospective and Historical Location Information and Pen Register Information for the Cellphone Assigned Call Number ▓▓▓▓-7009, USAO Reference No. 2021R00778

AGENT AFFIDAVIT

**24 MAG 2164**

---

**Agent Affidavit in Support of Warrant and Order
for Cellphone Location and Pen Register Information**

STATE OF NEW YORK    )
                     ) ss.
COUNTY OF NEW YORK   )

▓▓▓▓▓▓▓▓▓▓ being duly sworn, deposes and states:

**I. Introduction**

1. I have been a Special Agent with the Federal Bureau of Investigation ("FBI") since 2019. I am currently assigned to a public corruption squad of the New York Field Office, where, among other things, I investigate crimes involving illegal campaign contributions, theft of federal funds, and bribery. Through my training and experience, I also have become familiar with some of the ways in which individuals use smart phones and electronic communications, including social media, email, and electronic messages, in furtherance of their crimes, and have participated in the execution of search warrants involving electronic evidence.

2. **Requested Information.** I respectfully submit this Affidavit pursuant to 18 U.S.C. §§ 2703(c) and (c)(1)(A) and the applicable procedures of Federal Rule of Criminal Procedure 41; 18 U.S.C. §§ 2703(d) & 2705; and 18 U.S.C. §§ 3121-3126, in support of a warrant and order for prospective location information, historical location information, toll records, and pen register

2019.07.24

SDNY_01_000008022
SUBJECT TO PROTECTIVE ORDER.

information, for the Target Cellphone identified below (collectively, the "Requested Information").

3. **Basis for Knowledge.** This Affidavit is based upon my participation in the investigation, my examination of reports and records, and my conversations with other law enforcement agents and other individuals, as well as my training and experience. Because this Affidavit is being submitted for the limited purpose of obtaining the Requested Information, it does not include all the facts that I have learned during the course of this investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated. In addition, unless otherwise indicated, statements by others referenced in this Affidavit were not necessarily made to me, but may have been provided to me by someone else to whom I have spoken or whose report I have read (and who in turn may have had either direct or indirect knowledge of the statement). Similarly, unless otherwise indicated, information in this Affidavit resulting from surveillance does not necessarily set forth my personal observations, but may have been provided to me by other law enforcement agents who observed the events, and to whom I have spoken or whose report I have read.

4. **Target Cellphone, Subscriber, Target Subject, and Service Provider.** The Target Cellphone referenced in this Affidavit is the cellphone assigned call number ███████ 7009. As further discussed below, the Target Cellphone is subscribed to in the name of ███████ ███████ (the "Subscriber"). The Subscriber is believed to use the Target Cellphone and is a Target Subject of this investigation. Verizon Wireless is the Service Provider for the Target Cellphone.

2019.07.24

SDNY_01_000008023
SUBJECT TO PROTECTIVE ORDER.

5. **Precision Location Capability.**  Cellphone service providers have technical capabilities that allow them to collect at least two kinds of information about the locations of the cellphones to which they provide service: (a) precision location information, also known as E-911 Phase II data, GPS data, or latitude-longitude data, and (b) cell site data, also known as "tower/face" or "tower/sector" information.  Precision location information provides relatively precise location information about a cellphone, which a provider can typically collect either via GPS tracking technology built into the phone or by triangulating the device's signal as received by the provider's nearby cell towers.  Cell site data, by contrast, reflects only the cell tower and sector thereof utilized in routing any communication to and from the cellphone, as well as the approximate range of the cellphone from the tower during the communication (sometimes referred to as "per-call measurement" ("PCM") or "round-trip time" ("RTT") data).  Because cell towers are often a half-mile or more apart, even in urban areas, and can be ten or more miles apart in rural areas, cell site data is typically less precise than precision location information.  Based on my training and experience, I know that the Service Provider has the technical ability to collect precision location information from any cellphone on its network, including by initiating a signal on the Service Provider's network to determine the phone's location.  I further know that cell site data is routinely collected by the Service Provider in the course of routing calls placed to or from any cellphone on its network.[1]

6. **Successor Service Provider.** Because it is possible that the Target Subject may change cellphone service provider during the course of this investigation, it is requested that the warrant

---

[1] Toll records are sometimes necessary or helpful in order to obtain or interpret historical cell site data and are therefore also requested herein.

2019.07.24

3

SDNY_01_000008024
SUBJECT TO PROTECTIVE ORDER.

and investigative order requested apply without need for further order to any Successor Service Provider who may provide service to the Target Cellphone during the time frames at issue herein.

