**TO: Clerk's Office**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

_____

**APPLICATION FOR LEAVE**
**TO FILE DOCUMENT UNDER SEAL**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
IN THE MATTER OF A SEARCH OF
PREMISES KNOWN AS (1) ████████
████████ STATEN ISLAND, NEW YORK
10306, AND (2) ████████████████
STATEN ISLAND, NEW YORK 10308,
AND ANY AND ALL CELLULAR

24-MC-2762
_____
Docket Number

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

SUBMITTED BY: Plaintiff_____ Defendant_____ DOJ ✓
Name: F. Turner Buford
Firm Name: U.S. Attorney's Office, E.D.N.Y.
Address:   271A Cadman Plaza East
              Brooklyn, NY  11201
Phone Number: (718) 254-6483
E-Mail Address: turner.buford@usdoj.gov

INDICATE UPON THE PUBLIC DOCKET SHEET: YES_____ NO ✓
**If yes, state description of document to be entered on docket sheet:**

_____

_____

_____

**A) If pursuant to a prior Court Order:**
Docket Number of Case in Which Entered:_____
Judge/Magistrate Judge:_____
Date Entered:_____

_____

**B) If a new application,** the statute, regulation, or other legal basis that
authorizes filing under seal

Ongoing criminal investigation.
_____

**ORDERED SEALED AND PLACED IN THE CLERK'S OFFICE,**
**AND MAY NOT BE UNSEALED UNLESS ORDERED BY**
**THE COURT.**

DATED: Brooklyn     July 12, 2024     , NEW YORK

_Joseph A. Marutollo_
_____
**U.S. MAGISTRATE JUDGE**

RECEIVED IN CLERK'S OFFICE_____
                                          DATE

**MANDATORY CERTIFICATION OF SERVICE:**
**A.)** _____ A copy of this application either has been or will be promptly served upon all parties to this action, **B.)** _____ Service is excused by 31 U.S.C. 3730(b), or by
the following other statute or regulation:_____; or **C.)** ✓ This is a criminal document submitted, and flight public safety, or security are significant concerns.
(Check one)

July 12, 2024
_____
DATE                                    SIGNATURE

SDNY_01_000008484
SUBJECT TO PROTECTIVE ORDER.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF A SEARCH OF PREMISES KNOWN AS (1) ███ ███ STATEN ISLAND, NEW YORK 10306, AND (2) ███ STATEN ISLAND, NEW YORK 10308, AND ANY AND ALL CELLULAR TELEPHONES CONTAINED THEREIN | **TO BE FILED UNDER SEAL**<br><br>**APPLICATION FOR A SEARCH WARRANT FOR A PREMISES AND ELECTRONIC DEVICES FOUND THEREIN**<br><br>Case No. 24-MC-2762 |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A WARRANT TO SEARCH AND SEIZE

I, ███████ being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.     I make this Affidavit in support of an application pursuant to Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the premises specified below and in Attachment A-1 ("SUBJECT PREMISES-1"), namely ███████ Staten Island, New York 10306, and to seize from SUBJECT PREMISES-1 the items and information described in Attachment B-1; and to search the premises specified below and in Attachment A-2 ("SUBJECT PREMISES-2," and together with SUBJECT PREMISES-1, the "SUBJECT PREMISES"), namely ███████ Staten Island, New York 10308, and to seize from SUBJECT PREMISES-2 the items and information described in Attachment B-2.

2.     I have been a Special Agent with the Federal Bureau of Investigation ("FBI") since 2019. I am currently assigned to a public corruption squad of the New York Field Office, where, among other things, I investigate crimes involving illegal campaign contributions, theft of federal funds, and bribery. Through my training and experience, I also have become familiar with some of the ways in which individuals use smart phones and electronic communications, including social

1

SDNY_01_000008485
SUBJECT TO PROTECTIVE ORDER.

media, email, and electronic messages, in furtherance of their crimes, and have participated in the execution of search warrants involving electronic evidence.

3.      This affidavit is based upon my personal knowledge; my review of documents and other evidence; my conversations with other law enforcement personnel; and my training, experience and advice received concerning the use of computers in criminal activity and the forensic analysis of electronically stored information ("ESI"). Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

## IDENTIFICATION OF THE SUBJECT PREMISES

4.      SUBJECT PREMISES-1 is a detached single-family home located at ███████ ████, Staten Island, New York 10306. SUBJECT PREMISES-1 is accessed by a door up a flight of stairs from the sidewalk, with the number ███ inscribed above the door. Images of SUBJECT PREMISES-1 and of the front door of SUBJECT PREMISES-1 are included below.



2

SUBJECT TO PROTECTIVE ORDER.



5.      SUBJECT PREMISES-2 is a semi-attached single-family home located at █

█ Staten Island, New York 10308. SUBJECT PREMISES-2 is accessed via a door

underneath a triangular overhang, with the number █ inscribed to the right of the door. An

image of the front of SUBJECT PREMISES-2 is included below.



3

SDNY_01_000008487
SUBJECT TO PROTECTIVE ORDER.

## THE SUBJECT OFFENSES

6.      For the reasons detailed below, I respectfully submit that there is probable cause to believe that the SUBJECT PREMISES contain evidence, fruits, and instrumentalities of violations of (i) 18 U.S.C. §§ 371 and 666 (theft of federal funds, federal program bribery, and conspiracy to commit both); (ii) 18 U.S.C. §§ 1343 and 1349 (wire fraud and attempt and conspiracy to commit wire fraud); (iii) 18 U.S.C. § 371 and 52 U.S.C. § 30121 (campaign contributions by foreign nationals and conspiracy to commit the same); and (iv) 18 U.S.C. §§ 371 and 1512(b) (witness tampering and conspiracy to commit the same) (collectively, the "SUBJECT OFFENSES"), committed by MOHAMED BAHI and ▮▮▮▮▮▮▮▮▮▮ among others.

## PROBABLE CAUSE

A.   Probable Cause Regarding the Subjects' Commission of the Subject Offenses

7.      Since in or about August 2021, the FBI and the Office of the United States Attorney for the Southern District of New York have been investigating the receipt of so-called "straw" donations by the 2021 and 2025 New York City mayoral campaigns of Eric Adams (the "2021 Adams Campaign," the "2025 Adams Campaign," and, collectively, the "Adams Campaigns"), including certain straw donations that were funded by and/or made at the direction of foreign government officials and other foreign persons.[1]

8.      This application seeks a warrant to search two premises: SUBJECT PREMISES-1, including electronic devices found therein, used by MOHAMED BAHI, and SUBJECT PREMISES-2, including electronic devices found therein, used by ▮▮▮▮▮▮▮▮▮▮ As discussed below, the investigation has developed evidence that BAHI and ▮▮▮▮▮▮▮

---

[1] A straw, or "conduit," donation occurs when a donation to a political campaign is made in the name of one donor, but the funds in question in fact belong to a different person.

4

SDNY_01_000008488
SUBJECT TO PROTECTIVE ORDER.

participated in the Adams Campaigns' solicitation and receipt of straw donations from ███████ ████████ a subject of this investigation who has connections to the Uzbek Government. The investigation has also developed evidence that when law enforcement recently executed a search on ████████ home, BAHI took steps to tamper with multiple witnesses to the Adams Campaigns' straw-donation practices, and ████████ appears to have received text messages from BAHI while BAHI was at a meeting relevant to that witness tampering.

