# UNITED STATES DISTRICT COURT
for the
Southern District of New York

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
) Case No. **24 MAG 2929**
▮ )
)

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

▮

located in the  Southern  District of  New York , there is now concealed *(identify the person or describe the property to be seized)*:

Please see Attached Affidavit and its Attachment A

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 371, 666, 1343, 1349 | theft of federal funds and conspiracy to steal federal funds, wire fraud and attempt and conspiracy to commit wire fraud, and campaign contributions by foreign |
| 52 U.S.C. § 30121 | nationals and conspiracy to commit the same |

The application is based on these facts:
Please see Attached Affidavit

☑ Continued on the attached sheet.
☑ Delayed notice of ____ days *(give exact ending date if more than 30 days:* 02/20/2025 *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s ▮  (By Court with Authorization)
*Applicant's signature*

▮
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
 Telephone   *(specify reliable electronic means).*

Date: _____

*[signature: Sarah Cave]*
*Judge's signature*

City and state:  New York, NY   Hon. Sarah L. Cave, USMJ, SDNY
*Printed name and title*

SDNY_01_000008842
SUBJECT TO PROTECTIVE ORDER

**24 MAG 2929**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In the Matter of a Warrant for All
Content and Other Information
Associated with the iCloud Account
Associated With
███████████aol.com, USAO
Reference No. 2021R00778

TO BE FILED UNDER SEAL

AGENT AFFIDAVIT

**Agent Affidavit in Support of Application for a Search Warrant
for Stored Electronic Communications**

STATE OF NEW YORK    )
                     ) ss.
COUNTY OF NEW YORK   )

███████, Special Agent, Federal Bureau of Investigation, being duly sworn, deposes and states:

# I. Introduction

### A. Affiant

1. I have been a Special Agent with the Federal Bureau of Investigation ("FBI") since 2019. I am currently assigned to a public corruption squad of the New York Field Office, where, among other things, I investigate crimes involving illegal campaign contributions, theft of federal funds, and bribery. Through my training and experience, I also have become familiar with some of the ways in which individuals use smart phones and electronic communications, including social media, email, and electronic messages, in furtherance of their crimes, and have participated in the execution of search warrants involving electronic evidence.

### B. The Subject Data

2. The Subject Data was previously provided to the FBI by Apple pursuant to a warrant and order issued on February 20, 2024, by the Honorable Sarah L. Cave, United States Magistrate

09.20.2021

2

SDNY_01_000008843
SUBJECT TO PROTECTIVE ORDER.

Judge for the Southern District of New York (the "First ▆▆▆ iCloud Warrant"). *See* 24 Mag. 737.

3. The Subject Data is presently located in the Southern District of New York, where it is maintained by the FBI in materially identical condition to that in which it was received.

**C. The Subject Offenses**

4. As detailed below, there is probable cause to believe that the Subject Account contains evidence, fruits, and instrumentalities of violations of (i) 18 U.S.C. §§ 371 and 666 (theft of federal funds and conspiracy to steal federal funds), (ii) 18 U.S.C. §§ 1343 and 1349 (wire fraud and attempt and conspiracy to commit wire fraud), and (iii) 18 U.S.C. § 371 and 52 U.S.C. § 30121 (campaign contributions by foreign nationals and conspiracy to commit the same) (collectively, the "Subject Offenses"). This affidavit is based upon my personal knowledge, my review of documents and other evidence, and my conversations with other law enforcement officers, as well as my training and experience concerning the use of email in criminal activity. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts I have learned during my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

**II. Probable Cause**

5. Since in or about August 2021, the FBI and the Office of the United States Attorney for the Southern District of New York have been investigating the receipt of so-called "straw" donations by the 2021 and 2025 New York City mayoral campaigns of Eric Adams (the "2021 Adams Campaign," the "2025 Adams Campaign," and, collectively, the "Adams Campaigns"), including certain straw donations that were funded by and/or made at the direction of foreign

SDNY_01_000008844
SUBJECT TO PROTECTIVE ORDER

government officials and other foreign persons.[1] As detailed more fully below and in the attached exhibit, ███████ Turkey's Consul General in New York, was involved in facilitating at least one fundraiser at which straw donations were made. ███ and others associated with him, also arranged free or steeply discounted luxury travel for Adams and certain of his associates, including ███████ Adams's longtime romantic partner.