## II. Facts Establishing Probable Cause

7. Although I understand that probable cause is not necessary to obtain all of the Requested Information, I respectfully submit that probable cause exists to believe that the Requested Information will lead to evidence of the crimes of (i) 18 U.S.C. §§ 371 and 666 (theft of federal funds and conspiracy to steal federal funds), (ii) 18 U.S.C. §§ 1343 and 1349 (wire fraud and attempt and conspiracy to commit wire fraud), (iii) 18 U.S.C. § 371 and 52 U.S.C. § 30121 (campaign contributions by foreign nationals and conspiracy to commit the same), and (iv) 18 U.S.C. § 1956 (money laundering and conspiracy to commit money laundering) (collectively, the "Subject Offenses") (the "Subject Offenses"), as well as the location of the Target Subject who is engaged in the Subject Offenses.

8. On or about April 5, 2024, the Hon. Robyn F. Tarnofsky, United States Magistrate Judge, signed a warrant for an iCloud account belonging to ███████. A copy of the affidavit in support of that warrant is attached as Exhibit A and incorporated by reference. The affidavit describes the following, in substance and in part:

    a. Since in or about August 2021, the FBI and the Office of the United States Attorney for the Southern District of New York have been investigating the receipt of so-called "straw" donations by the 2021 and 2025 New York City mayoral campaigns of Eric Adams (collectively, the "Adams Campaigns"), including certain straw donations that were funded by and/or made at the direction of foreign government officials and other foreign persons. (Ex. A ¶¶ 20-21).

    b. The Adams Campaigns received matching funds from the City of New York, which in turn receives in excess of $10,000 in federal funding. (Ex. A. ¶ 22).

   c. The Adams Campaigns also received a number of donations from individuals of Turkish origin who were reimbursed for those donations. Turkey's Consul General in New York was involved in fundraising for the Adams Campaigns, among other individuals of Turkish origin, and Adams and members of his staff intervened in at least one matter within the purview of the New York City government to obtain favorable action for the Consul General. (Ex. A ¶ 23).

   d. ██████ is a dual American and Uzbek citizen who has attended official events with Adams and who is connected to the Uzbek government (Ex. A ¶¶ 25-29).

   e. ██████ has coordinated straw donations to the Adams Campaigns.

    i. In or about December 2020, ██████ and four individuals who appear to work for ██████ donated by check approximately $2,000 each to the 2021 Adams campaign. Because the donations were made on the same day in matching amounts by employees of the same organization using substantially similar contribution cards, they appear to have been coordinated. At least one of the donors made cash deposits around the same time as the donation in approximately the same amount as the donation. ██████ also received a number of deposits that are consistent with reimbursement for the donation, but I have not identified any specific deposit as a likely reimbursement for the donation. (Ex. A ¶¶ 30-31).[2]

    ii. In or about June 2023, ██████ and four other individuals donated to the 2025 Adams campaign. Messages among Adams staffers indicate that the other

---

[2] Since swearing to the affidavit attached as Exhibit A, law enforcement has continued to investigate this fundraiser. Of the three other donors, one appears to have deposited approximately $2,000 in two payments (as well as an additional deposit of approximately $1,300) at approximately the same time as the $2,000 donation; one made a deposit of approximately $1,200 at approximately the same time as the $2,000 donation; and one does not appear to have made a deposit at approximately that time.

SDNY_01_000008026
SUBJECT TO PROTECTIVE ORDER

four donors are "from ▮▮▮," which I believe means that ▮▮▮▮▮▮▮ coordinated those donations. (Ex. A ¶¶ 35).[3]

       iii. In or about October 2023, an Adams campaign staffer contacted ▮▮▮▮▮▮▮ "regarding scheduling a fundraiser," in substance and in part. (Ex. A ¶ 36).

   f. Separately, ▮▮▮▮▮▮▮ appears to have engaged in money laundering activity. Specifically, on or about January 24, 2020, a bank account for which ▮▮▮▮▮▮▮ is a signatory received a wire of approximately $11.7 million from a Cyprus-based entity. Over the course of approximately the next two weeks, those funds were wired among a series of accounts for which ▮▮▮▮▮▮▮ was a signatory, until they were used to purchase a building in Brooklyn, New York. Based on my participation in money laundering investigations, I know that the rapid movement of large sums of money between accounts is indicative of an effort to conceal or disguise the nature and source of the funds. (Ex. A ¶ 37).

  9. Review of the return from the ▮▮▮▮▮▮▮ iCloud search warrant remains ongoing, but based on my participation in the review, I have learned that, in substance and in part, on approximately June 14, 2023, ▮▮▮▮▮▮▮ sent Adams an electronic message stating "You can text me on signal also," to which Adams replied, "Ok." Based on my training and experience and my participation in the investigation, I have learned that Signal is an encrypted messaging application, and that Signal messages generally cannot be recovered from an iCloud account but are sometimes recoverable from the search of a physical cellphone.

---

[3] Since swearing to the affidavit attached as Exhibit A, law enforcement has continued to investigate whether these donors were reimbursed. At the present time, there is evidence that at least one received a reimbursement payment, but we have not identified reimbursement payments for other of the donors.