*The Adams Campaign and New York City's Matching Funds Program*

9.      I understand, based on my review of publicly available information, that:

a.      The Adams Campaigns accepted Matching Funds from the New York City Campaign Finance Board throughout a significant part of its campaign, meaning that the Adams Campaigns received funds from the New York City government as a result of donations the Adams Campaigns received from private donors that were eligible for matching funds.[2]

b.      Under New York City law, the Adams Campaigns were eligible to receive $2,000 in matching funds, and no more than $2,000 in Matching Funds, for each donation of $250 from an individual donor who resides within New York City, subject to certain exceptions not relevant here. If an individual donated more than $250, any amount in excess of $250 would not be eligible for matching funds.[3]

c.      New York City receives in excess of $10,000 per year in federal funding.[4]

---

[2] *See, e.g.*, https://ny1.com/nyc/all-boroughs/news/2021/10/08/eric-adams-is-taking-a-rare-step--turning-down-campaign-cash (reporting on the Adams Campaign's prior acceptance of matching funds and decision to turn down some matching funds as of October 7, 2021); https://www.nyccfb.info/VSApps/CandidateSummary.aspx?as_cand_id=1545&as_election_cycle=2021&cand_name=Adams%2C+Eric+L&office=Mayor&report=summ (New York City Campaign Finance Board's report detailing total public funds disbursed to 2021 Adams Campaign).

[3] *See* https://www.nyccfb.info/candidate-services/join/.

[4] *See, e.g.*, https://comptroller.nyc.gov/wp-content /uploads/2016/11/Federal_Budget_

5

*Adams Receives Straw Donations and Travel Benefits*

10.    Based on my review of records from the New York City Campaign Finance Board, I know that on or about May 7, 2021, the 2021 Adams Campaign received approximately eleven donations from employees of ██████████████████ in amounts that ranged from approximately $1,200 to $1,500.[5] On or about April 28, 2021, ████ issued checks to the same individuals, with one exception, for approximately $1,250.[6]

11.    Based on my review of email messages with ████████ Turkey's Consul General in New York, I know that ████ was involved in arranging the fundraiser at which the ████ donations were made. For instance, on or about April 21, 2021, an owner of ████ Construction sent an email to four individuals stating, in substance and in part, that he had spoken with "Consul General Mr. ████ who was very happy and thought that mid-May would be an appropriate target date.

12.    Based on my review of Adams's financial records and travel records, among other evidence, I have learned that Adams and others associated with him traveled to Turkey on ████ ████ on trips that were provided at no cost or at reduced cost.

████████ *Coordination of Straw Donations to the Adams Campaigns*

13.    The investigation has also resulted in evidence that persons with connections to foreign governments other than the Turkish Government also made straw donations to the Adams

---

Vulnerabilities_Memo.pdf.

[5] Certain earlier affidavits in this investigation stated that ████ was affiliated with a larger Turkish corporation. Law enforcement has since interviewed several ████ employees who have stated, in substance and in part, that although ████ was started by personnel formerly employed by that larger Turkish corporation, the two entities have no formal connection.

[6] One check was issued to someone whom I know from law enforcement databases is the spouse of a donor.

6

SUBJECT TO PROTECTIVE ORDER.

Campaigns. On or about June 12, 2024, the Honorable Peggy Kuo, United States Magistrate Judge for the Eastern District of New York, issued a search warrant authorizing the search of a premises in Brooklyn, New York for evidence of, among other things, the Subject Offenses listed in items (i), (ii), and (iii) in paragraph 6 above (the "███████ Premises Warrant"). The ███████ Premises Warrant, and the Government's application for that warrant, are attached as Exhibit A, and are incorporated by reference herein.

14.    As described in greater detail in Exhibit A, the ███████ Premises Warrant authorized a search of the home of ███████ Evidence developed in the investigation indicates that ███████ is connected to the Government of Uzbekistan, has worked to influence Eric Adams on behalf of Uzbek and Central Asian causes, has received assistance from City officials, including Adams, relating to stop work orders placed by the New York City Department of Buildings ("DOB") on construction projects of ███████ and has coordinated straw donations to the Adams Campaigns.

15.    With respect to straw donations, as discussed in greater detail in Exhibit A, ███████ organized donations to the Adams Campaigns in or about December 2020 and June 2023, and appears to have reimbursed one or more donors in each instance.

16.    On or about June 13, 2024, the FBI executed the ███████ Premises Warrant. I participated in the search, as well as in an interview of ███████ that occurred shortly before execution of the warrant. In that interview, ███████ among other things and in substance, denied having reimbursed employees for donations to the Adams Campaigns, or having otherwise been involved in making straw donations to the Adams Campaigns.

17.    After the FBI executed the ███████ Premises Warrant, ███████ began proffering with the FBI and the United States Attorney's Office for the Southern District of New

7

SDNY_01_000008491
SUBJECT TO PROTECTIVE ORDER

York.[7] In a proffer, ███████ admitted, among other things and in substance, that in or about December 2020, he directed four of his employees to donate $2,000 each to the 2021 Adams Campaign, and reimbursed their donations, and in or about June 2023, he requested that multiple people donate $1,000 each to the 2025 Adams Campaign, and reimbursed one of the donors.

*BAHI and* ███████ *Involvement in* ███████ *Straw Donations*

18.    In a proffer with the Government, ███████ also explained how he came to organize an event at which straw donations were made in December 2020. ███████ stated, among other things and in substance, that he was encouraged to donate $10,000 to the 2021 Adams Campaign by BAHI and ███████ Over a series of conversations, ███████ initially offered to write a single $10,000 check, but BAHI and ███████ told ███████ that doing so would exceed the limits on individual donations, and encouraged ███████ to instead make straw donations to the campaign, by having his employees donate and reimbursing them. Based on BAHI and ███████ instructions, ███████ hosted a fundraiser for Adams at his office in or about December 2020, which Adams attended. In connection with that fundraiser, ███████ donated $2,000 himself, and had at least four of his employees each make $2,000 straw donations. As noted in the ███████ Premises Warrant, bank records and records from the New York Campaign Finance Board reflect that ███████ and four of his employees made donations of approximately $2,000 in or about December 2020, and that at least some of those donors made cash deposits in similar or approximately the same amount in approximately the same time. (*See* Ex. A ¶¶ 19-22).

---

[7] ███████ participated in proffers pursuant to a proffer agreement, in the hopes of obtaining leniency in connection with the Government's investigation into the Subject Offenses. And as described in Exhibit A, there is probable cause to believe that ███████ himself was involved in committing the subject offenses discussed in the Government's application for the ███████ Premises Warrant. As discussed herein, information ███████ has provided to the Government has in some instances been corroborated by other evidence gathered in the investigation.

8

SUBJECT TO PROTECTIVE ORDER.

19.     I know from publicly available information that BAHI and ████████ each work for Adams's mayoral administration. BAHI works as a Senior Liaison in Adams's Community Affairs Unit, and ████████ works as a Senior Advisor to Adams for South Asian and Muslim Affairs.

20.     I have reviewed records from an Apple iCloud account in ████████ name (the "████████ iCloud"), that were obtained pursuant to a search warrant. ████████ exchanged text messages with multiple cellphones that were saved in his contacts under variations of BAHI's name. Text messages between ████████ and BAHI recovered from the ████████ iCloud confirm BAHI's involvement in organizing ████████ December 2020 fundraiser. For instance, on or about November 19, 2020, BAHI texted ████████ "Dec 10th - Thursday 7pm - Your Office Private Fundraiser and Dinner for Eric Adams." And on or about December 10, 2020, BAHI texted ████████ among other things, "i think he is about 15 mins away," "he's outside," and "bringing him in." Based on my involvement in the investigation, I believe these messages reflect that BAHI was updating ████████ about Adams's whereabouts, before bringing Adams into the fundraiser at ████████ office.