6. As part of this investigation, law enforcement has obtained various warrants for electronic evidence, including but not limited to the following:

   a. On November 1, 2023, the Honorable James B. Clark III, United States Magistrate Judge for the District of New Jersey, issued a warrant authorizing a search of the home of ███████ for evidence of the Subject Offenses, including any electronic devices used by ███████ The warrant and supporting affidavit are attached hereto as Exhibit A and incorporated by reference herein.

   b. On February 20, 2024, the Honorable Sarah L. Cave, United States Magistrate Judge for the Southern District of New York, issued the First ███ iCloud Warrant. That warrant permitted seizure of content created, sent, received, accessed, modified, or deleted on or after January 1, 2018. This application seeks a warrant permitting seizure of content created, sent, received, accessed, modified, or deleted on or after July 1, 2015.

7. As detailed more fully in the attached affidavit, this investigation has revealed, in substance and in part, the following:

   a. On or about May 7, 2021, employees of ███████████████ ("███ a construction company that operates in New York City, made donations to the 2021 Adams

---

[1] A straw, or "conduit," donation occurs when a donation to a political campaign is made in the name of one donor, but the funds in question in fact belong to a different person.

SDNY_01_000008845
SUBJECT TO PROTECTIVE ORDER

Campaign in approximately the same amount as monies paid to each of the employees by ▮ on April 28, 2021.[2, 3] (See, e.g., Ex. A ¶¶ 9-11).

    b. Many of ▮ employees are of Turkish origin.[4] (See, e.g., Ex A ¶ 6).

    c. The Adams Campaigns cultivated a relationship with Turkey's New York Consul General, as well as the broader Turkish community, beginning at least in 2018. (See, e.g., Ex. A ¶¶ 16, 19).

    d. Turkey's Consul General in New York was involved in fundraising for the Adams Campaigns, including arranging the fundraiser where the ▮ straw donations were made, and communicated about fundraising with members of Adams's staff.[5] (See, e.g., Ex A. ¶¶ 12(a), 12(b), 13, 16).

---

[2] Out of eleven donations from ▮ employees made at the fundraiser, the co-owner of ▮ who organized the fundraiser (Erden Arkan) did not receive a ▮ reimbursement check, one donor received $50 more from ▮ than the donor donated to the 2021 Adams Campaign, and one ▮ employee's wife donated, while the employee himself received the ▮ reimbursement check.

[3] On or about November 2, 2023, the FBI interviewed Arkan, who acknowledged that ▮ made payments to certain employees shortly before the May 7, 2021, fundraiser, and that those employees then donated the same or materially similar amounts to the 2021 Adams Campaign on May 7, 2021, but denied that there was a connection between those two facts, dismissing them as coincidental. That same day, the FBI interviewed some of the ▮ employees who donated. While multiple employees admitted, in substance and in part, that they received payments from ▮ in anticipation of making donations to the 2021 Adams Campaign in equal amounts, and that they did this at Arkan's direction, others denied donating at all, or claimed they had donated their own money, or refused to speak with the FBI but exclaimed they were "innocent."

[4] Certain earlier affidavits in this investigation stated that ▮ was affiliated with a larger Turkish corporation. Law enforcement has since interviewed several ▮ employees who have stated, in substance and in part, that although ▮ was started by personnel formerly employed by that larger Turkish corporation, the two entities have no formal connection.

[5] Certain earlier affidavits in this investigation described ▮ and ▮ as staff of the Adams Campaigns. Counsel for Adams has since told the Government that, at least with respect to the 2021 Adams Campaign, ▮ was a volunteer and ▮ was a volunteer before becoming an employee of the Campaign. As used herein, "Adams's staff" is an inclusive term referring to persons who have worked for Adams (whether as Brooklyn Borough President or Mayor) and/or the Adams Campaigns.