SDNY_01_000008027
SUBJECT TO PROTECTIVE ORDER

10. The Requested Information will assist law enforcement agents in locating ▮▮▮▮▮▮▮▮ for serving or executing legal process, including potential search warrants on the Target Cellphone itself, which may in turn contain evidence, fruits, or instrumentalities of the Subject Offenses, including, for example, communications among co-conspirators; location or calendar history; photographs and other media. As discussed above, ▮▮▮▮▮▮▮▮ is known to have used Signal, including in conversation with Adams. Based on my training and experience, I know that historical location information assists law enforcement in locating an individual by helping establish a pattern of their daily movements, including their locations at night.

**III. Request for Warrant and Order**

11. Based on the foregoing I respectfully request that the Court require the Service Provider to provide the Requested Information as specified further in the Warrant and Order proposed herewith, including prospective precision location and cell site data for a period of 45 days from the date of this Order, historical cell site data and toll records for the period from May 15, 2024 through the date of this Order, and pen register information for a period of 45 days from the date of this Order.

12. **Nondisclosure.** The existence and general nature of this ongoing criminal investigation are publicly known, because of media reporting, and are known to Adams himself, including because of the execution of prior warrants and Adams's counsel's subsequent interactions with prosecutors. But the exact nature of the investigation and the particular types of evidence the Government is covertly seeking as the investigation continues—including the fact that the Government is seeking the Requested Information—are not publicly known. Neither is it public that the Government is investigating conduct by the Target Subject nor the fundraisers discussed above. The premature public disclosure of this affidavit or the requested Warrant and Order could alert subjects of the investigation about as-yet non-public information about the nature and scope

SDNY_01_000008028
SUBJECT TO PROTECTIVE ORDER.

of the Government's investigation, which could cause them to destroy evidence, flee from prosecution, or otherwise seriously jeopardize the investigation. Accordingly, I respectfully request that the Service Provider be directed not to notify the subscriber or others of the existence of the Warrant and Order for a period of one year, and that the Warrant and Order and

13. Accordingly, there is reason to believe that, were the Service Provider to notify the subscriber or others of the existence of the warrant, the investigation would be seriously jeopardized. Pursuant to 18 U.S.C. § 2705(b), I therefore respectfully request that the Service Provider be directed not to notify the subscriber or others of the existence of the Warrant and Order for a period of one year, and that the Warrant and Order and all supporting papers be maintained under seal until the Court orders otherwise, as specified in the Application submitted in conjunction with this Affidavit.

/s/ ███████  by SDA with permission
_____
███████
Special Agent
Federal Bureau of Investigation

Sworn to before me by reliable electronic means this
6th day of June, 2024

*Stewart D. Aaron*
_____
HONORABLE STEWART D. AARON
United States Magistrate Judge
Southern District of New York

2019.07.24

8

SDNY_01_000008029
SUBJECT TO PROTECTIVE ORDER.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re: Warrant and Order For Prospective and Historical Location Information and Pen Register Information for the Cellphone Assigned Call Number ▮▮▮7009, USAO Reference No. 2021R00778

**WARRANT AND ORDER**

**24 MAG 2164**

## Warrant and Order
### for Cellphone Location Information and Pen Register Information
### and for Sealing and Non-Disclosure

TO:  Verizon Wireless ("Service Provider"), and any subsequent provider of service to the Target Cellphone specified below ("Subsequent Service Provider")

Federal Bureau of Investigation ("Investigative Agency")

Upon the Application and Agent Affidavit submitted by the Government in this matter:

**I.  Findings**

The Court hereby finds:

1. The Target Cellphone (the "Target Cellphone") that is the subject of this Order is assigned call number ▮▮▮7009, is subscribed to in the name of ▮▮▮ (the "Subscriber"), and is currently serviced by the Service Provider.

2. Pursuant to 18 U.S.C. § 2703(c)(1)(A) and the applicable provisions of Rule 41 of the Federal Rules of Criminal Procedure, the Government's application sets forth probable cause to believe that the prospective and historical location information for the Target Cellphone will reveal evidence, fruits, or instrumentalities of suspected violations of 18 U.S.C. §§ 371, 666, 1343, 1349, and 1956, and 52 U.S.C. § 30121 ("the Subject Offenses").

3. Pursuant to 18 U.S.C. § 2703(d), the Government's application also sets forth specific and articulable facts showing that there are reasonable grounds to believe that the toll records for the Target Cellphone are relevant and material to an ongoing criminal investigation.

2019.07.24

SDNY_01_000008030
SUBJECT TO PROTECTIVE ORDER

4. Pursuant to 18 U.S.C. § 3123(b)(1), the Government has certified that the pen register information for the Target Cellphone is relevant to an ongoing investigation by the Investigating Agency of the Subscriber and others unknown in connection with suspected violations of the Subject Offenses.