21.     As discussed in Exhibit A, ████████ also organized donations in connection with a fundraising event hosted by the 2025 Adams Campaign in or about June 2023. Exhibit A discusses ████████ involvement in those donations, including the fact that ████████ himself donated at approximately the same time as ████████ and others, and that ████████ exchanged messages with ████████ a fundraiser for the Adams Campaigns, about the donations ████████ coordinated. In a proffer with the Government, ████████ confirmed that he asked multiple people to donate to the 2025 Adams Campaign in June 2023, including one person whom ████████ reimbursed for a $1,000 donation. As also discussed in Exhibit A, that same

9

SUBJECT TO PROTECTIVE ORDER.

individual received a Zelle transfer from ██████████ in approximately the same amount, approximately one week after the donation was made. (Ex. A ¶ 27).

*BAHI and* ███████████ *Discussions of DOB Issues with* ██████████

22.    As discussed in Exhibit A, ██████████ received assistance from Adams in connection with stop work orders placed on a "project in Brooklyn" by the DOB—Adams agreed to "look into" the issues after ██████████ raised them, and ██████████ subsequently thanked Adams for his "help" and pledged "continued support."

23.    Based on my review of the contents of the ██████████ iCloud, I know that ██████████ also discussed DOB stop work orders with BAHI and ██████████ and connected his desire for assistance to his fundraising for Adams. For instance:

a.    On or about July 25, 2022, ██████████ texted a contact saved in his phone as "██████ (██████████ first name), writing "I have bad news bank has stoped [sic] financing our project due to existing stop work orders on our job site. I'm in deep shiiiiit because of it. You guys couldn't protect me from DOB."

b.    On or about July 25, 2022, BAHI and ██████████ had the following exchange via text message, in substance and in part:

BAHI:    ██████ called me

BAHI:    is it true about the project???

██████    Salam

██████    2 stop work orders

██████    Neighbor complains every day

BAHI:    did bank stop fund????

BAHI:    ██████ told me

██████    Yes

SDNY_01_000008494
SUBJECT TO PROTECTIVE ORDER.

███████        I don't want to hear about politicians anymore

BAHI:          wow

███████        Please keep me away from all of them

███████        No more fund risings or bs promises lol

*BAHI's Witness Tampering*

24.     On or about June 26, 2024, I participated in a proffer with ██████ During the proffer, ████ stated, in substance and in part, the following:

a.      The day the FBI executed a search warrant at ██████ home, ████ went to his office and called BAHI. On the ensuing phone call, ████ told BAHI about the FBI's search, and BAHI—who indicated that he was at City Hall—responded by asking when they could meet. They set a meeting time that afternoon.

b.      That afternoon, BAHI arrived at ████ office, and questioned ████ about the FBI's search. ████ told BAHI, among other things, that ████ had denied to the FBI having participated in straw donations. ████ also told BAHI that employees of ████ had also been approached that day by the FBI, and that ████ employees had denied being reimbursed for their donations to the Adams Campaigns.

c.      BAHI then told ████ among other things, that he had met with Eric Adams at City Hall before coming to ████ office. BAHI indicated that his meeting with Adams was conducted in private, and that Adams and BAHI each left their cellphones outside of the room where they met. BAHI reported that Adams had been agitated in their meeting, and that Adams expressed displeasure that ████ had been searched. But BAHI reported that Adams said it was ok, because ████ was "tight." BAHI told ████ that he asked what Adams meant by "tight," and Adams responded that ████ was "strong."

11

SUBJECT TO PROTECTIVE ORDER.

d.    BAHI then told ██████ to stay strong, and to continue to claim that he had not reimbursed anyone for donations to the Adams Campaigns. BAHI told ██████ that if ██████ stuck to that story, everything would be fine. BAHI asked to see the search warrant and grand jury subpoena that had been left with ██████ after the search, and BAHI took a series of photographs of the search warrant and subpoena, which ██████ believed BAHI was sending to Adams.

e.    BAHI then had ██████ invite his employees, who had been approached by the FBI, into the office, so that BAHI could address them. When addressing ██████ employees, BAHI told the employees that they should stick to their story, and that because they were reimbursed in cash, the Government would be unable to prove that they had received reimbursements for their donations, so everything would be fine.

25.    Based on my review of records from cellphone service providers, including toll records for a cellphone used by MOHAMED BAHI, I know, among other things, the following:

a.    On the morning of June 13, 2024, after the FBI executed the ██████ Premises Warrant, BAHI received multiple calls from a phone number that I know, based on a proffer with ██████ was being used by ██████ that day.

b.    At approximately 11:00 a.m. on or about June 13, 2024, BAHI placed a call to ██████ The call lasted approximately 15 minutes.

c.    At approximately 11:24 a.m. on or about June 13, 2024, BAHI placed a call to a cellphone used by Eric Adams that lasted approximately two seconds. Based on my training and experience, I know that when toll records reflect phone calls of that short a duration, it often indicates that the call did not connect.

SDNY_01_000008496
SUBJECT TO PROTECTIVE ORDER.

d.    At approximately 11:38 a.m. on or about June 13, 2024, BAHI placed a call to a different cellphone used by Eric Adams. The call lasted approximately 41 seconds.

e.    At approximately 3:36 p.m. on or about June 13, 2024, BAHI sent a message to a cellphone used by ██████████████ Toll records for BAHI's phone indicate a "Call Type" of "RCS-httpFileTransfer." Based on my discussions with an FBI agent with specialized training in interpreting toll records, I understand that this record is consistent with BAHI's having sent ████████ a file that could be an image, video, or document.

B.    Probable Cause Justifying Search of the Subject Premises

26.    I know, based on my review of property records maintained by the New York City Department of Finance and the Richmond County Clerk's Office, that MOHAMED BAHI has owned SUBJECT PREMISES-1 since in or about 2021.

27.    Based on my discussions with another law enforcement officer who has access to New York City personnel records, I know that MOHAMED BAHI's New York City personnel file lists SUBJECT PREMISES-1 as his home address, and that ██████ ██████████ New York City personnel file lists SUBJECT PREMISES-2 as his home address.

28.    Based on my review of records from the New York Department of Motor Vehicles, maintained in a public-records database used by law enforcement, I know that BAHI's New York State driver's license lists the address of SUBJECT PREMISES-1 as his home address, and that ██████████ New York State driver's license lists the address of SUBJECT PREMISES-2 as his home address.

29.    Based on my training and experience, persons generally keep their cellphones accessible, meaning that if a person is at home, their cellphones are likely to be in their residence. I am aware, including based on the communications described above, that BAHI and ██████ used electronic communications in furtherance of the SUBJECT OFFENSES. Based on my

13

SUBJECT TO PROTECTIVE ORDER.

training and experience, electronic communications, including emails and text messages, are frequently stored on persons' cellphones. In addition, based on my training and experience and my involvement in this investigation, I know that persons often receive financial records, including bank and credit card statements that may reflect the provision or receipt of pecuniary benefits, by mail to their residence.