SDNY_01_000008846
SUBJECT TO PROTECTIVE ORDER

e. Turkish national ▮▮▮▮▮ was involved in fundraising for the Adams Campaigns and attempted, in agreement with members of Adams's staff, to donate funds from Turkish nationals to the Adams Campaigns and communicated about fundraising with members of Adams's staff. (*See, e.g.*, Ex. A ¶¶ 19-24)[6].

f. Adams communicated with members of his staff about fundraising in the Turkish community and the potential provision of benefits to the Consul General. (*See, e.g.*, Ex. A ¶¶ 16(c), 16(j)).

g. Adams and members of his staff intervened in at least one matter within the purview of the New York City government to obtain favorable action for the Consul General; specifically, obtaining a Temporary Certificate of Occupancy ("TCO") for the official opening of a building associated with the Turkish Consulate in New York in time for a visit by Turkey's president in 2021. (*See, e.g.*, Ex. A ¶¶ 25-29).

h. Adams and others associated with him received various benefits from persons affiliated with the Consul General, including travel to Turkey via ▮▮▮▮▮ that was provided at no cost in some instances, and reduced cost in others. (*See, e.g.*, Ex. A. ¶ 17).

i. ▮▮▮▮▮ was one of Adams's key intermediaries to the Turkish community and worked in the Special Counsel's office of the Brooklyn Borough President when Adams was Brooklyn Borough President, was involved with the Adams Campaigns, and most recently worked in the Mayor's Office for International Affairs. During the relevant time period, ▮▮▮▮▮ had

---

[6] The attached affidavit discusses certain straw contributions made by employees of ▮▮▮▮▮ ▮▮▮▮▮ and mistakenly describes those contributions as having been refunded by the 2021 Adams Campaign on the day they were made. (Ex. A ¶ 22). Records from the New York City Campaign Finance Board show that those contributions were made on September 27, 2021, flagged as potential straw contributions in an October 8, 2021 CFB report, and refunded on October 14, 15, and 19, 2021.

regular contact both with Turkish consular officials and with ▇ was personally involved with the May 7, 2021 Adams fundraiser held by ▇ at which the straw donations were made; and was personally involved in the exchange of other benefits between Adams and those associated with him and the Consul General and those associated with him. (*See, e.g.*, Ex. A ¶¶ 7, 13-18).

8. Based on my review of records provided by ▇ among other sources, Adams traveled to Turkey on several occasions, including as early as August 2015.

9. I know based on, among other sources, public reporting, that ▇ is Adams's long-term romantic partner.[7] In addition, based on public reporting, I believe that in or about February and March 2023, ▇ was Senior Adviser to a Deputy Chancellor of the New York City Department of Education ("NYCDOE").

10. I have reviewed the contents of an iCloud account and an Apple iPhone used ▇ ▇ obtained pursuant to search warrants, including text messages exchanged between ▇ and ▇ In February and March 2023, ▇ and ▇ exchanged the following text messages:

| Date | From | To | |
|---|---|---|---|
| 2/13/2023 | ▇ | ▇ | Hi ▇<br>Here is the contact information for the Consul General of Turkey<br><br>▇ 4260 ▇ |
| 2/13/2023 | ▇ | ▇ | Thank you so much ▇ I will share the number with ▇ when I see him. Please save my personal cell and I will also save your personal cell number too. Warmly, ▇ |

---

[7] *See, e.g.*, Sandra E. Garcia, *The 'Swagger Mayor' Attends His First Met Gala*, N.Y. Times, May 3, 2022, https://www.nytimes.com/2022/05/03/style/met-gala-party-eric-adams.html ("Mayor Eric Adams of New York was . . . accompanied by his girlfriend, ▇ whom he introduced as his 'other half.'").

7

SDNY_01_000008848
SUBJECT TO PROTECTIVE ORDER.

| 2/13/2023 | ■ | ■ | Thank you, ■<br>Appreciate all your help |
| --- | --- | --- | --- |
| 3/10/2023 | ■ | ■ | Good evening ■<br>Such a pleasure to meet you today<br>great personality and full of positive energy |
| 3/10/2023 | ■ | ■ | Here is the information for the CG's son<br><br>Student Name: ■<br>Student ID: ■<br>Current School: ■<br>Looking to get into ■<br>Thank you |

SUBJECT TO PROTECTIVE ORDER.