5. Pursuant to 18 U.S.C. § 2705(b), there is reason to believe that notification of the existence of this Warrant and Order will result in destruction of or tampering with evidence, flight from prosecution or otherwise will seriously jeopardize an ongoing investigation.

NOW, THEREFORE, pursuant to Fed. R. Crim. P. 41, 18 U.S.C. §§ 3121 *et seq.*, 18 U.S.C. §§ 2701 *et seq.*, and 18 U.S.C. § 3103a, IT IS HEREBY ORDERED:

**II.   Order to Service Provider**

6. **Service Provider.** This Order shall apply to the Service Provider specified above, and to any subsequent provider of service to the Target Cellphone without need for further Order of this Court.

7. **Prospective Location Information**. The Service Provider shall provide to the Investigating Agency on a prospective basis, for a period of 45 days from the date of this Order, information concerning the location of the Target Cellphone ("Prospective Location Information"), including all available:

   a. precision location information, including GPS data, E-911 Phase II data, and latitude-longitude data; and

   b. cell site data, including any data reflecting (a) the cell towers and sectors thereof utilized in routing any phone, text, or data communication to or from the Target Cellphone, and (b) the approximate range of the target phone from the cell towers during the communication (including per-call measurement ("PCM") or round-trip time ("RTT") data);

SDNY_01_000008031
SUBJECT TO PROTECTIVE ORDER.

8. **Historical Location Information and Toll Records**. The Service Provider shall provide to the Investigating Agency all available historical cell site location information reflecting the cell towers and sectors thereof utilized in routing any phone, text, or data communication to or from the Target Cellphone, and the approximate range of the target phone from the cell towers during the communication (PCM/RTT data), for the period from May 15, 2024 through the date of this Order, as well as all available toll records (including call detail, SMS detail, or data session detail records) for the communications.

9. **Pen register with caller identification and/or trap and trace device.** The Service Provider shall provide to the Investigating Agency, for a period of 45 days from the date of this order, all dialing, routing, addressing, or signaling information associated with each voice, text, or data communication transmitted to or from the Target Cellphone, including but not limited to:

    a. any unique identifiers associated with the phone, including ESN, MEIN, MSISDN, IMSI, IMEI, SIM, MIN, or MAC address;

    b. source and destination telephone numbers and/or Internet protocol ("IP") addresses;[1]

    c. date, time, and duration of the communication; and

    d. cell-site information as specified above.

---

[1] The Service Provider is not required to provide post-cut-through dialed digits ("PCTDD"), or digits that are dialed after a telephone call from the Target Cellphone has been connected. If possible, the Service Provider will forward only pre-cut-through-dialed digits to the Investigative Agency. However, if the Service Provider's technical capabilities require it to forward all dialed digits, including PCTDD, to the Investigative Agency, the Investigative Agency will only decode and forward to the agents assigned to the investigation, the numbers that are dialed before the call is cut through.

SDNY_01_000008032
SUBJECT TO PROTECTIVE ORDER.

10. **Technical Assistance.** The Service Provider shall furnish the Investigating Agency all information, facilities, and technical assistance necessary to accomplish the disclosure of all of the foregoing information relating to the Target Cellphone unobtrusively and with the minimum interference to the service presently provided to the Subscriber.

11. **Non-Disclosure to Subscriber.** The Service Provider, including its affiliates, officers, employees, and agents, shall not disclose the existence of this Warrant and Order, or the underlying investigation, to the Subscriber or any other person, for a period of one year from the date of this Warrant and Order, subject to extension upon application to the Court, if necessary.

SDNY_01_000008033
SUBJECT TO PROTECTIVE ORDER

### III. Additional Provisions

12. **Compensation for Costs.** The Investigating Agency shall compensate the Service Provider for reasonable expenses incurred in complying with the Warrant and this Order.

13. **Sealing.** This Warrant and Order, and the supporting Application and Agent Affidavit, shall be sealed until otherwise ordered by the Court, except that the Government may without further order of this Court: serve this Warrant and Order on the Service Provider; provide copies of the Warrant and Order or the supporting Application and Agent Affidavit as need be to personnel assisting the Government in the investigation and prosecution of this matter; and disclose these materials as necessary to comply with discovery and disclosure obligations in any prosecutions related to this matter.

Dated: New York, New York

06/06/2024               10:31 a.m.
_____        _____
Date Issued              Time Issued

_____
UNITED STATES MAGISTRATE JUDGE
Southern District of New York

SDNY_01_000008034
SUBJECT TO PROTECTIVE ORDER.

**24 MAG 2164**

# EXHIBIT A
# [24 MAG 1398]

SDNY_01_000008035
SUBJECT TO PROTECTIVE ORDER.