C.   Probable Cause Justifying Search of ESI

30.   For the reasons set forth above, there is probable cause to believe that cellphones used by BAHI and █████████ will contain evidence of the SUBJECT OFFENSES. In addition to the evidence discussed above that BAHI and █████████ have used such devices to communicate about the SUBJECT OFFENSES, there is probable cause to believe that cellphones used by BAHI and █████████ will contain evidence of the SUBJECT OFFENSES for these additional reasons:

a.   Cellphones can be used store documents, including emails, text messages, electronic chats, and financial documents like bank statements and travel records. They can also be used to download, store, create, and edit documents in word processing programs. Document attachments to communications can be saved intentionally or as a result of a cellphone's operating system or web browser to an electronic device, including a cellphone.  Moreover, and more generally, users of cellphones who are engaged in the commission of the SUBJECT OFFENSES often store documents relevant to that activity on their devices, and also maintain notes of meetings and telephone calls on their devices.  Such documents can include, but are not limited to, Microsoft Word and PDF documents, drafts, scans, bank statements received from financial institutions, and government filings.

b.   Cellphones can contain photographs and videos of meetings, and documents, audio recordings of telephone calls and meetings, and screenshots of text messages.

14

SUBJECT TO PROTECTIVE ORDER.

c.      Electronic files, or remnants of those files, downloaded to a cellphone, can be stored for years at little or no cost.  Even when such files have been deleted, they can be recovered months or years later using readily available forensics tools.  When a person "deletes" a file on a cellphone, the data contained in the file does not actually disappear; rather, that data remains on the storage medium and within the device unless and until it is overwritten by new data.  Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space– that is, in space on the device that is not allocated to an active file or that is unused after a file has been allocated to a set block of storage space–for long periods of time before they are overwritten.  In addition, a device's operating system may also keep a record of deleted data in a "swap" or "recovery" file.  Similarly, files that have been viewed via the Internet are automatically downloaded into a temporary Internet directory or "cache."  The browser typically maintains a fixed amount of electronic storage medium space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages.  Thus, the ability to retrieve "residue" of an electronic file from a cellphone depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity, and cellphone habits.

d.      Additionally, a person can transfer data from an old cellphone, tablet, or computer to a new device, including, for example, mail, contacts, calendars, photos and videos, books and pdfs, call logs, and text messages.  For individuals who regularly change or upgrade their devices, including cellphones, it is common to transfer electronic records, such as emails, contacts, calendars, photos and videos, books and pdfs, call logs, and text messages from the old phone to a new phone.  Individuals can transfer data in a few ways, including in a cellphone provider or Apple store, through a personal computer containing a backup, or through an iCloud

15

SUBJECT TO PROTECTIVE ORDER.

backup.  Accordingly, data found on one electronic device is often found on other devices used by the same person.

      e.     As discussed in Exhibit A, certain subjects of this investigation, including Adams and ▮▮▮▮ are known to use encrypted messaging applications, including Signal, to send messages.  Such messages can sometimes be recovered from physical electronic devices even where they cannot be recovered from an iCloud backup.

      f.     Accordingly, there is probable cause to believe that evidence, fruits, and instrumentalities of the SUBJECT OFFENSES listed in Attachments B-1 and B-2, which are incorporated by reference herein, will be found in SUBJECT PREMISES-1 and SUBJECT PREMISES-2, respectively, and on cellphones found in the respective SUBJECT PREMISES.

      31.     Based on the foregoing, I respectfully submit there is probable cause to believe that MOHAMED BAHI and ▮▮▮▮▮ have committed the SUBJECT OFFENSES, and that evidence of this criminal activity is likely to be found in the SUBJECT PREMISES and on cellphones found in the SUBJECT PREMISES.

**PROCEDURES FOR SEARCHING ESI**

      32.     Federal Rule of Criminal Procedure 41(e)(2)(B) provides that a warrant to search for and seize property "may authorize the seizure of electronic storage media or the seizure or copying of electronically stored information . . . for later review."  Consistent with Rule 41, this application requests authorization to seize any cellphones and transport them to an appropriate law enforcement facility for review. This is typically necessary for a number of reasons:

- First, the volume of data on electronic devices is often impractical for law enforcement personnel to review in its entirety at the search location.

- Second, because electronic data is particularly vulnerable to inadvertent or intentional modification or destruction, electronic devices are ideally examined in a controlled environment, such as a law enforcement laboratory, where trained personnel, using

16

SUBJECT TO PROTECTIVE ORDER.

specialized software, can make a forensic copy of the device that can be subsequently reviewed in a manner that does not change the underlying data.

- Third, there are so many types of computer hardware and software in use today that it can be impossible to bring to the search site all of the necessary technical manuals and specialized personnel and equipment potentially required to safely access the underlying data.

- Fourth, many factors can complicate and prolong recovery of data from an electronic device, including the increasingly common use of passwords, encryption, or other features or configurations designed to protect or conceal data on the device, which often take considerable time and resources for forensic personnel to detect and resolve.

### AUTHORITY TO OBTAIN BIOMETRIC DATA

33.     I know from my training and experience, as well as from information found in publicly available materials, that Apple iPhones offer their users the ability to unlock the device via biometric features (e.g., fingerprint, facial recognition) in lieu of a numeric or alphanumeric passcode or password. Apple's fingerprint recognition feature is called Touch ID, and its facial recognition feature is called Face ID.

34.     If a user enables Touch ID on a given device, he or she can register up to 5 fingerprints that can be used to unlock that device. The user can then use any of the registered fingerprints to unlock the device by pressing the relevant finger(s) to the device's Touch ID sensor, which is found in the round button (often referred to as the "home" button) found at the bottom center of the front of the device.

35.     If a user enables Face ID on a given device, he or she can unlock the device by raising the iPhone to his or her face.

36.     In my training and experience, users of devices that offer Touch ID or Face ID often enable it because it is considered to be a more convenient way to unlock the device than by entering a numeric or alphanumeric passcode or password, as well as a more secure way to protect the device's contents.

17

SDNY_01_000008501
SUBJECT TO PROTECTIVE ORDER.

37.     In some circumstances, Touch ID or Face ID cannot be used to unlock a device that has either security feature enabled, and a passcode or password must be used instead.  These circumstances include: (1) when the device has just been turned on or restarted; (2) when more than 48 hours has passed since the last time the device was unlocked; (3) when the passcode or password has not been entered in the last 6 days, and the device has not been unlocked via Touch ID in the last 8 hours or the device has not been unlocked via Face ID in the last 4 hours; (4) the device has received a remote lock command; or (5) five unsuccessful attempts to unlock the device via Touch ID or Face ID are made.

38.     The passcodes or passwords that would unlock electronic devices subject to seizure pursuant to the requested warrant are unknown to law enforcement. Thus, it will likely be necessary to press BAHI'S and ▮▮▮▮▮▮▮ fingers to any Touch ID sensors, or to hold those devices in front of BAHI's and ▮▮▮▮▮▮▮ faces to activate the Face ID sensors, in an attempt to unlock those devices for the purpose of executing the search authorized by this warrant. Attempting to unlock the relevant devices via Touch ID with the use of the fingerprint of the user, or via Face ID by holding the device in front of the user's face, is necessary because the government may not otherwise be able to access the data contained on those devices for the purpose of executing the search authorized by this warrant.