11. I have reviewed records from ▓▓▓ showing that ▓▓▓ traveled with Adams to or through Turkey on at least four occasions: (i) a 2016 trip to India, with stops in Istanbul; (ii) a 2018 trip to Hungary and Poland, with stops in Istanbul; (iii) a 2019 trip to Jordan and Oman, with stops in Istanbul; and (iv) a 2021 trip to Ghana, with stops in Istanbul. ▓▓▓ provided ▓▓▓ with a free business class upgrade on each of these trips. Based on open-source information, I know that a sovereign wealth fund owned by the Turkish Government owns slightly less than 50% of the shares of ▓▓▓ and is the airline's single largest shareholder.[10]

12. I have also reviewed messages between Adams, ▓▓▓ and others showing that ▓▓▓ and ▓▓▓ an officer of ▓▓▓ operating in conjunction with ▓▓▓ discussed the provision of free or discounted travel benefits to Adams and those associated with him, including ▓▓▓ (*See, e.g.*, Ex. A ¶¶ 17-18).

13. Based on my review of the contents of the ▓▓▓ iCloud obtained pursuant to the ▓▓▓ iCloud Warrant, the ▓▓▓ iCloud contains, among other things

　a. The messages discussed in ¶ 9 above, reflecting a request from ▓▓▓ that his son be placed in the Salk School of Science.

　b. Evidence of ▓▓▓ travel, with Adams, on three trips[11] where Adams and/▓▓▓ received free travel upgrades from ▓▓▓ such as photographs of Adams and ▓▓▓ during that travel, and messages ▓▓▓ sent and received about that travel.

---

[10] ▓▓▓

[11] The first of the four trips discussed above in paragraph 10 occurred in 2016, which is outside the date range for which the First ▓▓▓ iCloud Warrant authorized the seizure of data.

09.20.2021

SDNY_01_000008850
SUBJECT TO PROTECTIVE ORDER.

14. Based upon the foregoing, I respectfully submit there is probable cause to believe that the Subject Data contains evidence, fruits, and instrumentalities of the Subject Offenses, as more fully described in Section II of Attachment A to the proposed warrant.

**III. Procedures for Searching the Subject Data**

15. Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) will review the Subject Data for evidence, fruits, and instrumentalities of the Subject Offenses as specified in Section II of Attachment A to the proposed warrant.

16. In conducting this review, law enforcement personnel may use various methods to locate evidence, fruits, and instrumentalities of the Subject Offenses, including but not limited to undertaking a cursory inspection of all communications and other data within the Subject Accounts. This method is analogous to cursorily inspecting all the files in a file cabinet in an office to determine which paper evidence is subject to seizure. Although law enforcement personnel may use other methods as well, particularly including keyword searches, I know that keyword searches and similar methods are typically inadequate to detect all information subject to seizure. As an initial matter, keyword searches work only for text data, yet many types of files commonly associated with emails, including attachments such as scanned documents, pictures, and videos, do not store data as searchable text. Moreover, even as to text data, keyword searches cannot be relied upon to capture all relevant communications in an account, as it is impossible to know in advance all of the unique words or phrases that investigative subjects will use in their communications, and consequently there are often many communications in an account that are relevant to an investigation but that do not contain any keywords that an agent is likely to search for.

SDNY_01_000008851
SUBJECT TO PROTECTIVE ORDER

### IV. Conclusion and Ancillary Provision

17. Based on the foregoing, I respectfully request the court to issue a warrant to seize the items and information specified in Attachment A to this affidavit and to the Search and Seizure Warrant.