39.     Although I do not know which of a given user's 10 fingerprints are capable of unlocking a particular device, based on my training and experience I know that it is common for a user to unlock a Touch ID-enabled device via the fingerprints on thumbs or index fingers. In the event that law enforcement is unable to unlock any electronic devices as described above within the five attempts permitted by Touch ID, this will simply result in the device requiring the entry of a password or passcode before it can be unlocked.

18

SUBJECT TO PROTECTIVE ORDER.

40.     I also know from my training and experience, and my review of publicly available materials that Apple brand devices have a feature that allows a user to erase the contents of the device remotely.  By logging into the Internet, the user or any other individual who possesses the user's account information can take steps to completely wipe the contents of the device, thereby destroying evidence of criminal conduct, along with any other information on the device. The only means to prevent this action is to disable the device's ability to connect to the Internet immediately upon seizure, which requires either access to the device itself to alter the settings, or the use of specialized equipment that is not consistently available to law enforcement agents.

41.     Due to the foregoing, I request that the Court authorize law enforcement to press BAHI's and ███████ fingers (including thumbs) to the Touch ID of any seized devices, or to hold those devices in front of BAHI's and ███████ faces (and, if necessary, to hold BAHI and ███████ in place while holding the electronic devices in front of their faces), for the purpose of attempting to unlock the devices via Touch ID or Face ID in order to search the contents as authorized by this warrant.

## REVIEW OF ESI

42.     Following seizure of any electronic devices and/or the creation of forensic image copies, law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) will review the ESI contained therein for information responsive to the warrant.

## REQUEST FOR SEALING OF APPLICATION/AFFIDAVIT

43.     The full scope of this ongoing criminal investigation is not publicly known. Although the execution of the requested warrant will reveal to BAHI and ███████ the general existence of an investigation into the SUBJECT OFFENSES, it will not reveal its full scope,

19

SDNY_01_000008503
SUBJECT TO PROTECTIVE ORDER.

including the witnesses and evidence discussed in this affidavit. Premature public disclosure of this affidavit could cause BAHI, ████████ and their associates and co-conspirators to destroy evidence not yet gathered by law enforcement, much of which likely exists in electronic or paper forms that can be readily destroyed. That is especially concerning given that BAHI has already taken steps to obstruct the investigation, as described above, and that BAHI's toll records indicate ████████ may also have been involved in those efforts. In addition, disclosure of this affidavit could cause the subjects of this investigation to believe that their arrest is imminent, triggering their flight, which would be concerning given that, as discussed above, some of the subjects of the investigation have significant ties abroad. For these reasons, I respectfully request that this Affidavit and all papers submitted herewith be maintained under seal until the Court orders otherwise, except that the Government be permitted without further order of this Court to provide copies of the warrant and affidavit as needed to personnel assisting in the investigation and prosecution of this matter, and to disclose those materials as necessary to comply with discovery and disclosure obligations in any prosecutions related to this matter.

SDNY_01_000008504
SUBJECT TO PROTECTIVE ORDER.

## CONCLUSION

44.    Based on the foregoing, I respectfully request the court to issue (1) a warrant to search SUBJECT PREMISES-1, described in Attachment A-1, and to seize the items and information specified in Attachment B-1 to this Affidavit and to the Search and Seizure Warrant; and (2) a warrant to search SUBJECT PREMISES-2, described in Attachment A-2, and to seize the items and information specified in Attachment B-2 to this Affidavit and to the Search and Seizure Warrant.

Respectfully submitted,

Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me by telephone on July 12, 2024

*Joseph A. Marutollo*

HON. JOSEPH A. MARUTOLLO
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

21

SDNY_01_000008505
SUBJECT TO PROTECTIVE ORDER.

**ATTACHMENT A-1**

**Premises to be Searched—Subject Premises**

The premises to be searched (the "SUBJECT PREMISES") is described as follows, and include all locked and closed containers found therein:

The SUBJECT PREMISES is a detached single-family home located at ███████, Staten Island, New York 10306.  The SUBJECT PREMISES is accessed by a door up a flight of stairs from the sidewalk, with the number ██ inscribed above the door.  Images of the SUBJECT PREMISES and of the front door of the SUBJECT PREMISES are included below.



SUBJECT TO PROTECTIVE ORDER.



2

SDNY_01_000008507
SUBJECT TO PROTECTIVE ORDER.

**ATTACHMENT B-1**

**Items to Be Seized**

A.  <u>Evidence, Fruits, and Instrumentalities of the Subject Offenses</u>

The items to be seized from the SUBJECT PREMISES consist of the following evidence, fruits, and instrumentalities of violations (i) 18 U.S.C. §§ 371 and 666 (theft of federal funds, federal program bribery, and conspiracy to commit both); (ii) 18 U.S.C. §§ 1343 and 1349 (wire fraud and attempt and conspiracy to commit wire fraud); (iii) 18 U.S.C. § 371 and 52 U.S.C. § 30121 (campaign contributions by foreign nationals and conspiracy to commit the same); and (iv) 18 U.S.C. §§ 371 and 1512(b) (witness tampering and conspiracy to commit the same) (collectively, the "SUBJECT OFFENSES"), described as follows:

1.      Evidence concerning occupancy or ownership of the SUBJECT PREMISES, including without limitation, utility and telephone bills, mail envelopes, addressed correspondence, diaries, statements, identification documents, address books, telephone directories, and keys.

2.      Cellphones owned or used by MOHAMED BAHI (hereinafter, the "Seized Devices").

3.      Evidence regarding the identity of the owner or user of the Seized Devices at times relevant to the Subject Offenses.

The Seized Devices may be searched for the following evidence, fruits, and instrumentalities of the Subject Offenses:

A.      Evidence of knowledge or understanding of, or intent to violate, laws and regulations governing the conduct of the 2021 and 2025 mayoral campaigns of Eric Adams (the "Adams Campaigns") on the part of MOHAMED BAHI, or on the part of any other person who is or was associated with or employed by the Adams Campaigns.

B.      Evidence relating to BAHI's involvement in fundraising for the Adams Campaigns.

C.      Evidence relating to efforts by BAHI or by any person who is or was associated with or employed by the Adams Campaigns to provide benefits, whether lawfully or unlawfully, to any donor or potential donor to the Adams Campaigns in exchange for campaign contributions.

D.      Evidence relating to payments to any potential or actual donor to the Adams Campaigns to facilitate their making campaign contributions to the Adams Campaigns.

E.      Evidence of individuals or entities who donated to the Adams Campaigns before or after receiving transfers of funds similar to the amount of the donation.

F.      Evidence regarding any persons or entities involved, wittingly or unwittingly, in donations to the Adams Campaign in which the named donor is not the true source of the donated funds ("straw donations").

SUBJECT TO PROTECTIVE ORDER.

G.    Evidence regarding any requests by the Adams Campaigns for matching funds based on straw donations, including any discussions of matching funds.

H.    Evidence of fundraising for the Adams Campaigns involving any foreign nationals or officials.

I.    Evidence of the exchange of benefits or favors between foreign nationals or officials, on the one hand, and any person who is or was associated with or employed by the Adams Campaigns, on the other hand.

J.    Evidence relating to any efforts to influence testimony in any investigation relating to the Adams Campaigns, to destroy or conceal evidence, or to otherwise respond to, interfere with, or obstruct any investigation relating to the Adams Campaigns.

K.    Passwords or other information needed to access the user's online accounts, including encrypted data stored in the Seized Devices.

L.    Evidence sufficient to establish the owners and users of the Seized Devices at times relevant to the SUBJECT OFFENSES.