18. I hereby request, pursuant to 18 U.S.C. §§ 3103a(b) and 2705(b), and Federal Rule of Criminal Procedure 41(f)(3), that the Court order that the sealing and non-disclosure provisions detailed in the First ▉ iCloud Warrant and affidavit in support thereof continue to apply to the Subject Data. The non-disclosure provision in the First ▉ iCloud Warrant provides for non-disclosure of the Warrant through February 20, 2025. This remains appropriate because the existence and general nature of this investigation are publicly known, because of media reporting, and are known to certain subjects and targets such as Adams and ▉ including because of the execution of various warrants, the exact nature of this ongoing criminal investigation and the particular types of evidence the Government is covertly seeking as part of that investigation are not publicly known. As a result, premature public disclosure of this affidavit or the requested warrant could alert potential criminal targets to as-yet non-public information about the nature and scope of the Government's investigation, which could cause them to destroy evidence, flee from prosecution, or otherwise seriously jeopardize the investigation. Indeed, as is set forth above, the targets of this investigation are known to use computers and electronic communications in furtherance of their activity and thus could easily delete, encrypt, or otherwise conceal such digital evidence from law enforcement were they to learn of the Government's investigation. See 18 U.S.C. § 2705(b)(3). Accordingly, there is reason to believe that, were Apple to notify ▉ ▉ or others of the existence of the warrant, the investigation would be seriously jeopardized.

19. For similar reasons, I respectfully request that this affidavit and all papers submitted herewith be maintained under seal until the Court orders otherwise, except that the Government

09.20.2021

11

SDNY_01_000008852
SUBJECT TO PROTECTIVE ORDER.

be permitted without further order of this Court to provide copies of the warrant and affidavit as need be to personnel assisting it in the investigation and prosecution of this matter, and to disclose those materials as necessary to comply with discovery and disclosure obligations in any prosecutions related to this matter.

/s ▮▮▮▮▮ (By Court with Authorization)
SA ▮▮▮▮▮
FBI

Sworn to me through the transmission of this
Affidavit by reliable electronic means, pursuant to
Federal Rules of Criminal Procedure 41(d)(3) and 4.1, this
12th day of August, 2024



Honorable Sarah L. Cave
United States Magistrate Judge
Southern District of New York

**Search Attachment A**

**I. Data Subject to Search and Seizure**

The data that is the subject of this search and seizure warrant (the "Subject Data") are the contents of the iCloud Account associated with ▇▇▇▇▇▇▇▇aol.com, previously provided to the FBI by Apple pursuant to a warrant and order issued on February 20, 2024, by the Honorable Sarah L. Cave, United States Magistrate Judge for the Southern District of New York, 24 Mag. 737.

**II. Review of the Subject Data**

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate any evidence, fruits, and instrumentalities of violations of: (i) 18 U.S.C. §§ 371 and 666 (theft of federal funds and conspiracy to steal federal funds), (ii) 18 U.S.C. §§ 1343 and 1349 (wire fraud and attempt and conspiracy to commit wire fraud), and (iii) 18 U.S.C. § 371 and 52 U.S.C. § 30121 (campaign contributions by foreign nationals and conspiracy to commit the same), for content created, sent, received, accessed, modified, or deleted on or after July 1, 2015, including the following:

1. Evidence concerning the identity or location of the owner(s) or user(s) of the Subject Account.

2. Evidence of knowledge or understanding of, or intent to violate, laws and regulations governing the conduct of the 2021 New York City Mayoral campaign of Eric Adams (the "2021 Adams Campaign") on the part of any donor or associate of any donor; the Turkish Government,

SDNY_01_000008854
SUBJECT TO PROTECTIVE ORDER.

including its Consulate General in New York and its employees, officers, or associates; or the 2021 Adams Campaign.

3. Evidence of knowledge or understanding of, or intent to violate, laws and regulations governing the conduct of the 2025 New York City Mayoral campaign of Eric Adams (the "2025 Adams Campaign," and together with the 2021 Adams Campaign, the "Adams Campaigns") on the part of any donor or associate of any donor; the Turkish Government, including its Consulate General in New York and its employees, officers, or associates; or the 2025 Adams Campaign.

4. Evidence relating to coordination between Turkish nationals or the Turkish Government and the Adams Campaigns concerning political contributions to the Adams Campaigns, including, but not limited to, evidence of motive and intent for Turkish nationals or the Turkish Government to provide or facilitate campaign contributions to the Adams Campaigns, and evidence of motive and intent by any person who is or was associated with or employed by the Adams Campaigns to provide benefits, whether lawfully or unlawfully, to Turkish nationals or the Turkish Government in return for campaign contributions.