M.    Evidence of the geographic location of users or devices involved in the commission of the SUBJECT OFFENSES at times relevant to the SUBJECT OFFENSES.

B.    Search and Seizure of Electronically Stored Information

The items to be seized from the SUBJECT PREMISES also include any cellphones that may contain any electronically stored information falling within the categories set forth in Section A of this Attachment above. In lieu of seizing any such devices, this warrant also authorizes the copying of such devices or media for later review.

Included within the items to be seized from the SUBJECT PREMISES are:

1.    Any items or records needed to access the data stored on any seized or copied electronic devices, including but not limited to any physical keys, encryption devices, or records of login credentials, passwords, private encryption keys, or similar information.

2.    Any items or records that may facilitate a forensic examination of the electronic devices, including any hardware or software manuals or other information concerning the configuration of the seized or copied computer devices or storage media.

3.    Any evidence concerning the identities or locations of those persons with access to, control over, or ownership of the seized or copied electronic devices.

C.    Accessing ESI

During execution of the search of the SUBJECT PREMISES authorized herein, law enforcement personnel are authorized to (1) press or swipe the fingers (including thumbs) of MOHAMED BAHI to any device found at the premises reasonably believed by law enforcement

SDNY_01_000008509
SUBJECT TO PROTECTIVE ORDER.

to be used by BAHI; (2) hold any such device in front of BAHI's face and activate the facial recognition feature, for the purpose of attempting to unlock the device in order to search the contents as authorized by this warrant.

D.  Review of ESI

Following seizure of any electronic devices and/or the creation of forensic image copies, law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the ESI contained therein for information responsive to the warrant.

3

SDNY_01_000008510
SUBJECT TO PROTECTIVE ORDER.

**ATTACHMENT A-2**

**Premises to be Searched—Subject Premises**

The premises to be searched (the "SUBJECT PREMISES") are described as follows, and include all locked and closed containers found therein:

The SUBJECT PREMISES is a semi-attached single-family home located at ███████

███████ Staten Island, New York 10308. The SUBJECT PREMISES is accessed via a door

underneath a triangular overhang, with the number ████ inscribed to the right of the door.

An image of the front of the SUBJECT PREMISES is included below.



SDNY_01_000008511
SUBJECT TO PROTECTIVE ORDER.

**ATTACHMENT B–2**

**Items to Be Seized**

A.  <u>Evidence, Fruits, and Instrumentalities of the Subject Offenses</u>

The items to be seized from the SUBJECT PREMISES consist of the following evidence, fruits, and instrumentalities of violations (i) 18 U.S.C. §§ 371 and 666 (theft of federal funds, federal program bribery, and conspiracy to commit both); (ii) 18 U.S.C. §§ 1343 and 1349 (wire fraud and attempt and conspiracy to commit wire fraud); (iii) 18 U.S.C. § 371 and 52 U.S.C. § 30121 (campaign contributions by foreign nationals and conspiracy to commit the same); and (iv) 18 U.S.C. §§ 371 and 1512(b) (witness tampering and conspiracy to commit the same) (collectively, the "SUBJECT OFFENSES"), described as follows:

1.      Evidence concerning occupancy or ownership of the SUBJECT PREMISES, including without limitation, utility and telephone bills, mail envelopes, addressed correspondence, diaries, statements, identification documents, address books, telephone directories, and keys.

2.      Cellphones owned or used by ▮▮▮▮▮▮▮▮ (hereinafter, the "Seized Devices").

3.      Evidence regarding the identity of the owner or user of the Seized Devices at times relevant to the Subject Offenses.

The Seized Devices may be searched for the following evidence, fruits, and instrumentalities of the Subject Offenses:

A.      Evidence of knowledge or understanding of, or intent to violate, laws and regulations governing the conduct of the 2021 and 2025 mayoral campaigns of Eric Adams (the "Adams Campaigns") on the part of ▮▮▮▮▮▮ or on the part of any other person who is or was associated with or employed by the Adams Campaigns.

B.      Evidence relating to ▮▮▮▮▮ involvement in fundraising for the Adams Campaigns.

C.      Evidence relating to efforts by ▮▮▮▮▮ or by any person who is or was associated with or employed by the Adams Campaigns to provide benefits, whether lawfully or unlawfully, to any donor or potential donor to the Adams Campaigns in exchange for campaign contributions.

D.      Evidence relating to payments to any potential or actual donor to the Adams Campaigns to facilitate their making campaign contributions to the Adams Campaigns.

E.      Evidence of individuals or entities who donated to the Adams Campaigns before or after receiving transfers of funds similar to the amount of the donation.

SUBJECT TO PROTECTIVE ORDER.

      F.      Evidence regarding any persons or entities involved, wittingly or unwittingly, in donations to the Adams Campaign in which the named donor is not the true source of the donated funds ("straw donations").

      G.      Evidence regarding any requests by the Adams Campaigns for matching funds based on straw donations, including any discussions of matching funds.

      H.      Evidence of fundraising for the Adams Campaigns involving any foreign nationals or officials.

      I.      Evidence of the exchange of benefits or favors between foreign nationals or officials, on the one hand, and any person who is or was associated with or employed by the Adams Campaigns, on the other hand.

      J.      Evidence relating to any efforts to influence testimony in any investigation relating to the Adams Campaigns, to destroy or conceal evidence, or to otherwise respond to, interfere with, or obstruct any investigation relating to the Adams Campaigns.

      K.      Passwords or other information needed to access the user's online accounts, including encrypted data stored in the Seized Devices.

      L.      Evidence sufficient to establish the owners and users of the Seized Devices at times relevant to the SUBJECT OFFENSES.

      M.      Evidence of the geographic location of users or devices involved in the commission of the SUBJECT OFFENSES at times relevant to the SUBJECT OFFENSES.

    B.   <u>Search and Seizure of Electronically Stored Information</u>

      The items to be seized from the SUBJECT PREMISES also include any cellphones that may contain any electronically stored information falling within the categories set forth in Section A of this Attachment above. In lieu of seizing any such devices, this warrant also authorizes the copying of such devices or media for later review.

      Included within the items to be seized from the SUBJECT PREMISES are:

      1.      Any items or records needed to access the data stored on any seized or copied electronic devices, including but not limited to any physical keys, encryption devices, or records of login credentials, passwords, private encryption keys, or similar information.

      2.      Any items or records that may facilitate a forensic examination of the electronic devices, including any hardware or software manuals or other information concerning the configuration of the seized or copied computer devices or storage media.

      3.      Any evidence concerning the identities or locations of those persons with access to, control over, or ownership of the seized or copied electronic devices.

SDNY_01_000008513
SUBJECT TO PROTECTIVE ORDER.

C.  Accessing ESI

During execution of the search of the SUBJECT PREMISES authorized herein, law enforcement personnel are authorized to (1) press or swipe the fingers (including thumbs) of ████████████████ to any device found at the premises reasonably believed by law enforcement to be used by ██████████ (2) hold any such device in front of ████████ face and activate the facial recognition feature, for the purpose of attempting to unlock the device in order to search the contents as authorized by this warrant.

D.  Review of ESI

Following seizure of any electronic devices and/or the creation of forensic image copies, law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the ESI contained therein for information responsive to the warrant.

3

SUBJECT TO PROTECTIVE ORDER.

# Exhibit A
## [24 MC 2339]

SDNY_01_000008515
SUBJECT TO PROTECTIVE ORDER.