5. Evidence relating to payments to employees, officers, and associates of ▮ to facilitate those employees, officers, and associates making campaign contributions to the Adams Campaigns.

6. Evidence relating to the source of funds for payment or reimbursement of employees, officers, and associates of ▮ for campaign contributions to the Adams Campaigns.

09.20.2021

2

SDNY_01_000008855
SUBJECT TO PROTECTIVE ORDER.

7. Evidence relating to the source of funds for payment or reimbursement of persons serving as conduits for campaign contributions to the Adams Campaigns originating from Turkish national.

8. Evidence of individuals or entities who donated to the Adams Campaigns before or after receiving transfers of funds similar to the amount of the donation.

9. Evidence regarding straw donations to the Adams Campaigns, including without limitation evidence regarding the identities of any persons or entities involved, wittingly or unwittingly, in straw donations, and evidence regarding the sources of funds for straw donations.

10. Evidence of the relationship between and among (i) persons or entities that coordinated or made straw donations or (ii) foreign nationals and/or governments, and any person who is or was associated with or employed by the Adams Campaigns, including all communications with or about, contact information for, and meetings and appointments with co-conspirators.

11. Evidence of an intent to exchange benefits between the Turkish Government or entities and persons acting at its behest, and any person who is or was associated with or employed by the Adams Campaigns, including but not limited to straw donations and any actions taken by any person who is or was associated with or employed by the Adams Campaigns on behalf of the Turkish Government, ▓ or entities and persons acting at the behest of the Turkish Government.

12. Evidence regarding any requests by the Adams Campaigns for matching funds based on straw donations, including any discussions of matching funds.

13. Passwords or other information needed to access the user's online accounts, including encrypted data stored in the Subject Account.

3

09.20.2021

SDNY_01_000008856
SUBJECT TO PROTECTIVE ORDER.

14. Evidence of the geographic location of users, computers, or devices involved in the commission of the Subject Offenses at times relevant to the Subject Offenses.

15. Evidence concerning efforts to conceal communications, meetings, or associations between Turkish nationals, the Turkish Government, ▮ or entities and persons acting at the behest of the Turkish Government, and persons associated with or employed by the Adams Campaigns.

16. Evidence concerning efforts to destroy or conceal evidence of the Subject Offenses or to devise or coordinate false exculpatory explanations for the conduct underlying the Subject Offenses, or to otherwise obstruct law enforcement from investigating the Subject Offenses.

SDNY_01_000008857
SUBJECT TO PROTECTIVE ORDER.

**24 MAG 2929**

# EXHIBIT A
# [23 MJ 12234]

SDNY_01_000008858
SUBJECT TO PROTECTIVE ORDER.

AO 93C (08/18) SDNY Rev. Warrant by Telephone or Other Reliable Electronic Means    ☑ Original    ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
for the
Southern District of New York

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>█████████ | )<br>)<br>) Case No.   **24 MAG 2929**<br>)<br>)<br>) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:   Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the    Southern    District of    New York   
*(identify the person or describe the property to be searched and give its location)*:

█████████

The search and seizure are related to violation(s) of *(insert statutory citations)*:

18 U.S.C. §§ 371, 666, 1343, 1349, 52 U.S.C. § 30121 (theft of federal funds and conspiracy to steal federal funds, wire fraud and attempt and conspiracy to commit wire fraud, and campaign contributions by foreign nationals and conspiracy to commit the same)

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment A

**YOU ARE COMMANDED** to execute this warrant on or before _____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____.
*(United States Magistrate Judge)*

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☑ until, the facts justifying, the later specific date of    02/20/2025   .

Date and time issued:   08/12/2024 11:39 am                                                                    *(signature)* /s/ Sarah Cave
                                                                                                                                           Judge's signature

City and state:   New York, NY                                                                    Hon. Sarah L. Cave, USMJ, SDNY
                                                                                                                    *Printed name and title*

SDNY_01_000008907
SUBJECT TO PROTECTIVE ORDER

AO 93C (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

| Print | Save As... | Reset |

SDNY_01_000008908
SUBJECT TO PROTECTIVE ORDER.