AO 93C  (08/18) SDNY Rev.  Warrant by Telephone or Other Reliable Electronic Means

☐ Original          ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Eastern District of New York

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Premises Known as ███████ Staten Island,<br>New York 10306 and Any and All Cellular Telephones<br>Contained Therein | )<br>)<br>)<br>)  Case No.  24-MC-2762<br>)<br>)<br>) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ Eastern _____ District of _____ New York _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A-1.

The search and seizure are related to violation(s) of *(insert statutory citations):*

(i) 18 U.S.C. §§ 371 and 666 (theft of federal funds, federal program bribery, and conspiracy to commit both); (ii) 18 U.S.C. §§ 1343 and 1349 (wire fraud and attempt and conspiracy to commit wire fraud); (iii) 18 U.S.C. § 371 and 52 U.S.C. § 30121 (campaign contributions by foreign nationals and conspiracy to commit the same); and (iv) 18 U.S.C. §§ 371 and 1512(b) (witness tampering and conspiracy to commit the same)

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B-1.

**YOU ARE COMMANDED** to execute this warrant on or before _____ July 26, 2024 _____ *(not to exceed 14 days)*

☑ in the daytime 6:00 a.m. to 10:00 p.m.   ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ the Duty Magistrate Judge _____ .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for _____ days *(not to exceed 30)*  ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:     July 12, 2024 at _____

*Joseph A. Marutollo*
*Judge's signature*

City and state:     Brooklyn, New York _____

Hon. Joseph A. Marutollo, U.S.M.J.
*Printed name and title*

SDNY_01_000008576
SUBJECT TO PROTECTIVE ORDER.

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br> 24-MC-2762 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

| **Certification** |
|---|

         I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____

                                                   _____
                                                              *Executing officer's signature*

                                                   _____
                                                              *Printed name and title*

SDNY_01_000008577
SUBJECT TO PROTECTIVE ORDER.

**ATTACHMENT A-1**

**Premises to be Searched—Subject Premises**

The premises to be searched (the "SUBJECT PREMISES") is described as follows, and include all locked and closed containers found therein:

The SUBJECT PREMISES is a detached single-family home located at ███████████ Staten Island, New York 10306.  The SUBJECT PREMISES is accessed by a door up a flight of stairs from the sidewalk, with the number '██ inscribed above the door.  Images of the SUBJECT PREMISES and of the front door of the SUBJECT PREMISES are included below.



SDNY_01_000008578
SUBJECT TO PROTECTIVE ORDER.



2

SDNY_01_000008579
SUBJECT TO PROTECTIVE ORDER.

**ATTACHMENT B-1**

**Items to Be Seized**

A.  <u>Evidence, Fruits, and Instrumentalities of the Subject Offenses</u>

The items to be seized from the SUBJECT PREMISES consist of the following evidence, fruits, and instrumentalities of violations (i) 18 U.S.C. §§ 371 and 666 (theft of federal funds, federal program bribery, and conspiracy to commit both); (ii) 18 U.S.C. §§ 1343 and 1349 (wire fraud and attempt and conspiracy to commit wire fraud); (iii) 18 U.S.C. § 371 and 52 U.S.C. § 30121 (campaign contributions by foreign nationals and conspiracy to commit the same); and (iv) 18 U.S.C. §§ 371 and 1512(b) (witness tampering and conspiracy to commit the same) (collectively, the "SUBJECT OFFENSES"), described as follows:

1.      Evidence concerning occupancy or ownership of the SUBJECT PREMISES, including without limitation, utility and telephone bills, mail envelopes, addressed correspondence, diaries, statements, identification documents, address books, telephone directories, and keys.

2.      Cellphones owned or used by MOHAMED BAHI (hereinafter, the "Seized Devices").

3.      Evidence regarding the identity of the owner or user of the Seized Devices at times relevant to the Subject Offenses.

The Seized Devices may be searched for the following evidence, fruits, and instrumentalities of the Subject Offenses:

A.      Evidence of knowledge or understanding of, or intent to violate, laws and regulations governing the conduct of the 2021 and 2025 mayoral campaigns of Eric Adams (the "Adams Campaigns") on the part of MOHAMED BAHI, or on the part of any other person who is or was associated with or employed by the Adams Campaigns.

B.      Evidence relating to BAHI's involvement in fundraising for the Adams Campaigns.

C.      Evidence relating to efforts by BAHI or by any person who is or was associated with or employed by the Adams Campaigns to provide benefits, whether lawfully or unlawfully, to any donor or potential donor to the Adams Campaigns in exchange for campaign contributions.

D.      Evidence relating to payments to any potential or actual donor to the Adams Campaigns to facilitate their making campaign contributions to the Adams Campaigns.

E.      Evidence of individuals or entities who donated to the Adams Campaigns before or after receiving transfers of funds similar to the amount of the donation.

F.      Evidence regarding any persons or entities involved, wittingly or unwittingly, in donations to the Adams Campaign in which the named donor is not the true source of the donated funds ("straw donations").

SDNY_01_000008580
SUBJECT TO PROTECTIVE ORDER.

G.      Evidence regarding any requests by the Adams Campaigns for matching funds based on straw donations, including any discussions of matching funds.

H.      Evidence of fundraising for the Adams Campaigns involving any foreign nationals or officials.

I.      Evidence of the exchange of benefits or favors between foreign nationals or officials, on the one hand, and any person who is or was associated with or employed by the Adams Campaigns, on the other hand.

J.      Evidence relating to any efforts to influence testimony in any investigation relating to the Adams Campaigns, to destroy or conceal evidence, or to otherwise respond to, interfere with, or obstruct any investigation relating to the Adams Campaigns.

K.      Passwords or other information needed to access the user's online accounts, including encrypted data stored in the Seized Devices.

L.      Evidence sufficient to establish the owners and users of the Seized Devices at times relevant to the SUBJECT OFFENSES.

M.      Evidence of the geographic location of users or devices involved in the commission of the SUBJECT OFFENSES at times relevant to the SUBJECT OFFENSES.

B.   Search and Seizure of Electronically Stored Information

The items to be seized from the SUBJECT PREMISES also include any cellphones that may contain any electronically stored information falling within the categories set forth in Section A of this Attachment above. In lieu of seizing any such devices, this warrant also authorizes the copying of such devices or media for later review.

Included within the items to be seized from the SUBJECT PREMISES are:

1.      Any items or records needed to access the data stored on any seized or copied electronic devices, including but not limited to any physical keys, encryption devices, or records of login credentials, passwords, private encryption keys, or similar information.

2.      Any items or records that may facilitate a forensic examination of the electronic devices, including any hardware or software manuals or other information concerning the configuration of the seized or copied computer devices or storage media.

3.      Any evidence concerning the identities or locations of those persons with access to, control over, or ownership of the seized or copied electronic devices.

C.   Accessing ESI

During execution of the search of the SUBJECT PREMISES authorized herein, law enforcement personnel are authorized to (1) press or swipe the fingers (including thumbs) of MOHAMED BAHI to any device found at the premises reasonably believed by law enforcement

2

SDNY_01_000008581
SUBJECT TO PROTECTIVE ORDER.

to be used by BAHI; (2) hold any such device in front of BAHI's face and activate the facial recognition feature, for the purpose of attempting to unlock the device in order to search the contents as authorized by this warrant.

D.  Review of ESI

Following seizure of any electronic devices and/or the creation of forensic image copies, law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the ESI contained therein for information responsive to the warrant.

3

SDNY_01_000008582
SUBJECT TO PROTECTIVE ORDER.

AO 93C  (08/18) SDNY Rev.  Warrant by Telephone or Other Reliable Electronic Means          ☐ Original          ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
for the
Eastern District of New York

|  |  |  |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched* | ) | |
| *or identify the person by name and address)* | ) | Case No.  24-MC-2762 |
| Premises Known as ▮▮▮▮▮▮▮▮ Staten Island, | ) | |
| New York 10308 and Any and All Cellular Telephones | ) | |
| Contained Therein | ) | |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ Eastern _____ District of _____ New York _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A-2.


The search and seizure are related to violation(s) of *(insert statutory citations)*:

(i) 18 U.S.C. §§ 371 and 666 (theft of federal funds, federal program bribery, and conspiracy to commit both); (ii) 18 U.S.C. §§ 1343 and 1349 (wire fraud and attempt and conspiracy to commit wire fraud); (iii) 18 U.S.C. § 371 and 52 U.S.C. § 30121 (campaign contributions by foreign nationals and conspiracy to commit the same); and (iv) 18 U.S.C. §§ 371 and 1512(b) (witness tampering and conspiracy to commit the same)

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B-2.


**YOU ARE COMMANDED** to execute this warrant on or before _____ July 26, 2024 _____ *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.   ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ the Duty Magistrate Judge _____ .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:    July 12, 2024  **at 1:00 p.m.**          *Joseph A. Marutollo*
                                                                                        *Judge's signature*

City and state:      Brooklyn, New York          Hon. Joseph A. Marutollo, U.S.M.J.
                                                                          *Printed name and title*

SDNY_01_000008583
SUBJECT TO PROTECTIVE ORDER.

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| Return | | |
|---|---|---|
| Case No.:<br> 24-MC-2762 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

SDNY_01_000008584
SUBJECT TO PROTECTIVE ORDER.

**ATTACHMENT A-2**

**Premises to be Searched—Subject Premises**

The premises to be searched (the "SUBJECT PREMISES") are described as follows, and include all locked and closed containers found therein:

The SUBJECT PREMISES is a semi-attached single-family home located at ███████

███████ Staten Island, New York 10308. The SUBJECT PREMISES is accessed via a door

underneath a triangular overhang, with the number "██" inscribed to the right of the door.

An image of the front of the SUBJECT PREMISES is included below.



SDNY_01_000008585
SUBJECT TO PROTECTIVE ORDER.

**ATTACHMENT B–2**

**Items to Be Seized**

A.  <u>Evidence, Fruits, and Instrumentalities of the Subject Offenses</u>

The items to be seized from the SUBJECT PREMISES consist of the following evidence, fruits, and instrumentalities of violations (i) 18 U.S.C. §§ 371 and 666 (theft of federal funds, federal program bribery, and conspiracy to commit both); (ii) 18 U.S.C. §§ 1343 and 1349 (wire fraud and attempt and conspiracy to commit wire fraud); (iii) 18 U.S.C. § 371 and 52 U.S.C. § 30121 (campaign contributions by foreign nationals and conspiracy to commit the same); and (iv) 18 U.S.C. §§ 371 and 1512(b) (witness tampering and conspiracy to commit the same) (collectively, the "SUBJECT OFFENSES"), described as follows:

1.    Evidence concerning occupancy or ownership of the SUBJECT PREMISES, including without limitation, utility and telephone bills, mail envelopes, addressed correspondence, diaries, statements, identification documents, address books, telephone directories, and keys.

2.    Cellphones owned or used by ▮▮▮▮▮▮▮▮▮▮ (hereinafter, the "Seized Devices").

3.    Evidence regarding the identity of the owner or user of the Seized Devices at times relevant to the Subject Offenses.

The Seized Devices may be searched for the following evidence, fruits, and instrumentalities of the Subject Offenses:

A.    Evidence of knowledge or understanding of, or intent to violate, laws and regulations governing the conduct of the 2021 and 2025 mayoral campaigns of Eric Adams (the "Adams Campaigns") on the part of ▮▮▮▮▮▮▮▮▮ or on the part of any other person who is or was associated with or employed by the Adams Campaigns.

B.    Evidence relating to ▮▮▮▮▮▮ involvement in fundraising for the Adams Campaigns.

C.    Evidence relating to efforts by ▮▮▮▮▮▮ or by any person who is or was associated with or employed by the Adams Campaigns to provide benefits, whether lawfully or unlawfully, to any donor or potential donor to the Adams Campaigns in exchange for campaign contributions.

D.    Evidence relating to payments to any potential or actual donor to the Adams Campaigns to facilitate their making campaign contributions to the Adams Campaigns.

E.    Evidence of individuals or entities who donated to the Adams Campaigns before or after receiving transfers of funds similar to the amount of the donation.

SUBJECT TO PROTECTIVE ORDER.

F.      Evidence regarding any persons or entities involved, wittingly or unwittingly, in donations to the Adams Campaign in which the named donor is not the true source of the donated funds ("straw donations").

G.      Evidence regarding any requests by the Adams Campaigns for matching funds based on straw donations, including any discussions of matching funds.

H.      Evidence of fundraising for the Adams Campaigns involving any foreign nationals or officials.

I.      Evidence of the exchange of benefits or favors between foreign nationals or officials, on the one hand, and any person who is or was associated with or employed by the Adams Campaigns, on the other hand.

J.      Evidence relating to any efforts to influence testimony in any investigation relating to the Adams Campaigns, to destroy or conceal evidence, or to otherwise respond to, interfere with, or obstruct any investigation relating to the Adams Campaigns.

K.      Passwords or other information needed to access the user's online accounts, including encrypted data stored in the Seized Devices.

L.      Evidence sufficient to establish the owners and users of the Seized Devices at times relevant to the SUBJECT OFFENSES.

M.      Evidence of the geographic location of users or devices involved in the commission of the SUBJECT OFFENSES at times relevant to the SUBJECT OFFENSES.

B.   Search and Seizure of Electronically Stored Information

The items to be seized from the SUBJECT PREMISES also include any cellphones that may contain any electronically stored information falling within the categories set forth in Section A of this Attachment above. In lieu of seizing any such devices, this warrant also authorizes the copying of such devices or media for later review.

Included within the items to be seized from the SUBJECT PREMISES are:

1.      Any items or records needed to access the data stored on any seized or copied electronic devices, including but not limited to any physical keys, encryption devices, or records of login credentials, passwords, private encryption keys, or similar information.

2.      Any items or records that may facilitate a forensic examination of the electronic devices, including any hardware or software manuals or other information concerning the configuration of the seized or copied computer devices or storage media.

3.      Any evidence concerning the identities or locations of those persons with access to, control over, or ownership of the seized or copied electronic devices.

2

SDNY_01_000008587
SUBJECT TO PROTECTIVE ORDER.

C. Accessing ESI

During execution of the search of the SUBJECT PREMISES authorized herein, law enforcement personnel are authorized to (1) press or swipe the fingers (including thumbs) of ███████████████ to any device found at the premises reasonably believed by law enforcement to be used by ██████████ (2) hold any such device in front of ███████████ face and activate the facial recognition feature, for the purpose of attempting to unlock the device in order to search the contents as authorized by this warrant.

D. Review of ESI

Following seizure of any electronic devices and/or the creation of forensic image copies, law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the ESI contained therein for information responsive to the warrant.

3

SDNY_01_000008588
SUBJECT TO PROTECTIVE ORDER.